**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WALTER JAYNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-856C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OBJECTIONS TO CERTAIN OF PLAINTIFFS' TRIAL EXHIBITS SUBMITTED ON THE ISSUE OF ACCORD AND SATISFACTION**

Pursuant to this Court's order, dated September 21, 2006, the United States respectfully submits its objections to certain of plaintiffs' proposed trial exhibits submitted on the issue of accord and satisfaction.

## I. Objections to Summary Exhibits (PX-024, PX-025, PX-026, PX-027)

Plaintiffs seek to admit into evidence four purported summary exhibits. Because these summaries do not record records that are too voluminous, because they contain a number of plaintiffs' inaccurate conclusions, and because the summaries contain numerous errors in transcribing the underlying data, defendant respectfully requests that they be ruled inadmissable as evidence. Further, defendant notes that they provide no information relevant to the issue of accord and satisfaction.

Federal Rule of Evidence 1006 provides, in pertinent part: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." If a summary is admitted as evidence, it is not necessary that the underlying documents which are the basis for the summary be admitted.

United States v. Bray, 139 F.3d 1104, 1110 (6th Cir. 1998); see also Peat, Inc. v. Vanguard Research Inc., 378 F.3d 1154, 1159-60 (11th Cir. 2004). This fact distinguishes a summary from a demonstrative or illustrative exhibit (sometimes referred to as a "pedagogical-device summary") which is not itself evidence, but which merely acts as an aid to the presentation of other evidence that has been admitted. Bray, 139 F.3d at 1112; see also United States v. Buck, 324 F.3d 786, 790 (5th Cir. 2003).

Because a summary is considered evidence, there are certain conditions that must be met before it may be admitted under Rule 1006. First, the documents that are summarized must be so voluminous that they cannot be conveniently examined in court. Bray, 139 F.3d at 1109. Second, the proponent of the summary must have made the underlying documents "available for examination or copying or both, by other parties at a reasonable time and place." Rule 1006. Third, in order for a summary to be admissible, the underlying documents themselves must be admissible in evidence. Conoco Inc. v. Dep't of Energy, 99 F.3d 387, 393 (Fed. Cir. 1997); Bray, 139 F.3d at 1110; Peat, 378 F.3d at 1160 ("Rule 1006 is not a back-door vehicle for introduction of evidence which is otherwise inadmissible.").

Finally, in order to be admissible, a summary "must be accurate and nonprejudicial." Bray, 139 F.3d at 1110; see also United States v. Taylor, 210 F.3d 311, 315-16 (5th Cir. 2000) (necessary precondition to the admission of summary charts is that they accurately reflect the underlying records or testimony . . ."); United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979). Thus, the summary should present only the information contained in the underlying documents, and should do so in an objective and non-misleading manner, devoid of "conclusions of or inferences drawn by the proponent[.]" Bray, 139 F.3d at 1110; see also Peat, 378 F.3d at 1159 (argumentative matter should not be included in a Rule 1006 summary). When a summary goes beyond the compilation of

information contained in the underlying documents, and incorporates "questionable assumptions," it should not be admitted under Rule 1006. United States v. N. Am. Reporting, Inc., 740 F.2d 50, 54 (D.C. Cir. 1984).

First, the summary spread sheets prepared by plaintiffs are no less voluminous than those generated by management and the union. As noted above, a prerequisite to admissibility is that the underlying documents be so voluminous that they cannot be conveniently examined in court. Bray, 139 F.3d at 1109; Bannum, 59 Fed. Cl. at 244; Bath Iron Works Corp. v. United States, 34 Fed. Cl. at 232-33. This caution in admitting summaries is well-justified as summaries obviate the need to introduce the source documents. As a result, summaries are "inadmissible when the content being provided is neither voluminous or complicated." 6 WEINSTEIN'S FEDERAL EVIDENCE § 1006.03 (2d ed. 2004). The original documents can be as conveniently examined as can plaintiffs' summary exhibit, and indeed, have been admitted into evidence as a joint exhibit by the parties. This is especially true with regard to PX-024, which purportedly summarizes 6 documents (JX-039, JX-040, JX-041, JX-042, JX-043, and JX-044), and PX-027, which purports to summarize 4 documents (JX-044, JX-045, JX-046, and PX-14).

Second, the cases are clear that summaries may include only the information in the underlying documents, and must be accurate. See Bannum, Inc. v. United States, 59 Fed. Cl. 241, 245 (2003); see also Bath Iron Works Corp. v. United States, 34 Fed. Cl. 218, 233 (1995) ("the proposed summary (or chart or calculation) must accurately summarize (or reflect) the underlying document(s) and only the underlying documents") (emphasis in original) (citing Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1468-69 (10th Cir. 1994); United States v. Drougas, 748 F.2d 8, 25 (1st Cir. 1984); Needham v. White Laboratories, Inc., 639 F.2d 394, 403 (7th Cir. 1981); Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 301 (3d Cir. 1961)); Doniger, 50 Fed. Cl. at 130

(same). The key feature of the purported summaries, however, is not the underlying data but the plaintiffs' conclusions regarding such data. Further, the accuracy of these conclusions and portions of the summaries is questionable.

Specifically, PX-024 purports to provide the net change between the "first and last known ratings" in column H, and calculates a purported mean and median figure for each set of calculations. However, according to Mark Winkler's deposition the figures entered into this table are actually not the "first initial crack," but actually a set of numbers that were derived "…significantly later, because the first initial thing didn't work the way we were anticipating" Transcript of 30(b)(6) Deposition of Mark Winkler 03/10/05 - Pages 76:24 - 77:16, 79:5-79:25 Further, plaintiffs calculation of the mean involves several questionable assumptions. If the three claimants with multiple possible values are included, the resulting mean is 3.5, regardless of whether the highest possible or lowest possible value is used in the calculation. If the other claimants' "first known" calculations which occurred in subsequent passes is included, the mean is 3.4. Consequently, the difference between the mean of 3.6 that plaintiffs show for the "First Known" vs. 3.3 for the "Last Known" column is mostly due to the addition in subsequent compilations of employees who were less involved in high work.[1] With regard to the median, the higher number of 4.0 in the "First Known" calculation only confirms that the employees with the highest values were included in the first estimate, whereas the reduction to 3.0 in the subsequent revisions included the inclusion of new employees and clarification of the employees with multiple values. If you include

[1] The mean of the net change shown at the bottom of column H will also vary slightly between -0.12 and -0.13. The mean net change depends on the assumptions made about the "First Known" value for the three claimants whose first known entry showed multiple possible values.

the other claimants' "first known" calculations which occurred in subsequent passes, the median is 3.5.

PX-025 also presents calculations purportedly derived from the documents, rather than data, including the total hours of high work in column H, less high pay already paid during the claim period in column I, and the "predicted" calculation of total unreimbursed high pay hours in the claim period in column J. The number of assumptions and questions associated with PX-025 required the plaintiffs to present a number of explanatory footnotes commenting on their interpretations of the data.

While the basic calculation contained in PX-026 (specifically, column C) may seem unobjectionable, the table still contains a number of questionable assumptions and errors. For example, whereas the Government would regard eleven different entries as unclear or illegible (John Barth, Allen Cooper, Josh Glitch, Greg Griffis, Gordon Hanberg, David Harper, Douglas Impey, Randy Kadlecek, Bobby Lantrip, Dale Leible, and David Peterson), plaintiffs only treat three of these ten as illegible. Plaintiffs also have made errors in the simple calculations contained in column C. For example, one half of the overtime hours reflected in the first column for Kimberly Martin is 95.25, not 85.25.

PX-027 is also primarily a compilation of computations, rather than a true summary. Accordingly, while the numbers in Columns G and H accurately transcribe the final payout numbers already in evidence, there are a number of errors in the preceding columns. For example, in column F (which is supposed to be an extension of column D times column E), we find errors for Frederick Green (3 x 9 = 17), James Groat (21 x 5 = 135) , Joshua Noerenberg (16 x 3 = 45), and James Twogood (38 x 4.5 = 71). Likewise the table contains misleading transcriptions in column D as evidenced by Jerry Cockrum (2) and David Collins (4), since the numbers in the original exhibit went off the edge of the page when copied or scanned; the correct numbers should be 24, and 47

respectively and can be accurately derived from other numbers on the page. The erroneous transcription of these numbers in the table leads to the false conclusion that they are clear and accurate, where simple a division check of the original source documents illustrates the transcription is inaccurate.

Finally, these summaries have no relevance to the question of whether or not there was a valid accord and satisfaction. Federal Rule of Evidence 401 defines relevant evidence as evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Pursuant to Federal Rule of Evidence 402 "[e]vidence which is not relevant is not admissible." See Womack v. United States, 294 F.2d 204 (D.C. Cir. 1961), cert. denied, 365 U.S. 859 (to be admissible, evidence must have some potential probative weight upon issues under trial). These summaries, however, are not relevant to the issue of accord and satisfaction, although they might later have some bearing on other portions of this case.

Indeed, if the charts show anything, they acknowledge that the plaintiffs received consideration in the settlement of the grievance. Further, if plaintiffs aim to point out that the shipyard may have made some possible mathematical errors in calculating back high pay (although such alleged possible errors might be explained by data not contained in the source documents), the plaintiffs only serve to demonstrate that their math is no better.

## II. Objections to Barry Joe Aiken Impeachment Material (PX-018, PX-019, PX-020, PX-021, PX-022, PX-023)

Plaintiffs also seek to admit into evidence several documents that are not relevant to the issue of accord and satisfaction itself, but which appear to be potential impeachment material. Specifically, plaintiffs seek to admit documents PX-018 (Request for Personnel Action for Barry Joe

Aiken); PX-019 (Verification of Personnel Action for Barry Joe Aiken); PX-020 (Verification of Personnel Action for Barry Joe Aiken); PX-021 (Request for Personnel Action for Barry Joe Aiken); PX-022 (Request for Personnel Action for Aiken); PX-023 (Request for Personnel Action for Barry Joe Aiken). Defendant respectfully requests that the Court rule that these documents may only be admitted for impeachment purposes, subject to the limitations that the Federal Rules of Evidence place upon the use and presentation of such material.

As noted above, the aforementioned exhibits do not go to the matter of accord and satisfaction. Rather, they are possible impeachment material. See FED. RULES OF EVIDENCE 608. As such, these documents are not properly admitted at this point, but may be submitted only in an attempt to impeach the credibility of Mr. Aiken. See generally Shell Petroleum, Inc. v. United States, 47 Fed. Cl. 812, 818 (2000) ("Although impeachment is admissible for the purpose of challenging the credibility of a witness, impeachment evidence is not, as such, relevant to whether a particular element in a tax case has been proved or not proved."). Impeachment material is not inadmissable per se, but is subject to certain specified limitations pursuant to the Federal Rules of Evidence that determine when and how such materials may be used. FED. RULES OF EVIDENCE 608. As such, we respectfully request that the Court limit the use of this information to such purposes.

**III. Additional Objections**

Plaintiffs have offered into evidence several documents, without proffering a witness to speak to the documents. In each instance, plaintiffs hypothesize about the meaning of the out of Court statements contained within these documents. Because these documents constitute classic hearsay within the meaning of the Federal Rules of Evidence, the Government respectfully requests that they be struck from the exhibits list.

Specifically, plaintiffs seek to offer a March 2, 2000 letter from Steve Seaton, an attorney for the Department of the Navy at Puget Sound Naval Shipyard, to Bryon Holcomb, the original counsel for the plaintiffs (PX-009). Plaintiffs have not listed Mr. Seaton as a witness that will testify as to the meaning of the statements contained (or not contained) within document, but speculate that his failure to include any comments regarding the settlement of the grievance in response to Mr. Holcomb's letter was "[n]o doubt . . . because when Ms. Niemi briefed him on the grievance, she did not advise him that there was a settlement."[2] Setting aside the inaccuracy of plaintiffs' summary conclusions, plaintiffs cannot admit this exhibit without Mr. Seaton's testimony.

Similarly, plaintiffs seek to admit and expound upon the purported intended meaning of an unrelated settlement (PX-004), without calling any witness familiar with the circumstances of the unrelated grievance. This particular exhibit is further inadmissable on the grounds of relevance, as the fact that a separate shop (Code 305)[3] and different, higher level management official (Al Burton) entered into a detailed settlement agreement on a separate matter has no probative value with regard to the question of whether or not there was a valid accord and satisfaction here.

## CONCLUSION

For these reasons, we respectfully request that the Court grant each of the above mentioned objections.

---

[2] Further, plaintiffs do not even attempt to place this letter in its proper context, admitting only Mr. Seaton's response to Bryon Holcomb's letter without proffering Mr. Holcomb's letter itself.

[3] Shop 305 is the recycling unit of the shipyard.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th floor
Washington, D.C. 20530
Tele: (202) 616-2377
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL .
JOHN D. NOEL
Senior Trial Attorney
Department of the Navy
720 Kennon Street, S.E., Room 233
Washington, D.C. 20374-5013

STEVEN L. SEATON
Puget Sound Naval Shipyard
1440 Farragut Avenue
Bremerton, Washington 98314-5001

October 20, 2006

**CERTIFICATE OF FILING**

I hereby certify that on this 20th day of October, 2006, a copy of the foregoing "DEFENDANT'S OBJECTIONS TO CERTAIN OF PLAINTIFFS' TRIAL EXHIBITS SUBMITTED ON THE ISSUE OF ACCORD AND SATISFACTION was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager

Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice