**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WALTER JAYNES; PAUL S. SCOTT; DAVID S. PETERSON; DONALD BAKER; GORDON D. HANBERG; et al., Plaintiffs, | No. 04-856C |
| vs. | Judge Miller |
| THE UNITED STATES, Defendant. | Electronically Filed on Oct. 25. 2006 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE**

The theme of the case continues. Having first asserted its accord-and-satisfaction defense to preclude a trial on the merits – a defense premised upon the notion that the merits have already been resolved – the Shipyard now seeks to preclude a trial on the merits of two of the four elements of that defense, again based on the assumption that those merits have already been resolved.

The Shipyard's motion has three (or, depending on how one counts, four) fatal flaws. Each is addressed in turn.

## I. The Shipyard's Argument Regarding the Merits Is Flawed and Inappropriate

The first problem with the Shipyard's motion is that nearly half of it is devoted to an impermissible attempt to dismiss plaintiffs' arguments on the merits. Specifically, pages 4 and 5 of the motion argue that plaintiffs' position regarding these two elements of accord and satisfaction is wrong. In so arguing, the Shipyard repeats or supplements arguments that it submitted to the Court just two weeks earlier, in its reply to plaintiffs' memorandum of contentions of fact and law.

The Shipyard's back-door attempt to obtain a ruling on the merits of the plaintiffs' arguments is improper. Whatever the utility of a motion in limine, it serves a different purpose from a Rule 12(b)(6) motion to dismiss or a summary judgment motion. The latter motions provide the means by which a party may seek the dismissal of claims or defenses that are unsupported by fact or law. The former does not. The Shipyard cites no authority, and the plaintiffs are aware of none, that says that a motion in limine may be used to dismiss claims on their merits.

## II. The Shipyard's Arguments on the Merits are also Flawed

The second problem with the Shipyard's latest arguments in support of its position have serious flaws. The Shipyard maintains that Section S8-7(g) of the Office of Personnel Management's Operating Manual for the Federal Wage System[1] contemplates that local authorities may determine which local situations fall within the definition of high work. Hence, the Shipyard concludes, it was a "condition of employment" subject to the collective bargaining agreement's grievance procedures

This position ignores other language from the OPM Operating Manual. The starting point is Appendix J to the OPM Operating Manual, which appears at Plaintiffs Exhibit 3. Page two of Appendix J defines "high work" in the disjunctive, identifying three categories of work below 100 feet that qualify. The first is defined as working "[i]f the footing is unsure or the structure is unstable." This first category does not admit of any means for eliminating the hazard posed by this

[1] Excerpts from the OPM Operating Manual appear at Plaintiffs Exhibit 1 and 2. The Shipyard does not object to the admission of either exhibit and so, pursuant to paragraph 7 of the Court's September 14, 2006 Order, they are deemed offered and admitted for all purposes.

condition.

This is significant, because section S8-7(d) of the OPM Operating Manual does not allow the Shipyard, under the guise of a "local determination," to refuse to pay high pay for work that falls within this category simply because it believes the hazard protective facilities or devices would eliminate the hazard. Section S8-7(d) provides:

> Some of the environmental differentials listed in appendix J are payable whenever the criteria in the category definition are met. Others are payable only If protective facilities, devices, or clothing have not practically eliminated the hazard, physical hardship, or working condition of an unusually severe nature. Consistent with S8-7(b)(3) below, determinations in this regard may be made through negotiations at the local level.
>
> Categories for which payment is made when the conditions given in the definition are met are those in which there is no reference to practical elimination of the condition through protective measures. Categories which are subject to practical elimination contain language to that effect in the definition.

Appendix J unconditionally defines high work to include work where "the footing is unsure or the structure is unstable." To use Section S8-7's language, this definition contains "no reference to practical elimination of the condition through protective measures."

To the extent that the grievance decision (plaintiffs exhibit 3) denies high pay for work on unsure footing or unstable structures because protective gear is available, the decision ignores Section S8-7. And that does appear to be the thrust of the grievance decision, which sought to exclude from its definition of high work those situations where "fall protection devices can be properly used." Section S8-7(d)

and Appendix J do not allow the Shipyard to avoid its obligation to pay high pay for work on unsure footing or unstable structures by claiming fall protection devices can partly or completely eliminate the hazard posed by these conditions.

Thus, the Shipyard's appeal to the "local determination" provision of the OPM Operating Manual is misplaced. The Operating Manual denied the parties the authority to define high work to exclude work on unsure footing or unstable structures because fall protection was (allegedly) available.

Another flaw in the Shipyard's argument is confusing what the union and the shipyard had the authority to do **in the abstract** compared to what actually happened. The key issue is what the **collective bargaining agreement** allowed them to do, whether that agreement was followed, and the effect of the parties' failure to follow the agreement's grievance procedures. This is an important distinction because it is the same distinction drawn in the plaintiffs' past summary judgment filings and in this Court's order.

In their summary judgment briefing, plaintiffs did not challenge, in the abstract, the authority of the union to negotiate on behalf of its members. Nor, as a matter of statutory law, could they. As the representative of Shop 64 shipwrights, the union was clearly competent to negotiate on behalf of these employees regarding various aspects of their employment.

What plaintiffs did **not** concede, and what this Court did **not** address, was whether under the particular facts and circumstances here, the union and Shipyard acted within their respective authority under the collective bargaining agreement.

As it turns out, and as the Shipyard appears to concede in its motion in limine as well as in its reply to plaintiffs' memorandum of contentions of fact and law, the parties did **not** comply with the grievance resolution procedures set forth in Article 30 of the collective bargaining agreement. Because neither the union nor the Shipyard followed the appropriate procedures for resolving the grievance, they were not "competent parties" to enter into an accord and satisfaction regarding high pay.

To avoid this result, the Shipyard invokes authorities that hold that a grievance decision may not be reversed on appeal due to a procedural error unless the error was harmful.[2] But the Shipyard cites no authority whatsoever in support of its effort to import a harmless error standard that govern appeals from adversarial proceedings to the field of accord and satisfaction. Put another way, it cites no authority for the notion that an employee is bound by an alleged settlement agreement that the union was not competent to reach.

Not only does the Shipyard cite no authority for its argument, the argument finds no support in the doctrine or elements of accord and satisfaction. For purposes of accord and satisfaction, the issue is whether the parties to the alleged accord were "competent," not that they were "mostly," "substantially," or "somewhat" competent. As with pregnancy, the law of accord and satisfaction does not admit of no "kind of" competence.

Aside from the lack of support for the Shipyard's effort to import a harmless error rule into the doctrine of accord and satisfaction, the effort makes no sense

conceptually. In an appeal from an adversarial proceeding, the overarching issue is whether the decision on appeal was correct. The harmless error rule serves the purposes of avoiding reversal on grounds that have nothing to do with the ultimate merits of the decision below. For purposes of accord and satisfaction, in contrast, the issue is not whether the settlement was "correct." It is whether the parties were competent to reach an accord. As set forth above, the parties either have that authority or they do not. If one party exceeds its contractual or regulatory authority to enter into a deal, then under the black-letter law of accord and satisfaction, it is not competent to do so and may not bind the party it represents.

## III. The Shipyard Misconstrues the Trial Court's Reasoning in Its Order Denying Summary Judgment

The third, and most serious, problem with the Shipyard's motion in limine is that it ignores the thrust of the plaintiffs' summary judgment briefing and the Court's summary judgment ruling.

In opposing the Shipyard's summary judgment motion, plaintiffs did not mount a challenge to two of the four elements of accord and satisfaction. Such a challenge was unnecessary and premature, the plaintiffs explained, because the Shipyard's summary judgment motion clearly foundered on the other elements, primarily the requirement that there be a meeting of the minds. Because this was the case, it became unnecessary to litigate every conceivable issue relating to accord and satisfaction. The Court's summary judgment order accurately caught the gist of plaintiffs' position when it quoted from plaintiffs' briefing: "Plaintiffs don't contest

---

[2] Reply to Mem. of Law & Fact at 18-19.

that the union and the Shipyard … could have entered into a settlement agreement. … But they didn't, and that brings the Shipyard's accord and satisfaction defense to an end."[3] That was all plaintiffs said regarding these two elements in their brief.

This Court ultimately agreed with plaintiffs' general position when it concluded that the Shipyard had failed to meet its burden to show the absence of a dispute concerning the other two elements of accord and satisfaction: (1) meeting of the minds, and (2) consideration. Thus, while plaintiffs and the Court recognized the authority of the parties in the abstract, neither plaintiffs nor this Court engaged in any detailed or substantive analysis of whether, under the facts here, the parties had acted within the scope of that authority. That issue remains, as it always has, for trial.

## IV. The Shipyard Ignores that the Court's Order Denied the Shipyard's Summary Judgment Motion Outright

Finally, the Shipyard's argument ignores the nature of the Court's Order. At the conclusion of its opinion and order, this Court entered the following order: "defendant's cross-motion for summary judgment is likewise DENIED." In the preceding section, it explained, "genuine issues of material fact exist concerning whether the Grievance Decision embodies an accord and satisfaction barring plaintiffs' back pay claims." Thus, the Court wholly denied the Shipyard's summary judgment motion. It did not purport to partially grant the Shipyard's motion with respect to two of the four elements of the Shipyard's accord-and-satisfaction defense.

[3] *Jaynes v. United States,* 68 Fed. Cl. 747, 757 (2005).

## V. CONCLUSION

For all of these reasons, the Court should deny the Shipyard's motion. Its argument on the merits are inappropriate and this juncture and flawed in any event. And it fails to properly construe either plaintiffs' position on summary judgment or this Court's resolution of the summary judgments before it a year ago.

DATED this 25th day of October, 2006.

Respectfully Submitted,

s/Donald B. Scaramastra
Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify on October 25, 2006, a copy of the foregoing "Plaintiffs' Memorandum in Opposition to Defendants' Motion in Limine" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs