**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WALTER JAYNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-856C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO OBJECTIONS TO CERTAIN OF PLAINTIFFS' TRIAL EXHIBITS SUBMITTED ON THE ISSUE OF ACCORD AND SATISFACTION**

Pursuant to this Court's order, dated September 21, 2006, the United States respectfully submits its reply to plaintiffs' response to objections to certain of plaintiffs' proposed trial exhibits submitted on the issue of accord and satisfaction.

**I. PLAINTIFFS HAVE FAILED TO RESOLVE DEFENDANT'S OBJECTIONS TO SUMMARY EXHIBITS (PX-024, PX-025, PX-026, PX-027)**

The Government cannot at this time withdraw its objections to plaintiffs summary exhibits. After reviewing plaintiffs' arguments, it appears that plaintiffs insist upon presenting the summaries with inaccuracies and questionable calculations to the Court. Because a summary exhibit comes into evidence, unlike a demonstrative exhibit, it is essential that summaries include only the information in the underlying documents, and must be accurate. See Bannum, Inc. v. United States, 59 Fed. Cl. 241, 245 (2003); see also Bath Iron Works Corp. v. United States, 34 Fed. Cl. 218, 233 (1995) ("the proposed summary (or chart or calculation) must accurately summarize (or reflect) the underlying document(s) and only the underlying

documents") (emphasis in original) (citing Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1468-69 (10th Cir. 1994).

At the outset, the plaintiffs' response to the Government's relevance objection incorrectly describes two Government arguments that their summaries reportedly act to rebut. First, the Government has not asserted that it was generous in adjusting the back pay numerical assignment over time (and acknowledges that the supervisors reduced several base numbers where they seemed inconsistent from the amount of high work that such individual shipwright performed), rather, it has asserted that it was generous overall, in the formulation of future high pay and overall determination of the initial numbers in back pay assessment. As Mr. Winkler testified at his 30(b)(6) deposition the Shipyard was

> erring far on the extreme when we looked at the number of hours in a high pay situation for every employee. We also didn't go in and get real nitpicky with the training they were in; the subsequent times they could have been TDY or any other limiting factors. We limited it -- me and the union both communicated that this was erring very generously on the amount of hours that we felt they were in a high pay situation so that we could get this behind us and settle the grievance.

Winkler 30(b)(6) Depo. 139:12-139:21. Further, simply because the Shipyard and the union reduced a shipwright's back high pay entitlement to a number does not mean the payment of high pay was simply a mechanical process. Next, the Government has not contended that the sum of the entire negotiation process can be encapsulated in the documents. Indeed, as the Government noted in its objection, the figures entered into exhibit JX-024 are actually not the "first initial crack," but actually a set of numbers that were derived "…significantly later, because the first

initial thing didn't work the way we were anticipating." Winkler 30(b)(6) Depo. 76:24-77:16, 79:5-79:25

Nevertheless, the standard for relevance contained in the Federal Rules of Evidence is "a liberal one." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 587 (1993). See FED. R. EVID. 401. ("relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Accordingly, while the Government does not agree that plaintiffs' arguments rebut any actual Government arguments, the information contained therein is, at least in some respects, relevant to a portion of the negotiation process and consideration.

Several concerns, however, remain. As noted in our initial objections, at least two of the exhibits do not summarize a "voluminous" amount of documents (PX-024 and PX-027). Specifically, plaintiffs argue that PX-024 (which purportedly summarizes 6 documents (JX-039, JX-040, JX-041, JX-042, JX-043, and JX-044)) summarizes a "voluminous" number of documents because the 6 documents that it summarizes are, in themselves, summaries. Accordingly, plaintiffs argue that the documents summarized in their exhibit are not the underlying documents that the Court should consider for the question of volume, but must look beyond the documents contained in the plaintiffs' summary, to other data not contained in the summary. Plaintiffs offer no legal authority for this proposition, and indeed the argument that the court must look to documents underlying the documents summarized conflicts with the notion that a summary should be offered to summarize "only the underlying documents." Bath Iron Works Corp., 34 Fed. Cl. at 233.

Plaintiffs have responded to some of the Government's concern's regarding the accuracy of the summaries and the calculations and characterizations concerns by correcting the deficiencies. Nevertheless, several difficulties remain. While it appears that the entry for "James Groat is a cut off "25," plaintiffs still maintain that it is a "21." Plaintiffs insist that it is proper to characterize column B of PX-024 as "First known calculation," even though it is not the first known calculation, but merely the first usable calculation on plaintiffs' summary. Plaintiffs also insist on providing a calculation of the mean, despite the misleading nature of their entry, and in interpreting several illegible entries.

Plaintiffs justify their failure to make additional changes on a number of grounds. They argue that they are not responsible for the shipyards illegible entries and that they do not have to adopt the Government's assumptions. But this misses the point. Regardless of who is responsible, a summary must be accurate, and not subjective. If plaintiffs offer up an interpretation of an entry with questionable legibility or of data, they are no longer offering up an admissible summary.

Plaintiffs also assert that the summaries are acceptable, in part, because the Government "failed" to maintain proper records. They cite to 5 C.F.R. §551.402 for this proposition. That section provides that "[a]n Agency shall keep complete and accurate records of all hours worked by its employees." Id. Plaintiffs' argument, however, is disingenuous. Both sides fully appreciate that a back and forth went on with respect to the number of hours for high pay that would be paid to the plaintiffs. Both sides also understand that notes were made on pieces of paper (the underlying exhibits) regarding the number of hours that would be credited to the employees. Those documents, however, are not the kind of records envisioned by the Code of

Federal Regulations cite. Rather, the proper records would be the time cards that were completed, sign in and sign out sheets, leave slips, and similar entries.

Once the final numbers were determined, the employees' time cards were properly annotated and payment was made. As Dr. Maher noted in her second declaration accompanying the Government's cross motion for summary judgment, she reviewed the pay records maintained by the Defense Finance and Accounting Service ("DFAS"). DFAS is the Government Agency that receives time cards, etc., calculates the amount owed to an employee and pays the employee. Second Maher Decl. ¶3. Her review stated that the pay records showed that each employee's pay adjustment corresponded to the number of hours finally agreed to by the parties. Id. at ¶5-6. Thus, the agency did maintain proper records that allowed the plaintiffs to receive high pay.

In summary, the Government still has a number of concerns regarding the plaintiffs' summaries. In the event that the Court determines that these summaries may be potentially admissible into evidence, the Court should defer from ruling upon the admissibility of these exhibits until the Government has had an opportunity to cross-examine Ms. Emigh at trial and allow the Government to contest any individual entries, calculations, or characterizations at trial.

## II. THE GOVERNMENT MERELY SEEKS TO LIMIT THE USE OF THE BARRY JOE AIKEN IMPEACHMENT MATERIAL (PX-018, PX-019, PX-020, PX-021, PX-022, PX-023)

Plaintiffs have misread the Government's actual objection to the use of these documents. As we expressly stated in our objections, impeachment materials are not inadmissable per se, but are subject to certain specified limitations pursuant to the Federal Rules of Evidence that determine when and how such materials may be used. The Government does not seek to exclude these documents in their entirety from evidence. Because the Court, however, has ordered that a

document is admissible "for any purpose," the Government has objected to the use of these documents for anything other than impeachment purposes.

After a summary of plaintiffs' views of Mr. Aiken's purported character flaws, plaintiffs seem to acknowledge that they only intend to use these documents for impeachment purposes, noting that:

> All that said, it may be unnecessary to use any of these exhibits at all. Indeed, plaintiffs have not decided whether they will use them; that decision must await hearing how the witnesses testify at trial.

Because the parties appear to be in agreement as to the proper use of these documents, the Government respectfully requests that the Court sustain the Government's objection to the use of these materials .

## III. THE GOVERNMENT'S ADDITIONAL OBJECTIONS REMAIN WITH REGARD TO PX-004

Despite plaintiffs' argument to the contrary, the Government has not raised any authentication issues with regard to documents PX-004 or PX-009 (March 2, 2000 letter from Steve Seaton, an attorney for the Department of the Navy at Puget Sound Naval Shipyard, to Bryon Holcomb, the original counsel for the plaintiffs). No where in our objections do we state an objection to authenticity of these documents, cite to the Federal Rule of Evidence 901, or any case law concerning authentication issues. Plaintiffs properly regard this silence as acknowledgment that the government concedes that PX-009 is authentic, but have incorrectly determined that the Government is raising an authentication issue with regard to PX-004.[1]

[1] Plaintiffs might have been referring not to an authentication concern, but to the requirements of the business records exception to the hearsay rule when stating that the Government's purported objection has forced them to subpoena the Government's records custodian. FRE 803(6) requires that a sponsoring witness, who may be either the custodian of the records or another qualified witness, testify: (1) that the records in question were made

Accordingly, we acknowledge herein that the Government has raised and has no intention of raising any authentication issues with regard to PX-004.

While the Government disagrees with plaintiffs' analysis of the hearsay exceptions regarding these documents, if the plaintiff does not intend to offer these exhibits for hearsay purposes, the Government would have no objection.

Nevertheless, and contrary to plaintiffs' assertion, they fail to demonstrate that PX-004, an unrelated grievance, is relevant. This settlement is for a separate shop (Code 305) and involved a different, higher level management official (Al Burton). Simply because they may be able to demonstrate that someone else in the Puget Sound Naval Shipyard could draft a detailed settlement agreement does not mean that this is evidence relevant to their argument that the management in Shop 64, and Mary Jane Tallman in particular, could do so. The particular inquiry in this case is whether or not Mary Jane Tallman and her management team and Joe Aiken entered into a settlement agreement. Indeed, the Government did not objected upon the grounds of relevance to the introduction of another (albeit, later) settlement agreement, which involved Shop 64, for the reason that plaintiffs could arguably meet the liberal relevance standards with regard to that document. This settlement agreement, however, is far enough removed from Shop 64 or the parties to the settlement to require its exclusion from evidence upon the grounds of relevance.

---

contemporaneously with the recorded events; (2) that the records were made by, or from information transmitted by, someone with personal knowledge of the events; (3) that the records were kept in the course of a regularly conducted business activity; and (4) that it was the customary practice of that business activity to prepare such records. Conoco Inc. v. Department of Energy, 99 F.3d 387, 392 (Fed. Cir. 1996); see also Travelers Ins. Co. v. United States, 46 Fed. Cl. 458, 461 (2000). The only problem reading of plaintiffs' objection is that the plaintiffs have only asserted that the business record's exception applies to PX-006, not PX-004.

## CONCLUSION

For these reasons, we respectfully request that the Court grant each of the above mentioned objections.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th floor
Washington, D.C. 20530
Tele: (202) 616-2377
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL .
JOHN D. NOEL
Senior Trial Attorney
Department of the Navy
720 Kennon Street, S.E., Room 233
Washington, D.C. 20374-5013

STEVEN L. SEATON
Puget Sound Naval Shipyard
1440 Farragut Avenue
Bremerton, Washington 98314-5001

October 27, 2006

**CERTIFICATE OF FILING**

I hereby certify that on this 27th day of October, 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO OBJECTIONS TO CERTAIN OF PLAINTIFFS' TRIAL EXHIBITS SUBMITTED ON THE ISSUE OF ACCORD AND SATISFACTION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager

Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice