ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
OCT 27 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WALTER JAYNES; PAUL S. SCOTT; DAVID S. PETERSON; DONALD BAKER; GORDON D. HANBERG; et al., Plaintiffs, vs. THE UNITED STATES, Defendant. | No. 04-856C<br>Judge Miller |

**DECLARATION OF KRISTI EMIGH (AS AMENDED)**

I, Kristi Emigh, declare as follows:

1. I am over eighteen years old and competent to testify to the matters stated herein. I make this declaration based upon personal knowledge.

## I. EXPERIENCE AND BACKGROUND REGARDING THIS CASE

2. I am a litigation paralegal at Garvey Schubert Barer in Seattle. I have been a paralegal for eleven years.

3. Since 2004, when Garvey Schubert Barer was retained as counsel for plaintiffs in the above-captioned matter, I have worked on this case under the supervision of Donald B. Scaramastra and Jennifer Krebs of this office. One of my responsibilities is to handle the production and organization of all documents produced in this matter, including trial and deposition exhibits. Consequently, I am familiar with the documents produced in this matter, including deposition testimony and exhibits and proposed trial exhibits.

4. Beginning in June 2006, I was asked by Mr. Scaramastra to review and summarize documents from the Shipyard relating to its calculations of high pay. The purpose of the summaries was to present this voluminous information to the Court in a meaningful way which demonstrates the various steps the Shipyard took in computing individual high pay awards.

5. The summaries that I prepared, Trial Exhibits PX-024-027, are based on documents produced by the shipyard. They summarize approximately 250 pages of documents. I personally reviewed all the documents on which the summaries are based, and which I refer to in this Declaration. The Shipyard has copies of all of these documents.

6. I reviewed the following documents: JX-039-137 and PX-014-015. According to the Shipyard's 30(b)(6)deposition testimony provided by Mr. Winkler, these documents are various iterations of the Shipyard's effort to compute individual high pay awards. (*See, e.g.*, pp. 76-77, 87-91, 112-115) Mr. Winkler testified that these documents were prepared in the following temporal order: JX-039, JX-040, JX-041, JX-042, JX-043 and JX-044. *See* Winkler's 30(b) (6) testimony at pp. 76, 87-88, 101-02. In other words, the first document prepared was exhibit JX-039. *See* Winkler's 30(b)(6) testimony at p. 76, and the last document prepared was exhibit JX-044. *See* Winkler's 30(b)(6) testimony at p. 102.

7. After reviewing this information, I summarized the data into four spreadsheets reflecting steps in the Shipyard's process of computing individual high

pay awards. The following sections set forth how I went about preparing each of these exhibits.

## II. TRIAL EXHIBIT PX-024

8. This spreadsheet summarizes how the Shipyard calculated each shipwright's rating, the average number of hours he or she spent doing high work in an eight-hour day.

9. I started with Mr. Winkler's 30(b)(6) testimony. Mr. Winkler testified that he and Mr. Aiken initially gave each shipwright a rating of between 1 and 5. *See* pp.77-79. Mr. Winkler explained that a 1 meant that the shipwright did a great deal of high work relative to other shipwright whereas a 5 meant that the shipwright did relatively little high work. *See* pp. 77-79.

10. Mr. Winkler testified that he then abandoned this initial rating system in favor of a second system. *See* p. 79. The second system rated employees from 0 through 5, which represented the average number of hours that an employee spent performing high work (using the definition set forth in the January 18, 2000 grievance decision) during an 8-hour day. Thus, a rating of 5 was now the highest rating, representing an average of 5 hours of high work per 8-hour day.

11. I entered the name of each shipwright in Column A of PX-024. I then entered the ratings from JX-039 through JX-044 for each shipwright. JX-039 was the first of the ratings, so I entered it into Column B (titled "First Known Calculation"). JX-040 was the second calculation and I entered the ratings on it into Column C. I continued this process until there was a column (Columns B-G)

corresponding with each of the six exhibits (JX-039-044) that contained the Shipyard's hourly ratings under Mr. Winkler's second rating system.

12. For example, David Hurm's rating on JX-039 shows that Mr. Hurm initially received a rating of 4, so I inserted a 4 in his row in the "First Known Calculation" (Column B).

I then turned to JX-040 and located Mr. Hurm's rating on this exhibit. Once again, Mr. Hurm was rated a 4, so I entered a 4 in Column C.

I then turned to JX-041 and located Mr. Hurm's rating on this exhibit. Once again, Mr. Hurm was rated a 4, so I entered a 4 in Column D.

I then turned to JX-042 and located Mr. Hurm's rating on this exhibit. Once again, Mr. Hurm was rated a 4, so I entered a 4 in Column E.

I then turned to JX-043 and located Mr. Hurm's rating on this exhibit. Once again, Mr. Hurm was rated a 4, so I entered a 4 in Column F.

I then turned to JX-044 and located Mr. Hurm's rating on this exhibit. Once again, Mr. Hurm was rated a 4, so I entered a 4 in Column G.

13. Sometimes an entry was illegible, ambiguous, unclear, or non-existent. In those cases, I entered "unknown" in the Column. For example, I was unable to determine which of three possible ratings next to Randy Abbott's entry on JX-039 was the correct one, so I included all three in Column B. There was no entry for Deborah Divitis, so I entered "no hour entered" in Column B for her.

14. Having entered all of the ratings available from JX-039 through JX-044, I then created a column (Column H) containing a formula reflecting the "Net

Change between first and last known rating". The purpose of this column was to reflect the extent to which any shipwright's rating had changed during the Shipyard's rating process. I entered a simple arithmetic formula subtracting the last known calculation from the first known calculation to determine the difference or net change. If the Column B ratings were unknown, I used the number in Column C instead. I then highlighted in blue those cells in the "Net change" column that showed an actual change in rating from the shipyard's first calculation to its last.

15. Next, I used formulas to calculate the mean and median rating for each of the six calculations. I used the AVERAGE and MEDIAN functions available in Excel to calculate these figures for each of the six columns containing ratings. If an entry for a given employee was unclear, it was excluded (by Excel) from the operation of the AVERAGE and MEDIAN functions. I inserted the mean and median ratings at the bottom of the columns. For example, the mean and median for the Last Known Calculation column (Column A) are 3.3 and 3.0 respectively.

16. The final step I took in preparing this exhibit was to count the employees whose ratings had changed upward, changed downward, or stayed the same. I inserted those figures at the bottom of PX-024 They were as follows: Two shipwrights' ratings went up by .5 hours, 99 shipwrights' ratings did not change, 21 shipwrights' ratings went down by .5 hours (expressed as -.5), seven shipwrights' ratings went down by 1 hour (expressed as -1), and five shipwrights had unknown or unclear changes.

## III. TRIAL EXHIBIT PX-025

17. The second spreadsheet summarizes the data showing how the Shipyard calculated the number of hours of unpaid high work each shipwright performed during the period covered by the grievance decision: March 23, 1999 through January 18, 2000. I will refer to this period of time as the "Claim Period."

18. Mr. Winkler's 30(b)(6) testimony described the general approach the Shipyard took. First, the Shipyard reviewed its records to determine the number of 8-hour days each shipwright worked during the Claim Period. *See* pp. 89-90. Second, the Shipyard netted leave hours against overtime hours during the Claim Period and divided by 8 to convert the units for resulting figure from hours to days. *See* pp. 114-15; 136-37. Third, the Shipyard added (or subtracted) this figure from the number of 8-hour days worked. *See* pp. 114-15; 137-38. Fourth, the Shipyard multiplied the figure representing the number of 8-hour days each shipwright worked by the rating representing the number of hours of high work performed each 8-hour day. *See* pp. 137-38. When I could not recreate the Shipyard's calculation and it appeared to be a math error, I noted such in the comments function attached to each cell. I then printed the comments on last page of the exhibit.

19. To begin PX-025, I inserted the names of all of shipwrights who received high pay awards in Column A[1]. Next, I inserted the number of working days in the Claim Period for each shipwright into Column B. I describe this process in the next two sections.

### A. Estimating the Number of Working Days in the Claim Period (March 23,

[1] Column A in each of these summaries (PX-024 through PX-027) are identical.

**1999 Through January 18, 2000) for "Full-Time" Shipwrights**

20. The first task was to determine how many working days were in the Claim Period. Most shipwrights worked for Shop 64 during the entire Claim Period.[2]

21. The Shipyard produced PX-015, which is a planning schedule for 1999. The schedule shows the Shipyard's holidays and the number of work days in a month. I counted the number of Shipyard work days from March 23, 1999 through the end of 1999 and came up with 197 days.

22. I then needed to count the number of working days between January 1 and January 18, 2000. To do so, I checked the website www.timeanddate.com/calendar and discovered that New Year's Day and Martin Luther King Jr. Day were federal holidays in January 2000. Excluding them, there were 10 working days between January 1 and January 18, 2000.

23. I then added the number of working days between March 23, 1999 (197) and the number of working days between January 1 and January 18, 2000 (10) to calculate the total number of days in the Claim Period: 207.

24. However, someone had handwritten "207-5 = 202 days" on PX-015 (the planning schedule) as it was produced to us. This appears to be the number of working days that the Shipyard calculated as being between March 23, 1999 and January 18, 2000. As it turned out, using the Shipyard's 202 days to represent the

[2] It appeared there was low turnover of the shipwrights. *See* Declaration of Mark Winkler, dated August 6, 2004, at ¶ 2.

working days in the Claim Period yielded results that were consistent with most of the Shipyard's calculations.

### B. Estimating the Number of Working Days in the Claim Period for "Part-Time" Shipwrights

25. The Shipyard documents indicate that certain employees were not employed as shipwrights in Shop 64 during the entire Claim Period. For example, Bradley Boals apparently only worked 97 of the 202 days in the Claim Period. Kathleen Boink apparently only worked 47 days of the Claim Period. I entered this information in Column B. For some shipwrights, such as Rick Aflague, I could not determine the basis for the Shipyard's calculation, so I wrote "unknown" in Column B.

### C. Locating and Entering the Adjustment for Each Employee's Overtime and Leave Hours

26. The next step was to identify the adjustment the Shipyard made to account for each employee's overtime and leave hours during the Claim Period (Column C). The shipyard produced printed sheets showing leave and overtime hours for each shipwright during the Claim Period (JX-045-137). The sheets often had handwritten notes, indicating that the leave and overtime hours were calculated and then added together for each shipwright. If there were more leave than overtime hours, the net result was a negative number. If there were more overtime than leave hours, the net result was a positive number. The number of hours were divided by eight to convert the net result to days, which represents the adjustment entered into Column C of PX-025. Some examples follow.

27. For Paul Scott, handwritten notations on document JX-131 indicated that he had more overtime than leave hours, resulting in a net gain of 23 days. Therefore, I entered 23 into Column C.

For David Harper, JX-093 indicated that he was a part-time shipwright during the Claim Period, with only 72 working days (instead of the full Claim Period of 202 days). The document also showed that he had a 13 day adjustment, once his leave and overtime hours were netted. So I entered 72 into Column B and 13 into Column C.

For Randy Abbott, the shipyard produced two documents, JX-051 and JX-052, indicating that Mr. Abbott had 97 days of leave for which there was no compensating overtime. So I entered -97 into Column C.

For Rick Aflague, the shipyard produced three documents, JX-049, JX-052 and JX-053, which showed the shipyard's calculation that he had more leave than overtime hours during the Claim Period, resulting in a net loss of 4 days. I entered -4 into Column C.

28. Occasionally, I had to take another step to arrive at the Shipyard's calculation. For example, document JX-069 indicated Randal Cook had 76 hours of leave minus overtime. I divided -76 hours by 8 to get -9 days which fit the Shipyard's calculation.

29. We were unable to determine the Shipyard's adjustments for the following employees: Howard Allison, David Christianson, John Hawkins, Kelly Jo Minaker (nee Watson), Mark Washburn, and George Wood.

30. I then entered the source (by bates number) of each shipwright's adjustments in Column D of the spreadsheet. Where I could not find any documentation or the documentation was unclear, illegible or ambiguous, I left Columns C and D blank or wrote "unknown".

**D. Double-Checking the Shipyard's Adjustment for Each Employee's Overtime and Leave Hours**

31. I then added Columns B and C to get the days in the Claim Period for each shipwright adjusted for leave and overtime. I entered the sum of Columns B and C into Column E. Thus, Column E replicates the Shipyard's calculation of how many 8-hour days in the Claim Period each shipwright actually worked. Then I double-checked this calculation by entering, in Column F, what the Shipyard's calculation actually was as shown on JX-042.

JX-042 appears to contain the shipyard's adjusted calculation of 8-hour days in the Claim Period for each shipwright. This calculation appears in the second column from the right on JX-042. For example, JX-042 listed David Forbes as having worked the equivalent of 205 eight-hour days during the Claim Period. I therefore entered 205 in Column F of PX-025. Likewise, JX-042 listed David Christenson as having worked the equivalent of 152 eight-hour days during the Claim Period. So I entered 152 in Mr. Christenson's row in Column F of PX-025. I performed the same process for each shipwright.

32. In almost every case, our attempt to replicate the Shipyard's calculation (Column E) matched the Shipyard's actual calculation (Column F).

33. In a few cases, it appears that the discrepancy between Column E and Column F was due to a simple math error by the Shipyard. For example, Allan Cooper's comparison between Columns E and F is off by 10, which appears to be just a math or transcription error.

34. In other cases, there is a more significant discrepancy between Columns E and F. For these instances, we suspect the shipwright worked fewer than 202 days in the Claim Period. For example, JX-052 does not have a figure for Howard Allison. Since there was no corroboration for the 202 days, we entered "unknown" in Column B for these employees. This was the case for five out of the 135 shipwrights.

35. For 98 out of 135 shipwrights, the number in Column E exactly matched the Shipyard's adjusted calculation as shown in Column F.

**E. Calculating the Number of Hours of High Work During the Claim Period**

36. We then needed to summarize the Shipyard's calculation of high work hours each shipwright worked during the Claim Period, which was found by multiplying each shipwright's rating by the number of adjusted days in the Claim Period. To do this, I took the rating from Column G of PX-024 and copied it into Column G of PX-025. I then multiplied this rating by the number in Column F of PX-025. For example, Randy Abbott had 3 hours of high work per day (from Column G of PX-025) and 105 adjusted days in the Claim Period (from Column F of PX-025). Multiplied together, this gives us 315 hours of high work (Column H of PX-025).

**F. Subtracting the Number of Hours of High Work for which High Pay Was**

**Already Paid**

37. Mr. Winkler testified that having estimated the number of hours of high work performed during the Claim Period, the Shipyard then deducted the number of hours for which the shipwright had already received high pay. *See* p. 118. This deduction is reflected in JX-043, where it is handwritten in the column second from the right edge of the document. For example, Randy Abbott has "30" written in this column in JX-043.

38. I inserted the deductions from JX-043 into Column I of PX-025. In Mr. Abbott's case, I inserted a 30 in Column I of the spreadsheet. I did the same for each shipwright.

39. Having done that, I created another column, Column J, which contained a mathematical formula that subtracted Column I (hours of high pay already paid) from Column H (estimate of the total number of hours of high work performed). This yielded our prediction, based on Mr. Winkler's testimony and the exhibits we had reviewed, of the Shipyard's calculation of the number of hours of high work each shipwright did without receiving high pay.

## G. Comparing Our Predicted Results With the Shipyard's Actual Calculations

In Column K, I entered the Shipyard's actual calculation of the number of unpaid hours of high work as it appears on JX-044 (the typewritten number under the heading "Total Hours" on JX-044).

In Randy Abbott's case, JX-044 listed him as having performed 285 hours of high work for which he didn't receive high pay. This corresponded precisely with our calculations (Column J of PX-025). Mr. Abbott was deemed to have worked 105

eight-hour days in the Claim Period (202 total days less 97 net days of leave), as reflected in Columns B through E. He was given a rating of 3 hours of high work per 8-hour day, as reflected in Column G. So we multiplied 105 by 3 to get 315 hours of high work, as reflected in Column H. Then we subtracted the 30 hours of high work for which Mr. Abbott already received high pay, which is reflected in Column I, to yield 285 hours of unpaid high work in Column J.

## IV. TRIAL EXHIBIT PX-026

40. Up to this point, our summaries confirmed the shipyard's calculations. However, one of the Shipyard's documents, JX-046, showed an upward adjustment that at first we could not understand. For example, in Paul Scott's case, JX-043 shows a calculation of 743 hours of unpaid high work, as we would expect based on the documents and 30(b)(6) testimony. But JX-046 shows 831 hours for Paul Scott. Fortunately, JX-044 shows the calculations that the Shipyard used to make this upward adjustment. Trial Exhibit PX-026 summarizes these calculations.

41. JX-044 contains handwritten columns of numbers. In Paul Scott's case, one of these columns contains the number 22, and another contains the number 88. Another column shows each shipwright's hourly rating. Mr. Scott's rating was a 4. It appeared that someone had multiplied the first column (22) by the hourly rating (4) to yield the figures in the third column (88). JX-045 and JX 046, which were prepared after JX-044, included total high-work calculations adjusted upward to reflect the sum of the handwritten figures on JX-044. In Mr. Scott's case, the 88 hours handwritten on JX-44 were added to the earlier 743-hour high-work

estimate to yield a revised 831-hour calculation. Mr. Winkler was asked about the adjustment in his 30(b)(6) deposition, but he was unable to satisfactorily explain it. *See* pp. 120, 136.

42. Then we hit upon a possible answer. Until now, the Shipyard's calculation failed to take into account that overtime high work was entitled to payment of high pay at time-and-a-half. But the Shipyard's calculation, by netting overtime hours against leave hours, had treated overtime hours as though they were equivalent to straight-time hours.

43. I created PX-026 to summarize the Shipyard's overtime hour calculations. I began, as always, by entering each affected employee's name in Column A. Next, I entered the Shipyard's calculation of the number of overtime hours each employee worked in Column B. Column F contains the source documents for these figures, all of which come from JX-47-137. For example, JX-051 showed the Shipyard's calculation that Randy Abbott performed 100 hours of overtime during the Claim Period. I entered 100 in Column B of PX-026.

44. I then divided the number of overtime hours by two and entered this into Column C. Next, I entered the Shipyard's final overtime calculation, as found on JX044, in Column D. Generally speaking, this formula of dividing the overtime hours by two matched the calculations the Shipyard did as reflected in Column D.

45. In Mr. Scott's case, JX-131 indicated that he performed 345 hours of overtime during the Claim Period. Three hundred forty-five divided by two yields 172.5. JX-044 shows someone rounded this up to 173.

46. Because overtime is calculated as "time-and-a-half," the Shipyard made the adjustment by adding 50% of the overtime hours into the equation and paying those hours at the straight-time rate. Adding 50% of the overtime hours to the initial calculation reflected the premium pay owed for such overtime high work.

**V. TRIAL EXHIBIT PX-027**

47. This Exhibit was created to pull the previous three exhibits together and confirm the shipyard's calculations. I created the columns as follows: Column A contains the names of the shipwrights. Column B contains the Shipyard's calculation of the number of total unpaid hours of high work during the Claim Period, as summarized in Column K of PX-025. Column C contains a figure corresponding to one-half of the overtime hours calculated by the Shipyard. This figure comes from Column D of PX-026. In Mr. Scott's case, as previously mentioned, this figure was 173.

The numbers in Column E[3] I entered from the last handwritten column on JX-044. The purpose of this figure is to convert from hours to 8-hour days. In Mr. Scott's case, when 173 is divided by 8; the result is 22, the same number that was handwritten in Mr. Scott's row on JX-044. Column F shows each shipwright's rating of estimated high work per day as manually transcribed from the first handwritten column of JX-044.

The numbers in Column H[4] I entered from the second handwritten column in JX-044. Column I shows the adjusted total hours calculations the shipyard arrived

[3] PX-027 does not contain a Column D.
[4] PX-027 does not contain a Column G.

at and apparently used to calculate the shipwrights' high pay awards, I entered from JX-046.

The numbers in Column L[5] I entered from PX-014 and show the dollar amount for the adjusted hours in Column I multiplied by $4.77/hour pay rate.

Thus, this chart, which summarizes the others, shows that the calculations suggested by Mr. Winkler or postulated by us are supported for the vast majority of the shipwrights.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 26th day of October, 2006 in Seattle, Washington.

Kristi Emigh

KRISTI EMIGH

823464 [12034-00100]

[5] PX-027 does not contain a Column J.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2006, a copy of the foregoing "DECLARATION OF KRISTI EMIGH (As Amended)" was placed in my custody for filing and service as set forth below:

**Original to**:
Clerk
United States Court of Federal Claims
Howard T. Markey National Courts Bldg.
717 Madison Place N.W.
Washington, D.C. 20005

**Copy to**:
The Honorable George W. Miller
United States Court of Federal Claims
Howard T. Markey National Courts Bldg.
717 Madison Place N.W.
Washington, D.C. 20005

**Copy to**:
Steven M. Mager
US Department of Justice, Civil Division
Commercial Litigation BR
1100 L Street, NW 12th Floor
Washington, DC 20530

Garvey Schubert Barer
JEFFREY L. SQUIRES

Walter Jaynes, et al. v. United States

Computation of High Pay Award: Part 4
Adjustment of High Hours to include Premium Pay for Overtime High Work
TRIAL EXHIBIT PX-027

| | A | B | C | E | F | H | I | L |
|---|---|---|---|---|---|---|---|---|
| 2 | NAME | Original Calculation of Total Hours from JX-044), see also PX-025 | Half of Shipyard's Overtime calculations from JX-044) see alsoPX-026 [Col. D], as Hours | Half of Overtime ) as Days JX044 | Estimated Hours Per Day of High Work, from JX-044, *see* PX-024 | Hours Per Day High Work multiplied by Number of Days Worth of Overtime | Adjusted Total Hours Calculations (JX-045, 046) | Principal Amount Paid (Total Hours x $4.77 per hour). From PX-014. *See* also PX-025 |
| 3 | ABBOTT, RANDOLF | 285 | 50 | illegible | 3 | 18 | 303 | $ 1,445.31 |
| 4 | AFLAQUE, RICK | 151 | 23 | 4 | 2 | 8 | 159 | $ 758.43 |
| 5 | AIKEN, BARRY | 674 | 257 | 32 | 4 | 128 | 802 | $ 3,825.54 |
| 6 | ALLEN, RUSSELL | 935.5 | 233 | 1 | 4.5 | 130.5 | 1066 | $ 5,084.82 |
| 7 | ALLISON, HOWARD | 25 | 0 | 0 | 0.5 | 0 | 25 | $ 119.25 |
| 8 | AMABLE, IRENEO | 517 | 103 | 13 | 2.5 | 32.5 | 549.5 | $ 2,621.12 |
| 9 | BAKER, DONALD | 597.5 | 62 | 8 | 4.5 | 36 | 633.5 | $ 3,021.80 |
| 10 | BARR, JAMES | 75 | | 0 | 3 | 0 | 75 | $ 357.75 |
| 11 | BARTH, JOHN | 767 | 132 | illegible | 4.5 | 76.5 | 843.5 | $ 4,023.50 |
| 12 | BEISTLINE, CHARLES | 144 | 39 | illegible | 1.5 | 7.5 | 151.5 | $ 722.66 |
| 13 | BERGLAND, THERON | 677 | 111 | 14 | 4 | 56 | 733 | $ 3,496.41 |
| 14 | BESSLER, MICHAEL | 410 | 107 | 13 | 2.5 | 32.5 | 442.5 | $ 2,110.73 |
| 15 | BLANKENSHIP, ROYCE | 220 | 187 | 23 | 3 | 69 | 289 | $ 1,378.53 |
| 16 | BOALS, BRADLEY | 198 | 60 | 8 | 2 | 16 | 214 | $ 1,020.78 |
| 17 | BOINK, KATHLEEN | 28 | 0 | 0 | 1 | 0 | 28 | $ 133.56 |
| 18 | BOYLE, DAVID | 201 | 38 | 5 | 3 | 15 | 216 | $ 1,030.32 |
| 19 | BRILL, NICK | 231 | 55 | 7 | 3 | 21 | 252 | $ 1,202.04 |
| 20 | CAIN, BOBBY | 673 | 36 | 4 | 4 | 16 | 689 | $ 3,286.53 |
| 21 | CAMPBELL, JEFF | 394 | 29 | 4 | 4.5 | 18 | 412 | $ 1,965.24 |
| 22 | CARNAGHI, HENRY | 558 | 65 | 8 | 3 | 24 | 582 | $ 2,776.14 |
| 23 | CARNES, HENRY | 21 | | 0 | 0.5 | 0 | 21 | $ 100.17 |
| 24 | CARTER, WILLIAM | 316.5 | 86 | 11 | 4 | 44 | 360.5 | $ 1,719.59 |
| 25 | CHRISTIANSEN, DAVID | 597 | 208 | 26 | 4 | 104 | 701 | $ 3,343.77 |
| 26 | CLIBER, WALTER | 332 | 250 | 31 | 3 | 93 | 425 | $ 2,027.25 |
| 27 | COCKERILL, KEVIN | 567 | 59 | 7 | 3 | 21 | 588 | $ 2,804.76 |
| 28 | COCKRUM, JERRY | 700 | 194 | 2 | 4.5 | 108 | 808 | $ 3,854.16 |
| 29 | COLLINS, DAVID | 793 | 375 | 4 | 3 | 141 | 934 | $ 4,455.18 |
| 30 | COMPTON, BEN | 302 | 74 | 9 | 4 | 36 | 338 | $ 1,612.26 |
| 31 | CONMAY, THOMAS | 489 | 101 | 13 | 3 | 39 | 528 | $ 2,518.56 |
| 32 | COOK, RANDAL | 642.5 | 40 | 5 | 3.5 | 17.5 | 660 | $ 3,148.20 |
| 33 | COOPER, ALLEN | 260 | 82 | 10 | 4 | 40 | 300 | $ 1,431.00 |
| 34 | COREY, GREGORY | 795 | 192 | 23 | 4 | 92 | 887 | $ 4,230.99 |
| 35 | COZAD, MIKE | 236.5 | 56 | 7 | 3 | 21 | 257.5 | $ 1,228.28 |

Walter Jaynes, et al. v. United States

Computation of High Pay Award: Part 4
Adjustment of High Hours to include Premium Pay for Overtime High Work
TRIAL EXHIBIT PX-027

| | A | B | C | E | F | H | I | L | |
|---|---|---|---|---|---|---|---|---|---|
| 2 | NAME | Original Calculation of Total Hours from JX-044), see also PX-025 | Half of Shipyard's Overtime calculations from JX-044) see alsoPX-026 [Col. D], as Hours | Half of Overtime ) as Days JX044 | Estimated Hours Per Day of High Work, from JX-044, *see* PX-024 | Hours Per Day High Work multiplied by Number of Days Worth of Overtime | Adjusted Total Hours Calculations (JX-045, 046) | Principal Amount Paid (Total Hours x $4.77 per hour). From PX-014. *See* also PX-025 | |
| 36 | CRUZ, LUIS | 568 | 90 | 11 | 3 | 33 | 601 | $ | 2,866.77 |
| 37 | CUSIMANO, ALFRED | 608 | 109 | illegible | 3 | 39 | 647 | $ | 3,086.19 |
| 38 | DAWSON, LONNIE | 548.5 | 122 | 15 | 3 | 45 | 593.5 | $ | 2,831.00 |
| 39 | DAY, DAVID | 673 | 123 | 15 | 4 | 60 | 733 | $ | 3,496.40 |
| 40 | DENTON, GREGORY | 356 | 55 | 7 | 3 | 21 | 377 | $ | 1,798.29 |
| 41 | DEVEN, EDWARD | 470 | 127 | 21 | 3 | 63 | 533 | $ | 2,542.41 |
| 42 | DEVLIN, SEAN | 269 | 4 | 0.5 | 4 | 2 | 271 | $ | 1,292.67 |
| 43 | DIVITIS, DEBORAH | 493 | 56 | 7 | 3 | 21 | 514 | $ | 2,451.78 |
| 44 | DOSTIE, JEFFERY | 558.5 | 69 | 9 | 3.5 | 31.5 | 590 | $ | 2,814.30 |
| 45 | EGGE, MICHAEL | 27.5 | 70 | 9 | 4 | 36 | 63.5 | $ | 302.90 |
| 46 | ERBE, DONALD | 601 | 113 | illegible | 3 | 42 | 643 | $ | 3,067.11 |
| 47 | ERICKSON, WARREN | 612 | 240 | 30 | 3 | 90 | 702 | $ | 3,348.54 |
| 48 | EZELL, JOHN | 472 | 70 | 9 | 4.5 | 40.5 | 512.5 | $ | 2,444.63 |
| 49 | FARMER, DAVID | 180 | 113 | 14 | 3 | 42 | 222 | $ | 1,058.94 |
| 50 | FARMER, MARTIN | 887 | 241 | 30 | 4 | 120 | 1007 | $ | 4,803.39 |
| 51 | FISCHER, BRIAN | 50 | 70 | 9 | 2.5 | 22.5 | 72.5 | $ | 345.83 |
| 52 | FLATAU, COREY | 372 | 71 | 9 | 4 | 36 | 408 | $ | 1,946.16 |
| 53 | FOLEY, CHARLES | 83 | 70 | 9 | 0.5 | 4.5 | 87.5 | $ | 417.38 |
| 54 | FORBES, DAVID | 805 | 150 | 18 | 4 | 72 | 877 | $ | 4,183.29 |
| 55 | FOWLER, RICHARD | 819.5 | 225 | 28 | 5 | 140 | 959.5 | $ | 4,576.82 |
| 56 | FREESE, BEREND | 688 | 82 | 10 | 4.5 | 45 | 733 | $ | 3,496.41 |
| 57 | GAL, CHRISTOPHER | 459 | 242 | 30 | 3 | 90 | 449 | $ | 2,141.73 |
| 58 | GARRIS, ISAAC | 165 | 37 | 5 | 3 | 15 | 180 | $ | 858.60 |
| 59 | GESSNER, TED | 216 | 19 | 2 | 2 | 4 | 220 | $ | 1,049.40 |
| 60 | GILBERT, SHELLI* | no entry | | no entry | ? | no entry | 244 | $ | 1,163.88 |
| 61 | GLITCH, JOSH | 262 | 21 | 3 | 3 | 9 | 271 | $ | 1,292.67 |
| 62 | GRAY, JERRY | 273.5 | 77 | 9 | 3 | 27 | 300.5 | $ | 1,433.39 |
| 63 | GREEN, FREDRICK | 524 | 75 | 9 | 3 | 27 | 551 | $ | 2,628.27 |
| 64 | GRIFFIS, GREG | 557.5 | 84 | 10 | 4.5 | 45 | 602.5 | $ | 2,873.93 |
| 65 | GROAT, JAMES | 936 | 232 | 21 | 5 | 135 | 1071 | $ | 5,108.67 |
| 66 | HANBERG, GORDON | 860 | 33 | 4 | 4 | 16 | 876 | $ | 4,178.52 |
| 67 | HARPER, DAVID | 255 | 69 | 9 | 3 | 27 | 282 | $ | 1,345.14 |

Walter Jaynes, et al. v. United States

Computation of High Pay Award: Part 4
Adjustment of High Hours to include Premium Pay for Overtime High Work
TRIAL EXHIBIT PX-027

| | A | B | C | E | F | H | I | L |
|---|---|---|---|---|---|---|---|---|
| 2 | NAME | Original Calculation of Total Hours from JX-044), see also PX-025 | Half of Shipyard's Overtime calculations from JX-044) see alsoPX-026 [Col. D], as Hours | Half of Overtime ) as Days JX044 | Estimated Hours Per Day of High Work, from JX-044, *see* PX-024 | Hours Per Day High Work multiplied by Number of Days Worth of Overtime | Adjusted Total Hours Calculations (JX-045, 046) | Principal Amount Paid (Total Hours x $4.77 per hour). From PX-014. *See* also PX-025 |
| 68 | HARPER, ROBERT | 126 | 29 | 4 | 1 | 4 | 130 | $ 620.10 |
| 69 | HAWKINS, JOHN | 62 | | 0 | 2 | 0 | 62 | $ 295.74 |
| 70 | HAYDEN, MICHAEL | 769 | 284 | 36 | 5 | 180 | 949 | $ 4,526.73 |
| 71 | HAYNES, ARTHUR | 375 | 25 | 3 | 3 | 9 | 384 | $ 1,831.68 |
| 72 | HOSKINS, BRIAN | 350 | 75 | illegible | 4 | 36 | 386 | $ 1,841.22 |
| 73 | HURM, DAVID | 782 | 217 | illegible | 4 | 108 | 890 | $ 4,245.30 |
| 74 | IMPEY, DOUGLAS | 949 | 72 | 9 | 5 | 45 | 1004 | $ 4,789.08 |
| 75 | JACOBSEN, MICHAEL | 612 | 16 | illegible | 4 | 80 | 692 | $ 3,300.84 |
| 76 | JAYNES, WALTER | 540 | 156 | 20 | 4 | 80 | 620 | $ 2,957.40 |
| 77 | JOHANNES, MICHAEL | 112 | 30 | 4 | 3 | 12 | 283 | $ 1,349.91 |
| 78 | KADLECEK, RANDY | 323 | 38 | 5 | 3 | 15 | 338 | $ 1,612.26 |
| 79 | KEMPER, TREVER | 704 | 155 | illegible | 4 | 80 | 784 | $ 3,739.68 |
| 80 | KENDIZORA, ERON | 912.5 | 120 | illegible | 5 | 45 | 957.5 | $ 4,567.28 |
| 81 | KULBACKI, TIMOTHY | 606 | 160 | illegible | 3 | 60 | 666 | $ 3,176.82 |
| 82 | LANSKEY, GARY | 797 | 204 | 26 | 3.5 | 91 | 888 | $ 4,235.76 |
| 83 | LANTRIP, BOBBY | 619 | 218 | 27 | 4 | 108 | 727 | $ 3,467.79 |
| 84 | LEAVIT, JOHN | 843.5 | 190 | 24 | 5 | 120 | 963.5 | $ 4,595.90 |
| 85 | LEIBLE, DALE | 576 | 162 | 20 | 3 | 60 | 636 | $ 3,033.72 |
| 86 | LENGOWSKI, PAUL | 987 | 160 | illegible | 5 | 100 | 1087 | $ 5,184.99 |
| 87 | LEWIS, LARRY | 663 | 82 | illegible | 3.5 | 35 | 698 | $ 3,329.46 |
| 88 | LONGCRANE, ROBERT | not listed | 8.6 | no entry | not listed | no entry | 557.5 | $ 2,659.28 |
| 89 | MAIN, TYSON | 735.5 | 61 | 8 | 4.5 | 36 | 771.5 | $ 3,680.06 |
| 90 | MARTIN, BOBBY | 460.5 | 100 | 13 | 2.5 | 32.5 | 492.5 | $ 2,349.23 |
| 91 | MARTIN, KIMBERLY | 495 | 95 | 12 | 3 | 36 | 531 | $ 2,532.87 |
| 92 | MARTIN, RICK | 474 | | 0 | 3 | 0 | 474 | $ 2,260.98 |
| 93 | MCCRARY, DAVID | 591 | 90 | 12 | 3 | 36 | 627 | $ 2,990.79 |
| 94 | MCDONALD, ROSS | 348 | 58 | 7 | 4 | 28 | 376 | $ 1,793.52 |
| 95 | MELAY, WILLIAM | 204 | 80 | 10 | 2 | 20 | 224 | $ 1,068.48 |
| 96 | MIDDENDORF, STEVEN | 712 | 66 | 8 | 4.5 | 36 | 748 | $ 3,567.96 |
| 97 | MINAKER, JAMES | 36 | 86 | 11 | 3 | 33 | 69 | $ 329.13 |
| 98 | MINAKER, KELLY JO (nee Watson) | 165 | | 0 | 3 | 0 | 165 | $ 787.05 |

Walter Jaynes, et al. v. United States

Computation of High Pay Award: Part 4
Adjustment of High Hours to include Premium Pay for Overtime High Work
TRIAL EXHIBIT PX-027

| | A | B | C | E | F | H | I | L |
|---|---|---|---|---|---|---|---|---|
| 2 | NAME | Original Calculation of Total Hours from JX-044), see also PX-025 | Half of Shipyard's Overtime calculations from JX-044) see alsoPX-026 [Col. D], as Hours | Half of Overtime ) as Days JX044 | Estimated Hours Per Day of High Work, from JX-044, *see* PX-024 | Hours Per Day High Work multiplied by Number of Days Worth of Overtime | Adjusted Total Hours Calculations (JX-045, 046) | Principal Amount Paid (Total Hours x $4.77 per hour). From PX-014. *See* also PX-025 |
| 99 | MORELAND, ROY | 650 | 140 | 18 | 4 | 72 | 722 | $ 3,443.94 |
| 100 | MORGAN, MARK | 835.5 | 113 | 14 | 4.5 | 63 | 898.5 | $ 4,285.85 |
| 101 | NAUD, KEVIN | 1036 | 370 | 46 | 4.5 | 207 | 1243 | $ 5,929.11 |
| 102 | NOERENBERG, JOSHUA | 562 | 124 | 15 | 3 | 45 | 607 | $ 2,895.39 |
| 103 | ODELL, PATRICK | 893 | 220 | 27 | 4 | 108 | 1001 | $ 4,774.77 |
| 104 | O'HAIR, CURTIS | 152.5 | 0 | 0 | 3 | 0 | 152.5 | $ 727.43 |
| 105 | PARK, DONALD | 292 | 63 | 8 | 4 | 32 | 324 | $ 1,545.48 |
| 106 | PERRY, ROY | 25 | 0 | 0 | 0.5 | 0 | 25 | $ 119.25 |
| 107 | PETERS, JOHN | 463.5 | 42 | illegible | 3.5 | 17.5 | 481 | $ 2,294.37 |
| 108 | PETERSON, DAVID | 1094 | 272 | illegible | 5 | 170 | 1264 | $ 6,029.28 |
| 109 | PETERSON, NATHAN | 302 | 8 | 1 | 3 | 3 | 305 | $ 1,454.85 |
| 110 | PIEHL, DENNIS | 118 | 10 | 1 | 1 | 1 | 119 | $ 567.63 |
| 111 | PINKERTON, DION | 464.5 | 44 | 5 | 3 | 15 | 479.5 | $ 2,287.22 |
| 112 | PINKERTON, MARGARET | 235 | 19 | 2 | 2 | 4 | 239 | $ 1,140.03 |
| 113 | PROVOE, ROSS | 91 | 82 | illegible | 2 | 20 | 111 | $ 529.47 |
| 114 | PUGH, TOM | 230 | 18 | 2 | 3 | 6 | 236 | $ 1,125.72 |
| 115 | RICHARDS, EZRA | 771 | 97 | illegible | 4 | 48 | 819 | $ 3,906.63 |
| 116 | ROGERS, JEFF | 639 | 84 | illegible | 4 | 40 | 679 | $ 3,238.83 |
| 117 | SAEZ, JAVIER | 870 | 234 | illegible | 4.5 | 130.5 | 1000.5 | $ 4,772.39 |
| 118 | SAMPSON, JAMES | 190.5 | 100 | 13 | 3 | 39 | 229.5 | $ 1,094.72 |
| 119 | SCHACKMANN, ANTHONY | 863 | 177 | 22 | 4 | 88 | 951 | $ 4,536.27 |
| 120 | SCHNOOR, JEFF | 850 | 57 | 7 | 5 | 35 | 885 | $ 4,221.45 |
| 121 | SCOTT, PAUL | 743 | 173 | 22 | 4 | 88 | 831 | $ 3,963.87 |
| 122 | STEVENS, SCOTT | 765 | 123 | 16 | 4.5 | 72 | 837 | $ 3,992.49 |
| 123 | THACKERAY, ROBERT | not listed | | not listed | not listed | no entry | no entry | not listed |
| 124 | THOMSON, HELLEN | 368 | | 0 | 2 | 0 | 368 | $ 1,755.36 |
| 125 | TWOGOOD, JAMES | 844.5 | 305 | 38 | 4.5 | 171 | 1015.5 | $ 4,843.94 |
| 126 | WALL, KEVIN | 646 | 68 | 9 | 4 | 36 | 682 | $ 3,253.14 |

Walter Jaynes, et al. v. United States

Computation of High Pay Award: Part 4
Adjustment of High Hours to include Premium Pay for Overtime High Work
TRIAL EXHIBIT PX-027

| | A | B | C | E | F | H | I | L | |
|---|---|---|---|---|---|---|---|---|---|
| 2 | NAME | Original Calculation of Total Hours from JX-044), see also PX-025 | Half of Shipyard's Overtime calculations from JX-044) see alsoPX-026 [Col. D], as Hours | Half of Overtime ) as Days JX044 | Estimated Hours Per Day of High Work, from JX-044, *see* PX-024 | Hours Per Day High Work multiplied by Number of Days Worth of Overtime | Adjusted Total Hours Calculations (JX-045, 046) | Principal Amount Paid (Total Hours x $4.77 per hour). From PX-014. *See* also PX-025 | |
| 127 | WASHBURN, MARK | 50 | | 0 | 3 | 0 | 50 | $ | 238.50 |
| 128 | WEBSTER, DAVID | 787 | 192 | 24 | 4 | 96 | 883 | $ | 4,211.91 |
| 129 | WELSH, THOMAS | 270 | 59 | 8 | 1.5 | 12 | 282 | $ | 1,345.14 |
| 130 | WERNER, RONALD | 100 | 122 | 15 | 2 | 30 | 130 | $ | 620.10 |
| 131 | WILLIAMS, ELDIE | 598 | 133 | 16 | 3.5 | 56 | 654 | $ | 3,119.58 |
| 132 | WODYGA, JOSEPH | 578 | 272 | illegible | 3 | 102 | 680 | $ | 3,243.60 |
| 133 | WOOD, GEORGE | 40 | | 0 | 2 | 0 | 40 | $ | 190.80 |
| 134 | YOUNG, DENNIS | 332 | 55 | 7 | 3 | 21 | 353 | $ | 1,683.81 |
| 135 | ZERBEST, JAMES | 476 | 115 | 14 | 2.5 | 35 | 511 | $ | 2,437.47 |
| 136 | ZIESER, JOHN (badge #170559) | 121.52 | 25 | 3 | 1.5 | 4.5 | 126 | $ | 601.02 |
| 137 | ZIESER, JOHN (badge #169403) | 175 | 62 | 8 | 3 | 24 | 199 | $ | 949.23 |
| 138 | | 62912.02 | | | | | 70061 | $ | 334,191.09 |