**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WALTER JAYNES; PAUL S. SCOTT; DAVID S. PETERSON; DONALD BAKER; GORDON D. HANBERG; et al., | ) | No. 04-856C |
| Plaintiffs, | ) | (Judge Miller) |
| vs. | ) | |
| THE UNITED STATES, Defendant. | ) | Electronically Filed |

**JOINT STATUS REPORT**

The parties submit this Joint Status Report to respond to the questions raised by the Court during the March 20, 2007 status conference and the Court's Order of the same date. During the conference and in its Order, the Court raised questions regarding a number of issues. Here are the parties' thoughts on how to resolve them.

**1. Claim Period for Each Plaintiff**

During the March 20, 2007 status conference, the Government raised the possibility that the October 1994 amendments to the Civil Service Reform Act might preclude recovery of back pay that accrued before their enactment. At this point, the Government has not fully evaluated this argument.

The parties agree that this issue is a purely legal one. The parties propose the following procedure for resolving it, if judicial resolution is necessary: the Government will, if it decides to pursue this issue, file a motion for summary judgment on May 31, 2007. The plaintiffs will then file their response on July 31, 2007. The Government will file its reply on August 31, 2007 and this issue will be ripe for judicial resolution.

**2. The Effect of the Statute of Limitations**

The parties agree that the statute of limitations issue involves legal issues that will need to be determined by this Court before a claim period can be established for each particular

plaintiff. However, the parties will attempt to narrow their differences voluntarily. At this time, the Government believes that it would be premature to pursue its statute of limitations defense through a motion for summary judgment. The parties have also agreed to discuss the possibility of stipulating to certain claim periods for specific plaintiffs.

Plaintiffs will wait until May 31, 2007 to see if the Government narrows or clarifies its statute of limitations defense. Depending on the Government's actions in this regard, plaintiffs intend to file a summary judgment motion directed to some or all of the Government's statute of limitations defense. Plaintiffs will do so by July 31, 2007. The Government's response would be due August 31, 2007 and the plaintiffs' reply would be due September 30, 2007.

**3. The Nature of the Government's January 2000 Grievance Decision**

During the March 20, 2007 status conference, the parties devoted much of their discussion to issues concerning the status of the Government's January 18, 2000 grievance decision. The parties are researching these issues and agree as to the proper procedure for resolving this matter.

Specifically, the Government intends to present its position in a motion for summary judgment, to be filed on May 31, 2007. Plaintiffs will file their response by July 31, 2007 and the Government will file a reply (and opposition to the plaintiffs' cross-motion, if any) on August 31, 2007. Plaintiffs would have until September 30, 2007 to file a reply in support of their cross-motion, if one is filed.

**4. The Effect of the Status of the Grievance Decision on the Court's Role and Tasks**

The parties have not reached agreement about the potential effect of the January 2000 grievance decision. Both parties are currently researching these contentions.

The Government will present its position through its motion for summary judgment to be brought on May 31, 2007. The briefing schedule would be as proposed for the other motions to be brought by the Government. That is, the plaintiffs would have until July 31, 2007 to respond and, if appropriate, cross-move for summary judgment. The Government would have

until August 31, 2007 to reply (and oppose plaintiffs' cross-motion) and plaintiffs would have until September 30, 2007 to file a reply in support of their cross-motion.

**5. Amount of High Work Performed**

Plaintiffs believe that the Court will need to determine the effect of the Government's failure to keep records of high work on the level of proof required by the plaintiffs to prove their claims. (An issue raised by the plaintiffs on pages 3-4 of their March 13, 2007 Memorandum.)

The Government disagrees that it is the responsibility of this Court to "determine the effect of the Government's failure to keep records of high work on the level of proof required by the plaintiffs to prove their claims." The Government's position is that there was no such failure and the Government did keep records for high pay in accordance with the requirements of the CBA.

The parties agree that the plaintiffs should present their position through a motion for summary judgment to be brought on July 31, 2007. The Government would have until August 31, 2007 to respond and, the plaintiffs would have until September 30, 2007 to reply.

**6. Amendment to Add an Additional Plaintiff**

The parties have discussed the issue of amending the complaint to add another plaintiff. The Government has no objection to this amendment. Accordingly, the parties will either presentation a stipulation to file a fourth amended complaint or by unopposed motion (either of which would require the Government to answer by May 31, 2007).

**7. Need for and Extent of Further Discovery**

At this point, the amount of further discovery needed depends to a certain extent on the Court's rulings on the legal issues. Nonetheless, the parties are in general agreement that certain discovery need not be fully stayed while these issues are briefed and pending, although the parties differ as to the timeline and extent of discovery that is proper and possible during this period.

**a. Plaintiffs' Position**

After discussion with counsel for the Government, it is plaintiffs' understanding that the Government may raise the question of the authority of Shipyard employees to issue a local determination. Because this issue has not been raised before and plaintiffs' counsel feel that their clients are not well served by a "wait and see" attitude, the plaintiffs intend to serve the Government with two to four contention interrogatories and requests for production, limited to this issue, before the Government files its May 31, 2007 motion. Below, the Government indicates that plaintiffs fundamentally misunderstand this issue. Perhaps these narrow discovery requests will help dispel the fog, and should alleviate the need to delay the briefing schedule to accommodate discovery.

Turning to the case more broadly, plaintiffs principally need additional information that will assist them in determining the amount of work on staging that each plaintiff did. This discovery will be largely unaffected by the Court's rulings on the issues outlined above.

This discovery includes documentary evidence that was previously requested by discovery requests propounded in December 2004. This evidence consists of each plaintiff's personnel file, records of all projects each plaintiff worked on, records concerning each plaintiff's immediate supervisor at all times, and further pay records. Plaintiffs' position is that the Government should produce this information no later than June 30, 2007, at which time plaintiffs' discovery requests will have been pending for nearly 2½ years. If the Government does not produce this evidence by then, the parties may need to put this issue to the Court.

Plaintiffs currently expect that they will need to depose all or most of the roughly two dozen first-line supervisors as part of their effort to determine how much staging work each plaintiff did. Counsel for the Government believes that the Government may have located records that provide this information, in which case deposition discovery may be more limited than expected. Plaintiffs intend to evaluate the records the Government produces and, having done so, determine whether and to what extent they need discovery. Plaintiffs expect to be in a

position to begin these depositions (if necessary) by late July and to complete them before the briefing schedule outlined above is completed.

Plaintiffs continue to believe that presentation of evidence concerning the amount of unpaid high work that each individual plaintiff performed would best be presented by way of declaration. Plaintiffs would propose to provide declarations to the Government (probably in batches) well in advance of their depositions. Depositions would then be restricted to limited discovery depositions and perpetuating testimony for trial. Plaintiffs suspect that it would make the most sense to present a small initial batch of "bellwether" plaintiffs in this manner so that the Court could resolve their claims in advance of the presentation of the remainder of the plaintiffs. This might facilitate resolution of the remainder of the claims without further need for this Court's involvement.

If the Court rules that the January 2000 grievance decision is a local determination that is binding on the Court, further discovery regarding the issue of what constitutes high work would appear to be unnecessary. If, however, the Court is called upon to resolve the question of what work constitutes high work, then some additional discovery will be required. Both sides will likely present expert opinions regarding the nature of the work and the extent to which fall restraints alleviate dangers associated with what would qualify as high work. With those expert opinions would come expert discovery. There would also probably need to be some discovery from the manufacturers of the staging used by the Government, which will shed light on questions such as the stability of the structures created, and the feasibility and safety of fall restraints. The parties are in general agreement that such discovery should await the Court's rulings on the issues outlined above. Nonetheless, plaintiffs believe that both sides should be prepared to disclose experts well before the end of the year should the need to do so arise.

As the Court no doubt has discerned, plaintiffs do not believe that a formal stay of discovery is necessary or appropriate. Plaintiffs expect that the parties will be able to stage discovery as needed over the year to come. Should disputes arise regarding the timing or scope

of discovery, the parties can present those to the Court as they arise if they are not able to reach amicable resolution.

**b. The Government's Position**

**1. Job Orders and Official Personnel Files**

The Government agrees that the plaintiffs may need job order information and the personnel files of named parties and is, as stated, taking steps to secure that information. A large quantity of information must be gathered from different locations and sources, involving coordination with both the Department of the Navy and the Defense Finance Accounting Service ("DFAS"), and thus will not be available for four months, at the least. Given that some of the motions and cross-motions proposed herein will take the parties to the end of August 2007, it does not appear that this delay would hinder the process, and the Government believes that plaintiffs' desire to depose supervisory personnel would be better accomplished after that time.

While plaintiffs claim that the Government has had 2 ½ years to meet its discovery requests, the parties previously put aside much discovery to focus upon the accord and satisfaction issue. With this issue decided, in advance of the status conference, the Government contacted DFAS to begin the process of assembling the records that it believed would fall within the scope of outstanding requests. Because some of the plaintiffs are retirees, and because the records span a wide time frame, these records are located in multiple locations, in different storage formats. The Government does not believe it unreasonable request four months to attempt to assemble these records, especially since during such time counsel for the Government will also be preparing several substantive briefs on important matters in this case. Finally, plaintiffs have always had the ability to gather their personnel files themselves. Indeed, the Government initially took the position that this would be the proper manner to gather such data. In the spirit of cooperation, the Government agreed to produce such records, but if the plaintiffs

wish to attempt to get their personnel records sooner than the Government reasonably requires to assemble such records, there is no barrier preventing them from directly requesting their records. Plaintiffs have not done so at any time during this 2 ½ year period.

Finally, the possible existence of job orders was only recently discovered, after the Government had previously received a negative response to repeated inquiries as to the existence of such records DFAS. The Government could not previously produce documents that it believed did not exist until a few weeks ago.

Finally, the Government notes that neither the personnel files nor the job orders have any bearing upon the parties' cross-motions regarding the nature and extent of the grievance decision.

**2. Discovery as to "Authority".**

Defendant believes that the plaintiff misunderstands the Government's possible authority argument. When the Government discusses "authority," it does not do so in a contractual sense, but rather in the sense of authority pursuant to the CBA and the law, matters which the Government believes would require no additional discovery. In any event, even assuming that the plaintiffs concerns are correct as to a possible broader authority argument that the Government might make, the Government believes that it is premature to request discovery on such a matter. The Government is in the process of evaluating this matter, and accordingly only seeks a limited stay, to allow the Government the ability to evaluate its arguments and complete its initial briefs on such issues. Plaintiffs' proposed discovery requests as to authority would not serve to dispel any alleged "fog" any more efficiently than waiting for the Government to fully evaluate its arguments and serve its brief. If the plaintiffs determine they cannot respond to the Government's arguments without discovery (or the Government determines that this is likely the

case), then the Government is willing to allow for discovery as to such issues. Depending upon the nature and extent of such requests, the Government would endeavor to respond on an expedited basis or would be willing to extend the time necessary for the plaintiff to file its cross-motion, if requested. However, at this time, such issues remain hypothetical.

**3. "Bellwether plaintiffs" and "Batch" Declarations on Unpaid High Pay**

As noted at the status conference, the Government is strongly opposed to this suggestion made by the plaintiffs. The Government and the plaintiffs might disagree as to what constitutes a "bellwether plaintiff" or whether such a person exists. The Government is not likely to be in agreement as to which plaintiffs may be "batched" together. Without fully briefing the issues here, the Government's position is that declarations are hearsay and therefore there can be no trial by declaration. It is the Government's position that it may well have to depose each plaintiff in order to determine facts relating to the applicable scope of their individual recovery, if any; in order to determine their actions or non-actions in conformance with the CBA; and their memory as to the work they have done over the course of the scope of the potential recovery period. This cannot be accomplished through declarations.

The parties also disagree regarding whether, and the extent to which, the plaintiffs' deposition testimony may substitute for live testimony. Plaintiffs regard this as a subject that will be affected by the Court's determination of the absence of records issue, raised above. The Government's position is limiting the Government's use of depositions is improper without any showing of abuse of process, and only serves to hinder the Government's ability to determine of "representative" plaintiffs may be used at trial. If the Court desires further briefing on this issue, the parties agree that it may be most appropriate to postpone it until July 31, 2007.

DATED this 30th day of March, 2007.

Respectfully Submitted,

Respectfully Submitted,

s/ Donald B. Scaramastra
DONALD B. SCARAMASTRA
JENNIFER A. KREBS
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

**CERTIFICATE OF FILING**

I hereby certify that on this 30th day of March 2007, a copy of the foregoing "JOINT STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice