**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WALTER L. JAYNES; PAUL S. SCOTT; DAVID S. PETERSON; DONALD BAKER; GORDON D. HANBERG; RANDOLF S. ABBOTT; DWIGHT J. ABLER; IRENEO G. AMABLE; JOHN A. BARTH; RALPH E. BERGMAN; MICHAEL C. BESSLER; BRADLEY E. BOALES, JR.; MITCHELL BRACKING; BOBBY CAIN; HARRY R. CALHOUN; JEFF A. CARLSON; HENRY CARNAGHI; DAVID L. CHRISTIANSEN; WALTER CLIBER; KEVIN COCKERILL; JERRY COCKRUM; DAVID COLLINS; RANDALL COOK; DAVID A. DAY; GREGORY DENTON; EDWARD L. DEVEN; JEFFREY W. DOSTIE; DONALD K. ERBE; WARREN E. ERICKSON; MARTIN L. FARMER; DAVID FORBES, BEREND FREESE; ORLANDO GARCIA; JOSHUA GLITCH; JERRY D. GRAY; FREDERICK A. GREEN; JOHN T. HAWKINS, MICHAEL J. HAYDEN; ARTHUR B. HAYNES; JARROD HOGUE; DAVID J. HURM; DOUG IMPEY; MICHAEL DENNIS JACOBSEN; STEPHEN J. JACOBSON; JAMES M. JAZUK; BILLY KADLECEK, as Personal Representative of the Estate of RANDY KADLECEK; JAMES A. KELLER, JR.; TREVOR L. KEMPER; ERON KENDZIORA; TIMOTHY W. KULBACKI; DALE J. LEIBLE; LARRY W. LEWIS; ROBERT LONGCRANE; PAUL T. LONGOWSKI; BOBBY MARTIN; DAVID MCCRARY; JOSEPH R. MCKINNON; ROY E. MORELAND; MARK B. MORGAN; CURTIS O'HAIR, JR.; DENNY D. PARSONS; ROY PERRY; ROSS K. PROVOE; CLIFFORD L. REINBOLD; EZRA M. RICHARD; TALLY K. ROY; JEFF SCHNOOR; JAMES M. TWOGOOD; DAVID C. WEBSTER; RONALD WERNER; GREG WILLIAMS; SHAWN WILLIAMS; JOSEPH F. WODYGA; and JAMES ZERBEST,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES<br><br>Defendant. | No. 04-856C<br><br>JUDGE MILLER |

## FOURTH AMENDED COMPLAINT

I. NATURE OF THE ACTION

1. This is an action to recover money damages against the United States for failing to pay, in part or in whole, Environmental Differential Pay for "high work" as mandated by Article 10 and Appendix II of the Bremerton Metal Trades Council ("BMTC") Agreement , as well as 5 C.F.R. 532.511 and 5 CFR 532, Subpart E, Appendix A.

2. At all times material to this complaint, Plaintiffs were employed and classified as shipwrights or were otherwise doing the work of shipwrights at the Puget Sound Naval Shipyard ("PSNS") located in Bremerton, Washington. The primary duties for shipwrights involve erecting and dismantling of staging or scaffolding in and around naval ships that were in and out of dry dock. Shipwrights, including the Plaintiffs, regularly worked under conditions and circumstances that would qualify as "high work" under Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A. Shipwrights at PSNS are represented by a union called the Bremerton Metal Trades Council, Local Union 2317 ("BMTC"). Not all shipwrights are members of the BMTC union.

3. Federal regulations mandate that federal civilian (WG) workers receive additional compensation, known as Environmental Differential Pay, when exposed to working conditions or hazards that fall within one of the categories established by the Office of Personnel Management. 5 C.F.R. § 532.511. One category is "high work," which is defined by Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A to include:

(a) Working on any structure of at least 30 meters (100 feet) above the ground, deck, floor or roof, or from the bottom of a tank or pit;

(b) Working at a lesser height:

(1) if the footing is unsure or the structure is unstable; or

(2) if safe scaffolding, enclosed ladders or other similar protective facilities are not adequate (for example, working from a swinging stage, boatswain chair, a similar support); or

(3) if adverse conditions such as darkness, steady rain, high wind, icing, lightning or similar environmental factors render working at such height(s) hazardous.

4. In April 1999, the BMTC union filed a grievance on behalf of 99 employees demanding Environmental Differential Pay for "high work" (hereinafter pay for high work will be referred to as "high pay"). On January 18, 2000, PSNS management decided the grievance and initiated new rules for "high pay." PSNS Management awarded back pay for 15 work days prior to the filing of the original grievance, but refused to pay any back pay to the shipwrights for any high work done prior to that time.

5. Pursuant to the Back Pay Act, 5 U.S.C. § 5596 et seq., Plaintiffs seek to recover back pay retroactive to six years before the date of the grievance and through the date of trial and Judgment in this matter.

6. Plaintiffs bring this action on behalf of themselves. Several of the plaintiffs previously filed this action on behalf of a class that included current and former Puget Sound Naval Shipyard employees assigned to Shop 64 as shipwrights from April 13, 1994 to the present. This action was brought pursuant to Rule 23 of the Rules of the Court of Federal Claims ("RCFC") and seeks money damages for past and present violations of Article 10 and Appendix II of the BMTC Agreement, 5 C.F.R. 532.511 and 5 CFR 532, Subpart E, Appendix A. By Order dated August 19, 2005, this Court denied a motion to certify this case as a class action. By Order dated January 5, 2006, this Court denied a motion to reconsider is denial of class certification.

II. JURISDICTION & TOLLING

7. Pursuant to the Tucker Act, 28 U.S.C. § 1491(a), and the Back Pay Act, 5 U.S.C. § 5596 et seq., the Court has jurisdiction over this matter.

8. On April 13, 1999, shipwright Dave Hurm filed a grievance with the Bremerton Metal Trades Council. It stated as follows:

> I have been aggrieved in that Shop 64 PSNS has continually denied me the appropriate amount of high pay, 25% additional environmental differential, for performing high work as outlined by the Code of Federal Regulations and the BMTC Agreement. (Emphasis added.)

9. Sometime later, 99 employees also signed that grievance demanding their high pay.

10. On January 18, 2000, Mary Jane Tallman, the Superintendent for the shipwrights, decided those grievances, initiating new rules for high pay. She found that "[c]ertain work situations encountered by Shipwrights in erecting and dismantling staging do meet the criteria for 25% high pay in accordance with Article 10 and Appendix II of the BMTC Agreement and the Schedule of Environmental Differentials at 5 CFR 532, Subpart E, Appendix E." Specifically, Ms. Tallman determined that the 25% high pay was appropriate under the following circumstances: (1) for shipwrights building and dismantling staging beginning from the first level above the ground/deck unless flooring and safety rails are installed or fall protection devices can be properly used; (2) building and dismantling hanging staging working from similar heights under similarly unguarded situations when fall protection devices cannot be properly used.

11. Ms. Tallman limited the back pay award to the shipwrights to a date 15 work days prior to the filing of the grievance. BMTC did not challenge her decision, which was made the basis of a prospective pay policy at PSNS.

12. On February 14, 2000, Byron Holcomb, then counsel for the Plaintiffs, wrote to Ms. Tallman to request reconsideration of her decision. Mr. Holcomb explained that the Plaintiffs disagreed with Ms. Tallman's decision to limit back pay awards to 15 work days prior to the filing of the grievance.

13. On March 2, 2000, Mr. Holcomb received a response to his letter from Steven L. Seaton, Assistant Counsel for the Navy. The letter detailed the Department of the Navy's position that the Plaintiffs had no standing to request arbitration or to initiate a lawsuit in federal court. The letter further stated that Ms. Tallman was not going to reconsider her earlier decision.

14. On April 14, 2000, plaintiffs filed a complaint to review the retroactive date of the back pay award in the United States District Court for the Western District of Washington. The district court dismissed the case for lack of jurisdiction on May 25, 2001. Plaintiffs filed a timely appeal with the U.S. Court of Appeals for the Ninth Circuit.

15. The case was argued before the Ninth Circuit on September 12, 2002. The Court affirmed the district court's findings regarding jurisdiction, but it construed the Plaintiffs' complaint as alleging claims under the Tucker Act, 28 U.S.C. § 1491. Accordingly, the Ninth Circuit remanded the case to the district court with instructions that it transfer the case to the Court of Federal Claims. The case was transferred and Plaintiffs filed a complaint with this Court on June 15, 2004.

## III. <u>PARTIES</u>

16. At all times material to this complaint, Plaintiffs were classified and employed as shipwrights or were otherwise doing the work of shipwrights at PSNS. The primary duties for shipwrights include erecting and dismantling scaffolding in and around naval ships that were in and out of dry dock. As previously alleged, the shipwrights are represented by BMTC. One of

the five Plaintiffs who agreed to serve as a class representative before this Court, Gordon Hanberg, is a member of the BMTC union.

The five Plaintiffs who agreed to serve as class representatives before this Court are as follows:

a. Walter Jaynes is currently employed at Puget Sound Naval Shipyard as a shipwright. Jaynes transferred to PSNS in January 1992 after Congress closed the Mare Island shipyard in California. He has worked continuously at PSNS since that time except for August 14, 2003 through September 21, 2003, when he was on Leave Without Pay status due to a work-related medical injury, and possibly a few other times he was on Leave Without Pay status due to work-related injuries. Plaintiff is Series 5220, Pay Grade WG-10, Step 5. Throughout his tenure as a working shipwright, Jaynes regularly worked under conditions and circumstances that qualify as high work under Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A.

b. Paul S. Scott was hired by PSNS as a WG-5, Step 1, Shop 72 Shipwright helper in September 1989. In March 1992, Scott was rated up to a WG-10, Step-1, Shipwright Mechanic. He was a Shipwright Supervisor I from April 1999 to May 1999, and became a WG-10 Step-5 Journeyman Shipwright Mechanic in August 1999. He was a Production Shop Planner-man from February 2001 to June 2001. He was converted to career conditional status as a shipwright in February 1998 and was appointed a career employee in 2000. Scott served as a temporary shipwright supervisor from 1997-2000. Scott retired for medical reasons in August 2003. He was Series 5220, Pay Grade WG-10, Step 5. Throughout his tenure as a working shipwright, Scott regularly worked under conditions and circumstances that qualify as high work under Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A.

c. David S. Peterson is currently a shipwright at PSNS. He began working for PSNS in June 1981. He became a WB-5220-01 Shipwright Trainee on August 8, 1982 and was promoted to WG-5220-05 Shipwright Helper on August 16, 1983. He attained a WT-5220-00 Shipwright Apprentice on September 30, 1984 after entering the trade apprentice program and graduated from the program on October 9, 1988. In October 1988, Peterson became a shipwright, WG-5220-10, Step-2 Shipwright, continuing on to become a WG-10, Step-5 Shipwright. Peterson's duties required building scaffolding from 5 feet to over 100 feet off the ground. Throughout his tenure as a working shipwright, Peterson regularly worked under conditions and circumstances that qualify as high work under Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A.

d. Donald Baker was hired by PSNS as a shop 72 laborer on July 19, 1979. He was assigned to Shop 64 on February 9, 1982 as a WG-4605-05 Wood Craftsman Helper and became a WG-3610-10 Insulator on May 21, 1987. Baker spent much of his career assigned to the Shop 64 shipwrights as a "loan-over" from the Insulator section. In November or December 2002, Baker was permanently assigned as a Shop 64 Shipwright Journeyman Mechanic. He is Series 5220, Pay Grade WG-10, Step 5. His basic duties included erecting and dismantling scaffolding. Throughout his tenure as a working shipwright, Baker regularly worked under conditions and circumstances that qualify as high work under Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A.

e. Gordon Hanberg is employed as a shipwright at PSNS. He began working for PSNS in 1980 in various capacities. In 1994, he was transferred to Shop 64 as an Insulator where he worked as a "loan-over" shipwright. Hanberg was transferred directly into the shipwright trade because of his special qualifications. In 1999, he was assigned as a regular

WG-10, Step 5 Journeyman Shipwright Mechanic to Shop 64. He was worked as a regular WG-10, Step 5 Journeyman Shipwright Mechanic in Shop 64 since 1994. His primary duties as a shipwright were the erecting and dismantling of scaffolding. Throughout his tenure as a working shipwright, Hanberg regularly worked under conditions and circumstances that qualify as high work under Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A.

These five Plaintiffs sought to represent a class of Puget Sound Naval Shipyard employees who performed shipwright work from April 13, 1994 through the present. As previously alleged, this Court has denied their motion for class certification.

17. Defendant, the United States of America, acts by and through its agencies and officers. The Department of the Navy is an executive agency of the United States. It is responsible for administering the United States Navy and all its supporting components, including the PSNS. The Commander of the PSNS is an officer of the Department of the Navy and has overall management responsibility for the Shipyard. The Shop Superintendent is a civilian employee of the Department of the Navy and has immediate supervision of the Plaintiffs and the Plaintiff class.

## IV. STATUTORY AND REGULATORY STRUCTURE

18. According to the Operation Manual for the Federal Wage System, Subchapter S8-7(c):

> [a]n environmental differential is paid to a wage employee who is exposed to a hazard, physical hardship, or working condition of an unusually severe nature listed under the categories in appendix J of this subchapter. Exposure to a hazard, physical hardship or working condition of an unusually severe nature listed in appendix J is not taken into consideration in the job grading process, and additional pay for exposure to these conditions is provided only through the environmental differentials authorized by this section.

The above-quoted provision of Appendix J was codified in the 1990s and is now Appendix A [5 C.F.R. 532, subpart E, Appendix A].

19. Pursuant to 5 U.S.C. § 5343(c)(4), an employee must be paid an environmental differential when exposed to a working condition or hazard that falls within one of the categories approved by the Office of Personnel Management. 5 C.F.R. § 532.511(a)(1).

20. Each installation or activity must evaluate its situations against the guidelines issued by the Office of Personnel Management to determine whether the local situation is covered by one or more of the defined categories. 5 C.F.R. §532.511(a)(2).

21. Pursuant to 5 C.F.R. 532, subpart E, Appendix A and Appendix II of the BMTC Agreement, the definition of "High Work" includes the following:

(a) Working on any structure of at least 30 meters (100 feet) above the ground, deck, floor or roof, or from the bottom of a tank or pit;

(b) Working at a lesser height:

(1) if the footing is unsure or the structure is unstable; or

(2) if safe scaffolding, enclosed ladders or other similar protective facilities are not adequate (for example, working from a swinging stage, boatswain chair, a similar support); or

(3) if adverse conditions such as darkness, steady rain, high wind, icing, lightning or similar environmental factors render working at such height(s) hazardous.

22. An employee entitled to an environmental differential shall be paid an amount equal to the percentage rate authorized by the Office of Personnel Management for the category in which the working condition or hazard falls, multiplied by the rate for the second step of WG-10 for the appropriated fund employees and NA-10 for the non-appropriated fund employees on the current regular non-supervisory wage schedule for the wage area for which the differential is payable, counting one-half cent and over as a whole cent. 5 C.F.R. §532.511(b)(1).

23. An employee entitled to an environmental differential on the basis of hours in a pay status shall be paid for all hours in a pay status on the day on which he/she is exposed to the situation. 5 C.F.R. § 532.511(b)(3).

24. Environmental differential pay is part of basic pay and shall be used to compute premium pay (pay for overtime, holiday, or Sunday work), the amount from which retirement deductions are made, and the amount on which group life insurance is based. It is not part of basic pay for purposes of lump-sum annual leave payments and severance pay nor is its loss an adverse action. 5 C.F.R. § 532.411(c).

25. Pursuant to 5 C.F.R. § 551.402(a), "an agency is responsible for exercising appropriate controls to assure that only that work for which it intends to make payment is performed."

26. Pursuant to 5 C.F.R. § 551.402(b), "an agency shall keep complete and accurate records of all hours worked by its employees."

## V. FACTUAL ALLEGATIONS

27. PSNS is a naval repair shipyard. It has six dry docks and six piers from which ship repairs can be conducted. PSNS is the home port for one aircraft carrier and much of the time the shipyard is overhauling another carrier. Typically, scaffoldings at PSNS reach 60 feet in height or more. Aircraft carrier mast scaffoldings can reach over 125 feet in height.

28. All shipwrights are assigned to Shop 64 at PSNS. Shop 64 also includes insulators and woodworkers. The Shop 64 insulators and woodworkers as well as other employees from other Shops are sometimes assigned to Shop 64 as "loan-overs" to work as shipwrights. One of the principal functions performed by shipwrights and those that act as shipwrights (i.e., "loan-overs" from other PSNS trades and shops) is the erecting and dismantling

of staging or scaffolding. Most ship repair or recycle projects require the use of some form of staging. Staging is erected using specially made staging pipe that is connected to form a rigid platform. It is erected in stages: one level is finished before the next level is started. Construction proceeds from one level to the next until the desired height is achieved.

29. Sometime in the 1990s, the PSNS shipyard became the only naval shipyard that deconstructs or cuts up older naval ships and submarines. Many of the naval vessels undergoing "deconstruction" were nuclear powered and required extra safety precautions.

30. Deconstruction projects or "cut-up" jobs present additional hazards and dangers to the PSNS shipwrights who must erect and navigate scaffolding as the hull/deck configurations change throughout the deconstruction process. As each section of the ship is cut away and removed, new hazards and dangers emerge. These include jagged steel protrusions and sharp steel edges. Enormous skill is required to erect scaffolding on such uneven and jagged surfaces. This is compounded by the lack of friction between the metal scaffolding and the ship's metal surfaces. Shipwrights describe building scaffolding under these circumstances as similar to building on ice.

31. Each Plaintiff regularly worked under conditions and circumstances that would qualify as high work under Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A. Each Plaintiff regularly worked at heights less than 100 feet where the footing was unsure or the structure was unstable. Each Plaintiff regularly worked at heights less than 100 feet where safe scaffolding, enclosed ladders or other similar protective facilities were not adequate. Each Plaintiff worked from time to time at heights less than 100 feet in adverse conditions such as darkness, steady rain, high wind, icing, lightning or similar environmental factors which rendered working at such heights hazardous.

32. During the relevant time frame, the general foreman of Shop 64 in charge of the shipwrights at PSNS was Mark Winkler. According to Mr. Winkler, it was the policy of PSNS management to pay Environmental Differential Pay for high work only in limited circumstances. PSNS management authorized high pay for work that is at heights equal or higher than 100 feet, and on staging during difficult weather conditions such as periods of high wind. Additionally, PSNS management authorized high pay when an employee is working from inside the basket of a hydraulic "manlift."

33. On information and belief, no employee assigned to Shop 64 as a shipwright ever received high pay for work on staging during difficult weather conditions.

34. As several other Naval Shipyards were closed as part of the overall downsizing of the military, PSNS hired skilled Shipwrights from these now closed Shipyards. These workers began to discuss the fact that these other Shipyards did pay high pay to shipwrights under circumstances where it was not paid at PSNS.

35. In April 1999, the BMTC filed a grievance on behalf of 99 employees demanding high pay according to the union contract and federal regulations. On January 18, 2000, the Superintendent for the shipwrights, Mary Jane Tallman decided those grievances, initiating new rules for high pay. She found that "[c]ertain work situations encountered by Shipwrights in erecting and dismantling staging do meet the criteria for 25% high pay in accordance with Article 10 and Appendix II of the BMTC Agreement and the Schedule of Environmental Differentials at 5 CFR 532, Subpart E, Appendix E." Specifically, Ms. Tallman determined that the 25% high pay was appropriate under the following circumstances: (1) for shipwrights building and dismantling staging beginning from the first level above the ground/deck unless flooring and safety rails are installed or fall protection devices can be properly used; (2) building

and dismantling hanging staging working from similar heights under similarly unguarded situations when fall protection devices cannot be properly used.

36. Ms. Tallman limited the back pay award to the shipwrights to a date 15 work days prior to the filing of the grievance. BMTC did not challenge her decision, which was made the basis of a prospective pay policy at PSNS.

37. Plaintiffs filed this action challenging Ms. Tallman's formulation of the high pay entitlement and seeking to recover back pay retroactive to six years before the date of the grievance and through the date of trial and Judgment in this matter.

38. On February 29, 2000 shipwrights at the U.S. Naval Submarine Base in Bangor, Washington filed their own grievance regarding high-pay. The Bangor shipwrights did not receive Environmental Differential Pay for high work as described under 5 CFR 532, Subpart E, Appendix A, subpart b. Like PSNS management, Bangor management conceded that the workers were entitled to the claimed high-pay and provided compensation to the workers, beginning 15 days prior to the filing of the grievance. Bangor refused to provide back pay for any high work prior to that time.

39. Later in August 2001, the Bangor matter was submitted to arbitration by the union, which claimed that the Back Pay Act mandated the agency to provide back pay retroactive to six years before the filing of the grievance, plus interest. The arbitrator agreed and ordered that the union members be made whole. They were awarded high pay and the accompanying benefits they failed to receive retroactive to March 1, 1994, with interest.

## VI. CLASS ACTION ALLEGATIONS

40. The five above-identified class representatives filed a class action complaint before this Court pursuant to RCFC 23 on behalf of a class that included current and former

Puget Sound Naval Shipyard employees assigned to Shop 64 as shipwrights. "Assigned" refers to those persons classified as shipwrights in Shop 64 and those persons sometimes assigned to Shop 64 ("loan-overs") from other Shops (including Shop 64 insulators, woodworkers and other employees) to work as shipwrights.

41. In their initial complaint before this Court, the five above-identified class representatives averred that the number of class members was in excess of 150 employees of the PSNS and that the class of Plaintiffs was sufficiently numerous as to make joinder of all members impracticable. By Order dated August 19, 2005, the Court ruled that Plaintiffs failed to establish that joinder was impracticable.

42. In their initial complaint before this Court, the five above-identified class representatives averred that the size and scope of the class of Plaintiffs was manageable. All of the Plaintiffs have worked or do work for a common employer in comparable positions. The Department of the Navy and the PSNS maintain records that clearly and easily identify class members and their last known addresses.

43. There are questions of fact and law that are common to Plaintiffs and to Plaintiffs' proposed class of current and former PSNS employees. Such common questions include, but are not limited to, the following:

a. Whether Defendant failed to pay PSNS employees assigned to Shop 64 as shipwrights high pay as required by federal law.

b. Whether Defendant failed to pay PSNS employees assigned to Shop 64 as shipwrights high pay as required by Article 10 and Appendix II of the Bremerton Metal Trades Council Agreement.

c. Whether Defendant is liable to all current and former PSNS employees assigned to Shop 64 as shipwrights for all hours in which they performed high work.

d. Whether pursuant to the Back Pay Act, 5 U.S.C. § 5596 et seq. or 5 C.F.R. 550.804, Plaintiffs and the class they seek to represent are entitled to recover back pay retroactive to six years prior to the date of the high pay grievance less the 15 days back pay already awarded by PSNS management.

e. Whether the Defendant (PSNS) has properly interpreted the requirements of 5 CFR 532, Subpart E, Appendix A in establishing its high pay policy.

f. Whether the Defendant (PSNS) properly interpreted the requirements of Article 10 and Appendix II of the Bremerton Metal Trades Council Agreement in establishing its high pay policy.

44. In their initial complaint before this Court, the five above-identified class representatives averred that the common issues of law predominated over separate factual issues affecting individual class members. By Order dated August 19, 2005, this Court ruled that common issues did not predominate.

45. The claims of the five above-identified class representatives are typical of the other Plaintiffs and of Plaintiffs' proposed class of current and former PSNS employees. These class representatives have no interest antagonistic to the claims of the class and will represent the class without conflicts of interest.

46. The five above-identified class representatives will fairly and adequately protect the interests of the class. Plaintiffs are committed to the vigorous representation of the class and have retained competent class counsel with experience in the prosecution of complex class action litigation.

47. Defendant has acted on grounds generally applicable to Plaintiffs' proposed class, thereby justifying relief for the class as a whole.

48. Plaintiffs are unaware of any other litigation against the Defendant involving high pay or the statutory, regulatory or contractual provisions under which such environmental pay differentials for high work are provided.

49. In their initial complaint before this Court, the five above-identified class representatives averred that because of the nature of the claims asserted by the proposed Plaintiff class, involving violations in the administration of mandated compensation procedures equally and commonly available to all members of the class, no individual class member has an interest in individually controlling the prosecution of his or her claim.

50. In their initial complaint before this Court, the five above-identified class representatives averred that the claims of many class members are so small that they are not otherwise likely to be pursued. In addition, many PSNS employees with valid claims would be disinclined to pursue an action on an individual basis, even though entitled to a claim by law, regulation or contract, for fear of retaliation, negative career repercussions, departmental disfavor, or other stigma, prejudice or bias associated with pursuit of a legal action against an employer, as a result of pursuing this action.

51. In their initial complaint before this Court, the five above-identified class representatives averred that given the statutory, regulatory and contractual structure that governs entitlement to high pay, the prosecution of separate actions by individual members of the class would create the possibility of inconsistent adjudications, which would establish inconsistent standards for Defendant with respect to its obligation to compensate shipwrights fairly and consistently for high pay.

52. For all of the above stated reasons, the five above-identified class representatives aver that certification of this case as a class action would serve the interest of justice. By Order dated August 19, 2005, this Court ruled otherwise.

VII. COUNT ONE

Failure to pay six years of back pay for high work in violation of the Back Pay Act, 5 U.S.C. § 5596 et seq.

53. Plaintiffs incorporate herein by reference the allegations of the amended complaint set forth in paragraphs 1 through 52 above.

54. Pursuant to 5 C.F.R. § 532.511, federal civilian (WG) workers are entitled to additional compensation, known as Environmental Differential Pay when exposed to working conditions or hazards. One category is high work, which is defined by Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A.

55. In contravention of Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A, PSNS management refused to authorize high pay, except under limited circumstances for work: (1) at heights equal to or higher than 100 feet; or (2) on staging during difficult weather conditions such as periods of high wind; or (3) inside a basket of a hydraulic "manlift."

56. At all times material, each Plaintiff was assigned as a shipwright or was otherwise doing the work of shipwrights at the PSNS. Because their duties included erecting and dismantling scaffolding, each Plaintiff regularly worked at heights of at least 100 feet above the ground or other surface, or at a lesser height or heights where footing was unsure, the structure was unstable, or where protective facilities where not adequate. Hence, Plaintiffs regularly worked under conditions and circumstances that would qualify as high work under Appendix II

of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A. Plaintiffs were entitled to high pay, the Environmental Differential Pay for high work.

57. On January 18, 2000, PSNS management determined that the PSNS shipwrights were entitled to "high pay" and resolved grievances regarding this issue.

58. PSNS management provided back pay to the shipwrights, but improperly limited back pay to a date 15 work days prior to the filing of the high pay grievance. Pursuant to the Back Pay Act, each Plaintiff (and each member of the proposed class) is entitled to receive back pay retroactive to six years prior to the date of the grievance less the 15 days back pay awarded by PSNS management. The exact amount of back pay is to be determined at trial based on each hour of high work worked, whether on regular time, overtime or premium time.

## VIII. COUNT TWO

Failure to Pay for high work during adverse conditions in violation of Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A (b)(3).

59. Plaintiffs incorporate herein by reference the allegations of the amended complaint set forth in paragraphs 1 through 58 above.

60. Federal civilian (WG) workers are entitled to Environmental Differential Pay when working at a height of less than 100 feet, "if adverse conditions such as darkness, steady rain, high wind, icing, lightning or similar environmental factors render working at such height(s) hazardous."

61. Upon information and belief, no employee assigned to Shop 64 as a shipwright ever received "high pay" during the relevant period for work on staging during difficult weather conditions or during adverse conditions as described in Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A (b)(3).

62. As a result, each Plaintiff (and each member of the proposed class) did not receive high pay for each hour of qualifying high work as required by law, regulation and the BMTC union contract. Each Plaintiff (and each member of the proposed class) has been damaged financially with the exact amount to be determined at trial based on each hour of high work worked whether on regular time, overtime or premium time.

## IX. COUNT THREE

Failure to Pay for high work in accordance with Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A.

63. Plaintiffs incorporate herein by reference the allegations of the amended complaint set forth in paragraphs 1 through 62 above.

64. On January 18, 2000, PSNS management initiated new rules for high pay, finding that "[c]ertain work situations encountered by Shipwrights in erecting and dismantling staging do meet the criteria for 25% high pay in accordance with Article 10 and Appendix II of the BMTC Agreement and the Schedule of Environmental Differentials at 5 CFR 532, Subpart E, Appendix E." Specifically, PSNS management determined that the 25% high pay was appropriate under the following circumstances: (1) for shipwrights building and dismantling staging beginning from the first level above the ground/deck unless flooring and safety rails are installed or fall protection devices can be properly used; (2) building and dismantling hanging staging working from similar heights under similarly unguarded situations when fall protection devices cannot be properly used.

65. These new high pay rules do not comply with the relevant law, regulations or the BMTC contract. As a result, each Plaintiff (and each member of the proposed class) continues to be financially harmed by Defendant's actions and does not receive high pay for each hour of qualifying high work.

66. As a result, each Plaintiff (and each member of the proposed class) did not receive high pay for each hour of qualifying high work as required by law, regulation and the BMTC union contract. Each Plaintiff (and each member of the proposed class) has been damaged financially in an amount to be determined at trial based on each hour of high work worked whether on regular time, or overtime or premium time.

## X. PRAYER FOR RELIEF

67. Wherefore, Plaintiffs respectfully request that this Court:

(a) Certify this action as a class action pursuant to Rule 23 of the Rule of the Court of Federal Claims, certify Plaintiffs Walter L. Jaynes, Paul S. Scott, David S. Peterson, Donald Baker, and Gordon D. Hanberg as class representatives, and approve the undersigned attorneys as class counsel;

(b) Award damages for the denial of high-pay for regular, overtime and premium hours in excess of ten million dollars;

(c) Award damages for benefits lost by Plaintiffs due to Defendant's improper actions, including, but not limited to lost matching contributions to the Thrift Savings Plan, lost tax savings from increased individual contributions to the Thrift Savings Plan, and lost earnings from these amounts in the Thrift Savings Plan;

(d) Award damages for lost retirement benefits caused by the denial of these payments;

(e) Award prejudgment and post-judgment interest;

(f) Award reasonable attorney's fees, costs and expenses; and

(g) Award such other equitable and legal relief as the Court deems just.

DATED this 16th day of May, 2007.

Respectfully submitted,

COUNSEL FOR PLAINTIFFS

s/Donald B. Scaramastra s/Jennifer Krebs_
Donald B. Scaramastra
**Garvey Schubert Barer**
18th Floor, 2nd & Seneca Building
1191 Second Avenue
Seattle, Washington 98101-2939
Tel: 206-464-3939
Fax: 206-464-0125

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Steven M. Mager
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, NW
Washington, D.C. 20530
*Email: steven.mager@usdoj.gov*

s/Donald B. Scaramastra s/Jennifer Krebs
Donald B. Scaramastra