**PUGET SOUND**
**NAVAL SHIPYARD**

P12721(1) 01 OCTOBER 1987

# An Agreement

## PREAMBLE

This Agreement is made by and between the Puget Sound Naval Shipyard hereinafter referred to as the "Employer" and the Bremerton Metal Trades Council, AFL-CIO, hereinafter referred to as the "Council", and collectively hereinafter referred to as the "parties". The Council is composed of affiliated local unions of national or international organizations. Those affiliated locals having members employed in the Shipyard are listed in Appendix I hereto.

## WITNESSETH

WHEREAS the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government; and

WHEREAS the protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them; safeguards the public interest, contributes to the effective conduct of public business, and facilitates and encourages the amicable settlement of disputes between employees and their employers involving conditions of employment; and

WHEREAS the parties agree that labor organizations and collective bargaining in the Civil Service are in the public interest; the intent and purpose of the Agreement is to promote and improve the effectiveness and efficiency of the Puget Sound Naval Shipyard and the well being of its employees.

NOW THEREFORE pursuant to the provisions of the Civil Service Reform Act of 1978 (Public Law 95-454) governing labor-management relations in the Federal Service (5 U.S.C. 7101 et. seq.), hereinafter will be referred to as the "Act", the parties agree to the following:

## ARTICLE ONE
## Recognition and Coverage of Agreement

0101. **Exclusive Recognition of Council.** The Employer hereby recognizes that the Council is the exclusive representative of all employees in the unit as defined in Section 0102 and the Council hereby recognizes the responsibility of representing the interests of all such employees under the terms of this written Agreement.

0102. **Definition of Unit.** The unit to which this Agreement is applicable is composed of all eligible employees including temporary and probationary employees in the Puget Sound Naval Shipyard except the professional employees, the employees in the Patternmaker's unit, the employees in the Technical unit, the employees in the Planners, Estimators, and Progressmen's unit, any confidential employee, management official or supervisor, or an employee engaged in Federal personnel work in other than a purely clerical capacity. An employee is not authorized by the Act to assist a labor organization or participate in its management or represent it if such activity could result in a conflict of interest or otherwise be incompatible with law or the official duties of the employees.

0103. **Change of Affiliate.** Should any additional local union have members employed by the Employer within the unit described in Section 0102 and become an affiliate local union of the Council and meet the requirements specified in Section 7103(a)(4) and Section 7120 of the Act such additional local union, upon the written request of the Council to the Employer, shall be recognized as one of the Council's affiliate local unions and added to those so listed in Appendix I hereto.

0104. **Binding Agreement.** The provisions of this Agreement shall be binding upon the parties for any new operations directed by the Employer to the extent that such operations af-

fect employees within the unit. This section, however, shall not be interpreted as a waiver of the Employer's rights as provided in 5 USC 7106.

0105. **Reclassification.** It is further agreed that any employee(s) currently in the unit, who are reclassified as a result of application of job grading and position classification standards shall remain a part of the unit provided such employees continue to perform essentially that work previously performed or interrelated with work historically performed within the unit. This section shall not be interpreted as to preclude the parties from filing a unit clarification petition with the Federal Labor Relations Authority (FLRA).

0106. **Responsibilities.** The parties agree that it is in the best interest, in the administration of the labor-management relations program, that supervisors and Council representatives should keep themselves advised of the provisions contained in this Agreement.

## ARTICLE TWO
## Rights of Employer

0201. **Management Rights.** The right, functions, and authority to manage Shipyard operations, Personnel and resources are vested in the Employer by the Act. The Act provides that all management officials of the Employer retain the right and authority to:

a. Determine the mission, budget, organization, number of employees, and internal security practices of the Employer;

b. In accordance with applicable laws and regulations:

1. Hire, assign, direct, lay off, and retain employees in the Shipyard, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

2. Assign work, make determinations with respect to con-

tracting out, and determine the personnel by which the Employer's operations shall be conducted;

3. Make selections for appointments from among properly ranked and certified candidates for promotion or any other appropriate source;

4. Take whatever actions may be necessary to carry out the Shipyard mission during emergencies. The Employer will notify the Council of the nature of any such emergency.

0202. **Employer's Election.** The Employer does not elect to negotiate the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work.

0203. **Right to Make Rules.** The right to make reasonable rules and regulations is the acknowledged function of the Employer. In making rules and regulations relating to personnel policy procedures and practices, and matters affecting the working conditions of unit employees, the Employer shall have due regard for the obligations imposed by this Agreement and sections 7106 b. (2) and (3) of the Act.

## ARTICLE THREE
## Rights of Employees

0301. **Rights of Unit Employees.** Employees in the unit shall have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist the Council and any other labor organization or to refrain from any such activity. Except as expressly provided hereinafter and in the Act, the freedom of such employees to assist any labor organization shall be recognized as extending to participation in the management of the Council and acting for the organization in the capacity of a Council or an organization representative, including presentation of its views to the officials of the Ex-

# ARTICLE TEN

## Environmental Differentials

1001. **Policy.** The Shipyard has as one of its continuing objectives the elimination or reduction to the lowest possible level of all hazards, physical hardships and working conditions of an unusually severe nature. When Shipyard action does not overcome the unusually severe nature of the hazard, physical hardship or working condition, an environmental differential will be paid to the employees exposed to such situations. Even though an environmental differential is authorized, continuous positive action must be taken to eliminate danger and risk which contribute to or cause the hazard, physical hardship or working condition of an unusually severe nature. Authorization to pay an environmental differential is not an approval of work practices which circumvent safety rules and regulations.

1002. **General Conditions for Environmental Differential.** Pay for environmental differential is authorized: (1) for exposure to an unusually severe hazard which could result in significant injury, illness, or death, such as on a high structure when the hazard is not adequately alleviated by mechanical equipment or protective devices being used or on an open structure when adverse conditions such as darkness, lightning, steady rain, snow, sleet, ice or high wind velocity exist; (2) for exposure to an unusually severe physical hardship under circumstances which cause physical discomfort or distress not adequately alleviated by mechanical equipment or protective devices being used; (3) for exposure to an unusually severe working condition under circumstances involving exposure to fumes, dust, or noise which causes significant distress or discomfort in the form of nausea, or skin, eye, ear, or nose irritation or conditions which cause abnormal soil of body and clothing, etc., and where the distress or discomfort is not adequately alleviated by mechanical equipment or protective devices being used. Such exposures which are unusual to a rating are not taken into consideration in the

job grading process, and additional pay for exposures to those unusual conditions is provided through environmental differentials.

1003. **Employee Payment Schedule.** Employees will be paid environmental differentials, when warranted, in accordance with FPM Supplement 532-1 and Appendix J attached thereto. It is understood that the work categories set forth in Appendix J are not all-inclusive. Absence of a specific work category will not preclude payment of a new environmental differential, provided that the basic Office of Personnel Management requirements are satisfied.

1004. **Notification to/by Employee.** Immediate supervisors will notify employees promptly when environmental pay is authorized in accordance with the categories of Environmental Differentials defined in Appendix J. If at any time during a job assignment an employee believes that additional pay is warranted, the employee will call the matter to the attention of the immediate supervisor who will advise the employee if additional pay may be allowed. Any complaint regarding environmental pay not promptly resolved by discussion between the Employer and the affected employee may be handled under the Negotiated Grievance Procedure.

1005. **Multiple Exposure and Backshift Payment.** Members of the Unit subjected to more than one hazard, hardship, or condition as listed in Appendix J at the same time, shall be paid for that exposure which results in the highest environmental differentials, but shall not be paid more than one differential for these same hours of work. Employees performing work on second and third shifts shall receive applicable shift differential pay in addition to any environmental differential pay which is authorized.

1006. **Overtime Differential Payment.** When an environmental differential is paid on the basis of all hours in a pay status

members of the unit will also be paid the differential during a period of overtime that occurs on the same day. The overtime pay will be one and one-half times the basic hourly rate, including the environmental differential. When members of the unit are paid an environmental differential on an actual exposure basis, they will be paid that differential at the overtime rate only if the exposure for which the differential is authorized occurs during the overtime period.

1007. **Application to Other Pay and Benefits.** Environmental differential is included as part of the employee's basic rate of pay and shall be used to compute premium pay such as overtime and holiday work or the amount from which retirement deductions are made or on which group life insurance is based. Environmental differentials are not included in lump sum annual leave payments or in computing severance pay. Environmental differentials are stated as percentage amounts and are authorized for the categories of exposure as described in Appendix J. The amount of the environmental differential which is payable is determined by multiplying the percentage rate authorized for the described exposure by the second step for Grade WG-10 on the current regular non-supervisory wage schedule for the area, counting one-half cent and over as a full cent. The resulting cents-an-hour amount is paid uniformly to each wage employee in the unit who qualifies for the authorized environmental differential, regardless of the grade level of the wage employee or the Federal Wage Survey wage schedule on which the employee is paid.

1008. **Application of Differential Pay Categories.** The categories of environmental differentials listed in Appendix J of FPM Supplement 532-1 are broad guidelines only. Work conditions applicable in this Shipyard are described in NAVSHIPYDPUGET Instruction 12531.3A dated 9 June 1978. NAVSHIPYDPUGET Instruction 12531.3A will be posted on all official bulletin boards. Applications of approved environmental categories within the Shipyard are matters appropriate for discussion bet-

ween the Employer and Council as the need for change arises in accordance with the provisions of Article 38. When a new work condition develops which is not covered by the authorized categories of differentials in Appendix J, but is considered by either the Employer or the Council to warrant an environmental differential, a differential may not be paid; however, action may be promptly initiated by either party via appropriate channels to the Office of Personnel Management for consideration. Once it is determined that the differential is covered under authorized categories of the environmental schedule, retroactive pay shall be made from the effective date specified by the Office of Personnel Management to cover such differential, if an employee has been previously exposed.

1009. **Back Pay Adjustment.** If an employee is restored to former entitlement for environmental differential pay as a result of an employee's acknowledgement that the Employer's action in terminating the employee's environmental pay was improper, the restoration of pay shall be made retroactively effective to the date of the improper action in accordance with Title V, Section 5596 (Back Pay Act), as long as the provisions of that Act are met.

1010. **Payment on Actual Hours Basis.**

a. When an employee is entitled to an environmental differential which is paid on an actual exposure basis, the employee shall be paid a minimum of one hour's differential pay for the exposure. For exposure beyond one hour, the employee shall be paid in increments of one-quarter hours for each 15 minutes and portion thereof in excess of 15 minutes.

b. When an employee is exposed at intermittent times during a day to a hazard, physical hardship, or working condition for which the environmental differential is paid on an actual exposure basis, each exposure is considered separately and the amount of time exposed is not added together before payment

is made for exposure beyond one hour's duration, except that pay for the environmental differential may not exceed the number of hours of active duty by the employee on the day of exposure.

1011. **Payment on an All Hours Basis.** When an employee is exposed to a situation for which an environmental differential is authorized on the basis of hours in a pay status, that differential will also be paid during any period of absence on paid leave on the day on which the exposure occurs.

1012. **Information on Pay Categories.** Appendix II lists those environmental categories, contained in Appendix J of FPM Supplement 532-1, which may be encountered at Puget Sound Naval Shipyard. Appendix III is a summary of other categories listed in Appendix J of FPM Supplement 532-1 which are not expected to be encountered at Puget Sound Naval Shipyard, but would apply where warranted.

1013. **Information for General Schedule Employees.** Environmental differentials for General Schedule (GS) employees will be paid in accordance with FPM Supplement 990-2, Book 550, Subchapter 9, Appendix A.

## ARTICLE ELEVEN

## Travel

1101. **Policy.** Travel and off-station temporary additional duty (hereinafter referred to as TAD) assignments are conditions of employment. Employees who are sent on travel or TAD are required to exercise care in incurring expenses and expending government time and resources in accomplishing the mission. Reimbursement of per diem and travel expenses will be at rates consistent with the provisions of the Joint Travel Regulations (JTR), Volume II.

1102. **Selection and Assignment to TAD.**

a. **Selection.** The Employer agrees to assign TAD assignments as reasonably and fairly as possible among qualified employees in accordance with their particular skills and the Shipyard's need for personnel.

b. **Assignment.** Once a unit employee arrives at the TAD station, the employee will remain there until the work is finished or relieved from duty. However, employees may be relieved from duty if mitigating circumstances require the employee to request return to the Shipyard due to unforeseen emergencies, illness, or exigencies.

1103. **Notification and Pre-Trip Briefing.**

a. Unit employees proposed for TAD off-station will be informally alerted as soon as practical that travel may be necessary. During this discussion, the employee will be given as much information as is then known concerning the TAD. The Employer will have published material available for employees reading and information.

b. When employee(s) are selected for TAD the employee(s) will be briefed by a representative of the Employer. Employee(s) will be given as much information as is known concerning the TAD including but not limited to travel and accommodation arrangements, duty hours, departure and return dates, applicable per diem rates, and whom to contact when questions arise about travel, etc. Normally the Employer will advise employees as soon as practical of any changes or modifications which may reduce the employee's expense entitlements. Travelers will be apprised of the name of the Council Representative (if any) who is making the TAD trip. A Council Representative may attend the briefing to monitor the information given employees when ten (10) or more unit employees are selected for a TAD assignment.

recognize and endorse the importance of bringing to light and adjusting promptly any acts of prohibited discrimination. The initiation of a discrimination complaint in good faith by an employee should not cast any reflection on the employee's standing, loyalty, or desirability to the Employer. The parties agree complaints alleging acts of prohibited discrimination should be resolved at the lowest possible levels. To this end, the Employer will continue to endorse an Affirmative Action Plan (AAP).

2904. **Employee Election for Complaint Processing.** Prior to electing either of the procedures identified in this section, employees have the right to consult with a Council Representative (Section 0302) and/or an EEO specialist (Code 108).

a. **Employee Election.** Employees have the right to seek resolution of alleged discrimination through either but not both of the following:

1. Negotiated Grievance Procedure (Article 30)

2. EEO Complaint Procedure (Code 108)

An employee shall be deemed to have made this election at such time as the employee has filed a written grievance under Article 30 or has submitted a signed statement requesting informal resolution to the Employer (Code 108). Once made, this election may not be changed.

b. **Complaint Processing.** In order for the employee's election to be timely, the written grievance (Article 30) or complaint (EEO Procedure) form must be submitted within thirty (30) calendar days of the alleged discrimination act or the date the employee became aware or should reasonably have been aware of the alleged discrimination. Allegations of discrimination which are submitted under the Negotiated Grievance Procedure may not include other matter(s) not directly related to the alleged discrimination, which the employee was or should

ıasonably have been aware of, unless the matter(s) are raised accordance with the time frame provisions of Sections 3002 1 or 3.

2905. **Employee Representation.** Employees may be repre- ınted by the Council in the submission of a complaint through e Negotiated Grievance Procedure, or may be represented by ı individual of their own choosing when pursuing the com- aint through the EEO complaint procedure.

## ARTICLE THIRTY

## Grievance Procedure

3001. **Purpose.**

a. **Coverage.** For the purpose of this Article the written Agreement is defined as Article 01 through 39, and any Appendices and Addendums thereto. Except as provided for in the Act, the procedures specified in this Article are the exclusive procedures available to employees, the Employer and the Council for resolving grievances which fall within its coverage.

b. **Statement of the Parties.** The Employer and the Council recognize and endorse the importance of bringing to light and adjusting grievances promptly and at the lowest possible level. The parties agree that the filing of grievances under one or more of the procedures within this Article when the grievances address the same or similar issue(s) is an unsatisfactory method for solving problems. The Employer and the Council mutually retain the right to join similiar issues from the same or separate parties for the purpose of conducting a single grievance hearing. The initiation of a grievance in good faith by an employee should not cast any reflection on the employee's standing, loyalty or desirability to the Employer, nor should the grievance be considered as a reflection on the supervisor or representative.

c. **Definition.** For the purpose of this article, a grievance is defined as: any complaint— (except those identified in Section 3001 d)

1. By any employee concerning any matter relating to the employment of the employee; or

2. By the Council concerning any matter relating to the employment of any employee; or

3. By any employee, the Council, or the Employer concerning—

(A) The effect or interpretation, or a claim of breach of this collective bargaining agreement; or

(B) Any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment.

d. **Exclusion.**The following are matters excluded from the Negotiated Grievance Procedure; however, there may exist other appeal procedures provided by law or regulation:

1. Matters that are not "conditions of employment" as defined in the Act.

2. Matters which do not pertain to positions in the bargaining unit.

3. Separation of probationary employees and termination of temporary employees.

4. The classification of any position which does not result in the reduction in grade or pay of an employee.

5. Position Classification or job grading appeals (see Section 1904 for information).

6. Class Action EEO Complaints.

7. Incentive Awards.

8. Retirement, life insurance, or health insurance.

9. A suspension or removal under 5 USC 7532 (National :urity reasons).

10. Any examination, certification or appointment (non-selection to any position/job and the content of any examination).

11. Any claimed violation of Subchapter III of Chapter 73 of Title 5 U.S.C. (related to prohibited political activities).

12. Termination of retained grade or pay under Section 5366(c) of Title 5 U.S.C. (declining a reasonable job offer where "saved pay" is a consideration).

3002. **Submission of Grievances.**

a. **Time Limits.**

1. Grievances of adverse actions (removal, suspensions for more than fourteen (14) days, furlough of thirty (30) days or less, and reduction in grade or pay), must be submitted within twenty (20) calendar days from the effective date of the action.

2. Grievances concerning allegations of prohibited discrimination must be submitted within thirty (30) calendar days of the alleged discrimination act, or the date the employee became aware or should reasonably have been aware of the alleged discrimination. In no event may an employee file a grievance under this procedure once the employee has submitted a signed statement requesting informal resolution of the alleged discrimination matter to Code 108 (see Section 2904). Allega-

tions of discrimination which are submitted under the Negotiated Grievance Procedure may not include other matters which the employee was or should reasonably have been aware of unless those matters are raised in accordance with the time frames of Section 3002 a 1 or 3002 a 3.

3. All other grievances must be initiated within fifteen (15) working days from the occurrence of the matter out of which the grievance arose or the time the aggrieved party or employee became aware of, or should reasonably have been aware of, being aggrieved. An extension may be mutually agreed upon to provide for unusual cases. However, the parties agree that unfamiliarity with the specific provisions of this Agreement shall not constitute a basis for extension of these time limits.

(A). In dealing with matters which arise while on TAD assignments, employees shall promptly discuss those matters with the appropriate supervisor. (If a supervisor of the Employer is assigned to the TAD then he/she is the appropriate supervisor.) In the event there is no supervisor of the Shipyard assigned to the TAD the employee should bring the matter to their Shop Head's and/or designee's attention. If after such a discussion has occurred and the employee elects to file a written grievance, the time limits of subsections 1, 2 or 3 above shall apply beginning on the first workday of the employee's return to the Shipyard.

b. **Content.** All grievances shall be reduced to writing on the appropriate form supplied to the Council by the Employer. The grievance form shall contain, as a minimum, the following details: the name, badge number, Shop/Code, the Council's grievance control number, shift assignment, and position title of the employee; a statement of the specific nature of the matter being grieved in relation to the employee; time and date of the action or incident giving rise to the grievance; the Agreement provision, rule or regulation alleged violated, if applicable; the date of the discussion with the immediate supervisor, if ap-

plicable, and the date of the answer; the desired corrective action personal to the employee; the employee's election to have representation or to seek direct adjustment; and the signature(s) of the employee and the appropriate representative (if representation is elected). Except for completion of a required signature block, a grievance form deficient in required details will be returned to the employee (representative, if an "On Behalf Of" grievance) for inclusion of additional information. The employee will have three (3) work days from the date of receipt of the grievance form to have it completed and resubmitted to the appropriate Management Official. If a signature is required, the appropriate individual will sign the applicable block and immediately return the grievance form to the Management Official.

3003. **Employee Grievance Procedure.** The following procedure applies to all eligible employees of the unit who pursue a grievance with Council representation.

a. **Step 1.** An employee or Council Representative shall submit the grievance in writing on the appropriate form to the grievant's immediate supervisor (except as provided in Sections 3004 and 3005). The immediate supervisor shall meet with the grievant and Council Representative within three (3) working days of receipt of the form and shall issue a written decision within three (3) working days of the meeting.

b. **Step 2.** If not resolved at Step 1, the grievance form shall be presented to the Shop/Branch Head within five (5) working days of receipt of the immediate supervisor's decision (except as provided in Section 3004). The Shop/Branch Head or designee shall meet with the grievant and Council Representative within ten (10) working days of receipt of the form. The Shop/Branch Head shall issue a written decision within fifteen (15) working days of the meeting.

c. Meetings held at each step of this procedure shall be as informal as practical.

d. Attendance at the Step 2 meeting shall normally be limited to the grievant, the Representative of record, Council President, Shop/Branch Head or designee (except as provided in Section 3004), and Employer representative. (See also Section 0608 g.)

3004. **Procedures for Other Appeals.**

a. **Disciplinary Actions.** Appeals of disciplinary actions will begin at the step level of the grievance procedure immediately above the level of the official effecting the action; i.e., reprimands issued by a Foreman would be presented to the General Foreman at Step 1 (Section 3003 a), and reprimands issued by a Shop/Branch Head would be presented to the Group Superintendent/Division Head at Step 2 (Section 3003 b). Appeals of suspensions of fourteen (14) days or less shall be presented to the Group Superintendent or Division Head at Step 2 (Section 3003 b).

b. **Adverse Actions.** Grievances of Adverse Actions (removals, suspensions of more than fourteen (14) days, furloughs of thirty (30) days or less, or reduction in grade or pay) will be submitted to the Employment Management Relations Division (Code 160) at Step 2. Code 160 shall appoint an appropriate Management Official to hear the grievance at Step 2 (Section 3003 b).

c. **EEO Complaints.** Grievances alleging prohibited discrimination will begin at the step level of the Grievance Procedure immediately above the level of the Alleged Discriminating Official (ADO) at the corresponding step of the Grievance Procedure. If the ADO is the Group Superintendent or Division Head, or is outside of the grievant's parent Department, the grievance shall be submitted to the Employee Management Relations Division, Code 160, at Step 2 (Section

3003 b ). Code 160 shall appoint an appropriate Management Official to hear and decide the grievance in accordance with 3003 b (time frames).

d. **Letters of Caution and Requirement.** Grievances concerning Letters of Caution, Requirement or Admonishment shall begin with the Management Official who issued the letter(s) and at the step level of the Grievance Procedure which corresponds with that Management Official.

e. **Performance Ratings.** Grievances concerning Performance Appraisal Program Ratings shall begin with the reviewing official at Step 1 (Section 3003 a). If the appraiser is the Group Superintendent or Division Head, the grievance shall be submitted to Code 160 for the appointment of an appropriate Management Official to hear and decide the grievance at Step 2 (Section 3003 b time frames).

3005. **Employee Election on Adverse Action and Discrimination Complaints.**

a. **Adverse Action.** An aggrieved employee may elect to appeal adverse actions either to the Merit Systems Protection Board or through the Negotiated Grievance Procedure, but not both. Should an employee elect to appeal through the Negotiated Grievance Procedure, it shall be processed in accordance with Section 3004 b.

b. **Discrimination Complaint.** An employee may elect to process an individual discrimination complaint either through the Shipyard EEO Complaint Procedure or through the Negotiated Grievance Procedure, but not both. Appeals through the Negotiated Grievance Procedure, shall be processed in accordance with Sections 2904, 3002 and 3004 c. Class action EEO complaints shall be processed through the Shipyard EEO Complaint Procedure only.

3006. **Direct Adjustment of Grievances.** Any employee, or group of employees, in the unit may present grievances to the Employer and have them adjusted without the intervention of a Council Representative so long as the adjustment is not inconsistent with the terms of this Agreement and the Council President or Chief Steward has been given the opportunity to be present at the adjustment. Such grievances shall be submitted to the Management Official appropriate at Step 2 (Section 3003 b). The Management Official to whom the grievance is presented shall inform the Council President of the processing of an employee grievance and provide the Council President or Chief Steward the opportunity to be present at those meetings at which the employee is in attendance. All provisions contained in this Article relating to grievances and the processing thereof shall apply to the Procedure of direct adjustment, except that the employee shall not be permitted representation. The Grievance Form shall be annotated "Direct Adjustment". Once the employee has elected to seek direct adjustment, the employee may not subsequently receive representation on that grievance. Direct Adjustment grievances shall not be processed to arbitration.

3007. **Grievability and Arbitrability Disputes.**

a. The parties acknowledge that during the life of the Agreement disputes regarding the coverage (see Section 3001) of the Grievance Procedure or timeliness (Section 3002 a) may arise. When the Employer raises such an issue, the Employer's decision may be limited to a statement on the Grievance Form that the matter is not grievable/not timely. If the Council disagrees with the Employer, the Council President will request, in writing within ten (10) working days of receipt of the Employer's decision, confirmation from Code 160 of the non-grievability position. The original Grievance Form will be attached to the Council President's request. Code 160 will issue a written response to the Council President explaining the Employer's position

within five (5) working days of receipt of the request. If the Council continues to disagree with the Employer's position, the Council may request to arbitrate the non-grievability of the issue of coverage/timeliness in accordance with Section 3102.

b. Following the receipt of a decision that a grievance is not excluded by Section 3001 d or is timely, the parties may then resume the processing of the grievance on its merits at that step at which the statement of non-grievability/untimeliness was issued. The parties agree that no grievance may proceed to Arbitration absent a decision on the merits at the final step of either the employee or Council and Employer Grievance Procedures.

3008. **Processing Time Limits.** Failure of the employee or representative (when acting on behalf of an employee) to meet the time limits prescribed in Sections 3002 and 3003 will be construed by the Employer to mean that the employee and/or Council desires not to proceed with the grievance. Failure by the Employer to meet the time limits prescribed in Section 3003 will automatically move the grievance to the next step. Time limits may be extended at the request of the Council or the Employer. No grievance may proceed to arbitration absent a written final step decision on the merits of the matter from the party to whom the grievance was presented.

3009. **Access to Records.** A party shall, upon request of the other party, permit inspection and reproduction of pertinent records without charge, insofar as permissible without violating laws, government-wide regulations and agency policies in existence at the time this Agreement was approved and by subsequently published agency policies and regulations required by law or by the regulations of appropriate authorities.

3010. **Distribution of Grievance Form.** Upon completion of each step of the Negotiated Grievance Procedure, the Grievance Form will be processed as follows:

a. The original form will be given to the grievant.

b. A copy shall be forwarded to the representative recorded on the form.

c. Two (2) copies shall be forwarded to Code 160. One (1) copy of which will be forwarded to the Council by Code 160.

d. A copy shall be forwarded to the administrative office of the Group or Code involved.

3011. **Time Allowed.**

a. Time allowed granted to the representatives to perform authorized functions may be used solely within the perimeter of Puget Sound Naval Shipyard except as provided in Section 0608 d.

b. Overtime or any other form of remuneration will not be paid to the grievant or the grievant's representative.

3012. **Council and Employer Grievance Procedure.** This section provides the procedure and requirements to be followed for Council and Employer initiated grievances and all grievances pursued "On Behalf Of" a unit employee(s).

a. **Definition.**

1. A **Council or Employer Grievance** is defined as a complaint which is not identifiable to a specific individual employee but is the result of an action by either party that significantly affects the provisions of this written Agreement.

2. An **"On Behalf Of" Employee Grievance** is defined as any grievance filed by a Council Representative to which the named employee(s) is not signatory and which is specific to the named employee(s).

b. **Content.** In pursuing Council or Employer Grievances, the statement of the grievance must contain as a minimum: the specific nature of the grievance as related to the instances which occasioned the grievance, the desired corrective action which is specific to the Council or the unit, but in no event to individual employees; and the specific Agreement provision alleged violated. In pursuing grievances "On Behalf Of" unit employee(s) the content requirements of Section 3002 b, with the exception of an employee signature, shall apply.

c. **Procedure.** The aggrieved party shall submit its statement of the grievance on the appropriate form to the other party in accordance with the time limits outlined in Section 3002. If the Council is aggrieved, it shall submit its statement to Code 160. If the Employer is aggrieved, its submission shall be to the Council President. Within five (5) working days of receipt, the parties shall schedule a meeting for the purpose of discussing the matter and exploring appropriate resolution, if any. The initial meeting shall occur within fifteen (15) workdays of receipt of the grievance unless mutually agreed otherwise by the parties. If the matter is unresolved due to the need of either party to seek additional information, another meeting will be scheduled. The individuals present at these meetings shall be the Council President, a Chief Steward, and appropriate representatives of the Employer. The two (2) Council Representatives will be granted official time to attend the meeting(s) in accordance with Section 0608. The Business Agent of the affiliate, if a non-Shipyard employee may also be permitted to attend the meeting(s). The Employer's decision regarding the Council's grievance (or the Council's decision regarding the Employer's grievance) shall be in writing on the appropriate form and returned to the aggrieved party within ten (10) working days of the final meeting or no later than an agreed upon date.

d. The failure of the aggrieved party to meet the above time limits shall be construed by the other party to mean that the

grievance is withdrawn. The failure of the appropriate party to issue a written decision on the grievance shall not be a basis on which to pursue the grievance to arbitration on its merits.

## ARTICLE THIRTY-ONE
## Arbitration

3101. **Submission.** The parties agree that prior to considering arbitration every effort shall be made to resolve grievances in house, and will direct their resources towards achieving that goal. If such efforts fail, the grievance may, upon written request of the party desiring arbitration, be referred to arbitration. Such written request must be submitted not later than thirty (30) calendar days following the date of the 2nd step grievance decision (except as specified in 3005 b). In addition to these efforts, the parties will jointly explore settlement of the grievance at the prearbitration conference.

3102. **Authority to Invoke.** Arbitration may be invoked only by the Council or the Employer. Arbitration on an employee grievance may be invoked only by the Council. Arbitration concerning an Employer or Council grievance may be invoked by the party initiating the grievance. Arbitration may not be invoked on employee grievances which have been submitted for direct adjustment.

3103. **Selection of an Arbitrator.**Within seven (7) working days from the date of the arbitration request, the parties shall meet for the purpose of endeavoring to agree on the selection of an arbitrator. If the parties cannot agree to the selection of an arbitrator, either party may request a list of five (5) impartial persons, qualified to act as arbitrator, from the Federal Mediation and Conciliation Service (FMCS). The parties shall then meet again, within three (3) working days following the receipt of the list from FMCS. If the parties cannot agree on one (1) of the arbitrators on the FMCS list, then the Council and the Employer will each strike one (1) arbitrator's name from the list. This striking

process shall be repeated and the remaining name shall be the duly selected arbitrator.

3104. **Submission Statement.** Following selection of the arbitrator and indication of availability, the parties will prepare a joint letter submitting the issue in dispute. The letter shall present, in question form, the matter on which arbitration is sought and shall outline the Agreement provisions governing the arbitration. It may contain mutually agreed on stipulations of fact and it may be accompanied by any documents that the parties mutually agree should be submitted to the arbitrator in advance of the hearing which may not necessarily be stipulations of fact. Further, if the parties are mutually agreed, the entire matter may be submitted to arbitration for review without hearing.

3105. **Prearbitration Conference.**

a. The parties shall hold a prearbitration conference no less than two (2) weeks prior to the scheduled hearing date and in no event more than sixty (60) calendar days from the date of the request for arbitration. The failure of the party requesting arbitration to meet the above time limits will be understood by the other party as a decision to rescind the request for arbitration.

b. The purpose of the prearbitration conference is to insure that participants will be kept to a minimum and the hearing will be as brief as possible. Each party will endeavor to outline its case to the other party. Matters that will be discussed include witnesses, exhibits, stipulations, and affidavits or depositions which either party intends to introduce. It is understood that the parties will seriously reconsider settlement of the grievance or dispute at this conference.

3106. **Arbitration Hearing.** The Arbitration hearing will be held during the standard day shift of the standard workweek. Upon

the request of either party, or the arbitrator, the arbitration proceedings will be recorded. Post hearing briefs may be submitted by either party. The fees and expenses of the arbitrator, the cost of reporting and transcribing the proceedings, and other incidental costs incurred by the Employer shall be borne equally by the parties. The Council Representative, if an employee of the Shipyard, who will act as the arbitral spokesperson for the Council, shall be permitted a reasonable amount of time allowed to prepare for the presentation of the Council's position to the arbitrator.

3107. **Decision.** The arbitrator will be requested to render a decision within thirty (30) days of the conclusion of the hearing, unless the parties otherwise agree. The arbitrator shall not change, modify, alter, delete, or add to the provisions of the Agreement, as such right is the prerogative of the parties only. The arbitrator shall not interpret this Agreement in such a way as to be inconsistent with law, rule, or regulation. The arbitrator will have the authority to interpret this Agreement to apply it to the particular case under consideration; to modify penalties imposed as disciplinary/adverse action; and to award reinstatement of back pay and benefits consistent with the provisions of law and regulation.

3108. **Award.** The arbitrator's award shall be binding on the parties; however, either party may file exceptions to an award with the Federal Labor Relations Authority, under regulations prescribed by the FLRA. If either party decides to take exception to the arbitrator's award, or to seek advice or guidance from higher authority on implementation of the award, they will notify the other party. Such notice may be subsequent to the exception or request for guidance.

## ARTICLE THIRTY-TWO
## Parking

3201. **INTERIM AGREEMENT.** In 1984 the parties negotiated

regarding the elimination of private vehicle parking from the CIA. As a result of that negotiation, an Interim Agreement for Parking was arrived at and remains in force and effect pending a final resolution. The Interim Agreement for Parking shall be considered to have the force and effect of this Agreement, until such time as it is replaced by a final agreement, which shall be incorporated as part of this Agreement.

## ARTICLE THIRTY-THREE
## Civic Responsibilities

**3301. Court Leave.** In the event an employee is called for jury duty or is summoned to appear as a witness in a court case in a non-official capacity where either the Federal, State or local Government is a direct party to the proceedings, the Employer will pay the employee at the basic rate for the time lost from the employee's basic work schedule for such service. If an employee is called for jury or witness service the employee shall promptly notify the Employer in order that arrangements may be made for court leave to cover the absence from the activity. The employee will present the Employer satisfactory evidence of the time served on such duties. An employee serving as a juror or witness in a State or municipal court must collect all fees and allowances. The gross sum of fees received must be reported to the activity and will be credited against the amount payable to the employee by the Shipyard. Allowances received for meals, transportation, etc., may be retained by the employee.

3302. **Voter Registration Assistance.** In order to provide employees the opportunity to register to vote, registrars will be provided in Group Personnel Offices and appropriate offices of the Industrial Relations Office. Employees will be excused to register at Shipyard locations.

3303. **Voting.** The Employer and the Council recognize that employees are encouraged to exercise their right to vote. In

group of employees with the Employer, and in no case shall it be binding upon the parties hereto unless such agreement is made and executed in writing between the parties hereto and approved by the Secretary of the Navy.

3906. **General Provisions.** The failure of the Employer or the Council to insist, in any one or more incidents, upon performance of any of the provisions of this written Agreement shall not be considered as a waiver or relinquishment of the Employer's or the Council's right to future performance of any such provisions, and both the Council's and the Employer's obligation to such performance shall continue in full force and effect.

In witness whereof, the parties hereto have executed this written Agreement on this eleventh day of September Nineteen Hundred and Eighty Seven.

| **FOR THE UNION** | **FOR THE EMPLOYER** |
|---|---|
| Kenneth T. Sowell,<br>President<br>Bremerton Metal Trades<br>Council | Jack W. Samford<br>Captain, U.S. Navy<br>Shipyard Commander |
| Thomas A. McKean and<br>Michael T. Kelly<br>Chairmen, Negotiating<br>Committee<br>Bremerton Metal Trades<br>Council | John M. Jacobs<br>Chairman, Negotiating<br>Committee<br>Puget Sound Naval<br>Shipyard |
| Jonathan Bagge<br>Edward Bevelhimer<br>Thomas Gary<br>Howard Jackson | Alfred Burton<br>Robert Craw<br>Jacqueline Evans<br>TammyLynn Johnson |
| Larry Mann<br>William Priddy<br>Douglas Smith<br>Kenneth Sowell | Donald Nyswonger<br>Gerald Phipps |

This Agreement was approved by the Secretary of the Navy on 1 October 1987.