**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WALTER JAYNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-856C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

1. Plaintiffs in this case are wage-grade employees and former employees of the Puget Sound Naval Shipyard ("the shipyard") located in Bremerton, Washington.

2. The plaintiffs, and all shipwrights, are represented by the Bremerton Metal Trades Council ("BMTC" or "union"), a union that is comprised of affiliated local unions. Compl. ¶ 2; App. 40.[1] One of the affiliated unions is the United Brotherhood of Carpenters and Joiners, local 2317. In accordance with the Federal Service Labor-Management Relations statute, BMTC is recognized as the exclusive representative for plaintiffs and all non-supervisory shipwrights. App. 1-2 (Second Declaration of Lynnette Niemi ("Second Niemi Decl.") ¶¶ 3-4); 13-15.

3. The collective bargaining agreement ("CBA") at issue in this case took effect in 1987. App. 11. Pursuant to this agreement, the parties negotiated the right of employees to receive environmental differential pay ("EDP"), including high pay. App 17-21.

4. Article 10, section 1002 of the CBA states the general conditions under which EDP is authorized. App. 17-18. In part, "Pay for environmental differential is authorized: (1) for

[1] "Compl. ___" refers to the plaintiffs' Fourth Amended Complaint. "App. ___" refers to a page in the appendix filed with Defendant's Motion to Dismiss or, in the Alternative, Motion to Remand and for Partial Summary Judgment.

exposure to an unusually severe hazard which could result in significant injury, illness, or death, such as on a high structure when the hazard is not adequately alleviated by mechanical equipment or protective devices being used or on an open structure when adverse conditions such as darkness, lightning, steady rain, snow, sleet, ice or high wind velocity exist ...." Id.

5. Section 1003 of the CBA provides that "Employees will be paid environmental differentials, when warranted, in accordance with FPM Supplement 532-1 and Appendix J attached thereto." App. 18. Pursuant to Appendix J of the Federal Personnel Manual Supplement ("FPM") (contained in Appendix II of the CBA), "high work" is defined as "working on any structure at least 100 feet above the ground, deck, floor or roof or from the bottom of a tank or pit." It also includes "working at a lesser height if the footing is unsure or the structure is unstable ...." App. 41.

6. Section 1004 of the CBA provides that immediate supervisors will notify employees when environmental pay is authorized, and that "[i]f at any time during a job assignment an employee believes that additional pay is warranted, the employee will call the matter to the attention of the immediate supervisor who will advise the employee if additional high pay may be allowed." App. 19. Any complaint regarding high pay not resolved in such discussions between the employer and the employee could be resolved through the negotiated grievance procedures." Id.

7. Article 30 of the CBA contains a two-step grievance procedure applicable "to all eligible employees of the unit who pursue a grievance with Council representation." App. 28 (CBA § 3003). In the first step, the employees submit their grievances to their immediate supervisor and in the second step, they are submitted to the shop or branch head. Id.

8. Article 31 of the CBA covers arbitration provisions. "Arbitration may be invoked only by

the Council or the [shipyard]. Arbitration on an employee grievance may be invoked only by the Council. Written requests for arbitration must be submitted within 30 calendar days after the date of the second-step grievance." App. 35 (CBA § 3101).

9. One of the principal jobs of shipwrights is to build and dismantle staging for ships that are being built, repaired, or decommissioned. Between fifty to one hundred stagings are built per week. Most staging that is constructed is less than twenty feet high and is built by teams of two shipwrights. On occasion, higher staging is built which, depending upon the size, may have teams of four to ten shipwrights. Although very high staging may be built, even up to 130 feet, that is extremely rare and occurs usually only once every couple of years. App. 1, 2 (Second Winkler Decl. ¶¶ 2, 8-10).

10. Prior to 1999, the shipyard did not have a specific height trigger for the payment of an environmental differential to shipwrights for high work under 100 feet. Instead, consistent with the CBA, shipwrights could request high pay from a supervisor in specific instances, who was to assess the particular job conditions and determine whether additional pay was warranted. See App. 19, 110.

11. On April 13, 1999, the BMTC, the exclusive representative of the shipwrights, filed a grievance on behalf of ninety-nine employees, including some of the plaintiffs, demanding back pay for high work. <u>See</u> App. 49-60.

12. Eighteen of the current plaintiffs did not sign the original grievance, including Dwight J. Ambler, Ireneo G. Amable, Ralph Bergman, Harry R. Calhoun, Berend Freese, Frederick A, Green, Jarrod Hogue, Stephen A. Jacobson, James M. Jazuk, Joseph M. McKinnon, Roy E. Moreland, Denny D. Parsons, Ross K. Provoe, Clifford L. Reinbold, Tally K. Roy, Greg Williams, Shawn Williams, and Joseph Wodyga. <u>Compare</u> App. 53-60 <u>with</u> Compl. 1.

13. The grievance stated that: "I have been aggrieved in that Shop 64 [Puget Sound Naval Shipyard] has continually denied me the appropriate amount of high pay, 25% additional environmental differential, for performing high work as outlined by the Code of Federal Regulations and the BMTC Agreement." App. 50.

14. The corrective action sought was "to be compensated back environmental pay for high work at a rate of 1040 hours per year for all years in Shop 64 (plus interest). Compensation for back environmental pay for high work must also be included for overtime worked during the same period (plus interest.)." App. 51.

15. Messrs. Joe Hamel and Joe Aiken were named as the union representatives. App. 50. The grievance number assigned was 05153-K. Id. Ms. Mary Jane Tallman was the Superintendent for several trade shops, including Shop 64, and the management official responsible for resolving the grievances. Id. Ms. Tallman created a management team to investigate the grievance. Included on this team were Mr. Mark Winkler and Ms. Lynnette Niemi. App. 4 (Second Winkler Decl. ¶ 21); App. 9 (Second Niemi Decl. ¶ 5); 100-02.

16. In investigating the grievance, the management team examined how EDP had been handled elsewhere within the shipyard, and other shipyards. The team also wanted to work with the union to amicably resolve the matter if possible. The management team met with the union on several occasions. See App. 61-75, 87-88, 107.

17. Joe Aiken and the shipyard believed that they reached an agreement was reached to settle the grievance. See App. 61-75, 87-88, 107. The grievance settlement provided that high pay would be provided prospectively to shipwrights who build or dismantle staging beginning from the first level above the ground or deck unless flooring and safety rails are installed or fall protection devices can be properly used. App. 65. High pay would also

be paid prospectively to shipwrights who build or dismantle hanging staging under similarly unguarded situations when fall protection devices cannot properly be used. Id. The grievance settlement also provided that shipwrights who had performed such high work would, in accordance with the grievance provisions of the CBA, receive high pay from 15 days prior to the filing of the grievance, to the date of resolution on January 18, 2000. Id.; App. 4 (Second Winkler Decl. ¶¶ 21-23).

18. On or about January 14, 2000, Mr. Aiken met with Ms. Tallman to sign the grievance settlement. App. 87-88. After discussing the grievance settlement, Mr. Aiken left and met with the grievants to discuss the settlement agreement. App. 89-90. Later, he returned and signed the settlement. Although the settlement was termed a "decision," it was fully negotiated and mutually agreed to by both the shipyard and Mr. Aiken. Mr. Aiken's signature on the "decision" constituted the union's agreement that the grievance was resolved and the union would not proceed to arbitration. App. 96, 97. The union did not seek arbitration. Id.; App. 6-7 (Second Winkler Decl. ¶¶ 30-32).

19. The agreement called for the payment of interest upon the back pay. App. 65. Payment was to be made by the Defense Finance and Accounting Service ("DFAS") which processes all civilian pay for Navy civilians. As of August 2000, the interest payments had not been made. Consequently, on August 30, 2000, the union filed an unfair labor charge against the shipyard. In this charge, the union alleged that the shipyard commander had violated the terms of grievance 05153-K by not paying the agreed upon interest without giving the union notice or the opportunity to bargain further. It also charged that DFAS had refused "to comply with [the] negotiated settlement agreement, Grievance #05153-K, sub paragraph IV (2) by refusing to pay the appropriate interest for the back pay ...." App. 78.

20. On April 14, 2000, fifty-six individual plaintiffs filed a complaint against the Defendant in the United States District Court for the Western District of Washington under the Back Pay Act, 5 U.S.C. § 5596 (2000). The plaintiffs sought review of the grievance decision's fifteen-working day limit on the back pay awarded for high work allegedly performed prior to the filing of the grievance and a grant of class-wide relief declaring an entitlement to six years' back pay with interest. Jaynes v. Danzig, No. C00-5221RJB (W.D. Wash. dismissed May 29, 2001), aff'd, Jaynes v. Johnson, 65 F. App'x 176 (9th Cir. 2003). The district court denied class certification on December 6, 2000. See Order Den. Pls. Mot. to Certify Matter as Class Action, Jaynes v. Danzig, No. C00-5221RJB (W.D. Wash. Dec. 6, 2000).

21. In March 2001, the defendants moved for dismissal for lack of subject-matter jurisdiction. The district court granted that motion.

22. On July 9, 2001, plaintiffs appealed to the United States Court of Appeals for the Ninth Circuit, seeking review of the district court's orders denying class certification and dismissing the case on jurisdictional grounds. On May 22, 2003, the Ninth Circuit affirmed the district court's dismissal for lack of jurisdiction and remanded the case to the district court with instructions to transfer the case to the United States Court of Federal Claims. See Jaynes, 65 F. App'x at 178 (9th Cir. 2003). Having affirmed the district court's decision to dismiss the case for lack of jurisdiction, the Ninth Circuit declined to review the order denying plaintiffs' motion for class certification. Id. at 180.

23. The case was transferred to this Court on May 18, 2004, pursuant to 28 U.S.C. § 1631. Plaintiffs filed their complaint in the Court of Federal Claims on June 15, 2004, alleging that defendant, the United States, had failed to pay back pay for high work as mandated

by Federal laws, regulations, and their CBA. As in the original grievance, the plaintiffs allege they are entitled to six years of back pay for high pay under the Back Pay Act.

24. None of the work at issue in this case involves a "swinging stage" or "boatswains chair."

25. The intent of the grievance settlement was to compensate shipwrights with generous future pay in order to resolve the back pay claim. See also App. 91-92, 103-04, 105-06, 108-09, 110-13. In other words, the future pay policy of paying for work over five feet, as approved by Ms. Tallman in accordance with her authority to settle the grievance, was never intended to be applied to any grievance pay claims that related to the years before the grievance was filed, rather it was intended to cancel those claims.

26. There is no evidence that the generous five-foot pay rule was ever intended to be applied retroactively to the back pay claims; rather, all testimony indicated that the grievance decision was intended to cancel such back pay claims. The understanding of Ms. Tallman, representing the shipyard, and Mr. Aiken, as the voice of the exclusive representative of the employees, was that the parties were dropping their back pay claim based upon generous future pay. App. 93, 95-96, 107.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:
TELIN W. OZIER
Trial Counsel
Department of the Navy
OGC, Navy Litigation Office
720 Kennon Street., SE
WNY Bldg. 36, Room 256
Washington, D.C. 20374-5013

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.Mager@usdoj.gov

STEVEN L. SEATON
Labor Counsel
Department of the Navy
Puget Sound Naval Shipyard
1440 Farragut Avenue
Bremerton, WA 98314-5001

July 2, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

This is to certify that on this 2nd day of July, 2007, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice