NO. 04-856C

Judge George W. Miller

UNITED STATES COURT OF FEDERAL CLAIMS

WALTER JAYNES, et al.,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant.

# PLAINTIFFS' MOTION NO. 3: FOR SUMMARY JUDGMENT REGARDING EFFECT OF STATUTE OF LIMITATIONS

Donald B. Scaramastra
Jennifer A. Krebs
GARVEY SCHUBERT BARER
Attorneys for Plaintiffs

Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

# TABLE OF CONTENTS

**Page**


I. Introduction .....1

II. Issue Presented .....1

III. The Shipwrights May Seek Unpaid High Pay That Accrued Within Six Years of When They Filed Suit .....1

IV. This Action Is Deemed Filed As of April 14, 2000 .....3

V. The Shipwrights' Claims Accrued Each Time the Shipyard Failed to Pay the Environmental Differential .....3

VI. The Filing of a Class Action Tolled the Statute of Limitations for All Putative Class Members .....5

VII. Tolling Ceased Only When this Court Denied Class Certification .....6

VIII. Amendments to the Complaint and Changes to the Class Definition Do Not Affect Any of the Preceding Analysis .....8

A. The Amendment of the Complaint Does Not Affect the Statute of Limitations Analysis Because the Amended Claims Relate Back to the Original Complaint .....8

B. Amendments to the Class Definition Do Not Alter the Statute of Limitations Analysis Because the Definition Was Narrowed, Not Broadened, Over Time .....12

IX. The Only Difference in the Plaintiffs' Claim Periods Is When the Statute of Limitations Was Tolled Again .....14

X. The CSRA Amendment is Immaterial to the Shipwrights' Claim Periods .....16

XI. Conclusion .....18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott v. United States*, 47 Fed. Cl. 582 (2000) .......... 19
*Abramson v. United States*, 42 Fed. Cl. 621 (1998) .......... 18
*Alder Terrace v. United States*, 161 F.3d 1372 (Fed. Cir. 1998).......... 4
*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).......... 5
*Armitage v. United States*, 18 Cl. Ct. 310 n.3 (1989).......... 6
*Baldwin Co. Welcome Center v. Brown*, 466 U.S. 147 (1984) .......... 8
*Baldwin Park Cmty. Hosp. v. United States*, 231 Ct. Cl. 1011 (1982).......... 14
*Barbieri v. United States*, 15 Cl. Ct. 747 (1988) .......... 5, 6
*Brown Park Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449 (Fed. Cir. 1997) .......... 4
*Burke v. United States*, 5 Cl. Ct. 759 (1984).......... 4
*Canfield v. United States*, 14 Cl. Ct. 687 (1988).......... 6
*Christian v. United States*, 46 Fed. Cl. 793 (2000).......... 6
*Cottrell v. United States*, 42 Fed. Cl. 144 (1998) .......... 4
*Creppel v. United States*, 33 Fed. Cl. 590 (1995) .......... 9, 10, 14
*Crown Coat Front Co. v. United States,* 386 U.S. 503 (1967).......... 4
*Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).......... 7, 15
*Fifth Third Bank of W. Ohio v. United States*, 52 Fed. Cl. 829 (2002).......... 9
*Gonzalez v. Crosby*, 545 U.S. 524, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005) .......... 7
*Jaynes v. United States*, 75 Fed. Cl. 218, n.8 (2007).......... 13
*Mudge v. United States*, 59 Fed. Cl. 527 (2004).......... 18, 19
*Polite v. United States*, 24 Cl. Ct. 508 (1991) .......... 4
*Quinault Allottee Ass'n v. United States*, 197 Ct. Cl. 134 (1972) .......... 6
*Rogers v. United States*, 6 Cl. Ct. 829 (1984).......... 4
*Snoqualmie Tribe v. United States*, 178 Ct. Cl. 570 (1967).......... 14, 15
*Spehr v. United States*, 51 Fed. Cl. 69 (2001).......... 11
*Stockton East Water Dist. v. United States*, 62 Fed. Cl. 379 (2004) .......... 3
*Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000).......... 5
*Tiller v. Atlantic Coast Line RR Co.*, 323 U.S. 574 (1945).......... 10
*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) (Powell, J., dissenting).......... 15
*United Contractors v. United States*, 177 Ct. Cl. 151 (1966) .......... 4
*Vann v. United States*, 190 Ct. Cl. 546 (1970).......... 10
*Wells v. United States*, 420 F.3d 1343 (Fed. Cir. 2005).......... 4
*White Mountain Apache Tribe of Arizona v. United States*, 8 Cl. Ct. 677 (1985). 10, 11

**Statutes**

28 U.S.C. § 1631.......... 3
28 U.S.C. § 2501.......... 1, 3
31 U.S.C. § 3702(b)(1).......... 2
31 U.S.C. § 3702.......... 1
5 U.S.C. § 5596(b)(4) .......... 2

**Other Authorities**

H.R. REP. NO. 105-532 at 342 (1998) .... 2
Pub. L. 105-261 § 1102 (1998) .... 2

**Rules**

FRCP 15(c) .... 8
RCFC 15(c) .... 7, 8, 9, 13
RCFC 8(c) .... 18

## I. Introduction

The Shipyard's answer asserts the statute of limitations as an affirmative defense and the Shipyard has now sought summary judgment on that defense. Plaitniffs oppose the motion and cross-move for a determination that no plaintiff's claim is time-barred and a determination of the claim period for which each plaintiff may potentially recover high pay.

## II. Issues Presented

1. When did plaintiffs' claims for high pay accrue?

2. When is this action deemed to have commenced?

3. How far back before this action was commenced may plaintiffs seek back pay?

4. For how long did this action toll the statute of limitations?

5. When did tolling cease?

6. To what extent did plaintiffs' claims sunset in the months between this Court's denial of class certification and the formal joinder by most plaintiffs in this lawsuit?

7. To what extent do changes in the various complaints in this action change the answers to any of the questions above?

## III. The Shipwrights May Seek Unpaid High Pay That Accrued Within Six Years of When They Filed Suit

28 U.S.C. § 2501 provides that suits brought before this Court are time-barred "unless the petition thereon is filed within six years after such claim first accrues." This six-year limitations period is identical to that contained in 31 U.S.C.

§ 3702, which governs the presentation of claims for payment directly to the federal agency. A claim under that section must be received by the official responsible for deciding it "within 6 years after the claim accrues."[1]

The Back Pay Act likewise contains a provision, 5 U.S.C. § 5596(b)(4), which allows the recovery of up to six years of back pay that accrued before suit was filed. This provision was added by 1998 amendment.[2] The legislative history surrounding the adoption of this amendment explains that the Back Pay Act's six-year limitations period was intended to be coterminous with this Court's statute of limitations:

> This section would clarify that any award of back pay … shall not exceed six years …. Arbitrators and administrators have, in some cases, applied the six year limit found in section 2402 of Title 28, United States Code, and in section 3702 of title 31, United States Code. In other cases, some arbitrators and administrators have applied no time limit, since none is specified within section 5596 …. **This provision would remove the ambiguity of these various sections by establishing a standard six year limit … and would ensure that the amount of redress available to employees would be the same regardless of the statutory avenue chosen to seek that redress.**[3]

This Court need not unravel the mysteries of the Back Pay Act to determine that plaintiffs may recover on any claims for high pay that accrued within six years of when this action was filed. The next question is: when was that?

---

[1] 31 U.S.C. § 3702(b)(1).
[2] Pub. L. 105-261 § 1102 (1998).
[3] H.R. REP. NO. 105-532 at 342 (1998) (emphasis added).

## IV. This Action Is Deemed Filed As of April 14, 2000

Certain shipwrights initially filed suit for high pay in the Western District of Washington on April 14, 2000. Although that court dismissed the claim for lack of subject matter jurisdiction, the Ninth Circuit determined that the district court lacked subject-matter jurisdiction and remanded for transfer to this Court under 28 U.S.C. § 1631. That statute provides that when a federal case is transferred to another court due to a lack of jurisdiction, "the action…shall proceed as if it had been filed in…the court to which it is transferred on the date upon which it was actually filed in…the court from which it is transferred." The Court of Federal Claims has affirmed that the pertinent date for the statute of limitations is the date upon which the action was originally filed in federal district court, regardless of how long it takes for the Court of Federal Claims to hear the case.[4] This lawsuit, therefore, is deemed to have commenced April 14, 2000, the date of the original filing in federal district court.

The plaintiffs may sue on all claims for back pay that accrued within six years of that date. The next task, therefore, is to identify when those claims accrued.

## V. The Shipwrights' Claims Accrued Each Time the Shipyard Failed to Pay the Environmental Differential

A cause of action accrues under this Court's jurisdictional statute, 28 U.S.C. § 2501, when "all events have occurred which fix the liability of the government and

[4] *Stockton East Water Dist. v. United States*, 62 Fed. Cl. 379, 390 (2004).

entitle the claimant to institute the action."[5] The Shipwrights' claims for back pay are continuous in that each claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages."[6] Therefore, the liability of the government was fixed each pay period when the Shipyard failed to pay a plaintiff the environmental differential to which he or she was entitled.[7]

Where a plaintiff pursues mandatory administrative remedies before suing, the claim is deemed not to accrue until those remedies have been exhausted.[8] This is not true, however, where plaintiffs delay filing suit to pursue administrative remedies that are merely permissive.[9] As this Court has previously recognized, the grievance procedures the Shipwrights followed were required by neither the Civil Service Reform Act nor the parties' collective bargaining agreement. Accordingly, the pendency of that grievance did not delay the accrual of the plaintiffs' claims. Put another way, the filing of the Shipwrights' grievance does not allow them to

---

[5] *Alder Terrace v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998).
[6] *Wells v. United States*, 420 F.3d 1343 (Fed. Cir. 2005), *quoting Brown Park Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997).
[7] *Wells*, 420 F.3d at 1345 ("Because compensation was due and payable periodically, we found that a claim arose each time the government allegedly failed to pay the proper amount of overtime pay and ruled that the continuing claim doctrine was available.")
[8] *E.g. Crown Coat Front Co. v. United States,* 386 U.S. 503 (1967).
[9] *See Cottrell v. United States*, 42 Fed. Cl. 144, 154 (1998) ("The statute is not tolled by plaintiff's pursuit of optional administrative remedies."); *Polite v. United States*, 24 Cl. Ct. 508, 510 (1991); *Rogers v. United States*, 6 Cl. Ct. 829, 833 (1984) ("It is only when the pursuance of administrative remedies is a prerequisite to suit that the statute of limitation is suspended or tolled by such action."); *Burke v. United States*, 5 Cl. Ct. 759, 760 (1984); *United Contractors v. United States*, 177 Ct. Cl. 151, 158 (1966) ("where an administrative remedy is required by contract…the statute of limitations does not run until the determination of the designated administrative agency.").

seek high pay they earned more than six years before April 14, 2000, the date this suit was filed.

In short, every plaintiff who is deemed to have brought suit on April 14, 2000 may recover all unpaid high pay from April 14, 1994 through the date of judgment. The next question is: Which of the current plaintiffs are deemed to have joined this suit on April 14, 2000?

### VI. The Filing of a Class Action Tolled the Statute of Limitations for All Putative Class Members

"The filing of a timely class action complaint commences the action for all members of the class as subsequently determined."[10] Thus, the statute of limitations for all putative class members is tolled upon the filing of the original complaint.[11] The tolling ends upon denial of class certification.[12]

This Court and its predecessors have consistently concluded that the filing of a putative class action tolls the statute of limitations even for opt-in classes. In *Barbieri v. United States*,[13] the Claims Court analyzed the issue for a class certified under the former class action standard, using the *Quinault* factors. The court gave two primary reasons for finding that the statute of limitations was tolled. First, litigants should not have to worry about whether the statute of limitations was tolled depending upon the court they were in – the then-current version of Rule 23 was sufficiently similar to Rule 23 of the Federal Rules of Civil Procedure that the

---

[10] *Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000) (quoting *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 550 (1974)).
[11] *Stone Container*, 229 F.3d at 1354.
[12] *Id*. at 1355.
[13] 15 Cl. Ct. 747 (1988).

tolling mechanism should be adopted. (The court described this as "procedural fairness.") Next, tolling the statute of limitations was consistent with the "historical practice" of class action and other representative suits, for which the purpose is to rely upon another's bringing the suit.

The *Barbieri* court rejected the government's argument that tolling was inapplicable in the Court of Federal Claims because the statute of limitations was jurisdictional. The court acknowledged the jurisdictional nature of the statute, but held that the court's jurisdiction was unaffected by the "intermediate procedural steps we take in cases plainly within our jurisdiction."[14] The Court of Federal Claims has consistently followed *Barbieri.*[15] Therefore, the statute of limitations was tolled for all plaintiffs when suit was filed in the Western District of Washington on April 14, 2000. Until denial class certification, all plaintiffs, as putative class members, could take advantage of the April 14, 2000 filing date. The next question is: when did tolling cease?

## VII. Tolling Ceased Only When this Court Denied Class Certification

Tolling ends and the limitations period resumes the running of its course after class certification is denied.[16] In this case, there were two orders denying class certification.

The first was entered by the district court before the transfer of this case to this Court. But the district court lacked subject matter jurisdiction, a defect that

---

[14] *Id*. at 752 (quoting *Quinault Allottee Ass'n v. United States*, 197 Ct. Cl. 134, 138 (1972)).
[15] *See, e.g., Christian v. United States*, 46 Fed. Cl. 793, 818 (2000); *Armitage v. United States*, 18 Cl. Ct. 310, 315 n.3 (1989); *Canfield v. United States*, 14 Cl. Ct. 687, 691 (1988).
[16] *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54 (1983).

"altogether deprives a federal court of the power to adjudicate the rights of the parties."[17] Because the district court lacked subject matter jurisdiction, it lacked power to rule on the motion for class certification before it and its denial of class certification was of no effect. For that reason, the Ninth Circuit refused to hear the plaintiffs' appeal from that denial.

Further, this Court has at least impliedly rejected the argument that the Western District of Washington court's denial had any legal effect when it decided anew the issue of class certification. When that issue was before this Court, the Shipyard argued that the Court could not address the issue because the district court's denial of class certification had preclusive effect or because the denial of class certification was the "law of the case."[18] The Court did not adopt this position and, instead, considered class certification on the merits.[19]

Since the district court's certification order was a nullity, tolling continued until class certification was rejected on the merits by a court with subject-matter jurisdiction. That took place on August 19, 2005, the date this Court denied class certification. The next question is: which plaintiffs were affected by the resumption of the statute of limitations, and how?

---

[17] *Gonzalez v. Crosby*, 545 U.S. 524, 534, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005).
[18] Defendant's Opposition to Plaintiffs' Motion for Reconsideration at 12.
[19] *See* Order of August 19, 2005 Denying Plaintiffs' Motion for Class Certification and Order of January 5, 2006, Denying Plaintiffs' Motion for Reconsideration.

## VIII. Amendments to the Complaint and Changes to the Class Definition Do Not Affect Any of the Preceding Analysis

The last question is whether amendments to the plaintiffs' complaint or changes to the definition of the putative class alter any of the foregoing analysis. As RCFC 15(c) dictates, the answer is no.

Generally speaking, courts allow an amended complaint to "relate back" to the date the initial complaint was filed if it meets the requirements of RCFC 15(c), that "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."[20] The policy that informs whether an amendment will relate back to the date the complaint was initially filed is one of notice and fairness: if the opposing party had notice of the claim, it typically relates back.[21] If not, it won't. To determine whether claims in an amended complaint relate back, courts compare the claims in the initial and amended pleadings to determine if they spring from the same "conduct, transaction, or occurrence"[22] such that the party opposing the claim had adequate notice of the amended claim.[23]

### A. The Amendment of the Complaint Does Not Affect the Statute of Limitations Analysis Because the Amended Claims Relate Back to the Original Complaint

The claims of the amended complaint filed with this Court arise out of the same transaction or occurrence as the initial complaint. The initial complaint filed

---

[20] This language is identical to Federal Rule of Civil Procedure 15(c).
[21] *See Baldwin Co. Welcome Center v. Brown*, 466 U.S. 147, 150 (1984) ("The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitation were intended to provide.").
[22] RCFC 15(c).
[23] *Creppel v. United States*, 33 Fed. Cl. 590, 594 (1995).

in federal district court limited its challenge of the grievance decision to its refusal to pay high pay earned more than 15 days before the grievance was filed. The amended complaint broadened the challenge to contest another provision of the grievance decision – its refusal to pay high pay for work where fall protection was available. The amended complaint also challenged the Shipyard's failure to pay high pay in accordance with the grievance decision after it was issued. (These latter claims, having only arisen after the date of the grievance decision, could not possibly be time-barred in any event, since the amended complaint before this Court was filed in June 2004, well within six years of that decision.)

The test for determining whether a claim arose out of the same "conduct, transaction, or occurrence" is "whether the general fact situation or the aggregate of the operative facts underlying the claim for relief in the first petition gave notice to the government of the new matter."[24] The purpose of the test is to determine if the opposing party was given appropriate notice of the claim such that the purpose of the statute of limitations is fulfilled.[25]

In applying this test, the initial complaint must be read broadly when determining whether it supplied adequate notice to the opposing party.[26] An amendment that makes an initial claim more specific, or which "clarifies or particularizes" the initial complaint will be deemed to relate back to that date.[27]

[24] *Fifth Third Bank of W. Ohio v. United States*, 52 Fed. Cl. 829, 831 (2002) (quoting *Vann v. United States*, 190 Ct. Cl. 546, 557 (1970)).
[25] *Creppel v. United States*, 33 Fed. Cl. 590, 594 (1995).
[26] *White Mountain Apache Tribe of Arizona v. United States*, 8 Cl. Ct. 677, 682 (1985).
[27] *Id*.

Measured against this standard, the claims in the amended complaint plainly arise from the same "conduct, transaction, or occurrence": the issuance of the grievance decision specifically and the Shipyard's denial of high pay for shipwright work more generally. The amended complaint certainly broadened plaintiffs' attack on the grievance decision somewhat. But this is irrelevant for Rule 15(c)'s purposes.

The Supreme Court's decision in *Tiller v. Atlantic Coast Line RR Co.*[28] is illustrative. In that wrongful death case, the plaintiff originally pleaded that the decedent's death was caused by the defendant's failure to maintain a lookout.[29] The plaintiff later argued that the railroad's fault lay in its failure to have the train properly lighted.[30] The Supreme Court held that the change of factual arguments did not mean that the plaintiff was alleging a new cause of action, reasoning: "Both [theories] related to the same general conduct, transaction and occurrence … [t]he cause of action now, as it was in the beginning is the same – it is a suit to recover damages for the alleged wrongful death of the deceased."[31]

Other cases have reached similar conclusions. In *White Mountain Apache Tribe*, the Claims Court construed the plaintiff's initial complaint broadly as encompassing claims for range and water resource mismanagement, even though the original pleading did not specifically address these topics.[32] Stating that "the standards for adequate notice do not require that the petition contain a specific reference to that which is in the supplemental pleading," the court held that "[s]ome

---

[28] 323 U.S. 574 (1945).
[29] *Id*. at 581.
[30] *Id*.
[31] *Id*.
[32] 8 Cl. Ct. at 682.

reference in the original pleading, however hazy, to the conduct later complained of is all that is required."[33] The subsequent claims related back because the court found them to "flow" from "the general fact pattern presented" in plaintiffs' initial complaint.[34]

In *Spehr v. United States*,[35] the Court of Federal Claims held that the plaintiff's "supplementation" of his original claim of wrongful discharge with a claim of ineffective discharge related back to the date of the initial complaint.[36] The court found that the supplemental claim was "a logical product of the general fact situation set forth in the original pleading … the facts and circumstances related to his involuntary separation from the Coast Guard."[37] Here too, plaintiffs' "new" claim for high pay is a "logical product" of the "facts and circumstances" set forth in the initial pleading – that the government refused, in the January 18, 2000 grievance decision and earlier, to properly pay an environmental differential for high work.

Because all of the pleadings in this case have consistently sought environmental differential pay for shipwright work at Puget Sound Naval Shipyard and have consistently challenged the government's January 18, 2000 grievance decision, these claims all arise from the same "conduct, transaction, or occurrence." Hence, all claims in the Third and Fourth Amended Complaints relate back to the April 2000 filing of the district court complaint.

---

[33] *Id*. at 683 (internal quotation omitted).
[34] *Id*.
[35] 51 Fed. Cl. 69 (2001).
[36] *Id*. at 83.
[37] *Id*.

### B. Amendments to the Class Definition Do Not Alter the Statute of Limitations Analysis Because the Definition Was Narrowed, Not Broadened, Over Time

Likewise, alteration of the class definition does not alter the statute of limitations analysis above. It's true that the class definition changed slightly between the initial filing in the Western District of Washington and the filing of the amended complaint in this Court. The initial complaint described the class as "generally to be composed of all Shipwrights and others authorized to receive High Pay while assigned as Shipwrights, including retired Shipwrights and those who have terminated employee status as Shipwrights while eligible for High Pay." The amended complaint described the class as "all current and former Puget Sound Naval Shipyard employees assigned to Shop 64 as shipwrights from April 13, 1999 to the present." Although there has been some confusion regarding the temporal scope of the class, the last proposed definition of the class before denial of class certification was Shipyard employees assigned as shipwrights from April 14, 1994 to the present.[38]

The last proposed class definition was, if anything, more restrictive than the initial one, as it limited the class to employees assigned to Shop 64 as shipwrights, rather than extending to "all Shipwrights." The amended complaint also added a temporal limitation to the class definition that was lacking in the initial definition. Thus, the class definition in the amended complaint narrows rather than expands the previous class definition, which would theoretically result in fewer claimants. Even if the slight modification of the class definition has caused some variance in

---

[38] *See Jaynes v. United States*, 75 Fed. Cl. 218, 222, n.8 (2007).

the proposed class of plaintiffs, the Shipyard has had sufficient notice of all the plaintiffs' claims. The Shipyard itself presented evidence regarding the "stability" of its workforce,[39] and stated that 171 shipwrights had been in Shop 64 since April 13, 1999.[40] Surely the resulting group of 74 plaintiffs didn't unfairly surprise the Shipyard.

The Court of Federal Claims and its predecessors admittedly have been less willing to allow claims of additional plaintiffs (as opposed to additional claims by the same plaintiffs) to relate back, even if the additional plaintiffs' claims arise out of the same transaction or occurrence as the original plaintiffs' claims.[41] Thus, "when additional parties are to be added under RCFC 15(c), the new parties must bear a formal connection to the original plaintiffs apart from the shared experience of alleged governmental misconduct."[42] Courts have found this "formal connection" where the new plaintiff was an Indian tribe related to the initial plaintiff tribe,[43] and where affiliates of a corporate plaintiff join the fray.[44]

Here, the fact that all plaintiffs were members of the same putative class provides the "formal connection" necessary such that their claims relate back to the initial filing. So does the fact that 51 of the current plaintiffs were individually named in the original district court complaint. Because the Shipyard was on notice

---

[39] *See* Declaration of Mark Winkler, ¶ 2, Ex. 1 to Defendant's Opposition to Plaintiffs' Motion for Class Certification, as corrected. Appendix ("App.") at 1.
[40] *See* Amended Declaration of Kathleen M. Maher, Table 3, Ex. 5 to Defendant's Opposition to Plaintiffs' Motion for Class Certification, as corrected. App. at 6.
[41] *Snoqualmie Tribe v. United States*, 178 Ct. Cl. 570, 589 (1967).
[42] *Creppel*, 33 Fed. Cl. at 596.
[43] *Snoqualmie Tribe*, 178 Ct. Cl. at 588.
[44] *Baldwin Park Cmty. Hosp. v. United States*, 231 Ct. Cl. 1011, 1012 (1982).

that all members of the class had claims, it cannot argue that it had inadequate notice of any additional plaintiffs' claims.

This argument is supported by the fact that the *Snoqualmie Tribe* court allowed amendment of the complaint to add the Skykomish Tribe on the basis that the Snoqualmie Tribe had been serving in a "representative capacity" for the Skykomish,[45] much as the named plaintiffs in this suit served in a representative capacity for putative class members. Further, because the class definition restricted the number of potential claimants, the policy concerns behind denying relation-back would not be implicated through the amendment. Therefore, all the claims of all the plaintiffs relate back to the date of filing in the Western District of Washington.

## IX. The Only Difference in the Plaintiffs' Claim Periods Is When the Statute of Limitations Was Tolled Again

In *Crown, Cork & Seal Co., Inc. v. Parker*,[46] the Supreme Court explained what happens after class certification is denied. "If class status is denied, …the statute of limitations **begins to run again** as to class members excluded from the class. In order to protect their rights, such individuals must seek to intervene in the individual action (or possibly file an action of their own) **before the time remaining in the limitations period** expires."[47]

None of this, of course, affects the claims of the five class representatives. All five have been named as plaintiffs continuously since the original April 14, 2000 filing date. Their claims, therefore extend uninterrupted since April 14, 1994. They

[45] *Snoqualmie Tribe*, 178 Ct. Cl. at 588.
[46] 462 U.S. 345, 353-54 (1983).
[47] *Crown, Cork & Seal*, 462 U.S. at 352, n.2 (emphasis added) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 402 (1977) (Powell, J., dissenting)).

are entitled to seek unpaid environmental differential pay for all uncompensated high work they did from that date on.

But because the limitations period resumed its course on August 19, 2005, all plaintiffs except these five named class representatives lost a portion of their claim. The vast majority of the remaining plaintiffs (67) joined this suit on April 7, 2006.[48] Thus, 7½ months transpired between the denial of class certification and their formal joinder in this lawsuit as named plaintiffs.

As discussed above, each plaintiff's claim accrued continuously over time with each pay period. Each pay period the Shipyard failed to pay high pay it owed, a claim arising from that pay period accrued.

Until this Court's denial of class certification, each plaintiff had a claim for high pay that accrued as early as April 14, 1994. After denial of class certification, the limitations period began running again. Consequently, 30 days after class certification, claims that accrued in the 30 days after April 14, 1994 were lost. And during the 7½ months that transpired between denial of class certification and joinder of the first group of new plaintiffs, each plaintiff lost the right to sue on any claims that accrued within 7½ months after April 14, 1994. So the majority of plaintiffs, those who joined the suit as individuals in April 2006, can no longer assert claims for high pay that accrued as far back as April 14, 1994. Instead, they can only sue for claims that accrued between approximately December 1, 1994 and

---

[48] This is actually the date on which the Court granted Plaintiffs' Motion for Leave to File a Third Amended Complaint. The Amended Complaint itself was filed earlier, on March 31, 2006. In the February 14, 2007 Order denying the Shipyard's accord and satisfaction defense, the Court stated that Plaintiffs filed the Amended Complaint on April 7, 2006.

the date of judgment. As to claims that accrued after that date, there was "time remaining in the limitations period"[49] before they joined this action.

Two plaintiffs were added later than the others: David Forbes and John Hawkins. Plaintiffs filed a Fourth Amended Complaint adding these plaintiffs on May 16, 2007. For these two plaintiffs, the statute of limitations ran from August 19, 2005 to May 16, 2007, a period of approximately 21 months. Accordingly, they may only assert claims that accrued between mid-December 1995 and the date of judgment.

### X. The CSRA Amendment Is Immaterial To the Shipwrights' Claim Periods

The Shipyard argues that claims for high pay earned before the October 29, 1994 amendment to the Civil Service Reform Act (CSRA) are barred because the amendment doesn't apply retroactively. This argument is wrong. The CSRA Amendment did not create a substantive right. Rather, it created an alternative forum in which federal employees could bring certain claims, including the claims asserted here.

It is true that the shipwrights could not have filed suit in the Court of Federal Claims (or any court) before the amendment. But this is not the same thing as saying their claims did not accrue then.

A simple example demonstrates the absurdity of the Shipyard's position. Under its theory, a plaintiff who filed suit for back pay on October 30, 1994, one day after the CSRA amendment took effect, would have been entitled to recover only for

---

[49] *Crown, Cork & Seal*, 462 U.S. at 352, n.2

one day's worth of high pay, even though the Back Pay Act imposed no such limitation.

Not surprisingly, therefore, no court has accepted the Shipyard's position. The Court of Federal Claims addressed this issue directly in *Abramson v. United States*.[50] The Court noted that the Government had raised, but then withdrawn, the argument that "the 1994 amendment to § 7121 should not have applied … and that all claims which arose prior to the effective date of the amendment were governed by the previous version of the statute."[51] The Court agreed that withdrawal of the argument was proper. Relying on U.S. Supreme Court precedent, the Court concluded that the amendment allowed suits in court for claims that accrued before it took effect. The court reasoned that (1) the amendment "neither impairs plaintiffs' prior rights nor creates new ones which would expose the defendant to greater liability," and (2) "no new duties have been created with respect to the payment of overtime."[52] Accordingly, the Court concluded that "it is clear that applying the amendment would not have any retroactive effects as defined by the Supreme Court and would not implicate the concerns – fairness, foreseeability and protection of settled expectations – which form the basis of the presumption against retroactivity."[53]

*Mudge v. United States*[54] also touched on the retroactive application of the CSRA amendment and concluded that claims that accrued before the amendment

---

[50] 42 Fed. Cl. 621 (1998).
[51] *Id*. at 624.
[52] *Id*.
[53] *Id*.
[54] 59 Fed. Cl. 527 (2004).

weren't barred. The Court observed that "[a]lthough some of the allegedly wrongful acts occur prior to [October 29, 1994], Mr. Mudge did not have a legal right to maintain his action in the Court until passage of the amendment."[55] But instead of finding that Mr. Mudge's claims were barred, the Court concluded that "the 1994 amendment gave a new and transformed life to a matter being actively controverted and in doing so reached back in time in a limited sense that is neither arbitrary nor irrational."[56]

Meanwhile, in *Abbott v. United States*,[57] the plaintiffs asserted claims arising from work that predated the CSRA amendment. Although there is no specific discussion of the effect of the CSRA amendment on the claim period, as the Government seems to have lacked the audacity to raise it, the possibility that some or all of these claims were barred appears to have never occurred to the court.

The absence of any case law to support the Shipyard's position, and the nonsensical results to which it leads, mandate rejection of the Shipyard's argument that the CSRA amendment doesn't permit suit on claims for high work that accrued before it took effect.

## XI. Conclusion

The Shipyard prefaced its discussion of the statute of limitations by stating "the Government believes that the statute of limitations issue would be more appropriately raised in plaintiffs' anticipated cross motion, rather than the Government's motion for summary judgment…." Of course, the statute of

---

[55] *Id*. at 536.
[56] *Id*.
[57] 47 Fed. Cl. 582 (2000).

limitations is an affirmative defense,[58] so it is incumbent upon the Shipyard not just to raise it, but to prove it. Nearly 3 ½ years after this case was transferred to this Court, the Shipyard has failed to do so and, under the authorities above, is unable to do so.

Accordingly, the Court should deny the Shipyard's motion and grant plaintiffs' cross-motion. It should rule that none of the plaintiffs' claims are time-barred that that the statute of limitations only precludes claims as follows. First, as to the five original named plaintiffs before this Court (Walter Jaynes, Paul Scott, David Peterson, Gordon Hanberg, and Donald Baker) the statute of limitations only bars claims for high work earned before April 14, 1994. Second, as to plaintiffs David Forbes and John Hawkins, the statute of limitations only bars claims for high work earned before December 15, 1995. As to the other 67 plaintiffs, the statute of limitations only bars claims for high work earned before December 1, 1994.

DATED this 4th day of September, 2007.

Respectfully Submitted,

s/Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

[58] RCFC 8(c).

## CERTIFICATE OF SERVICE

I hereby certify on September 4, 2007, a copy of the foregoing "PLAINTIFFS' MOTION NO. 3: FOR SUMMARY JUDGMENT REGARDING EFFECT OF STATUTE OF LIMITATIONS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald B. Scaramastra
Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs