NO. 04-856C

Judge George W. Miller

UNITED STATES COURT OF FEDERAL CLAIMS

WALTER JAYNES, et al.,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant.

# OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR REMAND AND CROSS-MOTION NO.1: FOR SUMMARY JUDGMENT OR FOR JUDGMENT ON ADMINISTRATIVE RECORD

Donald B. Scaramastra
Jennifer A. Krebs
GARVEY SCHUBERT BARER
Attorneys for Plaintiffs

Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

# TABLE OF CONTENTS

**Page**

I. Introduction ..... 1

II. Issues Presented ..... 2

III. The Shipyard Resolved the Grievance and Made a Local Determination ..... 5

IV. Plaintiffs Are Not Precluded From Defending the Existence of the Grievance Decision ..... 9

V. Exhaustion of the Grievance Procedure Is Not a Prerequisite to Suing for Back Pay ..... 10

A. The Shipyard Must Identify a Statute That Requires Exhaustion of Administrative Remedies ..... 11

B. The Back Pay Act Does Not Require Exhaustion ..... 12

C. The Civil Service Reform Act Does Not Require Exhaustion ..... 13

D. The Shipyard's Exhaustion Argument Has No Principled Limits ..... 14

E. The Shipyard's Argument Is Inconsistent with Its Position Regarding the Statute of Limitations ..... 15

VI. No Statute or Regulation Precludes This Court from Determining Whether Work Conditions Constitute High Work ..... 15

VII. The Court Can Identify Which Shipwright Activities Involve High Work ..... 19

VIII. The Shipyard May Not Contest Its Own Grievance Decision ..... 22

A. The Shipyard Lacks Standing to Challenge Its Own Grievance Decision ..... 23

B. Judicial Estoppel Precludes the Shipyard from Taking a Position Inconsistent From the One It Announced In Its Grievance Decision ..... 24

C. The Court Lacks Jurisdiction To Hear a Challenge by the Shipyard To Its Own Grievance Decision ............................................ 27

IX. If This Court's Role Were Limited to Judicial Review of Agency Action, the Court Could Only Reach the Same Result.................................... 28

X. The Complaint Adequately Alleges Standing................................................. 30

XI. Conclusion ........................................................................................... 31

## TABLE OF AUTHORITIES

**Page**

### Cases

*Abbott Labs. v. Gardner,* 387 U.S. 136 (1967) ... 12
*Agwiak v. United States*, 347 F.3d 1375 (Fed. Cir. 2003) ... 20, 21, 22
*Ahrens v. United States*, 62 Fed. Cl. 664 (2004) ... 5
*Alameda County v. Weinberger,* 520 F.2d 344 n.10 (9th Cir. 1975) ... 19
*Associated Elec. Co-op., Inc. v. Morton,* 507 F.2d 1167, *cert. denied* 423 U.S. 830 (1975) ... 20
*Barlow v. Collins*, 397 U.S. 159 (1970) ... 19
*Bogan v. Hodgkins,* 166 F.3d 509 n.5 (2d Cir. 1999) ... 10
*Burke v. United States*, 5 Cl. Ct. 759 (1984) ... 11
*Cottrell v. United States*, 42 Fed. Cl. 144 (1998) ... 11
*d'Abrera v. United States*, 2007 U.S. Claims LEXIS 264 (Aug. 15, 2007) ... 26
*Davis v. Wakelee*, 156 U.S. 680 (1895) ... 25
*Dept. of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122 (1995) ... 23, 24
*Florida Dept. of Business Reg. v. Dept. of the Interior,* 768 F.2d 1248, 1255 (11th Cir. 1985), *cert. denied* 475 U.S. 1011 (1986) ... 20
*Heckler v. Chaney,* 470 U.S. 821 (1985) ... 19, 20
*Information Int'l Assocs., Inc.*, 74 Fed. Cl. 192 (2006) ... 7
*Jaynes v. United States,* 75 Fed. Cl. 218 (2007) ... 8, 10
*Johnson Mgmt Group v. Martinez*, 308 F.3d 1245 (Fed. Cir. 2002) ... 7
*Kanemoto v. Reno*, 41 F.3d 641 (Fed. Cir. 1994) ... 27
*Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166 (D.C. Cir. 1973) ... 28
*Key Pharmaceuticals v. Hercon Lab. Corp.*, 161 F.3d 709 (Fed. Cir. 1998) ... 25
*Lampi Corp. v. Amer. Power Prod.*, 228 F.3d 1365 (Fed. Cir. 2000) ... 26
*Levinson v. United States*, 969 F.2d 260 (7th Cir. 1992) ... 27
*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ... 31
*Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) ... 11, 27
*Mayne v. United States*, 13 Cl. Ct. 60 (1987) ... 11, 12, 16
*Mudge v. United States*, 308 F.3d 1220 (Fed. Cir. 2002) ... 14
*National Fed. of Federal Employees v. Federal Labor Rel. Auth.,* 412 F.3d 119 (D.C. Cir. 2005) ... 17
*Natural Resources Defense Council, Inc. v. Securities & Exch. Comm.,* 606 F.2d 1031 (D.C. Cir. 1979) ... 19
*New Hampshire v. Maine*, 532 U.S. 742 (2001) ... 25, 26
*Polite v. United States*, 24 Cl. Ct. 508 (1991) ... 11
*Rogers v. United States*, 6 Cl. Ct. 829 (1984) ... 11
*Southern California Edison Co. v. Federal Energy Regulatory Commission*, 770 F.2d 779 (9th Cir. 1985) ... 16
*United Contractors v. United States*, 177 Ct. Cl. 151 (1966) ... 11
*United States v. Interstate Commerce Comm'n,* 337 U.S. 426 (1949) ... 24

**Statutes**

5 U.S.C. § 5343 .......... 16
5 U.S.C. § 701(a) .......... 19
5 U.S.C. § 706(2) .......... 28
5 U.S.C. § 7123 .......... 14
5 U.S.C. § 7123(c) .......... 17

**Other Authorities**

RESTATEMENT (2d) OF CONTRACTS § 151 .......... 7
RESTATEMENT (2d) OF CONTRACTS § 152 .......... 7
RESTATEMENT (2d) OF CONTRACTS § 153 .......... 7, 8, 9
RESTATEMENT (2d) OF CONTRACTS § 153(a) .......... 8
RESTATEMENT (2d) OF CONTRACTS § 261 .......... 7

**Rules**

5 C.F.R. § 532 .......... 30
5 C.F.R. § 532.511 .......... 17
5 C.F.R. § 532.511(a) .......... 21
5 C.F.R. § 550.803 .......... 12
5 C.F.R. § 591.304 .......... 20
5 C.F.R. § 591.304(a)(2) .......... 21
5 C.F.R. § 591.306 .......... 20
JX1 (CBA § 3102) .......... 28
RCFC 52.1 .......... 29
RCFC 52.1(b) .......... 2

## I. Introduction

Having lost at trial on its most important affirmative defense, the Shipyard now moves – rather anomalously -- to dismiss the case for failure to state a claim upon which relief can be granted. In the alternative, the Shipyard moves for remand or summary judgment.

The motion contains two arguments. Two premises underlie those arguments.

The first premise is that the Court's rejection of the Shipyard's accord-and-satisfaction defense somehow renders the grievance decision null and void. Based on that premise, the Shipyard first argues that plaintiffs must exhaust administrative procedures, namely the grievance procedure spelled out in the collective bargaining agreement, before bringing suit. Because the premise that the grievance decision is a nullity is untrue, the Shipwright's first argument fails. So does the Shipyard's second argument.

The Shipyard's second argument depends as well on a second premise -- that this Court's role is limited to review of agency action, presumably under the Administrative Procedure Act. The Shipyard's second argument is that the task of determining which shipwright tasks constitute high work is committed to agency discretion within the meaning of the APA, 5 U.S.C. § 702(a)(2), and is, therefore non-justiciable. Here, whether the premise is true or not, the argument is wrong. The question whether certain shipwright work is high work is justiciable, as the Shipyard's own authorities demonstrate.

The collapse of the Shipyard's second argument does not undermine the premise that this Court is limited to review of the grievance decision under the APA. If that premise is correct, though, then the Shipyard lacks standing to challenge its own grievance decision. Nor could the Shipyard show that its decision that work above the first level was high work was arbitrary and capricious, as the APA would require it to do. Thus, the Shipyard's attack on its own determination that work building and dismantling staging on or above the first level is high work would fail. Meanwhile, the Shipyard's determination that the availability of fall protection rules out high pay violates the Office of Personnel Management's unambiguous regulatory mandate. Accordingly, that portion of the grievance decision fails to comport with the law and fails as a matter of law.

For these reasons, if the Court accepts the Shipyard's premise that its review of the grievance decision is limited by the APA, it should grant summary judgment (or, more accurately, judgment on the administrative record under RCFC 52.1(b)) in **plaintiffs'** favor.[1] It should uphold the grievance decision's first-level threshold for high pay and strike its denial of high pay when full protection is available.

## II. Issues Presented

1. Judicial rejection of one party's proffered interpretation of a contract does not void a contract. Here, the Court rejected the Shipyard's argument that the grievance was a particular kind of agreement known as an accord and satisfaction. Did that ruling void the grievance void the asserted contract?

---

[1] Plaintiffs' Motion No. 2 for summary judgment addresses the consequences if the Court concludes that its role is **not** limited to review of the grievance decision under the APA.

2. “Courts have traditionally been reluctant to allow a party to avoid a contract on the ground of mistake … if the mistake was not shared by the other party.” A contract may be avoided if the other party had reason to know of the complaining party’s mistake or if enforcing the contract would be unconscionable. May the Shipyard avoid a grievance decision in the absence of evidence of a mistake, in the presence of this Court’s ruling that the union had no reason to realized there was an ambiguity in the contract, and in the absence of any pleading, argument, or evidence that the grievance decision the Shipyard drafted was unconscionable?

3. Are plaintiffs (or rather, the union that represents them) required to pursue permissive, as opposed to mandatory, administrative remedies before bring suit for high pay?

4. Regulations and other sources confirm that an agency may decide whether local conditions constitute high work using a variety of methods, including unilateral decision-making at any level, collective bargaining, processing of a grievance decision, consensual settlement of a dispute. These sources also provide for resolution using methods outside the agency’s control, such as arbitration. No source rules out litigation as a means for making this decision. Is this Court barred by statute from determining whether local conditions satisfy the regulatory definition of high work?

5. Under the Administrative Procedure Act, agency action committed to agency discretion is unreviewable, and agency action is only if statutes and

regulations create no standard by which agency discretion is to be assessed. Here, the federal Office of Personnel Management has regulatory defined the standard by which to define high work, just as it has defined the standard by which define "remote" work sites, a matter held to be justiciable. Does the APA preclude this Court from deciding whether local conditions at the Shipyard meet the regulatory definition of high work?

6. Under the APA, an agency lacks standing to challenge its own decisions or those of other federal agencies. May the Shipyard challenge the validity of its own grievance decision in this Court?

7. The doctrine of judicial estoppel precludes a party from taking a position contrary to one it has successfully maintained in a prior administrative proceeding and from taking a position contrary to an agreement it reached in connection with a consent decree, especially where that will prejudice the other party. The doctrine may be asserted against the federal government. May the Shipyard, having procured the dismissal of the grievance decision through the grievance decision's determination that work above the first level of incomplete staging is high work, now take a different position before this Court?

8. Under the APA, review of agency action is limited and an agency's decision may only be challenged for serious deficiencies, as when its decision is arbitrary and capricious or contrary to law. Can the Shipyard demonstrate that any portion of its grievance decision is arbitrary and capricious or contrary to law?

## III. The Shipyard Resolved the Grievance and Made a Local Determination

Both of the Shipyard's arguments for dismissal or remand assume that the shipwrights' high-pay grievance was never resolved. This is so, the Shipyard insists, because the Step 2 grievance decision that resolved the grievance is now a nullity – "void ab initio," says the Shipyard – by virtue of the outcome of the trial on the Shipyard's accord-and-satisfaction defense.

This assumption mischaracterizes the Court's opinion and order and ignores basic principles of contract law. As plaintiffs discussed in their pre-trial Memorandum of Contentions of Law and Fact, it was insufficient for the Shipyard to prove that the grievance decision embodied a settlement agreement. Rather, it had to prove that the grievance decision effected a **particular kind** of agreement known as an accord and satisfaction. As plaintiffs explained, not every settlement agreement does so. A settlement may partially or wholly resolve claims in a legal dispute. *Ahrens v. United States*[2] involved just such a partial resolution.

The grievance decision itself, of course, contains no language suggesting that it was an agreement of any kind. Still, all of the witnesses involved in resolving the grievance believed that an agreement of some sort had been reached and that the grievance decision embodied its terms.

The Court, however, rejected the Shipyard's contention that those terms effected an accord and satisfaction, and with good reason. The decision itself contained no accord-and-satisfaction language. None of the individuals involved in

[2] 62 Fed. Cl. 664 (2004).

its negotiation or execution could recall any discussions around the effect of the decision on future individual lawsuits. And, indeed, Messrs. Hamel and Hurm testified that individual shipwrights were free to pursue individual claims in court.

The Shipyard implies that the Court refused to give effect to the parties' intentions. It suggests – disregarding the testimony of its own witnesses at trial – that the Shipyard's purpose in issuing the grievance decision was to preclude lawsuits for high pay and that this Court has now frustrated that purpose and undermined the basis for the decision.

Arguments and insinuations like these ignore what the Court's opinion says. This Court didn't frustrate or refuse to carry out an expressed intent to preclude high-pay lawsuits. To the contrary, the Court concluded – and could only have concluded –that the parties never formulated any such intent.

In short, all the Court's Opinion and Order did was reject the Shipyard's proffered interpretation of the grievance decision *qua* accord and satisfaction. But if the decision is a contract, then it, like all contracts isn't "void ab initio" simply because a court rejects one party's proffered interpretation of the contract. If a contract were void on that basis alone, then no contract would survive a legal dispute over its meaning.

Contract law, in fact, identifies when a contract may be avoided due to a misunderstanding or, in the parlance of contract law, "mistake." The doctrine of unilateral mistake addresses the situation in which one party claims to be so mistaken about a contract's import that it should be relieved of its obligations under

the contract. The Shipyard, however, cannot bring the facts of this case within that doctrine.

According to the Second Restatement of Contract, which this Court and the Federal Circuit have applied,[3] a mistake is a belief that is not in accord with the facts.[4] Here, the only mistake the Shipyard potentially identifies is a belief that the grievance decision barred lawsuits for high pay. Of course, no witness testified to holding such a belief when the grievance decision was signed, one fatal obstacle to proving a mistake.

The doctrine of unilateral mistake potentially comes into play: (1) if a party to a contract makes a mistake "as to a basic assumption on which he made the contract," (2) if the mistake "has a material effect" on the agreement," **and** (3) if the party didn't bear the risk of the mistake.[5] An assumption is basic "in the cases of the death of a person or destruction of a specific thing necessary for performance" because the "the continued existence of the person or thing (the non-occurrence of the death of destruction) is ordinarily a basic assumption on which the contract was made."[6] An effect is "material" if the "resulting imbalance in the agreed exchange is so severe that [the adversely affected party] can not fairly be required to carry it out."[7] It would be difficult for the Shipyard to prove that its alleged -- but unproven -- mistake (if any was, in fact made) concerned a "basic assumption" that had a

---

[3] *E.g., Johnson Mgmt Group v. Martinez,* 308 F.3d 1245, 1260 (Fed. Cir. 2002); *Information Int'l Assocs., Inc.,* 74 Fed. Cl. 192, 193 (2006).
[4] RESTATEMENT (2d) OF CONTRACTS § 151.
[5] RESTATEMENT (2d) OF CONTRACTS § 153.
[6] RESTATEMENT (2d) OF CONTRACTS § 261 comment b (§ 152 comment b refers to § 261 for guidance on what it met by a "basis assumption").
[7] RESTATEMENT (2d) OF CONTRACTS § 152 comment c.

"material effect." For purposes of this motion only, however, plaintiffs will assume the Shipyard might be able to satisfy these prerequisites to a claim of unilateral mistake.

"Courts have traditionally been reluctant to allow a party to avoid a contract on the ground of mistake, even as to a basic assumption, if the mistake was not shared by the other party."[8] Nonetheless, assuming the three prerequisites above are satisfied, a contract is voidable on either of two conditions. First, it is voidable if the other party (in this case, the union) had reason to know of the mistake or his fault caused the mistake.[9] The Court's opinion and order precludes this avenue of relief, for the Court has already found that there was no patent ambiguity about which the union had a duty to inquire (much less recognize and bring to the Shipyard's attention).[10]

Second, a contract is voidable if the mistake renders enforcement of the contract unconscionable.[11] The mistaken party "bears the substantial burden of establishing unconscionability."[12] Here, the Shipyard has not pleaded or argued, much less proven, that the grievance decision – a decision it unilaterally developed and drafted – was unconscionable.

And if it could meet its "substantial burden" of proving unconscionability, "[r]eliance by the other party may make enforcement of a contract proper although

[8] RESTATEMENT (2d) OF CONTRACTS § 153 comment a.
[9] RESTATEMENT (2d) OF CONTRACTS § 153(a).
[10] *Jaynes v. United States,* 75 Fed. Cl. 218, 235 (2007).
[11] RESTATEMENT (2d) OF CONTRACTS § 153(a).
[12] RESTATEMENT (2d) OF CONTRACTS § 153 comment c.

enforcement would otherwise be unconscionable."[13] Here, over seven years have transpired since the Shipyard issued its grievance decision. Numerous federal employees have received additional compensation under and in reliance upon it. Many of those employees aren't parties to this suit. Reliance by these parties would be fatal to a claim of unconscionability here.

Whether a unilateral decision or a negotiated contract, therefore, the grievance decision survived the Court's recent opinion and order unscathed. Trust, the decision doesn't bar this lawsuit but that, as this Court correctly held, was never the parties' intent.

## IV. Plaintiffs Are Not Precluded From Defending the Existence of the Grievance Decision

The Shipyard next argues that the plaintiffs, "who argued that the grievance process was a nullity," cannot defend the decision now. "Plaintiffs cannot have their cake and eat it too," the Shipyard protests. But the plaintiffs have never had any cake.

First, the plaintiffs have never contended that the grievance decision was a nullity. To the contrary, they argued that the grievance was just that, a unilateral decision by the Shipyard. They did, of course, argue that the grievance decision was not an accord and satisfaction for a number of reasons, including the failure to follow proper grievance procedures. But saying the grievance did not effect an accord and satisfaction is not the same thing as saying the grievance had no effect at all.

[13] RESTATEMENT (2d) OF CONTRACTS § 153 comment d.

Second, this Court rejected the plaintiffs' argument that the Shipyard and union failed to invoke the proper grievance procedures.[14] Under the doctrine of judicial estoppel, to which the Shipyard alludes, a party is only bound by a previous litigation position only if the party successfully maintained that position.[15] Generally, "a party may not take a position inconsistent with that taken in a prior legal proceeding, where that party prevailed in the first case.[16] But if the party did not succeed, "that party is not estopped from later inconsistent assertions."[17] Since plaintiffs never argued that the grievance decision was a nullity, and since they never prevailed on the other arguments the Shipyard mentions, the doctrine of judicial estoppel doesn't tie their hands here. (As the Court will see momentarily, the same is not true of the Shipyard.)

## V. Exhaustion of the Grievance Procedure Is Not a Prerequisite to Suing for Back Pay

As the preceding pages demonstrate, the CBA's grievance procedures were pursued to completion. If the Court agrees, there is no need for it to decide the arguments set forth in Sections V through VII of this brief. These sections will assume, for argument's safe, that the grievance decision is, as the Shipyard insists, "void ab initio." As the Court will see, this assumption doesn't breathe life into the Shipyard's position.

---

[14] 75 Fed. Cl. at 230.
[15] *E.g., Bogan v. Hodgkins,* 166 F.3d 509, 513 n.5 (2d Cir. 1999).
[16] *Id.*
[17] *Id.*

### A. The Shipyard Must Identify a Statute That Requires Exhaustion of Administrative Remedies

To prevail on its exhaustion argument, the Shipyard must prove that the collective bargaining agreement's grievance procedure was mandatory, rather than merely permissive. Courts have long distinguished between mandatory and permissive administrative procedures.[18] The Federal Circuit has noted that "this court and the Court of Claims have long held that, in Tucker Act suits, a plaintiff is not required to exhaust a permissive administrative remedy before bringing suit."[19] This, no doubt, is the case, at least in part, because the pursuit of permissive remedies, i.e., administrative remedies that are required by statute or contract, doesn't toll the statute of limitations.[20]

As *Mayne v. United States,*[21] the Shipyard's principal case, demonstrates, the Shipyard must show that the statute under which plaintiffs have sued requires them to pursue the CBA's grievance procedures first. In *Mayne,* plaintiffs sued under a statute that required them to present an administrative claim for decision by the agency before going to court. About ten lines above the language quoted by the Shipyard, the court articulated this unremarkable proposition: "When a statute directs the parties to come before an administrative agency for a determination of

---

[18] *See Cottrell v. United States*, 42 Fed. Cl. 144, 154 (1998) ("The statute is not tolled by plaintiff's pursuit of optional administrative remedies."); *Polite v. United States*, 24 Cl. Ct. 508, 510 (1991); *Rogers v. United States*, 6 Cl. Ct. 829, 833 (1984) ("It is only when the pursuance of administrative remedies is a prerequisite to suit that the statute of limitation is suspended or tolled by such action."); *Burke v. United States*, 5 Cl. Ct. 759, 760 (1984); *United Contractors v. United States*, 177 Ct. Cl. 151, 158 (1966) ("where an administrative remedy is required by contract…the statute of limitations does not run until the determination of the designated administrative agency.").
[19] *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003).
[20] *United Contractors v. United States,* 177 Ct. Cl. 151, 158 (1966).
[21] 13 Cl. Ct. 60 (1987).

their claims, judicial action is precluded 'until an administrative decision has been formalized and its effects felt in a concrete way.'"[22] Because the Shipyard can point to no such statute, this argument fails.

### B. The Back Pay Act Does Not Require Exhaustion

The Back Pay Act does not expressly require the plaintiffs to pursue an employee grievance before suing. Contending (or, at least, implying) that it does, the Shipyard points to the Act's reference to "appropriate authority." The Shipyard contends that "in order to possess a claim for back pay pursuant to the Back Pay Act, an 'appropriate authority' must first find, pursuant to applicable law, that a Federal employee was affected by an unjustified or unwarranted personnel action resulting in withdrawal of pay."[23] This is true, but irrelevant, unless the Shipyard means to suggest that the term "appropriate authority" is limited to arbitrators or Shipyard management. But as this Court recognized in its December 7, 2005 Order, the term "appropriate authority" includes this Court.[24] This result is consistent with an OPM regulation impending the Back Pay Act: 5 C.F.R. § 550.803. All the Back Pay Act requires, before back pay may be paid, is that an appropriate authority – in this case this Court – determine that it is owed.

The Shipyard contends that "this Court cannot function as an 'appropriate authority …under the collective bargaining agreement' without allowing the union and the Government the opportunity to first complete the grievance provisions of

---

[22] *Id.* at 62 (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)).
[23] Mot. at 17.
[24] Order on Motions for Summary Judgment, at 13 (Dec. 7, 2005). There is also much tension between Shipyard's position here and the Court's previous rejection of the Shipyard's arguments that the Civil Service Reform Act and the CBA required the shipwrights to pursue the grievance process.

the CBA."[25] No citation to authority follows this innovative proposition. Moreover, the ellipses in the language the Shipyard quotes excise pertinent language from the Back Pay Act. The Shipyard thereby conceals that the Act refers to a finding by appropriate authority "under **applicable law, rule, regulation, or** collective bargaining agreement." Assuming as the Shipyard does that this prepositional phrase modifies "appropriate authority" (and the Act is ambiguous on this point), then this Court need not be an appropriate authority "under the collective bargaining agreement." Rather, it need only an appropriate authority "under applicable law," something this Court is by virtue of the Tucker and Back Pay Acts, as this Court has previously acknowledged.

### C. The Civil Service Reform Act Does Not Require Exhaustion

Next, the Shipyard suggests that the Civil Service Reform Act requires exhaustion of administrative remedies before suing. As with the Back Pay Act, the Shipyard identifies no language in the Act that actually says this.

Instead, it contends that the Act's authorization of negotiated grievance procedures implicitly mandates their use. But that logic has a gaping hole: it once again ignores the difference between permissive and mandatory procedures. If merely creating an administrative dispute resolution procedure were enough to mandate its use, then all administrative procedures would be mandatory.

The 1994 CSRA amendments also undercut the argument that the Act mandates the use of the CBA's grievance procedures. If anything, these

[25] Mot. at 18.

amendments, as construed by *Mudge v. United States*,[26] evince a Congressional **reluctance** to force federal employees out of the courts and into administrative procedures. The Shipyard's reliance on the Civil Service Reform Act fails.

### D. The Shipyard's Exhaustion Argument Has No Principled Limits

Not only is the Shipyard unable to unearth statutory support for its argument, but that argument poses practical difficulties. Most important, it ignores the details of the grievance procedure. The CBA sets out a two-step grievance procedure followed by arbitration (after which exception may be taken to the Federal Labor Relations Authority). What the Shipyard doesn't explain is why a grievance must be pursued to exactly to a Step 2 grievance decision, but no farther. Why is it insufficient simply to proceed through Step 1? Or why, on the other hand, aren't employees required to arbitrate before suing? And, come to think of it, why shouldn't employees be compelled to proceed farther still, all the way to the Federal Labor Relations Authority, before suing? After all, all of these steps are part of the administrative grievance procedure contemplated by the CBA and the statutes the Shipyard cites (as pages 21 and 22 of the Shipyard's motion nicely demonstrate). The Shipyard can point to nothing in the CBA, nothing in the Back Pay Act, nothing in the Civil Service Reform Act, and nothing in the case law that justifies its arbitrary cut-off.[27]

---

[26] 308 F.3d 1220 (Fed. Cir. 2002).

[27] Of course, requiring an employee to proceed all the way to a FLRA decision is the same thing as barring the employee from suing in Court in the first place, because the next step after an FLRA decision is judicial review in Court under 5 U.S.C. § 7123. Before the 1994 CSRA amendment, the law did, indeed, require employees to pursue administrative remedies all the way through an FLRA decision before going to court. If that were still the law, then *Mudge* would not be.

### E. The Shipyard's Argument Is Inconsistent with Its Position Regarding the Statute of Limitations

The Shipyard's argument has other implications that it overlooks, or neglects to mention, elsewhere in its brief. The most important pertains to the effect of the statute of limitations. If, after all, the grievance procedure were mandatory, then that procedure would toll the statute of limitations until its conclusion, something the Shipyard says has yet to take place. But that would mean that the shipwrights' claims for high pay have been tolled ever since the filing of the high-pay grievance in March 1999, and that they remain tolled to this day. It also means that plaintiffs may sue for high pay going back to at least March 1993, six years before the high-pay grievance began. If the Shipyard really believed that its argument were true, it presumably would have carried its logic forward to its discussion regarding the statute of limitation. But it didn't. Instead, the Shipyard's arguments concerning the effect of the statute of limitations make no mention of this sticky point.

In short, the CBA grievance procedure is permissive rather than mandatory, because neither the Back Pay Act nor the Civil Service Reform Act (or anything else) requires the pursuit of grievance procedures in the CBA before bringing suit. Accordingly, the Shipyard's exhaustion argument fails.

## VI. No Statute or Regulation Precludes This Court from Determining Whether Work Conditions Constitute High Work

The bulk of the Shipyard's motion to dismiss or remand is devoted to its contention that this Court may not decide whether work conditions constitute high work. Because none of the parties authorized to do has yet made that

determination, the Shipyard insists, this Court may not proceed. Once again, the Shipyard has got it wrong.

Most notably, the Shipyard identifies no statutory support for its position. Nothing in the Back Pay Act says that a "local determination" is a prerequisite to filing suit. Nothing in the Civil Service Reform Act says this either. And nothing in 5 U.S.C. § 5343, the statute that authorizes differential pay for unusually severe hazards, says this.

This is not, in other words, a case like *Southern California Edison Co. v. Federal Energy Regulatory Commission,*[28] which the Shipyard mentions in passing.[29] *Southern California Edison* presented a challenge to agency rule-making under the Administrative Procedure Act. The Ninth Circuit made the unremarkable observation that as a general rule, an agency must actually adopt a rule before a party may challenge the rule under the APA. (The court went on to hold the rule in question was final and that the challenge to it was ripe.[30]) If plaintiffs here were seeking judicial review of agency rule-making or an agency adjudication, *Southern California Edison* and countless other court decisions would hold that judicial review is unavailable until there is a final decision to review.

Here, however, the plaintiffs don't invoke this Court's powers as a reviewing body. This is a suit in the first instance under the Back Pay Act, over which this Court has jurisdiction under the Tucker Act. The Back Pay Act, unlike the Administrative Procedure Act, does not concern the Court's authority to review

[28] 770 F.2d 779 (9th Cir. 1985).
[29] Motion at 18.
[30] *Id.* at 785.

agency rule-making and adjudication. It does not, for example, authorize suits to "review the local determination" of a federal agency. If the Back Pay Act limited this Court's role to that of a reviewing body, one would expect the Act to articulate the standard of review to be applied during such review or, at least, expressly adopt the standard of review of the Administrative Procedure Act. This, for example, is what the statute governing judicial review of Federal Labor Relations Authority decisions does.[31] Yet the Back Pay Act is silent.

Since the Back Pact Act offers no textual support for the Shipyard's argument, it must look elsewhere. And so it does.

The Shipyard starts by observing, correctly, that it was subject to a regulatory mandate to "evaluate its situations against guidelines issued by the Office of Personnel Management to determine whether the local situation is covered by one or more of the defined categories" of unusually severe work.[32] But requiring the Shipyard to determine whether any shipwright work satisfies OPM's definition of "high work" is a far different thing than precluding lawsuits for high pay unless and until the Shipyard performs that obligation. And equating the two – barring lawsuits against the Shipyard while it dawdled – would perversely reward the Shipyard for its failure to fulfill its regulatory obligation.

To try and bridge this gap in its logic, the Shipyard starts by noting, correctly, that the determination whether local conditions are high work may be made unilaterally, through the collective bargaining process, through informal

[31] *See* 5 U.S.C. § 7123(c); *National Fed. of Federal Employees v. Federal Labor Rel. Auth.*, 412 F.3d 119, 121 (D.C. Cir. 2005).
[32] 5 C.F.R. § 532.511.

grievance procedures, or through arbitration, citing various sources. So far, so good. There is no question that the determination **may** be through any of these procedures. But the Shipyard goes farther, and argues that the determination may **only** be made using these procedures. Here the Shipyard's bridge collapses.

First, none of the sources the Shipyard cites rules out litigation as a means for deciding what constitutes high work. Nor do any of them say that litigation must await the completion of these other processes. The references to arbitration, meanwhile, predate the 1994 CSRA amendments, before anyone realized that litigation was available.

Second, that arbitration is included as an acceptable means of determining when work conditions constitute high work undermines the Shipyard's argument that the Shipyard is the only one who may make this determination. That an arbitrator may decide the question also undermines the Shipyard's argument that local experience at the facility is needed; few arbitrators, after all, are likely to have experience with shipwright work. The Shipyard's expressed concerns about judicial "competence" are just as easily directed at arbitrators.

In short, the fact that an arbitrator, or a union representative, or a manager **may** make the local determination doesn't mean that a court may **not** do so.

Far from exhibiting rigidity about how the "local determination" is made, the regulations and other sources the Shipyard cites evince a flexible attitude toward the process. In truth, no possible means of resolving the question is ruled out. The regulations allow an agency to make the local determination through consensual

contracting, informal grievance procedures, formal arbitration, settlement agreements, or unilateral decision-making at whatever level and in whatever context the agency deems proper. Because no statute or regulation expresses particular concern that the local determination take any particular form, the Shipyard's unduly formalistic insistence that this Court may not make it is wrong.

## VII. The Court Can Identify Which Shipwright Activities Involve High Work

In the absence of a statutory bar to adjudication of the high-pay question, the Shipyard argues that this question is non-justiciable because this Court "is not competent" to decide it.[33]

The Shipyard quotes *Heckler v. Chaney*[34] for the proposition that "[a]gency actions committed to agency discretion by law … are nonjusticiable." This notion finds express statutory support in the Administrative Procedure Act. There are two exceptions to the APA's provisions for judicial review, one of which is for "agency action [that] is committed to agency discretion by law."[35] The APA creates a strong presumption of judicial review that can be rebutted only by a clear showing that judicial review would be inappropriate.[36] To foreclose judicial review, the agency has the burden of establishing, by clear and convincing evidence, that review is prohibited.[37] The exception to judicial review for actions committed to agency

---

[33] Motion at 19.
[34] 470 U.S. 821 (1985).
[35] 5 U.S.C. § 701(a).
[36] *Natural Resources Defense Council, Inc. v. Securities & Exch. Comm.,* 606 F.2d 1031, 1043 (D.C. Cir. 1979).
[37] *Alameda County v. Weinberger,* 520 F.2d 344, 349 n.10 (9th Cir. 1975), *quoting Barlow v. Collins*, 397 U.S. 159, 166-67 (1970).

discretion is a very narrow one.[38] It must be clearly demonstrated before the agency may invoke it.[39]

Action is committed to agency discretion where "a court would have no meaningful standard against which to judge the agency's action…."[40] The classic example is agency or other prosecutorial refusal to take enforcement action.[41] Where such a standard has been provided, however, as OPM's regulations implementing 5 U.S.C. § 5343 do, then they provide the standard (in this case, a definition of "high work") for this Court to apply and remove the case from the ambit of 5 U.S.C. § 702(a)(2).

The Shipyard cites no authority for the notion that it was delegated non-reviewable discretion to decide when to pay high pay. Oddly, the only case the Shipyard cites, *Agwiak v. United States,*[42] held that the controversy before it **was** justiciable. *Agwiak* concerned Office of Personnel Management regulations that implemented a statutory directive for the payment of an allowance to employees assigned to remote duty stations. The OPM regulations, 5 C.F.R. §§ 591.304 & .306, provided that an allowance "shall be paid to each employee" assigned to a remote post and that a "duty post shall be determined to be a remote duty post" when "daily commuting is impractical" due to location and available transportation and management requires employees to remain at the post for the workweek. The statutory and regulatory scheme is identical to that here, where Congress has

[38] *Associated Elec. Co-op., Inc. v. Morton,* 507 F.2d 1167, 1176, *cert. denied* 423 U.S. 830 (1975).
[39] *Florida Dept. of Business Reg. v. Dept. of the Interior,* 768 F.2d 1248, 1255 (11th Cir. 1985), *cert. denied* 475 U.S. 1011 (1986).
[40] *Heckler*, 470 U.S. at 830.
[41] *Id.* at 830-32.
[42] 347 F.3d 1375 (Fed. Cir. 2003).

mandated the payment of environmental differentials for unusually severe hazards and OPM has promulgated regulations that state that federal agencies "shall" pay a differential for high work and "shall" determine what circumstances constitute high work.[43]

Notably, the Federal Circuit first rejected the government's argument that "the regulations merely reflect [the Office of Personnel Management's] delegation of authority to the agencies."[44] The Court relied on the statute's and regulations' repeated use of the word "shall."[45] This reasoning undercuts the Shipyard's argument that the OPM regulations were merely intended to delegate authority to the Shipyard.

Next, and far more importantly, the Federal Circuit addressed the plaintiffs' argument that the Court of Federal Claims should determine whether their work sites were remote, even though their employing agency had not. In response, the government "apparently suggest[ed] that this claim is non-justiciable because the standards leave so much discretion to the agency."[46] The Federal Circuit rejected this argument, citing early case law for the proposition that a case is justiciable "if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence."[47] The Court concluded that "determining whether a worksite is remote under section 591.304(a)(2) is a relatively simple matter, requiring no

---

[43] 5 C.F.R. § 532.511(a).
[44] *Agwiak,* 347 F.3d at 1379.
[45] *Id.* at 1379.
[46] *Id.* at 1381.
[47] *Id.*

determinations of a discretionary nature."[48] Accordingly, after reviewing the "factual inquiry … spelled out by the regulations," the Federal Circuit held that the "Court of Federal Claims is competent to make such determinations."[49]

Here, the OPM regulations call for such determinations as whether the footing was unsure and whether the shipwrights' employment involves work at heights below 100 feet. These factual issues are considerably less complex than the question whether a work site is "remote" within the meaning of OPM's regulations. The notion that this Court is incompetent to decide these issues strains credulity.

In short, the Shipyard is under twin legal mandates: to pay an environmental differential for high work and to determine when work conditions fall within the regulatory definition of high work. The regulations imposing these duties are no more a delegation of non-reviewable "discretion" than is a statute criminalizing reckless driving. The determination whether driving in a certain situation is reckless is not left to the driver's discretion, insulated from judicial review.

Accordingly, the high-work question is justiciable and the Shipyard's "local determination" doesn't binding this Court in any respect.[50]

## VIII. The Shipyard May Not Contest Its Own Grievance Decision

Though the grievance decision doesn't bind the Court, it does bind the Shipyard. The Shipyard is precluded from challenging the validity of its own

---

[48] *Id.*
[49] *Id.* at 1381-82.
[50] This doesn't mean, of course, that the Court may not credit the testimony of the individuals who made the determination based on the Court's assessment of their expertise and integrity. Indeed, where the testimony of all such individuals is in agreement and the plaintiffs don't intend to contradict that testimony, then traditional case-management tools may allow for expedited consideration of the plaintiffs' claims. This is precisely the situation here, and the plaintiffs will explore its consequences in their Motion No. 2 for Summary Judgment.

grievance decision for three reasons. First, the Shipyard lacks standing to challenge its own grievance decision in court. Second, the Court lacks jurisdiction to provide the relief sought by the Shipyard. Finally, the doctrine of judicial estoppel precludes the Shipyard from challenging its own grievance decision because it took an inconsistent position during the administrative proceeding. Therefore, the Court should dismiss any effort by the Shipyard to attack its own grievance decision and adopt the first-level threshold for the payment of high pay as a matter of law.

### A. The Shipyard Lacks Standing to Challenge Its Own Grievance Decision

The Shipyard lacks standing to challenge its own grievance decision. In *Department of Labor v. Newport News Shipbuilding & Dry Dock Co.*,[51] the Supreme Court addressed the standing of the director of a federal agency to seek judicial review of an administrative adjudication under the Longshore and Harbor Workers Compensation Act. The Court held that the director and the agency lacked standing. The Court reasoned that the LWHCA only permitted appeals by "any person adversely affected or aggrieved by" the administrative adjudication. The Court then noted that this phrase was identical to that used by the Administrative Procedure Act to designate parties allowed to appeal such an adjudication, and that this phrase was "a term of art used in many statutes to designate those who have standing to challenge or appeal an agency decision."[52] And the Court observed that federal agencies had long been excluded from the APA's definition of "person."[53]

[51] 514 U.S. 122, 129 (1995).
[52] *Id*. at 126.
[53] *Id*. at 129.

Having traced the lineage of the statutory language in question and noting its long history, the Court issued a sweeping ruling that foreclosing agency appeal of administrative decision-making "reflects the general legislative pattern of administrative and judicial relationships."[54] The Court also rejected the notion that an agency's status as a party respondent to an appeal implied that the agency had the right to initiate one. The Court cited the National Labor Relations Board as an example of an agency that "is always the party respondent to an …appeal, but cannot initiate an appeal from its own determination." The Court acknowledged that allowing an agency to challenge its own decision could lead to the agency "end[ing] up on both sides of the case,"[55] which, of course, is exactly what would happen if the Shipyard turned on its own grievance decision here.

The Court concluded that, "[o]f course the text of a particular statute could make clear" that an agency had the right to appeal another agency's decision," but found no such text in the LHWCA. Here, of course, no statute authorizes an appeal by the Shipyard of its own administrative decision to award high pay. Therefore, the Shipyard lacks standing to challenge that decision in court.

### B. Judicial Estoppel Precludes the Shipyard from Taking a Position Inconsistent From the One It Announced In Its Grievance Decision

The doctrine of judicial estoppel also precludes the Shipyard from challenging the "first level" standard it adopted in the grievance decision. The decision itself is now more than seven years old. The Shipyard applied it retroactively nearly a year

[54] *Id.* (quoting *United States v. Interstate Commerce Comm'n,* 337 U.S. 426 (1949)).
[55] *Id*. at 128, n.2. The Court declined to decide whether, on the facts before it, the director of the agency was appealing its own order or the order of another agency based on the designation of the respondent agency. *Id.* Here, of course, there is no question that the grievance decision the Shipyard tries to attack is its own.

before that. The decision was made during a grievance process, as the Shipyard repeatedly notes, was blessed by Congress. The Shipyard used that decision to procure the union's agreement not to pursue arbitration on behalf of 99 or more claimants, a clear benefit to the Shipyard. The decision has governed shipwright compensation for nearly a decade. Under these circumstances, the doctrine of judicial estoppel precludes the Shipyard from changing course simply to further its interests in this litigation.

Courts articulate the precise contours of judicial estoppel somewhat differently and "the circumstances under which judicial estoppel may appropriately invoke are probably not reducible to any general formulation of principle.[56]

But, as the Supreme Court has explained, the doctrine precludes a party who has successfully asserted a position in one proceeding (or in an earlier stage of an on-going proceeding) from "thereafter, simply because his interests have changed, assum[ing] a contrary position, especially if it to be to the prejudice of the party who has acquiesced in the position formerly taken by him."[57] The doctrine is an equitable one, and is left to the court's discretion.[58] (For its part, the Federal Circuit looks with "extreme disfavor" on a party who asserts that a position it was previously successful in arguing is in error.[59])

---

[56] *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)
[57] *Id. at* 749. (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).
[58] *New Hampshire v. Maine*, 532 U.S. at 750.
[59] *Key Pharmaceuticals v. Hercon Lab. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998).

The doctrine applies to preclude a party from taking a position in court that is contrary to one taken in earlier administrative proceedings.[60] It may be applied against the federal government.[61] The Supreme Court has indicated that courts should be reluctant to do so "where estoppel would compromise the government's interest in enforcing the law," or "where the shift in position is the result of change in public policy."[62] But where, as here, the government's position is akin to that of a private or regulated person, the Court need not shirk from applying the doctrine.[63]

The Supreme Court has even applied the doctrine to a situation analogous to the present, where two parties stipulated to entry of a consent decree.[64] Statements in the settlement agreement that led to the consent decree were given preclusive effect by the Supreme Court.[65] Here, likewise, the understanding between Shipyard and union that led to the grievance decision, an administrative analog to a consent decree, should preclude the Shipyard from changing positions.

It would prejudice plaintiffs – and other shipwrights who aren't parties to this litigation – to allow the Shipyard to reverse course in this proceeding. For nearly a decade, the grievance has governed shipwright compensation. Individual employees have accepted compensation and, presumably, used their earnings for purposes other than squirreling it away against the day their employer would demand it back. Allowing the Shipyard to shift course would be a fundamentally

---

[60] *Lampi Corp. v. Amer. Power Prod.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000).
[61] *See, e.g.*, *d'Abrera v. United States*, 2007 U.S. Claims LEXIS 264 (Ct. Fed. Cl. Aug. 15, 2007).
[62] *New Hampshire*, 532 U.S. at 755.
[63] *Id.* at 755.
[64] *Id.* at 752.
[65] *Id.* at 755.

unfair and unsound result, one that would call into question the integrity of both the Congressionally-approved grievance process and this Court.

The doctrine of judicial estoppel precludes chameleon-like litigants from shamelessly changing positions to gain a litigation advantage.[66] The Shipyard must not be allowed to adopt a cavalier approach to its legal obligation to determine what constitutes high work by changing its decision based on its fortunes in this litigation. The Shipyard must not be allowed to issue a decision in a grievance process to forestall arbitration on behalf of more employees than are plaintiffs here and then, once litigation begins, change course and argue for a different result in court. Accordingly, the Court should apply the doctrine of judicial estoppel and preclude the Shipyard from challenging its own grievance decision.

### C. The Court Lacks Jurisdiction To Hear a Challenge by the Shipyard To Its Own Grievance Decision

This Court lacks jurisdiction to hear a challenge by the Shipyard to its own grievance decision. Jurisdiction in the Court of Federal Claims requires a claim based on a "money-mandating statute."[67] Injunctive and declaratory relief is not available.[68] The Shipyard cannot point to a money-mandating statute under which its decision could be reviewed. Thus, the Court lacks jurisdiction over this claim.

Nor does the collective bargaining agreement provide a basis for jurisdiction. Although the procedures of the collective bargaining agreement are permissive and a party is not required to follow them before pursuing a judicial remedy, nothing in

---

[66] *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992).
[67] *See Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) (en banc).
[68] *See Kanemoto v. Reno*, 41 F.3d 641, 644-45 (Fed. Cir. 1994).

the CBA provides a basis for the relief sought by the Shipyard. The Shipyard couldn't pursue arbitration under the terms of the collective bargaining agreement, because only the party who initiates a grievance may demand arbitration.[69] Thus, even if the procedures of the collective bargaining agreement were mandatory, it would not provide a vehicle for the Shipyard to challenge its own grievance decision.

## IX. If This Court's Role Were Limited to Judicial Review of Agency Action, the Court Could Only Reach the Same Result

Because the question of what constitutes high work is justiciable, and because the grievance decision is not a nullity, the Court must determine the effect of that decision on this case. There are two possibilities. The first is that the decision has no effect whatsoever. Plaintiffs' Motion No. 2 for Summary Judgment proceeds on that assumption. The second p is that the decision is subject to judicial review under the Administrative Procedure Act. The remainder of this brief explores that option.

According to the APA, the grievance decision may be successfully challenged if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[70] As shown in Plaintiffs' Motion No. 2, the decision to treat work from the first level above the deck as high work was amply supported by the evidence, and was based on the OSHA regulations governing staging safety in shipyards. The plaintiffs don't challenge this first-level determination and, to the extent that the

---

[69] JX1 (CBA § 3102).

[70] 5 U.S.C. § 706(2). This standard arises in other situations where judicial review of agency action is sought. For example, those adversely affected by the award of a government contract may only prevail on a challenge to the award if they demonstrate that the award had no rational basis or clearly violated applicable statutes or regulations. *See, e.g., Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C. Cir. 1973).

Shipyard could do so, it simply cannot demonstrate that this aspect of its grievance decision was arbitrary, capricious, or contrary to law. Indeed, the Shipyard representatives who reached this decision, like all of the other trial witnesses, could not think of a single basis, other than the OSHA standard, on which to distinguish between work that was high work and work that was not. Therefore, the Shipyard would be unable to demonstrate that its decision was arbitrary and capricious, or an abuse of discretion.

Technically, the proper vehicle for considering the Shipyard's challenge to its own grievance decision would be RCFC 52.1. Under that rule, the Shipyard would have had to certify and file the record of the administrative proceedings with the Court. But here the Court is fully apprised of the materials that would comprise the "administrative record," which would presumably include the grievance decision, Ms. Niemi's report on shipwright work, notes of the Step 2 hearing, and communications between the parties regarding the grievance. All of these have been admitted into evidence. Nothing in any of these materials undermines the grievance decision to such an extension that it shows the decision to so profoundly irrational as to be arbitrary and capricious.

But, as shown in Plaintiffs' Motion No. 2 for Summary Judgment, the Shipyard's attempt to limit high work to situations where fall protection was unavailable was "not in accordance with law," namely, OPM's regulations and its Operating Manual for the Federal Wage System.

Accordingly, if this Court accepts the Shipyard's claim that the Court's role is limited to review of the grievance decision under the APA, then the Shipyard's first-level determination survives, while the Shipyard's carve-out for work where fall protection is available fails.

### X. The Complaint Adequately Alleges Standing

In footnote 7, the Shipyard suggests that "it appears that plaintiffs' current complaint is inadequate to establish standing for all but the lead plaintiffs" because the complaint "provid[es] particularized claims of harm for only the 'lead' plaintiffs." The Shipyard does not move to dismiss on that basis, so an extended response is unnecessary. It suffices to say that the Shipyard misreads the Fourth Amended Complaint. Paragraph 56, for example, reads as follows:

> At all times material, each Plaintiff was assigned as a shipwright or was otherwise doing the work of shipwrights at the PSNS. Because their duties included erecting and dismantling scaffolding, each Plaintiff regularly worked at heights of at least 100 feet above the ground or other surface, or at a lesser height or heights where footing was unsure, the structure was unstable, or where protective facilities were not adequate. Hence, Plaintiffs regularly worked under conditions and circumstances that would qualify as high work under Appendix II of the BMTC Agreement and 5 CFR 532, Subpart E, Appendix A. Plaintiffs were entitled to high pay, the Environmental Differential Pay for high work.

Paragraph 61, meanwhile, avers that "no employee assigned to Shop 64 as a shipwright ever received 'high pay' during the relevant period for work on staging during difficult weather conditions or during adverse conditions …." Paragraphs 64 and 65 aver that "[o]n January 18, 2000, PSNS management initiated new rules for high pay" and that "[t]hese new high pay rules do not comply with the relevant law,

regulations or the BMTC contract." "As a result," paragraph 65 alleges, "each Plaintiff … continues to be financially harmed by Defendant's actions and does not receive high pay for each hour of qualifying high work."

As footnote 7 of the Shipyard's brief correctly acknowledges, at the pleading stage, general factual allegations of injury are generally sufficient.[71] The Fourth Amended Complaint succeeds in that regard. It alleges that each plaintiff performed certain types of specified staging work (*e.g.*, on unsure footing), that each plaintiff is owed high pay for that work, and that the Shipyard failed to pay that high pay. Of course, plaintiffs are happy to amend their compliant if the Court prefers more detail. The five declarations submitted in support of plaintiffs' original 2004 summary judgment motion give some sense of what that detail would look like.

## XI. Conclusion

The Court should deny the Shipyard's motion for dismissal, remand, or summary judgment. The Shipyard's grievance decision is no nullity and plaintiffs (or, rather their union) aren't required to "exhaust" the CBA's grievance procedure anyway. No statute precludes this Court from identifying the work conditions that satisfy the OPM's definition of high work. Nor is this task one that is beyond the competence of this Court.

The Court should grant plaintiffs' cross-motion. The Shipyard may not challenge its own grievance decision in court for a number of reasons. And if it could, the evidence in the administrative record fails to show that the Shipyard was

[71] Mot. at 10 n.7 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

arbitrary and capricious when it concluded that building or dismantling staging above the first level of staging was high work.

DATED this 4th day of September, 2007.

Respectfully Submitted,

s/Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify on September 4, 2007, a copy of the foregoing "OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR REMAND AND CROSS-MOTION NO. 1: FOR SUMMARY JUDGMENT OR FOR JUDGMENT ON ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

SEA_DOCS:858884.4