NO. 04-856C

Judge George W. Miller

UNITED STATES COURT OF FEDERAL CLAIMS

WALTER JAYNES, et al.,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant.

# PLAINTIFFS' MOTION NO. 2: FOR PARTIAL SUMMARY JUDGMENT OR RCFC 52 RULING THAT WORK ON OR ABOVE FIRST LEVEL OF INCOMPLETE STAGING CONSTITUTES HIGH WORK

Donald B. Scaramastra
Jennifer A. Krebs
GARVEY SCHUBERT BARER
Attorneys for Plaintiffs

Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

## TABLE OF CONTENTS

**Page**

I. Introduction and Relief Requested ........ 1

II. Issue Presented ........ 1

III. Factual Background ........ 2

A. The Evidence Established that Building and Dismantling Staging Involves Work on Unsure Footing ........ 2

B. The Shipyard Based Its First-Level Threshold for High Pay on Safety Considerations and OSHA Regulations ........ 6

C. OSHA Regulations Require "Safe Footing" or Fall Protection on Shipyard Scaffolding Over Five Feet above the Ground ........ 7

D. No Witness Has Identified a Viable Alternative to the First-Level Threshold Adopted in the Grievance Decision ........ 9

IV. Discussion ........ 12

A. The Court May Resolve the First-Level Issue through a Ruling under Rule 52 or 56 ........ 13

1. The Court Can Enter Judgment that Shipwrights Should Receive Environmental Differential Pay When Working on Incomplete Staging above the First Level ........ 14

2. The Court May Supplement Its Findings under RCFC 52(b) ........ 15

B. Shipwrights Should Receive Environmental Differential Pay When Working on Incomplete Staging above the First Level ........ 16

C. The Shipyard's Refusal to Pay High Work When Restraint Systems Are Potentially Available Is Contrary to Law ........ 20

V. Conclusion ........ 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AFG Industries, Inc. v. Cardinal IG Co.,* 375 F.3d 1367 (Fed. Cir. 2004) ....................13
*Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................13
*Boatman's First Nat'l Bank v. Kansas Pub. Employees Ret. Sys.*, 57 F.3d 638 (8th Cir. 1995) ....................15
*Cane Tennessee, Inc. v. United States,* 60 Fed. Cl. 694 (2004) ....................13
*Curtis v. Commissioner of Internal Revenue*, 623 F.2d 1047 (5th Cir. 1980) ....................15
*Okerlund v. United States,* 2003 U.S. Claims LEXIS 42 A.F.T.R. 2d 1134 (Ct. Fed. Cl. Feb. 14, 2003) ....................15
*Persyn v. United States*, 34 Fed. Cl. 187 (1995) ....................14
*Precision Pine & Timber, Inc. v. United States*, 72 Fed. Cl. 460 (2006) ....................16
*United States v. Anderson*, 591 F. Supp. 1 (E.D. Wash. 1982) ....................16
*United States v. United States Gypsum Co.*, 67 F. Supp. 397 (D.D.C. 1946), *rev'd on other grounds*, 333 U.S. 364 (1948)) ....................14

**Statutes**

5 U.S.C. § 5343(c) ....................17
5 U.S.C. §§ 552, 553 ....................8

**Other Authorities**

THE AMERICAN HERITAGE COLLEGE DICTIONARY, at 1221 (4th ed. 2002) ....................17
THE AMERICAN HERITAGE COLLEGE DICTIONARY, at 636 (4th ed. 2002) ....................17
THE NEW AMERICAN ROGET'S COLLEGE THESAURUS IN DICTIONARY FORM, at 790 (3d rev. ed 2002) ....................17

**Rules**

29 C.F.R. § 1915.71(j)(1) .................... 7
29 C.F.R. § 1915.71(j)(3) .................... 8
29 C.F.R. § 1915.71(k)(1) .................... 8
29 C.F.R. § 1915.73(d) .................... 8
29 C.F.R. § 1915.77(c) .................... 8, 18
5 C.F.R. 532, Subpart E, App. A .................... 21
5 C.F.R. Part 532, Subpart E, Appendix A .................... 17, 20
RCFC 52 .................... 13, 15
RCFC 52(a) .................... 16
RCFC 52(b) .................... 13, 15
RCFC 52(c) .................... 13, 14
RCFC 56 .................... 13
RCFC 56(c) .................... 13

**Regulations**

24 Fed. Reg. 5743 (July 17, 1959) ....................8, 18
29 Fed. Reg. 4002 (March 27, 1964) ....................18

## I. Introduction and Relief Requested

In its motion for dismissal, remand, or summary judgment, the Shipyard assumes that this Court's role in determining when shipwright work constitutes high work is governed, and limited by the Administrative Procedure Act.

Plaintiffs' opposition to the motion, and cross-motion no. 1, takes that assumption as a given. This motion proceeds from the opposite assumption – that this Court engages in an independent analysis of the question whether shipwright work constitutes high work, unfettered by the Shipyard's grievance decision. As this motion demonstrates, the result is the same: Plaintiffs are entitled to summary judgment – or a ruling under Rule 52(b) or (c) – with respect to two undisputed issues. First, it is undisputed that shipwright work on incomplete staging starting on the first level meets OPM's regulatory definition of high work. Second, it is undisputed that the grievance decision's denial of high pay for work where fall restraint devices are available does not.

## II. Issue Presented

1. Federal regulations require payment of an environmental differential for, among other things, working on unsure footing at a lesser height than 100 feet. All witnesses at trial agreed that working on incomplete staging from the first level involves work on unsure footing at a lesser height than 100 feet. Are the Shipwrights receive environmental differential pay when work above the first level of incomplete staging?

2. The Shipyard's grievance decision refused to pay high pay for work on incomplete staging where fall protection was available. But the federal Office of

Personnel Management defines "high work" without reference to means for practically eliminating the hazard and its regulations provide that the absence of such a reference means an environmental differential must be paid regardless of whether means exist to reduce or eliminate the hazard. Does the grievance decision comport with law when it denies high pay where fall protection is available?

## III. Factual Background

### A. The Evidence Established that Building and Dismantling Staging Involves Work on Unsure Footing

On January 18, 2000, the Shipyard issued a grievance decision signed by Mary Jane Tallman and Joe Aiken. Among other things, the decision directed that shipwrights receive high pay when "building and dismantling staging beginning from the first level above the ground/deck…."[1] The decision was based on the November 1999 report of Lynnette Niemi,[2] who was tasked with investigating the Shipwrights' grievance for the Shipyard.[3] Indeed, the pertinent language of the grievance drew verbatim, or virtually so, from Ms. Niemi's report.

Ms. Niemi's report concluded that the "work of staging builders and dismantlers does frequently meet the definition of unsure footing under b(1) [of OPM's regulatory definition of "high work"] …."[4] Ms. Niemi's factual description of work on staging, which she defended as accurate at trial,[5] conveyed the nature of the unsure footing: "The shipwrights building the structure are standing on the pipe or on one nine to twelve-inch plank while building up to the next level. …The

---

[1] JX 5 at 3. Appendix ("App.") at 3.
[2] JX 27. App. at 15.
[3] Tr. at 332:19-333:2 (Niemi). App. at 21-22.
[4] JX 27, at 2. App. at 16.
[5] Tr. at 339:4-13 (Niemi). App. at 24.

shipwrights typically use two planks in building the staging (one on each side of the level), and move them from level to level as they work."[6]

In her investigation of the grievance, Ms. Niemi researched several sources to determine the legal standards under which the environmental differential was to be paid, including federal regulations, case law, and arbitration decisions.[7] Ms. Niemi also toured the yard with Mark Winkler and Joe Aiken, both experienced shipwrights, while they showed her different staging projects and explained how they were built.[8] During that tour, the only time Ms. Niemi saw a fully planked and secure platform was when it had been prepared for use by another trade; the planks on which the shipwrights worked were unsecured.[9] Mr. Winkler confirmed this observation.[10] Ms. Niemi also found that work on staging "frequently lacks the protective enclosures or facilities contemplated under b(2)," and that "adverse environmental conditions under b(3) are also recurring factors in the work."[11]

Ms. Niemi's observations of the shipwrights building and dismantling staging led her to conclude that "the work…does frequently meet the definition of unsure footing..."[12] This finding formed the basis for her report and her recommendation[13] that the shipwrights should be paid high pay when "building and dismantling

[6] JX 27, at 1. App. at 15.
[7] Tr. at 333:10-334:25 (Niemi). App. at 22-23.
[8] Tr. at 315:10-316:11 (Niemi). App. at 19-20.
[9] Tr. at 345:6-17 (Niemi). App. at 25.
[10] Tr. at 425:2-10 (Winkler). App. at 38.
[11] JX 27, at 2. App. at 16.
[12] JX 27, at 2. *Id.*
[13] Tr. at 348:8-20 (Niemi). App. at 26.

staging beginning from the first level above ground/deck."[14] Ms. Tallman incorporated Ms. Niemi's recommendations into the Grievance Decision nearly verbatim.[15]

None of the management employees involved in the grievance, and no other trial witnesses, expressed disagreement with Ms. Niemi's description of shipwright work.[16] No one contested her conclusions regarding the unprotected nature of the shipwrights' work.[17] Indeed, all of the management and other individuals involved in the grievance resolution agreed with Ms. Niemi's description of the work shipwrights do. Mark Winkler, the management team's "process expert,"[18] testified that it was an accurate and complete description for the majority of the shipwrights' stagings.[19] At his deposition, he answered "yes" when asked whether he agreed that "[t]he work of the staging builders and dismantlers does definitely meet the definition of unsure footing under b(1), …pipe single plank, staging, couplings…" and "yes" when asked whether he thought this statement was "an accurate presentation of the facts."[20] Joe Aiken agreed that Ms. Niemi's description of shipwright work was complete and accurate.[21] And Mary Jane Tallman "didn't

[14] JX 27, at 3. App. at 17.
[15] *Compare* JX 27, at 3 *with* JX 5, at 3. App. at 17; App. at 3.
[16] Tr. at 345:18-25 (Niemi). App. at 25.
[17] Tr. at 350:19-352:3 (Niemi); Tr. at 519:18-520:9 (Tallman). App. at 27-29; App. at 48-49.
[18] Tr. at 397:22-398:4 (Niemi); 442:14-19 (Winkler). App. at 33-34; App. at 39.
[19] Tr. at 424:8-14 (Winkler). App. at 37.
[20] Winkler Dep. at 59-60. App. at 53-54.
[21] Tr. at 181:5-19 (Aiken). App. at 64.

know" if the description of staging work was accurate and complete at trial,[22] but agreed with the description at her deposition.[23]

Unsurprisingly, therefore, the grievance decision adopted Ms. Niemi's determination in full, finding that "certain work conditions encountered by Shipwrights in erecting and dismantling staging do meet the criteria for 25% high pay" and that "Situations warranting high pay occur when Shipwrights climb or perform work while standing on staging pipe or unguarded planking…."[24]

There was no evidence that Ms. Niemi's determination was the product of bargaining or compromise. There was no testimony that she played any part in the January 2000 discussions between Ms. Tallman and Mr. Aiken regarding how to resolve the grievance, which took place two months after Ms. Niemi issued her November 1999 report.

All of this testimony indisputably supports the conclusion that shipwright work on staging constitutes work on unsure footing and, therefore, high work. Not one witness or exhibit contested this point at trial.

Having determined that the building and dismantling of staging involves work on "unsure footing," the management team that resolved the grievance turned to the question of when that work involved work "at a lesser height."

---

[22] Tr. at 508:25-509:15; 511:2-14 (Tallman). App. at 42-43; App. at 44.
[23] Tr. at 512:24-514:25 (Tallman); *compare* Tallman Dep. 130:10-23. App. at 45-47; App. at 66.
[24] JX 5, at 3. App. at 3.

### B. The Shipyard Based Its First-Level Threshold for High Pay on Safety Considerations and OSHA Regulations

The grievance decision announced that shipwrights were entitled to high pay for work beginning on the "first level," but did not state how high that first level was in practice. Trial testimony, however, established that the first level of staging is generally at least five feet above the ground.[25] As in all other respects, the grievance decision adopted this first-level threshold for high pay from Ms. Niemi's report, which recommended payment of high pay for "[b]uilding and dismantling staging beginning from the first level above ground/deck…."[26]

The determination that the Shipyard should pay high pay beginning on the first level stemmed from two sources: the research and recommendations of Lynnette Niemi, and from Mary Jane Tallman's background as a safety officer. Ms. Niemi testified that her recommendation that the environmental differential be paid for work on staging above the first level was based on an OSHA regulation that requires workers on staging in shipyards to wear fall protection (if available) at heights above five feet.[27]

Ms. Tallman testified that the determination that environmental differential pay was due after the first level of staging was based on her background as a safety

---

[25] *See, e.g.,* Tr. at 461:11-18 (Winkler); Tr. at 70:6-13 (Aiken). App. at 40; App. at 60. Ms. Niemi's report, from which the grievance decision drew nearly verbatim, indicated that the "height between levels varies based on staging material used, but is typically between 7 to 11 feet," supporting the notion that the first level would have been roughly that high off the ground.

[26] JX 27, at 3. App. at 17.

[27] Tr. at 356:18-357:2 (Niemi). App. at 30-31.

officer. When asked why she selected the first level, she responded "we made a decision in Safety that fall protection would be required at 5 feet or more."[28]

Mr. Aiken testified that he thought the environmental differential should be paid starting above the first level because of the OSHA regulations, and that he brought those regulations to the attention of Shipyard management when the grievance was being decided.[29]

Ms. Niemi could not find another height standard other than five feet on which to base her recommendation. When asked if anything other than the OSHA regulation influenced her decision to recommend high pay from the first level, she responded, "…that's what I considered in making that recommendation. …it was something that identified a footmark. And I didn't find anything else that would identify a certain height."[30]

### C. OSHA Regulations Require "Safe Footing" or Fall Protection on Shipyard Scaffolding Over Five Feet above the Ground

Ms. Tallman's and Ms. Niemi's understanding of OSHA regulations concerning fall protection in shipyards was correct. Those regulations incorporate a five-foot height threshold at least four times. 29 C.F.R. § 1915.71(j)(1) states that:

> Scaffolding, staging, runways, or working platforms which are supported or suspended more than 5 feet above a solid surface, or at any distance above the water, shall be provided with a railing which has a top rail whose upper surface is from 42 to 45 inches above the upper surface of the staging, platform, or runway and a midrail located halfway between the upper rail and the staging, platform, or runway.

---

[28] Tr. at 490:22-23 (Tallman). App. at 41.
[29] Tr. at 135:14-136:6 (Aiken). App. at 61-62.
[30] Tr. at 356:18-357:2 (Niemi). App. at 30-31.

29 C.F.R. § 1915.71(j)(3) continues, "When rails are omitted, employees working more than 5 feet above solid surfaces shall be protected by safety belts and life lines…."

Other regulations emphasize the need for protective devices on staging more than five feet off the ground. For example, 29 C.F.R. § 1915.71(k)(1) states, "Access from below to staging more than 5 feet above a floor, deck or the ground shall consist of well secured stairways, cleated ramps, fixed or portable ladders meeting the applicable requirements of Sec. 1915.72 ...". Further, "[w]hen employees are working aloft, or elsewhere at elevations more than 5 feet above a solid surface, either scaffolds or a sloping ladder, meeting the requirements of this subpart, shall be used to afford safe footing, or the employees shall be protected by safety belts and lifelines…".[31] And perhaps most significantly,

> When employees are exposed to unguarded edges of decks, platforms, flats, and similar flat surfaces, more than 5 feet above a solid surface, the edges shall be guarded by adequate guardrails meeting the requirements of Sec. 1915.71(j) (1) and (2), unless the nature of the work in progress or the physical conditions prohibit the use or installation of such guardrails.[32]

OSHA has been delegated the task to promulgate these standards under the authority of the Longshoreman's Act.[33] It is required to provide notice of the proposed rules in the Federal Register and then receive comment from the public and interested parties regarding the regulations.[34]

---

[31] 29 C.F.R. § 1915.77(c). For the court's convenience, copies of these regulations are attached. App. at 68.
[32] 29 C.F.R. § 1915.73(d). For the court's convenience, copies of these regulations are attached. App. at 69.
[33] 24 Fed. Reg. 5743 (July 17, 1959).
[34] *See generally,* 5 U.S.C. §§ 552, 553.

### D. No Witness Has Identified a Viable Alternative to the First-Level Threshold Adopted in the Grievance Decision

This, then, was the basis for Ms. Niemi's findings and Ms. Tallman's decision. And for all the hullabaloo the matter has engendered, no witness has offered any admissible basis for disagreeing. Two witnesses, Messrs. Winkler and Whitcher, did offer unsupported and conclusory opinions that paying high pay for work at greater heights was reasonable.[35]

Mr. Winkler was asked on direct to identify the height he believed warranted high pay.[36] Mr. Winkler offered his "personal opinion" that high pay should be paid "around 20 foot area [sic]."[37] His only rationale was that "[i]n the shipyard we can be on ladders and you don't get High Pay when you're on a ladder."[38] This testimony, of course, ignores that ladders may not pose the risk of unsure footing that incomplete staging does.

Nor did Mr. Whitcher have a supportable basis for his opinion about high pay. When asked on direct whether 25 feet was "a reasonable height to start paying High Pay?"[39] Mr. Whitcher answered affirmatively and offered three bases for his opinion. The first was that shipwrights are "not like a lot of people," "don't think about working at heights," and are "pretty comfortable working there."[40] This, of

---

[35] This excludes Mr. Aiken's testimony that he concluded he was entitled to high pay when working at "27 feet, 25 feet, 27 feet in the air" because he was "up at 27 feet in the air on a day like today." Aiken 61:10-18. App. at 59. This testimony obviously didn't rule out high pay at lower heights, something Mr. Aiken sought, and obtained, during the high-pay grievance.
[36] Tr. at 418:21-22 (Winkler). App. at 35.
[37] Tr. at 418:23-24 (Winkler). App. at 35.
[38] Tr. at 418:25–419:1 (Winkler). App. at 35-36.
[39] Tr. at 569:24-25 (Whitcher). App. at 50.
[40] Tr. at 570:1-8 (Whitcher). App. at 51.

course, is yet another variation of the argument, long ago rejected by the Court, that shipwrights, by virtue of the fact that they usually work on staging, should be denied the high pay to which other trades would be entitled.

The second basis Mr. Whitcher offered for his opinion was that if work at five feet received high pay, the "next thing you know you'd be paying off a step ladder."[41] But the grievance decision didn't award high pay for work on a stepladder or for work below five feet. And there's an obvious difference, recognized in the regulations, between work above and below five feet. Regardless of what Mr. Whitcher thinks, recognizing this difference doesn't open the gates to perdition.

Mr. Whitcher saved his best argument for last: "You know, you let your kids go up a slide and that's more than 5 feet and you're only standing on the step …."[42] Perhaps Mr. Whitcher has experienced slides different from those the undersigned has encountered. But the undersigned, who has two children under the age of five, can't recall seeing playground equipment consisting of 12-inch-wide loose planks suspended five or more feet above the ground without guardrails. And, in fact, the U.S. Consumer Product Safety Commission has issued a Handbook for Public Playground Safety (Publication No. 325)[43] that specifically rejects Mr. Whitcher's vision of how things work on the playground. The Commission's guidelines provide a "detailed working blueprint to help local communities, schools, day care centers,

[41] Tr. at 570:9-11 (Whitcher). *Id.*
[42] Tr. at 570:11-13 (Whitcher). *Id.*
[43] Declaration of Donald B. Scaramastra, Ex. A. The Handbook is also available on-line at www.cpsc.gov/cpscpub/pubs/325.pdf. App. at 72.

corporations, and other groups build safe playgrounds."[44] Not surprisingly, the guidelines require handrails and protective barriers for ladders and platforms, including on the slides Mr. Whitcher invoked during trial.[45] Guardrails are required on platforms between 20 inches and 48 inches high, depending on the age of the children who will play on them.[46] Slides also require a hood, tunnel, or other means to channel a child into a safe sitting position on the slide, to prevent the child from falling.[47] The equipment should also be stable.[48] It has been a lot of years, apparently, since Mr. Whitcher set foot on a playground.

Just before he was asked whether 25 feet was a reasonable threshold for paying high pay, Mr. Whitcher expressed his understanding that "most of the other shipyards paid High Pay around 25 feet."[49] Mark Winkler, however, testified in his deposition that members of the management team that resolved the grievance looked into other shipyard practices and learned that "there was a huge variation between the shipyards on what constituted their impression of high pay."[50] They heard that some shipyards paid high work for all or virtually all work shipwrights did each day.[51] No one could articulate why other shipyards acted as they did. Standing alone, practices at other shipyards, whatever those practices might be, is insufficient to show what the practice at the Shipyard is legally required to be.

---

[44] *Id.* (forward). App. at 73.
[45] *Id.* §§ 10.3 & 12.4.2. App. at 75-77.
[46] *Id.* § 11.3. App. at 76.
[47] *Id.* § 12.4.3. App. at 77-78.
[48] *Id.* § 7.1.1. App. at 74.
[49] Tr. at 569:15-19 (Whitcher). App. at 50.
[50] Winkler Dep. 78:15-17. App. at 55.
[51] Winkler Dep. 78-79. App. at 55-56.

As previously noted, all witnesses, including Winkler and Whitcher, agreed that the building and dismantling of staging rises (quite literally) to the level of high work at some point because the work was done on unsure footing. All witnesses who were asked also agreed that there was no difference between shipwright work performed six feet above the ground and work performed 26 feet up. Ms. Niemi so testified.[52] And so did Mr. Aiken.[53] It is undisputed that the only difference between work six feet and 26 feet up is the height. So if the footing was unsure at one height – as all witnesses agree it was – then it could only have been unsure at others.

## IV. Discussion

The evidence presented at trial compels the conclusion that work above the first level on staging meets the regulatory definition of high work. Significantly, nearly all of this evidence came from the Shipyard's own managerial employees responsible for resolving the shipwrights' high-pay grievance. The Shipyard has presented all witnesses with percipient knowledge of the events surrounding the resolution of the grievance and has been fully heard on the issue. Presumably the Shipyard does not intend to ask these witnesses to change their testimony or to call other witnesses to challenge the testimony of its own employees.[54]

Accordingly, the question of when shipwright work on incomplete staging constitutes high work may now be decided. Due to the unique posture of this case –

[52] Tr. at 360:5-9 (Niemi). App. at 32.
[53] Tr. at 136:7-15 (Aiken). App. at 62. Mr. Aiken also agreed that "leading edge" work involves the same operations at five feet above the ground as it does at 15 feet. Tr. at 137:18-23. App. at 63.
[54] And, in fact, the Shipyard may not do so, as explained in plaintiffs' Motion No. 1.

in which the Court has already received trial testimony and accepted exhibits into the record – the Court may decide it under one or the other of two rules: RCFC 52 or RCFC 56. Each of these alternatives is explored below.

### A. The Court May Resolve the First-Level Issue through a Ruling under Rule 52 or 56

Rule 52 provides mechanisms for the Court to resolve this matter based on evidence already presented at trial. Rule 52(c) allows the Court to decide an issue that requires no more factual development. Rule 52(b), meanwhile, allows a court to supplement its findings based on evidence previously received.

Under Rule 56, summary judgment is proper when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[55] A fact is "material" if it will affect the outcome of the case, and the existence of a disputed fact that is not outcome-determinative will not preclude summary judgment.[56] If facts are undisputed, and can only lead to one possible conclusion, summary judgment should be granted as a matter of law.[57] Using either of these mechanisms, the Court can find that shipwrights should receive environmental differential pay when working on staging above the first level.

---

[55] RCFC 56(c); *see also AFG Industries, Inc. v. Cardinal IG Co.,* 375 F.3d 1367, 1371 (Fed. Cir. 2004).
[56] *Cane Tennessee, Inc. v. United States,* 60 Fed. Cl. 694, 698 (2004); *see also Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).
[57] RCFC 56(c).

### 1. The Court Can Enter Judgment that Shipwrights Should Receive Environmental Differential Pay When Working on Incomplete Staging above the First Level

Rule 52(c) provides a mechanism for a court to enter judgment regarding an issue about which it has received evidence during trial. In a motion under RCFC 52(c), "the judge, as the sole trier of fact, may weigh the evidence and is not required to resolve all issues of evidence and credibility in the [non-movant's] favor."[58] Further, "[w]hen a court sitting without a jury has heard all of plaintiff's evidence, it is appropriate that the court shall then determine whether or not the plaintiff has convincingly shown a right to relief."[59]

The Court has heard all the evidence, which is undisputed, regarding the nature of shipwrights' work. The Court has also been presented with the OSHA regulations regarding when shipwright work becomes unsafe, and with evidence that the Shipyard relied on these regulations in issuing the grievance decision. To challenge its own grievance decision (something it may not do anyway, as Motion No. 1 demonstrates), the Shipyard would have to discredit the very witnesses it called to testify on its behalf at trial. Presumably, the Shipyard has no plans to impeach all of its own witnesses, and it is unclear how it would do so in any event. Presumably, too, the Shipyard has no plans to ask its witnesses to change their testimony. And, under Rule 52, this Court is under no obligation to view the spectacle of the Shipyard pursuing either course of action before deciding the issues

---

[58] *Persyn v. United States*, 34 Fed. Cl. 187, 195 (1995).
[59] *Id.* (quoting *United States v. United States Gypsum Co.*, 67 F. Supp. 397 (D.D.C. 1946), *rev'd on other grounds*, 333 U.S. 364 (1948)).

now before it. Thus, the Court can decide the issue now without hearing further testimony or evidence at trial.

### 2. The Court May Supplement Its Findings under RCFC 52(b)

Alternatively, the Court, under Rule 52(b), could enter supplemental findings of fact regarding paying the environmental differential beginning from the first level of staging. Rule 52(b) provides that "On a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." As the Court has not yet entered judgment, the Court can amend or supplement its findings at any time.

Most court opinions regarding RCFC 52(b) (or its identical counterpart, Fed. R. Civ. P. 52(b)) arise in one of two circumstances, neither of which is present here. The first is in response to an appellate court directive, as when the reviewing court concludes that the trial court's findings are insufficient to support review.[60] The second is in response to what is, in essence, the defeated party's attempt to obtain reconsideration of an unfavorable decision, often after judgment was already entered. In the former situation, the trial court has no choice but to supplement its findings. In the latter, the trial court is typically – and understandably – reluctant to do so absent a manifest error of law or mistake of fact.[61]

Removing all this chaff leaves little wheat to sift. The few decisions that remain make clear that the trial court has substantial discretion to decide whether

---

[60] *See, e.g.*, *Boatman's First Nat'l Bank v. Kansas Pub. Employees Ret. Sys.*, 57 F.3d 638, 641-42 (8th Cir. 1995); *Curtis v. Commissioner of Internal Revenue*, 623 F.2d 1047, 1053-54 (5th Cir. 1980).

[61] *E.g., Okerlund v. United States,* 2003 U.S. Claims LEXIS 42, 91 A.F.T.R. 2d 1134 (Ct. Fed. Cl. Feb. 14, 2003).

to supplement its findings of fact, and courts that have chosen to do so have done so with little fanfare.[62] That, indeed, appears to have been the course that this Court contemplated in its opinion in *Precision Pine & Timber, Inc. v. United States,*[63] issued roughly a year ago.

Here, the record is replete with testimony regarding the basis for concluding that shipwright work on or above the first level of incomplete staging was high work. Therefore, this Court can supplement its findings based on this testimony.

### B. Shipwrights Should Receive Environmental Differential Pay When Working on Incomplete Staging above the First Level

Regardless of which procedural avenue the Court chooses, the facts compel but one conclusion: Shipwrights deserve environmental differential pay when building or dismantling staging above the first level. As shown above, each of the Shipyard witnesses who spoke to the topic testified that work on staging while standing on unsecured planks is "unsure footing." Work on unsure footing "at a lesser height" than 100 feet is all that the regulation requires for the environmental differential to be paid.

All of the evidence at trial demonstrated that shipwrights work on unsure footing. As set forth above, no witness disagreed with Ms. Niemi's description of shipwright work or her determination that the "work of staging builders and dismantlers does frequently meet the definition of unsure footing under b(1) [of the regulations]…."

---

[62] *United States v. Anderson*, 591 F. Supp. 1, 4 (E.D. Wash. 1982).

[63] 72 Fed. Cl. 460 (2006) (per G. Miller, J.). After issuing findings under RCFC 52(a) as it did here, *id.* at 462 n.3, the court indicated that it planned to issue another opinion and order resolving further factual issues after receiving additional briefing. *Id.* at 466.

Nor could any witness identify any basis for distinguishing between work at five or six feet and work at greater heights. Notably, the regulatory definition of high work imposes no minimum height standard. It requires the payment of high work for work on unsure footing "at a lesser height" than 100 feet without establishing a minimum threshold height.[64]

Significantly, the regulations impose no minimum height threshold. This tends to undermine notions that a threshold should be set 25 feet in the air.

The absence of such a threshold does, admittedly, raise potential concerns at the other end of the spectrum, for work one foot off the ground is work at a "lesser height" than 100 feet. Given that the regulation springs from a statute requiring environmental differentials for hazardous work, it is fair to read into the regulation a requirement that that the "lesser height" be "hazardous" or "unsafe." This reading is supported by OPM's definition of high work due to adverse weather conditions. That definition expands the definition of high work to include any work where adverse weather or other environment factors "render working at such height(s) **hazardous**."[65]

"Hazardous" is, of course, synonymous with "unsafe." A "hazard" is "a chance of being injured or harmed or a "danger."[66] It is the presence of hazardous conditions aloft, one of which is unsure footing, that constitutes high work.

OSHA's regulations concerning shipyard staging embody a determination that certain work conditions are unsafe, i.e., hazardous. Those regulations state

---

[64] 5 C.F.R. Part 532, Subpart E, Appendix A.
[65] *Id.* (emphasis added).
[66] THE AMERICAN HERITAGE COLLEGE DICTIONARY, at 636 (4th ed. 2002).

that their purpose is, among other things, to "afford safe footing."[67] This is notable, given that the definition of high work incorporates the concept of "unsure footing."

The regulations define neither "safe" nor "unsure," but the words "sure" and "safe," are acceptable substitutes in most contexts, according to dictionary[68] and thesaurus.[69] One of the identified meanings of "safe" is "free from risk; sure."[70] The word "sure" once was a synonym for "safe," although this is something of an anachronism today.[71] Hence, footing that is seemed "unsafe" by OSHA, as work above five feet without a sufficient platform and railings would be, is (according to plain English) footing that is "unsure."

Other considerations support the adoption of the OSHA height standard and foreclose the selection of any other. The federal Office of Personnel Management has determined that work on unsure footing "at a lesser height" than 100 feet is work of an "unusually hazardous" nature within the meaning of 5 U.S.C. § 5343(c). Something is "usual" if it is "commonly encountered, experienced, or observed."[72] Unless this Court is prepared to assume a nation of scofflaws who routinely violate OSHA safety standards, then work that fails to comply with those standards would be (and certainly should be) "unusual."

---

[67] 29 C.F.R. § 1915.77(c). For the court's convenience, we have attached copies of these regulations. App. at 68.
[68] THE AMERICAN HERITAGE COLLEGE DICTIONARY, at 1221 (4th ed. 2002).
[69] THE NEW AMERICAN ROGET'S COLLEGE THESAURUS IN DICTIONARY FORM, at 790 (3d rev. ed 2002).
[70] THE AMERICAN HERITAGE COLLEGE DICTIONARY, at 1221 (4th ed. 2002).
[71] *Id.*
[72] *Id.* at 1510.

There is not the slightest hint in the record that OSHA, the federal agency charged with "issuing safety and health regulations applicable to employments … in the ship repair industry,"[73] somehow acted improperly in setting a five-foot standard for its various safety rules regarding shipyard scaffolding. OSHA promulgated these standards after holding public hearings and receiving input from interested persons.[74] These standards represent the collective wisdom of both those in the shipyard industry and government regulators, who have concluded that work on staging over five feet is, at the least, likely to result in injurious falls.

Against this weight of regulatory (and Shipyard) authority and expertise, one has only the conclusory and unsupported opinions of Mark Winkler and Rodney Whitcher that high pay really shouldn't be paid until some height greater than the first level even though shipwright work above the first level is undisputedly work on unsure footing in unsafe conditions at unsafe heights.

It is no wonder, therefore, that the only basis for distinguishing work at various heights -- all "at a lesser height" than 100 feet -- was OSHA's standard for the safe use of staging in shipyards. In light of the absence of evidence supporting any other dividing line between high work and other work, the effort to draw such a line would be a fool's errand.

The Shipyard decided that high pay was warranted when "Shipwrights climb or perform work while standing on staging pipe or unguarded planking…".[75] This complies with the regulatory definition of high pay as work "at a lesser height …[i]f

---

[73] 24 Fed. Reg. 5743 (July 17, 1959).
[74] *See* 29 Fed. Reg. 4002, 4012 (March 27, 1964).
[75] JX 5, at 3. App. at 3.

the footing is unsure or the structure is unstable…"[76] This determination is supported by the exhibits and testimony the Shipyard offered at trial. Plaintiffs, meanwhile, don't plan to offer any contradictory evidence. Accordingly, the Court can determine as a matter of law on summary judgment, or find as a matter of fact under Rule 52, that shipwrights are entitled to environmental differential pay when working on staging above the first level off the deck or work surface.

### C. The Shipyard's Refusal to Pay High Work When Restraint Systems Are Potentially Available Is Contrary to Law

Although the Shipyard's first-level threshold for payment of high work is valid, its refusal to pay high pay when fall restrain systems are potentially available is not. The regulations and collective bargaining agreement require payment of an environmental differential when footing is unsure or the structure unstable **or** safe scaffolding, enclosed ladders or other similar protective facilities are inadequate **or** if adverse weather conditions make work hazardous.[77] The grievance decision, however, allows for payment of the environmental differential **unless** (a) flooring and safety rails are installed or (b) fall protection devices can be properly used. By phrasing its decision in this manner, the Shipyard transforms the CBA's disjunctive language into the conjunctive.

Moreover, the plain language of OPM's regulations don't permit the Shipyard to condition the payment of high pay on the absence of fall protection. Those regulations specifically contemplate conditions under which certain risk categories can be mitigated to the extent that the environmental differential does not have to

[76] 5 C.F.R. 532, subpart E, App. A.
[77] JX 1 (Appendix 2).

be paid. The regulation requiring a high pay differential is not one which can be mitigated by fall protection. Section S8-7(d)(3) of the Office of Personnel Management's operating manual states:

> Some of the environmental differentials listed in appendix J are payable whenever the criteria in the category definition are met. Others are payable only if protective facilities, devices, or clothing have not practically eliminated the hazard, physical hardship, or working condition of an unusually severe nature. Consistent with S8-7g(3) below, determinations in this regard may be made through negotiations at the local level. Categories for which payment is made when the conditions given in the definition are met are those in which there is no reference to practical elimination of the condition through protective measures. Categories which are subject to practical elimination contain language to that effect in the definition.[78]

The category that defines when high pay should be paid does not state that the condition can be eliminated through protective measures,[79] yet that is exactly what the grievance decision proposed to do by limiting high pay to situations where fall protection, i.e., "practical elimination of the condition through protective measures," is available. This the regulations do not countenance and in this respect, the grievance decision is quite plainly contrary to law. No amount of deference to the decision can save this aspect of it.[80]

## V. Conclusion

OPM regulations require payment of high pay for work on unsure footing "at a lesser height" than 100 feet, regardless of whether the condition can be eliminated through protective measures, without imposing a minimum height. It is undisputed

---

[78] PX 1.

[79] 5 C.F.R. 532, Subpart E, App. A; *see also* PX 2.

[80] The Court has, perhaps, noted this error already. In its Order denying the cross-motions for summary judgment, the Court stated: "The new prospective policy appears to be less generous to employees than the requirements of the relevant federal regulations (and by incorporation, the BMTC agreement)…".Order, at 4 (Dec. 7, 2005).

that shipwright work on incomplete staging involves work on unsure footing and at heights. It is undisputed that work on the first level is no different than work at higher levels. And it is undisputed that there is no basis for distinguishing work at various heights below 100 feet other than OSHA's safety regulations. Accordingly, this Court should either grant summary judgment, or issue a ruling or supplemental findings under Rule 52, and hold that shipwright work on incomplete staging on or above the first level satisfies the regulatory definition of high work, regardless of whether fall restraint devices are available.

DATED this 4th day of September, 2007.

Respectfully Submitted,

s/Donald B. Scaramastra
Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify on September 4, 2007, a copy of the foregoing "PLAINTIFFS' MOTION NO. 2: FOR PARTIAL SUMMARY JUDGMENT OR RCFC 52 RULING REGARDING VALIDITY OF GRIEVANCE DECISION THAT WORK ON OR ABOVE FIRST LEVEL OF INCOMPLETE STAGING CONSTITUTES HIGH WORK" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald B. Scaramastra
Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs