NO. 04-856C

Judge George W. Miller

UNITED STATES COURT OF FEDERAL CLAIMS

WALTER JAYNES, et al.,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant.

# PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Donald B. Scaramastra
Jennifer A. Krebs
GARVEY SCHUBERT BARER
Attorneys for Plaintiffs

Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

1. In its Opinion and Order of February 14, 2007, the Court made numerous factual findings that are now undisputed in the sense that they have been established by the Court. Plaintiffs will not restate (or attempt to re-characterize) them here.

2. Lynnette Niemi was tasked with investigating the Shipwrights' grievance for the Shipyard. She issued a report based on her findings in November 1999. Tr. at 332:19-333:2 (Niemi); JX 27. App. at 21-22; App. at 15.[1]

3. During her investigation of the grievance, Ms. Niemi researched several sources to determine the legal standards under which the environmental differential was to be paid, including federal regulations, case law, and arbitration decisions. Tr. at 333:10-334:25 (Niemi). App. at 22-23.

4. Ms. Niemi toured the Shipyard with Mark Winkler and Joe Aiken, both experienced shipwrights, while they showed her different staging projects and explained how they were built. Tr. at 315:10-316:11 (Niemi). App. at 19-20. During that tour, the only time Ms. Niemi saw a fully planked and secure platform was when it had been prepared for use by another trade; the planks on which the shipwrights worked were unsecured. Tr. at 345:6-17 (Niemi). App. at 25. At trial, Ms. Niemi affirmed the accuracy of the factual conclusions she reached in her report. Tr. at 339:4-13 (Niemi). App. at 24.

---

[1] "App. at ______" refers to the Appendix to Plaintiffs' Motion No. 2: For Partial Summary Judgment or RCFC 52 Ruling Regarding Validity of Grievance Decision That Work On or Above First Level of Incomplete Staging Constitutes High Work, filed contemporaneously herewith.

5. Mark Winkler, the management team's "process expert," agreed with the description in Ms. Niemi's report that shipwrights built or dismantled stagings. Tr. at 397:22-398:4; 442:14-19; 424:8-14 (Winkler). App. at 33-34, 37, 39. Mr. Winkler agreed that most of the time, shipwrights work on incomplete staging. Tr. at 425:2-10 (Winkler). App. at 38.

6. At his deposition, Mr. Winkler agreed that "[t]he work of the staging builders and dismantlers does definitely meet the definition of unsure footing under b(1), ". . . pipe single plank, staging, couplings. . . ." He thought this statement was "an accurate presentation of the facts." Winkler Dep. at 59-60. App. at 53-54.

7. None of the management employees involved in the grievance expressed disagreement with the description of the shipwrights' work in Ms. Niemi's report. Tr. at 345:18-25 (Niemi). App. at 25. No one contested her conclusions regarding the unprotected nature of the shipwrights' work. Tr. at 350:19-352:3 (Niemi); Tr. at 519:18-520:9 (Tallman). App. at 27-29, 48-49.

8. Joe Aiken agreed that Ms. Niemi's description of shipwright work was complete and accurate. Tr. at 181:5-19 (Aiken). App. at 64.

9. At trial, Mary Jane Tallman testified that she "didn't know" whether the description of staging work in Ms. Niemi's report was accurate and complete. Tr. at 508:25-509:15; 511:2-14 (Tallman). App. at 42-43, 44. At her deposition, though, she agreed with Ms. Niemi's description. Tr. at 512:24-514:25 (Tallman); *compare* Tallman Dep. 130:10-23. App. at 45-47, 66.

10. The grievance decision announced that shipwrights were entitled to high pay for work beginning on the "first level," but did not state how high that first level was in practice. The first level of staging is generally at least five feet above the ground. Tr. at 461:11-18 (Winkler); Tr. at 70:6-13 (Aiken). App. at 40, 60.

11. Ms. Niemi based her recommendation that an environmental differential be paid for work on staging above the first level on an OSHA regulation that requires workers on staging in shipyards to wear fall protection (if available) at heights above five feet. Tr. at 356:18-357:2 (Niemi). App. at 30-31.

12. Ms. Tallman testified that she based her determination that environmental differential pay was owed for work on the first level of staging on her background as a safety officer. When asked why she selected the first level, she responded "we made a decision in Safety that fall protection would be required at 5 feet or more." Tr. at 490:22-23 (Tallman). App. at 41.

13. Mr. Aiken thought the environmental differential should be paid starting above the first level of staging because of the OSHA regulations, and that he brought those regulations to the attention of Shipyard management when the grievance was being decided. Tr. at 135:14-136:6 (Aiken). App. at 61-62.

14. When Ms. Niemi was asked if anything other than the OSHA regulation influenced her decision to recommend high pay from the first level,

she responded, "that's what I considered in making that recommendation. . . . [I]t was something that identified a footmark. And I didn't find anything else that would identify a certain height." Tr. at 356:18-357:2 (Niemi). App. at 30-31.

15. Ms. Niemi testified that there was no difference between shipwright work performed six feet above the ground and work performed 26 feet up. Tr. at 360:5-9 (Niemi). App. at 32.

16. Mr. Aiken testified that there was no difference between shipwright work performed six feet above the ground and work performed 26 feet up. He also agreed that "leading edge" work involves the same operations at five feet above the ground as it does at 15 feet. Tr. at 136:7-137:23 (Aiken). App. at 62-63.

17. Before January 18, 2000, the Shipyard did not pay shipwrights an environmental differential for high work unless they were working more than 100 feet above the dock, from a JLG ("manlift"), or occasionally in inclement weather. Decl. of Mark Winkler, ¶ 3, Ex. 1 to Defendant's Opposition to Plaintiffs' Motion for Class Certification, as corrected. Appendix to Plaintiffs' Motion No. 3: For Summary Judgment Regarding Effect of Statute of Limitations at 1-2.

18. Lynnette Niemi, as the Shipyard's designee, testified during its Rule 30(b)(6) deposition regarding the "identity, general contents, custodian

and location of all Shipyard or Navy records pertaining to high work and high pay." 30(b)(6) Dep. 12:11-23 (Niemi). App. No. 4 at 2.[2]

19. When Ms. Niemi was asked in the 30(b)(6) deposition about the Shipyard's high work records before issuance of the Grievance Decision on January 18, 2000, she testified: "They [the Shipyard] weren't paying for high work except in those circumstances, so that would be the only records that would be there would be the payment of it." 30(b)(6) Dep. 33:6-8 (Niemi). App. No. 4 at 3.

20. When asked if the Shipyard was "aware of any means to document or approximate which shipwrights did high work before the grievance," Ms. Niemi stated she was not. 30(b)(6) Dep. 34:1-4 (Niemi). App. No. 4 at 4.

21. During the 30(b)(6) deposition, Ms. Niemi was asked if the Shipyard "currently keep[s] any records of how much time each shipwright spends on staging either assemblage or disassemblage," Ms. Niemi answered, "No, I don't believe the records would say when they were on the staging." 30(b)(6) Dep. 34:5-9 (Niemi). App. No. 4 at 4.

22. When asked if the Shipyard "currently maintain[s] any records of how much a shipwright spends passing materials up and down the staging while the shipwright is actually on it," Ms. Niemi again answered no. 30(b)(6) Dep. 34:18-21 (Niemi). App. No. 4 at 4.

---

[2] "App. No. 4 at ______" refers to the Appendix to Plaintiffs' Motion for Partial Summary Judgment No. 4: Regarding Effect of Shipyard's Failure to Keep Records as Required by Federal Law.

23. When asked during the 30(b)(6) deposition whether the Shipyard "under[stood] or believe[d] that it has an obligation to maintain records of all high work shipwrights perform," Ms. Niemi responded, "I'm not sure. We have an obligation to maintain the attendance records which includes the high work that's paid." 30(b)(6) Dep. 39:19-24 (Niemi). App. No. 4 at 5.

24. When asked whether the Shipyard was taking any steps to record hours of high work in the event that this Court determines the Shipwrights had not been fully compensated, Ms. Niemi answered (over objection), "I don't think there is anything there that would tell when they performed the high work." 30(b)(6) Dep. 39:19-40:9 (Niemi). App. No. 4 at 5-6.

25. "Prior to the filing of the grievance the Shipyard had never kept any record of High Work hours except in cases of work over 100 feet, inclement weather, or work in manlift equipment." Winkler Decl. ¶ 12, at 6-7. App. No. 4 at 8-9. The "shipyard has maintained no records whatsoever of who performed High Work prior to the grievance, except for work over 100 feet, inclement weather, and manlift operations." Mr. Winkler is "not aware of any means to document or even approximate who among the Shipwrights did the High Work." Winkler Decl. ¶ 14, at 8. App. No. 4 at 7.

26. "Because Shipwrights were not paid for High Work prior to filing the union grievance there has been no reason to record this work for

each employee. Hence, no such records exist now or have ever existed."

Niemi Decl. ¶ 10, at 5. App. No. 4 at 12.

DATED this 4th day of September, 2007.

Respectfully Submitted,

s/Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify on September 4, 2007, a copy of the foregoing "PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs