No. 04-856C
Judge George W. Miller

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WALTER JAYNES, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 4

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, .D.C. 20530
Tele: (202) 616-2377
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:
TELIN W. OZIER
Trial Counsel
Department of the Navy
OGC, Navy Litigation Office
720 Kennon Street, S.E.
WNY Bldg. 36, Room 256
Washington, D.C. 20374-5013

STEVEN L. SEATON
Labor Counsel
Department of the Navy
Puget Sound Navy Shipyard
1440 Farragut Avenue
Bremerton, WA 98314-5001

November 5, 2007

# TABLE OF CONTENTS

**PAGE(S)**


ARGUMENT ........................................................................................................ 2

I. Plaintiffs Present No Legitimate Basis To Be Relieved Of The Basic Duty To Prove They Are Entitled To EDP For High Work.................................. 2

II. Plaintiffs Present No Legitimate Basis To Be Relieved Of Their Burden To Individually Demonstrate, When, If Ever, They Performed High Work Without Proper Compensation.......................................................... 10

A. Anderson v. Mt. Clemens Pottery Co. Is Not Applicable To EDP. .......... 10

B. Plaintiffs Waived Their Right To Challenge The Lack Of Documentation By Their Own Inaction. .................................................. 16

CONCLUSION. ...................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

Adams v. United States,
471 F.3d 1321 (Fed. Cir. 2006)........................................................................... 2

Amcor, Inc. v. Brock,
780 F.2d 897 (11th Cir. 1986). ......................................................................... 15

Anderson v. Mt. Clemens Pottery Co.,
328 U.S. 680 (1946)...................................................................................... passim

Combs v. King,
764 F.2d 818 (11th Cir. 1985). ...................................................................... 14-15

Jaynes v. United States,
68 Fed. Cl. 747 (2005). ................................................................................... 17

Jaynes v. United States,
75 Fed. Cl. 218 (2007). ............................................................................... 3, 6, 8

Mudge v. United States,
59 Fed. Cl. 527 (2004). ..................................................................................... 7

O'Connor v. United States,
308 F.3d 1233 (Fed. Cir. 2002)........................................................................... 9

O'Neall v. United States,
797 F.2d 1576 (Fed. Cir. 1986)....................................................................... 1, 2

R.H. Stearns Co. v. United States,
291 U.S. 54 (1934)........................................................................................... 16

Savering v. United States,
18 Cl. Ct. 707 (1989). ..................................................................................... 11

In re Williams,
298 F.3d 458 (5th Cir. 2002). .......................................................................... 16

**STATUTES & REGULATIONS**

5 U.S.C. § 5343 ........ 2, 16

5 U.S.C. § 5542 ........ 13

5 U.S.C. § 5596 ........ 18

5 U.S.C. § 7103 ........ 9

5 U.S.C. § 7114 ........ 9

29 U.S.C. § 207 ........ 13

29 U.S.C. § 1059 ........ 15

5 C.F.R. § 532 ........ 12, 14

5 C.F.R. § 532.511 ........ 3, 12, 13, 14

5 C.F.R. § 551 ........ 13

5 C.F.R. § 551.401 ........ 13

5 C.F.R. § 551.402 ........ 13

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WALTER JAYNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-856C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 4**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") and this Court's order, dated October 5, 2007, defendant, the United States respectfully responds to plaintiffs' fourth motion for partial summary judgment.

Plaintiffs have the burden of demonstrating that Federal law has been violated and that they, individually, have not received the pay that is required by the law. O'Neall v. United States, 797 F.2d 1576, 1581 (Fed. Cir. 1986) ("Employees seeking EDP entitlement must bear the burden of proof of their claims under ordinary principles of our jurisprudence, and no special circumstances are present here which warrant departure from the general rule."). Plaintiffs, however, assert that they should be relieved of both (1) the burden to prove that the work they did satisfied the legal conditions for which Environmental Differential Pay ("EDP") for high work must be paid, and (2) the burden to produce the evidence necessary to establish specifically when they, individually, should have been paid but were not paid. Plaintiffs' argument, however, is based upon several flawed premises, including the assertion that the Government failed to keep legally required records of work, pursuant to Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Because plaintiffs' arguments are incorrect, the Government

respectfully requests that this Court deny plaintiffs' fourth motion for partial summary judgment.[1]

## ARGUMENT

### I. Plaintiffs Present No Legitimate Basis To Be Relieved Of The Basic Duty To Prove They Are Entitled To EDP For High Work

"Employees seeking EDP entitlement must bear the burden of proof of their claims under ordinary principles of our jurisprudence." O'Neall v. United States, 797 F.2d at 1581. In particular, plaintiffs have the burden of showing that the work at issue is properly characterized as compensable work. Adams v. United States, 471 F.3d 1321, 1326 (Fed. Cir. 2006). Nevertheless, as an initial matter, plaintiffs argue that the Court should relieve them of the duty to prove that the work they did beginning April 1994 met the statutory "unusually severe hazard" standard required to sustain their claim for EDP for high work.

The "unusually severe hazard" requirement is an integral part of the relevant statute. 5 U.S.C. § 5343(c)(4). See O'Neall, 797 F.2d at 1581 (where the Office of Personnel Management's ("OPM") asbestos EDP regulation failed to address the statutory requirement of "an unusually severe hazard," "the regulation is incomplete," because the language of the regulation must be "construed consistently with the language of § 5343(c)(4)."). This Court should not ignore this statutory requirement. Should the Court not remand this case to the agency for a local determination, this Court can only decide whether plaintiffs have or have not been paid as required by law and regulation. Further, as this Court previously noted, the EDP for

---

[1] Plaintiffs' argument in this motion regarding their burden to prove their case repeatedly overlaps and relates to the relevant arguments contained in our motion, and plaintiffs' motions 1 and 2. See, e.g., Pl. Mot. 4 at 5, 15. Accordingly, we respectfully requests that the Court resolve these motions at the same time.

high work standards are not self-implementing, but are subject to a local determination. Jaynes v. United States, 75 Fed. Cl. 218, 228 (citing 5 C.F.R. § 532.511(a)).

Rather than have the Court focus upon the required statutory standards, plaintiffs have asked the Court to adopt an extremely low five-foot height requirement for high pay. This five-foot standard is integral to plaintiffs' characterization of their claims. This was made clear in plaintiff Paul Scott's testimony to the Court at the accord and satisfaction trial.

> THE COURT: Well, that was my question. Does it, is it necessarily the case that all working on staging is high work with the meaning of the relevant collective bargaining agreement –
> THE WITNESS: Under the –
> THE COURT: – and regulations?
> THE WITNESS: I'm sorry, Your Honor. Go ahead please.
> THE COURT: Under the relevant regulations and provisions of the collective bargaining agreement?
> THE WITNESS: It is, Your Honor. And it states so in Appendix J. It virtually states when you get High Pay. And high work and work at extreme height, there's no debate here, it tells you precisely when you get High Pay.
> THE COURT: But it didn't say anything about working at 5 feet above the ground constitutes high work, isn't that correct?
> THE WITNESS: No, no. That was, that came from the grievance.
> THE COURT: Right.
> THE WITNESS: Yes.
> THE COURT: So what you're doing I take it when you say you worked six hours of high work per day on average is you're calculating high pay based on the notion that if you worked at a height above 5 feet that was high work?
> THE WITNESS: Yes.
> THE COURT: Okay. So the six hours to which you refer assumes a definition of high work which equates to working at a height greater than 5 feet?
> THE WITNESS: Yes.

Def. 4th Supp. App. 22-24.[2]

[2] "Def. 4th Supp. App. ___" refers to a page in the supplemental appendix attached to this response.

Plaintiffs reason that the five-foot standard should be used by this Court because height reference was contained within an attempted settlement agreement,[3] Def. App. 61-75,[4] signed after the claim period, by their exclusive representative, Barry Joe Aiken, and the Shop 64 superintendent, Mary Jane Tallman.[5] Pl. Mot. 4 at 5. Plaintiffs' argument, however, requires that the Court ignore both the express language of the attempted settlement agreement and the stated intent of the parties to the agreement, and extract only the 5-foot standard from the agreement. Further, the attempted settlement is part of the grievance process, not the basis for an independent claim for compensation outside of this process. Finally, there is no evidence that Ms. Tallman was deciding if the law required payment for work at five feet; there is no evidence that Ms. Tallman was setting a local pay determination for the agency, rather the evidence is that she was solely attempting to settle the grievance before her.

[3] This argument is part of our response to plaintiffs' motion 2. However, because proving the "right" to a particular pay is a critical element that is assumed within plaintiffs' burden shifting analysis, we also respond herein. However, as noted above, we respectfully request that the Court defer a decision on this motion until motion 2 is fully briefed. Indeed, at least until motion 2 is fully briefed and decided by this Court, the threshold question of entitlement will remain at issue.

[4] "Def. App. ___" refers to a page in the appendix attached to our original motion.

[5] More specifically, in 1999, a grievance was filed on behalf of 99 employees in the bargaining unit. See Def. App. 49-60. With several exceptions, this grievance included the plaintiffs. The grievance claim asserted a right to high pay and was restricted in scope to the same back pay issues now raised before the Court. The parties attempted to resolve the grievance by an agreement between the union, the exclusive representative of the employees, and the management of Shop 64. Id. at 61-75. The substance of the attempted agreement was that the grievants would give up their back pay claims in exchange for a very favorable future pay policy for high work within Shop 64. This agreement was memorialized in part with the grievance decision, signed by both Mr. Aiken and Ms. Tallman that set forth the future pay policy for the shop. Id. at 64-65. It is this future pay policy that plaintiffs want this Court to apply to the back pay claim.

The attempted settlement agreement reached in January 2000 resulted in Ms. Tallman changing the Shop 64 pay practice for high work in accordance with the settlement. As demonstrated in our initial motion, the attempted settlement has no validity as applied to the back pay claim.[6] Ms. Tallman agreed to pay shipwrights prospectively for building and dismantling staging beginning at the first level[7] above the ground/deck unless safety rails were installed or other fall protective devices could properly be used. Def. App. 64-65. Plaintiffs assert this amounts to the required "local determination" that is needed for the payment of EDP. However, as demonstrated in our initial motion, this agreement does not constitute a valid local determination, and the Court is required to remand for a local determination to be made. Plaintiffs only selectively use the attempted settlement, arguing for use of the 5-foot standard,

[6] As previously briefed by defendant, and to be further discussed in our response and reply to plaintiffs' first motion, pursuant to chapter 71 of the Civil Service Reform Act, a grievance decision cannot be complete or valid unless it fully resolves the underlying grievance. See Def. Mot. 10-26. This Court concluded that the agreement did not resolve that part of the grievance seeking back pay, as both the employer and union had believed it did. Consequently, the grievance decision is void, and the grievance remains pending a final decision by the Puget Sound Naval Shipyard.

[7] Lynnette Niemi researched the EDP question and she found no height standards of any kind related to pay. She found a five-foot height reference in Occupational Safety and Health Administration regulations as the point at which fall-protection standards begin, but found that regulation did not apply to pay. Nonetheless, as it was the only specific height reference she found, she incorporated it into her recommendation. Therefore she recommended using, for the purpose of settlement, the first level of staging as that approximated that five-foot height. Def. 4th Supp. App. 11-12. During her discussion with management, Ms. Niemi recalled that there was an "argument" among the management team as to whether the five-foot height met the "unusually severe hazard" standard. Id. at 13. See also Def. App. 112-13. Plaintiffs have produced no evidence to date that working at the five-foot height, which is lower than some playground equipment found at elementary schools, either constituted an "unusually severe hazard" or was required by any pay standard. See Def. App. 111. In fact, it is doubtful that any shipwright believed that working at five feet was unusually hazardous. Rodney J. Whitcher, himself a Shipwright for 30 years, testified that no Shipwright was concerned about working at the five-foot height, and that the 25-foot height, as used by other shipyards, was the appropriate point to begin EDP for high work. Id. at 110-11.

while at the same time rejecting that the union had the authority to affect any legal rights they may have individually to the high pay.[8] Further, they ignore that portion of the agreement that waived all of the grievants' (including plaintiffs') back pay in exchange for a more generous future pay policy.

Plaintiffs object to the description of the new policy as "generous," claiming that the pay they received was only what was required. But the word "generous" is used in the context of the evidence. As the Court has noted, other shipyards were paying high pay to shipwrights beginning at the 25 foot level, approximately five times higher than standard agreed to by Ms. Tallman and Mr. Aiken. Jaynes, 75 Fed. Cl. at 231 n. 18 (citations omitted). Indeed, the majority of staging work that is done at the Puget Sound Naval Shipyard (the "Shipyard") is less than 20 feet above

---

[8] Plaintiffs refer to the attempted settlement agreement as the "grievance decision," but the evidence demonstrates that there was a verbal understanding between the union and management representatives to resolve the grievance, and that the written "grievance decision" was the means by which the agreement was implemented within Shop 64 pursuant to the grievance procedure. Grievance matters, intended to be resolved at the lowest possible level of complexity, were often resolved without a written agreement. The written grievance decision did not contain, and was never intended to contain, the full understanding of the parties. Plaintiffs' counsel asked Ms. Tallman about that:

> Q All right. Given that the collective bargaining agreement contemplated or required that a grievance decision be put in writing was it your intent on January 18, 2000 to fully capture all of the terms of the grievance decision in writing?
> A We [Mr. Aiken and Ms. Tallman] had conversations other than what [w]as put in writing.
> Q I understand that. My question was this: was it your intent to put all of the terms to which you say you agreed in writing on January 18, 2000?
> A I can't say I had that intent.

Def. 4th Supp. App. 21. What has already been decided by this Court, and is not in question here, is that this settlement agreement was legally insufficient to extinguish plaintiffs' individual rights to bring this legal action separate from the negotiated grievance process.

the ground.[9] Accordingly, more than half of the high pay currently being paid to shipwrights would not have been paid at other Navy shipyards.

Plaintiffs claim is based upon a portion of the attempted settlement, even though the grievance settlement was the product of the negotiated grievance procedure, and not an independent statutory right. A claim in the Court of Federal Claims, however, must be proven independent of, and without reference to, matters arising in the negotiated grievance process. In Mudge v. United States, 59 Fed. Cl. 527, 534 (2004) the Court found that "[w]hen Mr. Mudge finally filed a complaint in this Court, he acted pursuant to his individual, statutory right, which exists independently of the grievance procedure contained in the collective bargaining agreement. That right to seek judicial relief belongs to him, not his union." On one hand, plaintiffs want to be free of the commitment their union made on their behalf, but on the other hand, they wish to bind the employer to a selected portion of its half of the bargain reached in the negotiated grievance procedure. In accordance with Mudge, however, plaintiffs must proceed independently from the language set forth in the attempted settlement agreement.

Further, although the terms of the attempted agreement expressly only apply to future pay, plaintiffs seek to apply it retroactively to their back pay claim. See Def. App. 64-65. Even assuming that the generous pay policy found in the attempted settlement agreement is permitted by the law, it is not a pay policy that is required by the federal employee pay regulations. As the invalidated settlement agreement pay policy is not required by law, plaintiffs are not entitled to have it applied retroactively in this disputed claim simply because the shop superintendent was generous in settling a prospective policy in her attempt to settle the 1999 labor grievance.

---

[9] Def. App. 2 (Winkler Decl. at ¶ 8) ("The height of staging can vary, but most staging that is constructed at the shipyard is considered small, being less than 20 feet in height.").

Even if plaintiffs could use the language of the attempted settlement (taken out of its original context), this decision by Ms. Tallman would not be binding on this Court. Ms. Tallman may have acted with good faith and within her limited authority pursuant to the Federal Service Labor-Management Relations statute and the collective bargaining agreement to attempt to resolve a pending grievance, but she is not a Federal official to whom this Court must defer in deciding the legal question of what the Federal law requires of the Government. [10] Ms. Tallman had no legal training or advice. Plaintiffs' attorney asked Ms. Tallman about the legal duty to pay for high work:

> Q. Okay. And at the time you signed the January 18, 2000 grievance decision you had no idea whether and under what circumstances the shipyard was legally required to pay High Pay to Shop 64 shipwrights; right?
> A. I didn't involve the lawyers. I had not checked on the legal aspect.

Def. 4th Supp. App. 16. See also id. 15-18.

Further, Ms. Tallman was resolving a union initiated grievance pursuant to the negotiated grievance process. The grievance process, as defined in the collective bargaining agreement, was the sole source for Ms. Tallman's authority in this matter. In any circumstance outside of the negotiated grievance procedure, Ms. Tallman would not have the authority to set pay policy for the Government, the Navy, or even the Shipyard.[11] See generally Def. 4th Supp. App. 1-5

---

[10] Ms. Tallman testified that she had no expertise in Federal pay setting. Def. 4th Supp. App. 19. Ms. Niemi, who, as a human resource specialist, was giving technical advice to Ms. Tallman, testified that in researching her recommendation, which became the basis of the agreement, she found no definitive authority for when high pay was required. The only reference was to a safety standard that went into effect at five-feet. Id. at 11-12.

[11] For the purpose of clarity, defendant respectfully suggests the Court's opinion contains an error in dicta in its decision on the accord and satisfaction issue. Jaynes v. United States, 75 Fed. Cl. at 230. There is no question that Ms. Tallman, as the Shop 64 superintendent, had the authority pursuant to the collective bargaining agreement to decide, and therefore settle, a

(position description for Shop 64 supervisor). At most, her "grievance decision" set a temporary pay policy for Shop 64 for the limited time that she was superintendent for that shop.[12] Because plaintiffs have rejected that negotiated grievance procedure that gave Ms. Tallman her limited pay setting authority, they have rejected her policy.

Finally, to the extent the plaintiffs want to argue that the Government is bound by Ms. Tallman's decision to enter an agreement with the union – this Court must look to the decision in full. The attempted settlement only changed the pay policy as to future pay, and denied it for all times prior to the collective bargaining agreement deadline of 15 days before the grievance was filed. Therefore, notwithstanding plaintiffs' assertion in Motion No. 4,

---

grievance that arose from her shop. Pursuant to the CBA, the second-step of the grievance process is presented to the "Shop/Branch Head." Def. App. 28. However, contrary to the Court's discussion on that point, a grievance decision or a settlement made by that "Shop/Branch Head" is not itself a collective bargaining agreement that requires or obtains separate added authority by approval by the head of the agency pursuant to 5 U.S.C. § 7114. The process to reach a collective bargaining agreement and the process for employee complaints pursuant to the negotiated grievance procedure are very distinct and defined separately under 5 U.S.C. § 7103. There is no statutory provision for the submission of a grievance decision or grievance settlement to the head of the agency. Ms. Tallman's authority to decide the grievance and the authority of the decision itself comes solely from the negotiated grievance procedure contained in the collective bargaining agreement, a procedure that has been rejected by plaintiffs.

[12] Ms. Tallman had the authority to bind the Navy to her grievance decision, but that authority was limited. As a shop superintendent, her decision affected only her shop, and no other part of the Shipyard. Therefore, a pay decision, even one made as part of a grievance, by a shop head does not extend outside the authority of that shop head, nor does it continue past the tenure of that shop head. In fact, the agency has had informal discussions with union officials regarding the intent of the agency to revisit this issue, but has thus far forborne from doing so because of pending issues in this litigation. Accordingly, to the extent that the decision has any weight, the agency is presently free to re-bargain the 5-foot standard. An enforceable settlement agreement, depending on its terms, can have more continuing application, as noted in O'Connor, but here, plaintiffs have rejected any part of the settlement agreement or the application of O'Connor. O'Connor v. United States, 308 F.3d 1233, 1244 (Fed. Cir. 2002).

Ms. Tallman's actions do not support the application of the 5-foot standard to plaintiffs' six-year back pay claim.

## II. Plaintiffs Present No Legitimate Basis To Be Relieved Of Their Burden To Individually Demonstrate, When, If Ever, They Performed High Work Without Proper Compensation

Plaintiffs also assert that they should be relieved of the burden to prove when they did the work for which they demand pay. Plaintiffs assert the burden should, instead, shift to the Shipyard because it failed to possess the foresight to record the heights at which EDP might have been paid, the subject of which is presently in dispute, and instead only recorded EDP that was actually paid to plaintiffs. Plaintiffs seek to have this Court shift the burden of proof as to the extent of hours they allegedly worked doing "high work" from themselves, as the plaintiffs, to the Government, as the defendant.

### A. Anderson v. Mt. Clemens Pottery Co. Is Not Applicable To EDP

Beginning with Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), a case involving a claim arising pursuant to the Fair Labor Standards Act ("FLSA"),[13] Federal courts have reduced the plaintiffs' burden of proof in pay cases in which the court has found that the employer: (1) failed to keep accurate records of the hours of work, and (2) the statute upon which the claim was being made required the employer to keep such records. Where the record keeping does not satisfy the statute because it is inaccurate or incomplete, the Supreme Court in Anderson held:

> The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in

[13] Plaintiffs have not asserted a claim based upon the FLSA.

> conformity with his statutory duty; it would allow the employer to keep the benefit of an employee's labors without paying the compensation as contemplated in the Fair Labor Standards Act.

Id. The purpose of such a burden-shifting scheme is that an employer cannot violate the statutory duty to maintain accurate records of the hours of work, and then benefit from that failure in the form of a defense to a claim of underpayment. Id. It has been applied in other non-FLSA cases where the pay claim is based on statute, and that statute has required the employer to maintain records of the hours of work, which the employer failed to do.

In every case cited by plaintiffs, however, the dispute to which Anderson was applied involved a dispute as to actual hours of work, as defined by statute. See, e.g., Savering v. United States, 18 Cl. Ct. 707, 709 (1989). Plaintiffs, however, do not suggest that the Government has failed in this case to keep accurate records as to plaintiffs' actual hours of work. In fact, extensive records have been accurately kept as to plaintiffs' hours of work, leave, and overtime. The time and attendance records and all payroll records have been provided to plaintiffs. Some other non-payroll records, not dealing with hours of work, that go back to the earliest dates of the current claim have been destroyed due to the passage to time – but all records that existed on the date the first legal action was filed in this case have been preserved, and have been provided to plaintiffs. Any loss of records took place before the initiation of litigation based on accepted federal record keeping and record longevity practices.

The most obvious difference between FLSA overtime pay claims, for which the burden-shifting approach was conceived, and claims for EDP is that there are no statutory

or regulatory record keeping requirements for environmental differential pay, in contrast with overtime and hour of work.[14] See generally 5 C.F.R. §§ 532 (Prevailing Rate Systems); 532.511 (Environmental Differentials). Unlike overtime, which is paid on an hours worked basis, EDP is paid on the basis of "actual exposure" to an "unusually severe hazard." Thus, a claim for EDP for high work will have two elements: (1) proof the employee is entitled to EDP because of some exposure incident to the employees work, and (2) proof of the specific time periods of that exposure to the hazard. 5 C.F.R. § 532.511(a).

For "actual exposure" EDP, such as high work, an employee is entitled to one hour of pay per day for any exposure, beyond that EDP is paid in 15-minute increments, rounding up to the highest quarter-hour. 5 C.F.R. § 532.511(b)(2). An employee who is exposed for a continuous 61 minutes, would be entitled to one hour and fifteen minutes of the high work differential. An employee exposed for a continuance 75 minutes would be entitled to the same pay. An employee exposed for one minute in the early morning and another one minute in the late afternoon, for two minutes of total exposure in the whole day, would still be entitled to the same one hour and fifteen minutes of differential

[14] Records of what is paid are always kept. But keeping records of "unpaid EDP," as sought by plaintiffs makes no sense whatsoever. It would be a statistical record without basis or meaning. Further, with the complexity of "actual exposure" EDP rules, such complicated records are impossible outside of the simple payroll process, which again, only captures that which is paid. For example, assuming that plaintiffs prevail on the argument that leading edge work above a certain height is "high work," the Government would have been required to track the height of work done at the leading edge. The height of the leading edge, however, changes on an almost minute by minute basis as the scaffolding is built. Accordingly, tracking this height would be well nigh impossible for the Shipyard.

pay. Therefore, evidence of the very specific times of actual exposure is critical in all "actual exposure" EDP claims.

Despite the crucial distinction between hourly pay and EDP, plaintiffs have produced no legal authority for the application of the Anderson burden-shifting scheme in any case involving EDP.

The lack of legal authority supporting plaintiffs' novel theory is logical for at least two reasons. First, "hours of work" used for determining minimum and overtime pay for federal employees is a statutorily well-defined legal construct that is governed by two federal statutes: Section 7 of the FLSA, 29 U.S.C. § 207; and, the Federal Employees Pay Act, 5 U.S.C. § 5542(a).[15] EDP, however, is not based upon hours of work, but rather upon exposure. EDP is paid for some shorter period of time within the hours of work during which the employee is doing something the employer interprets as meeting one of many special categories of work loosely defined in OPM guidance.[16] A good example of this "guidance" is environmental differential pay for "dirty work" that appears in the guidance immediately after "high work." OPM has provided regulatory

---

[15] Plaintiffs correctly state that "hours of work" must be recorded by a federal employer pursuant to 5 C.F.R. § 551.402. Pl. Mot. 4 at 2. However, 5 C.F.R. § 551 controls the application of the FLSA for the Government, and those records of hours of work only apply to the FLSA and not to any other federal pay authority. 5 C.F.R. § 551.401(d) ("Time that is considered hours of work under this part shall be used only to determine an employees entitlement to minimum wages or overtime pay under the Act, and shall not be used to determine hours of work for pay administration under title 5, United States Code, or any other authority."). This regulatory duty to record hours does not apply to EDP a title 5 pay authority.

[16] There are more than a dozen EDP categories by OPM regulation, i.e., high work, dirty work, cold work, hot work. 5 C.F.R. § 532.511 Appendix A. An even greater number of local definitions or applications of the EDP regulations have been negotiated with the local bargaining units of the many unions.

guidance to federal activities by defining dirty work as work that subjects the employee to soil of the body or clothing "beyond that normally to be expected in performing the duties of the classification." 5 C.F.R. § 532, Pt 1, Subpt E, App. A ("Payment for Actual Exposure, 4. Dirty Work"). This definition, however, is highly subjective, dependent upon variable "expectations" and the specifics of each job. Absent further guidance, it is unlikely that two supervisors would interpret the definition of dirty work in the exactly same way.

This is equally true for high work. The determination of when an employee is exposed to an "unusually severe hazard" based on working at height is highly subjective and variable. There is no question that safety practices and devices that would be adequate to reduce the risk associated with a fall to a risk that is less than an "unusually severe hazard" at 10 feet in height might be considered inadequate at 90 feet in height. Unlike FLSA defined "hours of work," the application of all EDP, intended by OPM to allow latitude for "local determination." This local determination will vary between different federal activities, and even different work groups at the same federal activity.

Second, unlike the FLSA from which such burden shifting originated, there is no statutory duty to maintain EDP records. See generally 5 C.F.R. §§ 532 (Prevailing Rate Systems), 532.511 (Environmental Differentials). This is a critical distinction, because the Supreme Court conceived of burden shifting approach in Anderson in light of the employer's statutory duty to keep records pursuant to the Fair Labor Standards Act. 328 U.S. at 687. A statutory/regulatory record requirements has also been crucial in cases that extended the Anderson doctrine to other statutes. See, e.g., Combs v. King, 764 F.2d

818, 822 (11th Cir. 1985) (citing 29 U.S.C. § 1059(a)(1)) (Employee Retirement and Income Security Act); Amcor, Inc. v. Brock, 780 F.2d 897, 900 (11th Cir. 1986) ("Amcor did not keep the records of the employees' wages and hours as required by the regulations.") (Service Contract Act).

The Navy maintains EDP records for pay purposes under internal rules promulgated by the Defense Finance and Accounting Service.[17] These are internal accounting rules for the purpose of the payroll, not a statutory or regulatory requirement. Both the Navy and the Department of Defense are in compliance with standard record keeping practices employed by other federal agencies. Although the Prevailing Rate Act applies government-wide, defendant is aware of no federal employer that maintains records of EDP in cases where, like the Navy, it has not been approved and paid at the time it was worked. Likewise, no federal employer maintains records of work that are not required by law or regulation, or that it believes does not meet that OPM standard. Federal statute simply does not address recordkeeping of any kind, much less disputed hours, for EDP. In fact, the single statutory reference to environmental differential pay is

---

[17] The manual entitled Department of Defense Financial Management Regulation, which is an internal DOD Directive 7000.14-R, Volume 8, Chapter 2 "Time and Attendance" has one short note relating to the larger concept of premium pay. The short reference reads:

> 020205. Data Element Values. Minimum data element values to be included on time and attendance reports or supporting documentation for each employee are as follows:
>
> * * * *
>
> D. Number of hours of premium work, by type, to which employee is entitled.

Def. 4th Supp. App. 10.

a requirement for OPM to prescribe practices and procedures "for proper differentials, as determined by the Office, for duty involving unusually severe working conditions or unusually severe hazards." 5 U.S.C. § 5343.[18] Unlike records of hours of work that must be maintained in accordance with the Fair Labor Standards Act, plaintiffs can show no statutory duty to maintain records of environmental differential pay. Furthermore, unlike "hours of work," environmental differential pay is so varied in type and so open to interpretation as to make a uniform record keeping standard impossible.

**B. Plaintiffs Waived Their Right To Challenge The Lack Of Documentation By Their Own Inaction**

Even assuming that the Anderson standard would be applicable to the present case, plaintiffs waived their right to such burden shifting by failing to notify the Shipyard of their claims in a manner that would have allowed the agency to document their claims. As the Supreme Court stated in R.H. Stearns Co. v. United States, 291 U.S. 54, 61-62 (1934) (internal quotation omitted):

> He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified". . . .

See also In re Williams, 298 F.3d 458 (5th Cir. 2002) (in bankruptcy, where a party is found to be in violation of a collective bargaining agreement, "absent exceptional circumstances," that party forfeited its right to challenge the accuracy of an audit).

Because of the difficulty in evaluating EDP claims, especially claims made years after the fact, the collective bargaining agreement set forth a process that requires an

[18] 5 U.S.C. 5343(c)(4) was amended by Public Law 108-136, National Defense Authorization Act for Fiscal Year 2004, Section 1122, for EDP related to asbestos exposure.

employee to bring such a claim to the attention of his immediate supervisor at the time the work is being done, and, if not satisfied with the immediate supervisor's decision, to grieve it within 15 working days of the event. Article 10 Environmental Differentials, section 1004 provides, in pertinent part:

> If at any time during a job assignment an employee believes additional pay is warranted, the employee will call the matter to the attention of the immediate supervisor who will advise the employee if additional may be allowed. Any complaint involving environmental pay not promptly resolved by discussion between the Employer and the employee may be handled under the Negotiated Grievance Procedure

Def. App. 18.

This Court has determined that plaintiffs' current legal claim is not untimely as a result of plaintiffs' failure to raise their claim immediately with their supervisor. Jaynes v. United States, 68 Fed. Cl. 747, 756 (2005). Nevertheless, plaintiffs' failure to raise their claims with the agency remain relevant. Given the subjective and fact-specific nature of EDP, the collective bargaining agreement foresaw the need for the matter to be raised quickly so that the specifics of the situation could be evaluated when all of the information was fresh. Plaintiffs, having not availed themselves of this requirement, cannot now shift the burden to the Government to prove their lack of entitlement to EDP at a specific height.

As noted above, EDP for high work is based on "actual exposure" to the risk of falling from height. Unlike "hours of work," which basically is a simple record of hours the employee is "present" on the job, whether an employee qualifies for EDP requires the exercise of judgment as to whether the employee who is "present" on the job is also

exposed to an unusually severe hazard, whether safety procedures are or are not adequate to reduce or alleviate the hazard, and the need to record very individually the exact period in quarter-hour increments of the time the employee is or is not exposed. Unlike "hours of work," for EDP the employee has some duty, as specified in the collective bargaining agreement, to raise the issue so that a timely evaluation can be made. While the employee's failure to raise the issue may not make the employee's claim untimely under the six-year statute of limitations applicable under the Back Pay Act, 5 U.S.C. § 5596, having failed to report the issue, the employee cannot complain six years later that the employer failed in its duty to maintain a record of an event that had never been reported.

## CONCLUSION

Plaintiffs should bear the normal burdens in pursuing their Tucker Act claim. Plaintiffs are required to prove that statute or regulation has been violated, and that they are individually entitled to compensation for that violation. None of that burden, whatever the Court defines that burden to be, should be shifted to defendant. Accordingly, we respectfully request that the Court deny plaintiffs fourth motion for partial summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.Mager@usdoj.gov

OF COUNSEL:
TELIN W. OZIER
Trial Counsel
Department of the Navy
OGC, Navy Litigation Office
720 Kennon Street., SE
WNY Bldg. 36, Room 256
Washington, D.C. 20374-5013

STEVEN L. SEATON
Labor Counsel
Department of the Navy
Puget Sound Naval Shipyard
1440 Farragut Avenue
Bremerton, WA 98314-5001

November 5, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

This is to certify that on this 5th day of November, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE AND REPLY TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 4" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice