No. 04-856C
Judge George W. Miller

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WALTER JAYNES, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR REMAND AND RESPONSE TO PLAINTIFFS' CROSS-MOTION NO. 1 FOR SUMMARY JUDGMENT OR FOR JUDGMENT ON ADMINISTRATIVE RECORD

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, .D.C. 20530
Tele: (202) 616-2377
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:
TELIN W. OZIER
Trial Counsel
Department of the Navy
OGC, Navy Litigation Office
720 Kennon Street, S.E.
WNY Bldg. 36, Room 256
Washington, D.C. 20374-5013

STEVEN L. SEATON
Labor Counsel
Department of the Navy
Puget Sound Navy Shipyard
1440 Farragut Avenue
Bremerton, WA 98314-5001

December 3, 2007

# TABLE OF CONTENTS


**PAGE(S)**

ARGUMENT. .......... 1

I. Plaintiffs Fail to Bring A Valid Motion For Judgment Upon The Administrative Record. .......... 1

II. The Attempted Settlement Agreement Is Not A Valid Contract. .......... 3

A. Claims Are Settled, Not Procedures. .......... 4

B. The Lack Of Mutual Intent With Regard To A Material Term Prevented Contract Formation. .......... 5

C. To The Extent That A Contrast Was Formed, It Remains Voidable By Virtue Of A Mutual Mistake. .......... 7

D. Even If Plaintiffs Could Demonstrate That Any Mistake Was Unilateral, Any Contract Would Remain Voidable. .......... 9

E. Even Assuming The Existence Of A Binding Agreement, It Does Not Support Plaintiffs' Current Claims. .......... 10

IIIl Matters Subject To The Civil Service Reform Act And The Federal Service Labor-Management Relations Statute Are Bound By The Required Procedures Of Those Statutes. .......... 11

A. The Procedures Of The Federal Service Labor-Management Relations Statute Are Mandatory. .......... 11

B. The Federal Service Labor-Management Relations Statute Was The Sole Authority For The Grievance Decision. .......... 14

C. Mary Jane Tallman's Decision Cannot Be Used To Bind The Shipyard Retroactively. .......... 15

IV. Federal Court Litigation Is Not An Appropriate Means Through Which To Reach A Local Determination. .......... 17

A. The Plaintiffs Are Not The Proper Parties Through Which To Set A Local Determination. .......... 17

B. Litigation Is Not A Proper Process. .......... 19

C. To Set A Local Determination Through Litigation Would Violate The Federal Service Labor-Management Relations Statute...................... 21

V. The Administrative Procedures Act is Inapplicable And Does Not Provide An Avenue Of Redress Of The Attempted Settlement To Any Party Nor The Court With A Role With Regard To The Attempted Settlement. ........................................................................................................ 23

VI. Judicial Estoppel Is Not Applicable..................................................................... 25

CONCLUSION.................................................................................................................. 26

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

A.M. Castle & Co. v. United Steelworkers of America,
898 F. Supp. 602 (N.D. Ill. 1995). .......... 7

Adams v. United States,
391 F.3d 1212 (Fed. Cir. 2004). .......... 13

Adams v. United States,
810 F.2d 1142 (Fed. Cir. 1987). .......... 3

Agwaik v. United States,
347 F.3d 1375 (Fed. Cir. 2003). .......... 21

Ahrens v. United States,
62 Fed. Cl. 664 (2004). .......... 5, 6

Allen Park Veterans Administration Medical Center and American Fed'n of Government Employees, Local 933,
28 FLRA 151 (1987). .......... 20

American Fed'n of Government Employees, Local 141 and Dep't of Defense, National Guard Bureau, Texas National Guard,
51 FLRA 141 (1996). .......... 20

American Fed'n of Government Employees, Local 2943 and Dep't of the Air Force, Loring Air Force Base, Maine,
10 FLRA 57 (1982). .......... 20

Bateson v. United States,
48 Fed. Cl. 162 (2000). .......... 2

Best v. United States,
14 Cl. Ct. 720 (1988). .......... 3

Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.,
464 U.S. 89 (1983). .......... 11, 12

Colorado Dep't of Human Serv. v. United States,
74 Fed. Cl. 339 (2006). .......... 2

Cuyahoga Metro. Hous. Auth. v. United States,
65 Fed. Cl. 534 (2005). .......... 26

Dairyland Power Coop. v. United States,
16 F.3d 1197 (Fed. Cir. 1994). .......... 7

Daluz v. United States,
73 Fed. Cl. 129 (2006). .......... 4

Davis v. Wakelee,
156 U.S. 680 (1895). .......... 25

Dep't of Navy v. Fed. Labor Relations Auth.,
815 F.2d 797 (1st Cir. 1987). .......... 11

Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.,
514 U.S. 122 (1995). .......... 24

Dep't of the Army, Lexington Blue Grass Army Depot and Int'l Ass'n of Machinists & Aerospace Workers Lodge 859,
43 F.L.R.A. 1074 (1992). .......... 16

Fed. Labor Relations Auth. v. Aberdeen Proving Ground, Dep't of the Army,
485 U.S. 409 (1988). .......... 11

Heckler v. Cmty. Health Servs.,
467 U.S. 51 (1984). .......... 26

Jaynes v. United States,
68 Fed. Cl. 747 (2005). .......... 4

Jaynes v. United States,
75 Fed. Cl. 218 (2007). .......... 5, 6, 7, 11

Krigel v. United States,
662 F.2d 741 (Ct. Cl. 1981). .......... 5

Long v. United States,
12 Cl. Ct. 174 (1987). .......... 2

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003). .......... 2

Mays v. United States Postal Service,
995 F.2d 1056 (Fed. Cir. 1993). .......... 4, 7

Mudge v. United States,
308 F.3d 1220 (Fed. Cir. 2002)........ 4, 8, 12

Murphy v. United States,
993 F.2d 871 (Fed. Cir. 1993)........ 2

New Hampshire v. Maine,
532 U.S. 742 (2001)........ 25

O'Connor v. United States,
308 F.3d 1233 (Fed. Cir. 2002)........ 15

Reynolds v. Comm'r,
861 F.2d 469 (6th Cir. 1988). ........ 26

Rumsfeld v. United Techs. Corp.,
315 F.3d 1361 (Fed. Cir. 2003)........ 26

Samish Indian Nation v. United States,
419 F.3d 1355 (Fed. Cir. 2005)........ 2

Scarano v. Central R. Co.,
203 F.2d 510 (3rd Cir 1953). ........ 25

Todd v. United States,
386 F.3d 1091 (Fed. Cir. 2004)........ 4

Transclean Corp. v. Jiffy Lube Intern., Inc.,
474 F.3d 1298 (Fed. Cir. 2007)........ 25

Turner v. United States,
44 Fed. Cl. 588 (1999). ........ 3

United States v. Ford Motor Co.,
463 F.3d 1267 (Fed. Cir. 2006)........ 26

Zacharin v. United States,
213 F.3d 1366 (Fed. Cir. 2000)........ 26

**STATUTES & REGULATIONS**

5 U.S.C. § 702.......... 23

5 U.S.C. § 706.......... 24

5 U.S.C. §§ 5341-49. .......... 15

5 U.S.C. § 5343 .......... 17

5 U.S.C. § 5942.......... 21

5 U.S.C. §§ 7101-35. .......... 12

5 U.S.C. § 7102.......... 11

5 U.S.C. § 7103.......... 12, 18

5 U.S.C. § 7104.......... 22

5 U.S.C. § 7105.......... 22

5 U.S.C. § 7114.......... 12, 13, 15

5 U.S.C. § 7116.......... 12, 22

5 U.S.C. § 7117.......... 12, 22

5 U.S.C. § 7119.......... 19

5 U.S.C. § 7121.......... 12, 13, 14

5 U.S.C. § 7122.......... 12, 13

5 U.S.C. § 7123.......... 12, 13

28 U.S.C. § 1491.......... 2

5 C.F.R. § 532.511.......... 18

5 C.F.R. § 532.511.......... 14, 18, 21

**MISCELLANEOUS**

Restatement (Second) of Contracts § 151 ..... 7

Restatement (Second) of Contracts § 152 ..... 7

Restatement (Second) of Contracts § 153 ..... 9, 10

Restatement (Second) of Contracts § 154 ..... 8

Restatement (Second) of Contracts § 208 ..... 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WALTER JAYNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-856C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR REMAND AND RESPONSE TO PLAINTIFFS' MOTION NO. 1 FOR SUMMARY JUDGMENT OR FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") and this Court's order, dated October 5, 2007, defendant, the United States respectfully replies and responds to plaintiffs' opposition to our motion to dismiss or, in the alternative, motion to remand and for partial summary judgment and first cross-motion for summary judgment or judgment upon the administrative record.

## ARGUMENT

### I. Plaintiffs Fail To Bring A Valid Motion For Judgment Upon The Administrative Record

As an initial matter, plaintiffs are incorrect in characterizing their first motion as a motion for judgment upon the administrative record pursuant to RCFC 52.1. No administrative record has been requested by or filed with this Court. It is axiomatic that, lacking an administrative record, the Court cannot treat plaintiffs' first motion as a motion for judgment upon the administrative record. Indeed, as demonstrated in our initial motion, no possible administrative record will exist, unless this Court remands this case to the agency for a local determination.

Specifically, record review may be appropriate in cases in which a clearly defined administrative record exists. For example, in formal adjudication or rulemaking proceedings which are reviewed pursuant to the Administrative Procedures Act ("APA"), the administrative

record generally consists of a contemporaneous record compiled by the agency during such proceedings. Accordingly, the existence and content of the administrative record is well defined prior to any judicial review of agency action. Similarly, in military pay disputes, judicial review "is normally limited to the administrative record developed before the military board," inclusive of the plaintiff's military personnel records, medical records, and pay records. Bateson v. United States, 48 Fed. Cl. 162, 164 (2000) (citing Long v. United States, 12 Cl. Ct. 174, 177 (1987)). Such a record is traditionally defined prior to judicial review.

In the context of a bid protest, record review pursuant to the APA is mandated by this Court's jurisdictional statute, 28 U.S.C. § 1491(b)(4). In such cases, the contents of the administrative record are clearly defined at the outset by rule and by the bid evaluation procedure itself. This Court has issued specific guidelines as to what should be contained in an administrative record. RCFC App. C, ¶ 22. During the procurement process, an agency creates the contemporaneous record that may then be reviewed by the Court. As such, the record is a pre-defined compilation of historical documents.

We are not aware of any case in this Court employing record review to resolve a Back Pay Act dispute. Plaintiffs cite to none.

From plaintiffs' response and cross-motion, it appears that they are characterizing this Court's review as akin to APA review, which would be a record review case. However, while district courts may review an agency's administrative actions based upon a record pursuant to the APA, it is well settled that this Court does not possess APA jurisdiction. Samish Indian Nation v. United States, 419 F.3d 1355, 1373 (Fed. Cir. 2005); Martinez v. United States, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc) (citing Murphy v. United States, 993 F.2d 871, 874 (Fed. Cir. 1993)). See also Colorado Dep't of Human Serv. v. United States, 74 Fed. Cl. 339, 347-48 (2006). Accordingly, to the extent plaintiffs characterize their motion as a motion for judgment

upon the administrative record, plaintiffs possess a misunderstanding of both RCFC 52.1 and the jurisdictional limits of this Court.[1] In any event, plaintiffs' argument for record review only serves to emphasize the central point of our initial motion, that this Court's role is necessarily limited.

As noted in our initial motion, one of the central difficulties in this case is that there is no local determination for the Court to presently review or apply. If there were, any review of the substance of the agency's action would properly belong in district court, while this Court could review those matters that involved the mandatory payment of money damages to the plaintiffs arising pursuant to such a determination. Because the regulations for an environmental differential for high work remain incomplete without a local determination, plaintiffs do not have the necessary prerequisite to recovering money damages (or to challenging the local determination itself in district court).

## II. The Attempted Settlement Agreement Is Not A Valid Contract

Plaintiffs' response and first motion assumes that the attempted settlement agreement is a contract, to be analyzed pursuant to contract law principles. This assumption is incorrect. While plaintiffs fault the Government for asserting that a settlement agreement that does not settle a claim is not a contract, plaintiffs themselves presume, without attempting to demonstrate, that a valid contract exists. The Court's opinion, however, does not hold that there was a contract. To

---

[1] The Government agrees, however, that this Court would review any local determination pursuant to a standard akin to the APA, and that plaintiffs bear "'a heavy burden of proof, for the congressional grant of administrative discretion is broad and [this Court's] scope of review narrow." Turner v. United States, 44 Fed. Cl. 588 (1999) (quoting Best v. United States, 14 Cl. Ct. 720, 725 (1988)). Plaintiffs must demonstrate either an abuse of discretion, or that such a determination is so arbitrary as to be clearly wrong, in order to prevail on their claim. Adams v. United States, 810 F.2d 1142, 1144 (Fed. Cir. 1987) (citations omitted).

the contrary, this Court held that one of the critical elements of a contract (mutual intent) was missing.

We do not dispute that plaintiffs possess a right to pursue monetary claims for back pay in this Court in certain instances. See Mudge v. United States, 308 F.3d 1220 (Fed. Cir. 2002). However, any such claim must be based upon statute and regulation, and not the attempted settlement agreement signed on January 14, 2000 or the collective bargaining agreement ("CBA"). See Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004); Daluz v. United States, 73 Fed. Cl. 129, 132-33 (2006) (analyzing Jaynes v. United States, 68 Fed. Cl. 747 (2005)). The attempted settlement is solely the product of the processes and procedures of the Federal Service Labor-Management Relations Statute ("FSLMR Statute") and governed by the law, rule and regulations appurtenant thereto. The attempted settlement is not an enforceable contract; it is not a valid "local determination" for high work; it is not the result of an administrative adjudication subject to the APA. Rather, it is an attempted settlement of a grievance, governed by Federal labor law.

**A. Claims Are Settled, Not Procedures**

Plaintiffs assert in their response and cross-motion that a settlement agreement that they allege did not settle plaintiffs' claims still may function as a binding settlement agreement, for particular purposes. However, if the attempted agreement did not settle plaintiffs claims, and they may litigate such claims in this Court, then there is no valid agreement.

In both this suit and the grievance, plaintiffs sought to effectuate the same alleged substantive right. A suit for back pay in this Court, and an administrative grievance for back pay, are merely two different procedural avenues for resolving the same basic cause of action. Mays v. United States Postal Service, 995 F.2d 1056, 1059-60 (Fed. Cir. 1993). If the settlement agreement truly settled plaintiffs' substantive claim, then they have no claim for back pay in this

Court. If the settlement agreement did not resolve the grievance, however, as this Court held, plaintiffs' substantive back pay claim is preserved, but they also cannot treat the attempted settlement agreement as setting forth any rights or standards to be applied in their subsequent suit for back pay in this Court.

### B. The Lack Of Mutual Intent With Regard To A Material Term Prevented Contract Formation

Assuming that contract law principles are applicable, plaintiffs' principal argument is that a settlement that did not settle their claim remains a valid settlement agreement or contract, in part. However, no meeting of the minds can be found when there is a mutual misunderstanding with respect to a material term of the agreement. Krigel v. United States, 662 F.2d 741, 746 (Ct. Cl. 1981). This is the case here.

As the testimony of the witnesses acknowledged at trial, both the union representative, Barry Joe Aiken, and the Shop 64 superintendent, Mary Jane Tallman, believed that the settlement completely resolved the grievance. Jaynes v. United States, 75 Fed. Cl. 218, 225, 232 (2007). See Def. App. 93, 95, 107-09. The Court, however, declined to read this understanding into the terms of the agreement. Id. at 232. Nevertheless, even though that the Court determined that this understanding did not rise to an accord and satisfaction, it is clear that the representatives with the authority to enter into the agreement had a mutual misunderstanding as to the effect of their attempted settlement.

Further, the settlement of the back pay aspect of the claim would be a material term of any attempted settlement agreement. The grievance language, prepared by the union, expressly sought back pay for all the years each grievant had worked in Shop 64. Def. App. 50-51. If the back pay claim was not settled, the grievance brought by the union was not settled.

Plaintiffs cite Ahrens v. United States, 62 Fed. Cl. 664 (2004), for the proposition that an attempted settlement that does not constitute an accord and satisfaction may remain an

enforceable agreement, in part. Ahrens, however, is distinguishable from the current case. In Ahrens, the Court determined that the settlement pursuant to the Fair Labor Standards Act did not apply to non-grievant employees, but did apply to grievant employees, because the non-grievant employees were not part of the underlying grievance, and were thus never intended to be included within the settlement. Specifically, this Court focused upon the fact that the union was not a competent party to represent the non-grievants (whose claims they did not bring) and thus could not settle their claim. Id. at 668-70. While the Court also discussed mutual intent, its discussion of mutual intent is intertwined with the discussion of competent parties, and focuses upon the lack of intent to include the non-grievants in the settlement. Id. at 670-71. Nevertheless, for those individuals who were grievants and who the union could and did represent, the agreement was held to constitute a valid accord and satisfaction. In other words, the agreement settled the grievance at issue, but could not and did not settle a grievance that was not before the parties. At best, Ahrens stands for the proposition that a settlement agreement that settles a grievance for one group of employees might not settle the grievance for a separate group of employees not involved in the grievance.

In contrast, here the majority of the plaintiffs were expressly included in the scope of the grievance and attempted settlement. 78 percent of the current plaintiffs, or 58 out of 74, received back pay as a result of the attempted settlement of the grievance. Compare Def. Supp. App. 1 at 4-8 with 4th Am. Compl. Further, the grievance in this case was broadly worded, Def. App. 50-51, and, as the Court has recognized, brought a broad back pay dispute before the agency. Jaynes, 75 Fed. Cl. at 219, 223. If the settlement left back pay open to dispute, for the very same individuals that were represented by the union in the grievance (both expressly and in negotiations), then it did not settle their grievance, and cannot be held to be a binding settlement agreement upon either the Government, the plaintiffs, or the union.

**C. To The Extent That A Contract Was Formed, It Remains Voidable By Virtue Of A Mutual Mistake**

Even assuming, however, that a settlement agreement came into being the agreement would be voidable on the basis of mutual mistake. See RESTATEMENT (SECOND) OF CONTRACTS § 152. A mutual mistake is an incorrect belief shared by both parties to an agreement. If neither party can be assigned the greater blame for the misunderstanding, there is no nonarbitrary basis for deciding which party's understanding to enforce, so the parties are allowed to abandon the contract without liability. A.M. Castle & Co. v. United Steelworkers of America, 898 F. Supp. 602, 606 (N.D. Ill. 1995). Specifically, a mutual mistake requires: (1) the parties to the contract were mistaken in their belief regarding a fact;[2] (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation. Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

The uncontradicted testimony of the witnesses at the accord and satisfaction trial was that both Ms. Tallman and Mr. Aiken, the parties with the authority to settle the grievance, believed that the entire grievance (a claim for back pay) would be settled by the attempted settlement agreement. Jaynes, 75 Fed. Cl. at 225, 232; Def. App. 93, 95, 107-09. As this Court held, there was no meeting of the minds on accord and satisfaction because of such mutual mistake. Id. This mistaken assumption affected the Government's agreed exchange of performance, as it resulted in Shop 64 allowing for a generous payment of EDP at 5 feet (a policy which was not in existence anywhere in the Navy at the time). Def. App. 108-09. See Mays, 995 F.2d at 1059 ("It defies logic that [the Government] would have chosen to settle the grievance at all . . . if it anticipated the dispute would continue . . .") . The fact that the attempted settlement agreement

---

[2] Further, a mistake of law is not distinguished from a mistake of fact for the purposes of this doctrine. See RESTATEMENT (SECOND) OF CONTRACTS § 151 cmt. b.

did not actually preclude a claim under the Back Pay Act for back EDP wages for high work in this Court obviously had a material effect on this bargain, since the dispute remains unsettled, and is proceeding in this Court.

In order to determine that the Government did not bear the risk of the mistake, none of the following three conditions must exist: (1) the risk is allocated to the Government by agreement of the parties; (2) the Government was aware, at the time the contract is made, that the Government has only limited knowledge with respect to the facts to which the mistake relates but treated that limited knowledge as sufficient, or (3) the risk is allocated to Government by the Court on the ground that it is reasonable in the circumstances to do so. RESTATEMENT (SECOND) OF CONTRACTS § 154. None of those three conditions exist. The attempted settlement agreement does not allocate risk, and nowhere in the any of the oral or written exchanges that formed the attempted settlement agreement did the Government expressly accept the risk that the settlement would not settle the grievance. See Def. App. 64-65. There is no evidence that the Government was aware that it had limited knowledge as to whether employees that brought a grievance could proceed into the Federal Court of Claims to pursue back pay for high work[3] and, further, there is no evidence that the Government was aware that the attempted settlement did not settle all matters. Finally, it is not reasonable to place the risk of this mistake on the Government; this situation is not similar to any of the potential abuses presented in the Restatement. See RESTATEMENT (SECOND) OF CONTRACTS § 154, cmt. d.

[3] There is no evidence that the parties to the agreement had consulted with legal counsel. See Def. 4th Supp. App. 15-18. In any event, Mudge v. United States, 308 F.3d 1220 (Fed Cir. 2002), which provided that plaintiffs possess a separate right to proceed in Federal court, had not yet been decided by the United States Court of Appeals for the Federal Circuit.

**D. Even If Plaintiffs Could Demonstrate That Any Mistake Was Unilateral, Any Contract Would Remain Voidable**

Finally, even if this court determines that any mistake with regard to the attempted settlement agreement was merely a unilateral mistake, the attempted settlement agreement would remain voidable.

A unilateral mistake is an incorrect belief of one party that is not shared by the other party. Similar to a mutual mistake, a unilateral mistake requires: (1) a mistake as to a basic assumption made by one party at the time of the attempted settlement; (2) such material effect is adverse to such party; and (3) the party did not bear the risk of the mistake. RESTATEMENT (SECOND) OF CONTRACTS § 153, cmt b. Plaintiffs "assume the Shipyard might be able to satisfy these prerequisites to a claim of unilateral mistake" and, in fact, the Shipyard is so able, as detailed above in our discussion of mutual mistake. See Pl. Mot. 1 at 13.

A unilateral mistake, however, requires an additional prerequisite in order to make a contract voidable. Either (1) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (2) the other party had reason to know of the mistake or his fault caused the mistake. RESTATEMENT (SECOND) OF CONTRACTS § 153.

As a general matter, we do not contend that the union had reason to know of the mistake; indeed, we have asserted that both the union and the Shipyard were mistaken in their belief that the matter had been settled. However, to hold that a settlement agreement that did not settle the very claim that gave rise to the dispute is still binding on the Government (but not the plaintiffs) would be unconscionable.

Plaintiffs argue that there is no basis for a claim of unconscionability, and even if there were it would be obviated because of a detrimental reliance factor: "numerous federal employees have received additional compensation under and in reliance upon" the attempted settlement agreement since it was signed. Pl. Mot. 1 at 14. But as the plaintiffs correctly acknowledge,

"[m]any of those employees aren't parties to this suit." Id. (emphasis added). Unconscionability is a term used in contract law to describe a defense against the enforcement of a contract based on the presence of terms unfair to one party. So the true question of unconscionability is whether it is fair to the Shipyard, not all the employees that are not a party to this suit.

The comment on the Restatement section indicates that a contract may be unconscionable where there is a gross disparity in consideration. RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. c. "Inadequacy of consideration does not of itself invalidate a bargain, but gross disparity in the values exchanged may be an important factor in a determination that a contract is unconscionable and may be sufficient ground, without more, for denying specific performance." Id. Plaintiffs argue that the attempted agreement did not settle the grievance (barring their suit), but that it does binds the Government to its terms. If this were a contract, the Government would receive nothing of value in exchange for the prospective 5-foot policy and the payment of back high pay going to 15 days prior to the filing of the grievance (plus interest). This would qualify as a gross disparity in consideration, if not a failure of consideration, and would render the alleged bargain unconscionable.

**E. Even Assuming The Existence Of A Binding Agreement, It Does Not Support Plaintiffs' Current Claims**

Finally, if the Court where to determine that the alleged agreement is a binding agreement that still allowed plaintiffs to bring such claims, to the extent that the plaintiffs seek to bring a claim pursuant to the agreement, they would remain bound by all the terms of the alleged agreement. In other words, if a settlement agreement still exists, and plaintiffs possess any rights pursuant to such agreement, those rights are limited and defined by the agreement. Plaintiffs cannot receive the benefits of a portion of the agreement (the 5-foot standard), while ignoring the limitations contained therein (5-foot standard only applied prospectively, where safety equipment

is unavailable, and back pay limited to 15 days prior to the date of the grievance). See Jaynes, 75 Fed. Cl. at 224.

## III. Matters Subject To The Civil Service Reform Act And The Federal Service Labor-Management Relations Statute Are Bound By The Required Procedures Of Those Statutes

### A. The Procedures Of The Federal Service Labor-Management Relations Statute Are Mandatory

Nevertheless, much of the above discussion is irrelevant, as any attempted settlement or decision would be subject to the mandatory processes of the Federal Service Labor-Management Relations Statute. While the individual plaintiffs are not required to exhaust those administrative procedures to bring each of their claims in this Court pursuant to the Tucker Act and the Back Pay Act, if they choose to rely on the attempted settlement[4] and the ramifications thereof, they are constrained to the law, rule and regulations of the FSLMR Statute, and, as noted in our initial motion, this Court must remand the matter back to the agency to complete that process.

It is well settled that the FSLMR Statute serves as "a comprehensive legislative scheme regulating the organizational rights of federal employees. It embodies a statutory scheme . . . for the establishment of a law of labor-management relations for the federal public service analogous to that of the National Labor Relations Act in the private sector." Dep't of Navy v. Fed. Labor Relations Auth., 815 F.2d 797, 798 (1st Cir. 1987) (internal citations and quotation marks omitted). See also Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth., 464 U.S. 89, 91, (1983). Among other things, this statute expressly recognizes the right of Federal employees to form and join unions (see, e.g., 5 U.S.C. § 7102), and imposes upon management officials of Federal agencies a general duty to bargain with their employees' unions over "conditions of employment." See Fed. Labor Relations Auth. v. Aberdeen Proving Ground,

---

[4] If plaintiffs choose not to rely on the attempted settlement, then they must prove their case for back pay under the standards that existed and were applicable at the time.

Dep't of the Army, 485 U.S. 409 (1988); Bureau of Alcohol, Tobacco & Firearms, 464 U.S. at 92; 5 U.S.C. §§ 7103(a)(12), 7114, 7116(a)(5), 7117.

The attempted settlement is a product of the procedures mandated by the FSLMR Statute, 5 U.S.C. §§ 7101-35, which is part of the Civil Service Reform Act ("CSRA"). This statute provides that "any grievance not satisfactorily settled under the negotiated grievance procedure **s**hall be subject to binding arbitration which may invoked by either the exclusive representative or the agency." 5 U.S.C. § 7121(b)(3)(C). The statute also contains direction as to how "[e]ither party to arbitration under this chapter may file with [an 'administrative body,' the Federal Labor Relations] Authority (FLRA) an exception to any arbitrator's award pursuant to the arbitration," 5 U.S.C. § 7122(a).[5] The FSLMR Statute identifies a mandatory procedure by utilizing the word "shall" – any disagreement over an issue submitted to the grievance procedure – must be submitted to arbitration prior to the appeal to the FLRA and the FLRA is the mandated as the "administrative body" for those appeals. In this case, the exclusive representative of the employees bound themselves, through negotiation, to a grievance procedure. That grievance procedure progresses, if necessary, to arbitration; exceptions to arbitration awards are made, if necessary, to the FLRA.[6]

More simply, the statute accords the union the right to exclusive representation. 5 U.S.C. § 7114(a)(1). The union may negotiate a CBA which absolutely must have a grievance process, that "shall be the exclusive procedures for resolving grievances which fall within its coverage."

---

[5] Judicial review is limited to matters other than arbitration awards and unit determinations. 5 U.S.C. §§ 7123(a)(1), (a)(2).

[6] The plaintiffs argue that "Mudge v. United States, 308 F.3d 1220 (Fed. Cir. 2002) evinces a Congressional reluctance to force [F]ederal employees out of the courts and into administrative procedures." Plaintiffs have this backwards: Mudge provided Federal employees a previously unavailable entrance into the Federal court system; the legislation at issue in Mudge was not intended to eviscerate the CSRA, the FSLMR Statute, nor to render obsolete all of the case law developed under these statutes.

Id. § 7121(a) (emphasis added). Such a process also must be subject to binding arbitration, a decision from which can be then appealed to the Federal Labor Relations Authority ("FLRA"). Id. §§ 7121(b)(3)(C), 7122(a). A decision from the FLRA, under certain circumstances, may then be appealed to Federal court. Id. § 7123(a).

In the present case, the exclusive representative and management, believed that they had settled a grievance which, filed on behalf of the plaintiffs, had asked for "back environmental pay for high work [ ] for all years in Shop 64 (plus interest)." Def. App. 51. Because both parties believed they had settled the issue of back pay, they did not appeal the decision to binding arbitration. Such a full and final settlement would have ended the grievance process. If, as the Court ruled, there had been no meeting of the minds on the central and core issue of the grievance ("back environmental pay for high work [ ] for all years in Shop 64"), then there was no settlement of that same grievance and, pursuant to the FSLMR Statute, the parties find themselves back in the positions they occupied on April 13, 1999, with an unresolved grievance before them, ready to be processed through the mandatory procedures embodied in their CBA. The union may choose to settle the case; the union may seek arbitration. Accordingly, we respectfully request that this matter be remanded to the agency to complete the required process.

To the extent that plaintiffs may be able to characterize their claims independent of the CBA and attempted settlement, remanding to the agency in order to complete the grievance process may not divest this Court of jurisdiction over plaintiffs' claims. In such instance, however, each individual plaintiff must demonstrate that they are qualified for a proven amount of back pay for high work pursuant to the plain language of the statute and regulation. Indeed, it is well settled that "all federal employees ... serve[ ] by appointment. The terms of their employment and compensation, consequently [are] governed exclusively by statute, not contract." Adams v. United States, 391 F.3d 1212, 1221 (Fed. Cir. 2004). Statute and

regulation, however, require a local determination, as set forth in our initial motion. See 5 C.F.R. § 532.511(a).

### B. The Federal Service Labor-Management Relations Statute Was The Sole Authority For The Grievance Decision

Further, the authority of Ms. Tallman, the Shop 64 superintendent, to enter into the attempted settlement, was limited to the settlement of a grievance. Outside of the context of the grievance process, as governed by the FSLMR Statute, Ms. Tallman did not possess the authority to make a high work determination for the Shipyard.

Ms. Tallman was the agency representative involved in resolving a union-initiated employee grievance pursuant to the negotiated grievance process. The CBA sets forth the negotiated grievance procedure in detail.[7] Def. App. 24-35. The CBA identifies management officials with the authority to make grievance decisions. Id. at 28. Specifically, in the language of the CBA, Ms. Tallman was a shop head authorized to make a second-step grievance decision. Id.

As noted in our response to plaintiffs' fourth motion, the CBA's negotiated grievance procedure was the sole source for Ms. Tallman's authority to make any decision or enter into any settlement of the grievance. In fact, in any setting outside of the negotiated grievance procedure, Ms. Tallman did not have the authority to set pay policy for the Federal government, the Navy, or even the Shipyard. At most, her "grievance decision" set a temporary pay policy for Shop 64 for the time that she was superintendent for that shop.[8] Because plaintiffs have rejected that

[7] As noted above, pursuant to the FSLMR Statute, any Federal sector CBA must contain a negotiated grievance procedure. 5 U.S.C. § 7121(a).

[8] Ms. Tallman had the authority to bind the Department of the Navy to her grievance decision, but that authority was limited. A grievance decision, even one that resulted from a settlement agreement with the designated union representative for that particular grievance, is not a "collective bargaining agreement" that, separately, requires approval by the head of the agency (continued...)

negotiated grievance procedure which actually provided Ms. Tallman with her limited pay policy authority, they have rejected her decision. But most important, Ms. Tallman's actions and authority derive from the FSLMR Statute, which has no bearing on the plaintiffs' pay claim arising under the Prevailing Rate Systems Act, 5 U.S.C. §§ 5341-49, a part of the Title 5 Federal pay authorities. As discussed elsewhere, actions taken pursuant to the FSLMR Statute have a well-defined judicial review process, which does not include the United States Court of Federal Claims.

### C. Mary Jane Tallman's Decision Cannot Be Used To Bind The Shipyard Retroactively

Ms. Tallman had no duty to grant the union any relief at all. She had discretion in deciding the grievance presented to her. She could have denied the grievance in whole or granted the grievance in its entirety, or established a policy for her tenure of paying high pay under only particular circumstances. In fact, the long-standing policy of the Puget Sound Naval Shipyard was that high pay was not paid for the normal Shipwright work except in adverse weather conditions, or when using hydraulic lift equipment, or in extreme heights (over 100 feet).

The application of the high pay regulation is vaguely defined, at best. The regulatory provision consists of just three numbered sentences containing a few examples. 5 C.F.R. pt. 523, Subpt E, App. A. See Def. App. 82-83 (OPM Manual, Ch. 58-7). The only two examples provided, a swinging stage and a boatswain's chair,[9] do not apply to the present dispute. Id. In

[8] (...continued)
pursuant to 5 U.S.C § 7114. Therefore, a pay decision, even one made as part of a grievance, by a shop head does not extend outside the authority of that shop head, nor does it continue past the tenure of that shop head. An enforceable settlement agreement, depending on its terms, can have more continuing application, as noted in O'Connor, but here, plaintiffs have rejected such settlement agreement. O'Connor v. United States, 308 F.3d 1233, 1244 (Fed. Cir. 2002).

[9] A swinging stage is like a window washer's platform, but hanging from a single point of support such as a crane that allows it to swing back and forth. A boatswain's chair is a single chair that is suspended from a rope and is used to hang over the side and work on the hull of a ship.

deciding on the union grievance, Ms. Tallman was asked to decide if high pay should be applied to "incomplete staging." Incomplete staging is not mentioned in the rule and has none of the characteristics of either of the two examples in the rule, so it is a matter of discretion on the part of the local supervisor to decide how to implement this regulation. Indeed, even Ms. Tallman has indicated that she agreed to change the pay policy as a means to settle the union grievance and not because of any clear legal requirement. Def. Supp App. 1 at 10-12, 13-17.

The application of the regulation is flexible depending on what the local conditions are at any given time and what is negotiated with the union. Because conditions vary dramatically from location to location, the application of the high pay rules has always been a matter for local interpretation. In Department of the Army, Lexington Blue Grass Army Depot and International Association of Machinists and Aerospace Workers Lodge 859, 43 F.L.R.A. 1074, 1083 (1992), the Federal Labor Relations Authority wrote:

> [t]hus, it is well established that the specific work situations for which an environmental differential is payable are left to local determination. Moreover, [the regulation] specifically provides for the collective bargaining process as one of the specific means of locally determining whether a particular work situation warrants the payment of a differential.

Id. (citations omitted) (emphasis added). It would be error to apply the attempted grievance settlement retroactively. Ms. Tallman had no duty, statutory, ministerial, or otherwise, to change the policy regarding high pay in the first place. Indeed, this management decision could be changed in the future.

The statute and regulation simply authorize payment of high pay. They never mandated any payment for circumstances affected by this decision. The statute itself merely directed the Office of Personnel Management ("OPM") to produce regulations for payment; it clearly mandates nothing whatsoever as to the application of the then-unwritten regulations. The CBA restates the regulation word for word. It was left to local determination as to when the work situation allowed for the payment of high pay. Until Ms. Tallman's decision, the only

determination was that the normal staging work done by shipwrights generally did not allow for payment. Her decision was to start approving pay for work at a certain height for the shipwrights under her authority as of a certain date and would continue only as long as Ms. Tallman was superintendent. A future superintendent may continue her policy, but is not required to do so. Ms. Tallman's decision has no permanent legal effect. Like other employment matters it is within management's discretion and a matter of future negotiation with the union, and it does not give plaintiffs any Federal pay entitlement before the effective date of the grievance settlement.

## IV. Federal Court Litigation Is Not An Appropriate Means Through Which To Reach A Local Determination

### A. The Plaintiffs Are Not the Proper Parties Through Which To Set A Local Determination

The plaintiffs argue that, pursuant to the OPM regulations, the Court may establish a "local determination" for the shipyard at Puget Sound, Washington. A review of the language of the code, the regulations, and a discussion regarding unfair labor practices under the FSLMR Statute, however, demonstrates that plaintiffs are incorrect.

As noted in our initial brief, OPM is required to promulgate regulations which provide

> (4) for proper differentials, as determined by the Office, for duty involving unusually severe working conditions or unusually severe hazards, and for any hardship or hazard related to asbestos, such differentials shall be determined by applying occupational safety and health standards consistent with the permissible exposure limit promulgated by the Secretary of Labor under the Occupational Safety and Health Act of 1970.

5 USC § 5343(c)(4) (emphasis added.). In accordance with the statute, the Code of Federal Regulations[10] provides that:

[10] As stated in our initial motion, OPM initially published these differentials as Appendix J to the Federal Personnel Supplement Part 532-1, Subchapter S8-7. With respect to this matter, the CBA that covers the plaintiffs discusses EDP in Article 10 and references the Federal Personnel

(continued...)

> Each installation or activity must evaluate its situations against the guidelines issued by the Office of Personnel Management to determine whether the local situation is covered by one or more of the defined categories.

5 C.F.R. § 532.511(a)(2).

Thus, while OPM provides that it will issue guidelines, the installation is responsible for evaluating the circumstances in its location. The language promulgated by OPM reflects that high pay may be appropriate when employees are:

> a. Working on any structure of at least 30 meters (100 feet) above the ground, deck, floor or roof, of from the bottom of a tank or pit;
> b. Working at a lesser height:
> (1) if the footing is unsure or the structure is unstable;
> (2) if safe scaffolding, enclosed ladders or other similar protective facilities are not adequate (for example, working from a swinging stage, boatswain chair, a similar support); or
> (3) if adverse conditions such as darkness, steady rain, high wind, icing, lightning or similar environmental factors render working at such height(s) hazardous.

5 C.F.R. Part 532, Appendix A to Subpart E (emphasis added.) These then are the guidelines that each shipyard around the globe is to use when evaluating its own situations regarding high pay.[11]

Setting such local determinations around the globe has historically been a process which, because it falls under the FSLMR Statute ambit of "terms and conditions of employment" and – as such – is a mandatory subject of bargaining in the Federal sector, is accomplished between an exclusive representative of the unionized employees and the management. 5 U.S.C. § 7103(a)(12), (14). Plaintiffs are before this Court as 74 individuals. Plaintiffs, in contrast with

(...continued)
Supplement. In the 1990s, the Federal Personnel Manual and Supplements were retired, and these differentials are now published in 5 C.F.R. § 532.511.

[11] As noted in our initial motion, subchapter S8-7(g)(1)-(3) of the OPM Manual explains how a Federal agency is to determine the proper EDP entitlement at the local level.

the union, are not the "exclusive representative" of the collective employees. Any process through which a local determination would be reached would include the union and the Shipyard, not the individual plaintiffs. The union is not a party to this suit and therefore the proper parties who could engage in bargaining or even an arbitration to set a local determination are not present.

**B. Litigation Is Not A Proper Process**

There are different methodologies in which the parties can jointly engage each other pursuant to the FSLMR Statute: management could work unilaterally to establish a proposed local determination and then submit it to the union with an offer to engage in substantive bargaining; management could agree to engage in bargaining prior to offering a proposed local determination and engage in proposals and counter-proposals on the matter; or the union can file a grievance on the matter. Def. App. 35 (CBA § 3102).

In the first two instances, should the union and management fail to reach an agreement, the next step in the process would be under the auspices of the Federal Mediation and Conciliation Service ("FMCS"). Should mediation fail to bring the parties to agreement, the next step would be to submit "last-best" proposals to the Federal Services Impasses Panel ("FSIP") which then would issue the resolution. 5 U.S.C. § 7119. In the third instance, should a grievance be filed, the matter of a local determination would pass through the CBA grievance process and, if unresolved, proceed to arbitration. None of this took place.

Arbitration could have involved, among things, the formal gathering of policies from shipyards around the country; a review of the physical structures of Shipyard and Shop 64; surveys of the weather patterns in the Bremerton, Washington area over the past decade; a pandect created of the work received and accomplished in the shipyard on a regular and recurring

basis; and the testimony elicited from all relevant witnesses as to the risks, conditions, and heights at which work is done. None of this - not even the witness testimony - took place.[12]

As noted in the CBA, the appeal for an arbitration of this nature is the Federal Labor Relations Authority ("FLRA"). The FLRA, in turn, "has consistently recognized that the specific work situations for which an environmental differential is payable under the categories of FPM Supplement 532-1, Appendix J are left to local determination, including arbitration." See, e.g, American Fed'n of Government Employees, Local 141 and Dep't of Defense, National Guard Bureau, Texas National Guard, 51 FLRA 141 (1996); Allen Park Veterans Administration Medical Center and American Fed'n of Government Employees, Local 933, 28 FLRA 151 (1987); American Fed'n of Government Employees, Local 2943 and Dep't of the Air Force, Loring Air Force Base, Maine, 10 FLRA 57 (1982).

Arbitration is a part of the collective bargaining process, pursuant to the FSLMR Statute. Litigation in this Court, however, is not. Plaintiffs cite to no case law to support the notion that litigation is a proper process to make a local determination, and the Government is not aware of any case law. More importantly, even if litigation in general were a part of the process of reaching a local determination, two matters preclude its use here. First, the union would necessarily have to be part of the litigation. Second, even if litigation in general were a part of the process of reaching a local determination, this does not necessarily mean that this Court is the proper forum for such a claim. This Court is one of limited jurisdiction, and, while it may grant

[12] The plaintiffs' are incorrect that this Court has been presented with all relevant witness testimony on the matter of high pay. The trial to which plaintiffs repeatedly refer in their second motion was a hearing restricted by this Court to the affirmative defense of accord and satisfaction; it was not a hearing to establish a local determination. Jaynes v. United States, Fed. Cl. No. 04-856C, Order at 1 (July 6, 2006). See generally, Def. Resp. 2. It would be incorrect, and contrary to the testimony received, to assume that because some testimony was received as to why five feet was established prospectively as the level for payment of high pay in a single shop at the Shipyard, that – had the parties known they were negotiating for a comprehensive and retroactive local determination for a high pay policy at the Shipyard – they would done nothing more than they did in 1999 and would have reached the same result. Such is not the case and cannot be assumed to be the case.

relief where a local determination sets the plaintiffs' right to such pay, it cannot do so without such a determination.

Plaintiffs argue that Agwaik v. United States, 347 F.3d 1375 (Fed. Cir. 2003) supports their argument that this Court may make a local determination. The statute and regulations at issue in Agwiak, however, were significantly more specific than the statute and regulation at issue in this case. Whereas the statute at issue in Agwiak expressly described a remote duty station as "a site so remote from the nearest established communities or suitable places of residence as to require an appreciable degree of expense, hardship, and inconvenience beyond that normally encountered in metropolitan commuting, on the part of the employee commuting to and from his residence and such worksite," 5 U.S.C § 5942(a); the statute at issue here merely speaks of a differential for "unusually severe working conditions or unusually severe hazards" Id. § 5343(c)(4). Further, while OPM's regulations concerning a remote duty station provided specific guidance on the required factual inquiry, Agwaik, 347 F.3d at 1381-82 (citing 5 C.F.R. §§ 591.302(b); 591.304(a)(2); 591.306(a), (c)), the regulation for EDP merely authorize the payment of a differential and provide "illustrative" examples that are to be used in making a "local determination." 5 C.F.R. §§ 532.511(a)(2); 535, App. A.

Thus, in Agwiak, this Court possessed all the components it needed to determine if the agency had complied with the statutory and regulatory requirements. Here, the critical component is missing, and accordingly, we have sought dismissal or remand. Indeed, plaintiffs cite to no cases in which this Court has held itself competent to make this local determination for the Government.

**C. To Set A Local Determination Through Litigation Would Violate The Federal Service Labor-Management Relations Statute**

Finally, if this Court were to set a local determination regarding the payment of environmental differential pay for high work through the process of a litigation which did not

include the exclusive representative of the bargaining unit employees at the Shipyard, the Government could not implement that policy without committing an Unfair Labor Practice ("ULP") under the FSLMR Statute.

Actions by management which are ULPs are outlined in the FSLMR Statute and state in pertinent part:

> (a) For the purpose of this chapter, it shall be an unfair labor practice for an agency—
> . . .
> (5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter;
> . . .
> (8) to otherwise fail or refuse to comply with any provision of this chapter.

5 U.S.C. § 7116. See also 5 U.S.C. § 7117.

The implementation of a local determination that affects the terms and conditions of the bargaining unit employees without bargaining to agreement is a potential ULP violation of these two provisions. The FLRA is empowered to investigate, 5 U.S.C. § 7104(f)(2)(A), resolve issues relating to bad faith bargaining, id. § 7105(a)(E), resolve exceptions to arbitrations, id. § 7105(a)(H), hold hearings, id. § 7105(a)(G), affirm, modify or reverse an action, id. § 7105(f), stay actions, id., and take any other action which is deemed to be "necessary and appropriate to effectively administer the provisions" of the FSLMR Statute. Id. § 7105(a)(I). If the Court set the local determination for the payment of EDP for high pay, and the Shipyard were to implement it, the FLRA could find the Shipyard guilty of a ULP because it did not set that policy by bargaining with the union, stay the implementation, require management to post a notice of that violation for six months, and send the matter to bargaining. Hence, our initial motion respectfully requests that the Court remand the matter to the agency.

Plaintiffs also suggest that, besides the Court being appropriate to establish a local determination, the case before the Court is one of "judicial review" and note that in order "[t]o foreclose judicial review," we must establish "that review is prohibited." This issue, however, is

not relevant to our motion. The Government does not contend that the Court may not subsequently review relating to mandated payments for high work, rather, it is that the prerequisites for such review have not yet been met. Without a "local determination" – that was developed to be retroactive – the Court has nothing to review.

Indeed, plaintiffs do not so much seek review, as they seek for the Court to make a local determination in the first instance. Accordingly, we respectfully request that the matter be dismissed or remanded to the agency for determination.

## V. The Administrative Procedures Act Is Inapplicable And Does Not Provide An Avenue Of Redress Of The Attempted Settlement To Any Party Nor the Court With A Role With Regard To The Attempted Settlement

Plaintiffs argue that the attempted settlement is both a grievance decision that partially settled the grievance, as well as a "local determination" upon which the Court can rely.

The plaintiffs argue that because there is no money-mandating statute attached to the attempted settlement as a decision regarding a grievance, this Court does not possess jurisdiction to hear claims regarding the validity of that attempted settlement, and on this point, we agree. As we have stated, because the attempted settlement is a document born of the FSLMR Statute, it is cognizable only under that statute.

Pursuant to the APA, the task of determining which shipwright tasks constitute high work is committed to the agency. 5 U.S.C. § 702(a)(2). The process engaged in pursuant to the CBA was not a determination as to which shipwright tasks were to be considered "high work;" this task of setting a local determination has not been completed; Ms. Tallman was not authorized to make such a determination on behalf of the agency – she was only authorized to settle a grievance for Shop 64.

Plaintiffs argue that the Government is not "a person adversely affected or aggrieved" by "the administrative adjudication," and that "no statute authorizes an appeal by the Defendant of its own administrative decision to award high pay." However, there has been no "administrative

adjudication," thus the question as to whether we lack standing to contest Ms. Tallman's attempted settlement is not ripe. Plaintiffs reliance on Department of Labor v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 129 (1995), is misplaced. In Newport News, the Director of the Office of Workers' Compensation Programs in the Department of Labor sought judicial review of an actual decision issued by the Benefits Review Board, and that review was granted. But the attempted settlement under consideration here fails to be an accord and satisfaction for a lack of meeting of the minds; it fails as a contract due to a mutual mistake; it fails as a local determination; and it fails as a settlement in the grievance process because it did not settle the only matter over which the grievance was filed: back high pay. The attempted settlement was not an "adjudication" pursuant to the APA.

Even if there had been an administrative adjudication and a decision rendered, and in this case that would have been an arbitration and an issued opinion, there is still a statutorily authorized and mandated appeals process that does not include this Court.[13] If the parties had actually had a meeting of the minds regarding the settlement of a grievance, and one of them had been unsatisfied with the final decision on the grievance, an appeal could have ultimately been made to the FLRA. If the grievance was not settled, the grievance remains open, the process remains to be completed, arbitration remains an option, and appeal to the FLRA remains an option. To hold otherwise is to bar the Government of its own substantive rights to appeal pursuant to that process: if the union had taken the position that the attempted settlement established a "local determination" to be applied retroactively, and Shipyard did not do so, then the union could have appealed the settlement, an arbitration would have been held.

[13] If the attempted Settlement had been an adjudicated decision cognizable under the APA, then the Court would have applied an "arbitrary and capricious" standard pursuant to 5 U.S.C. § 706(2).

## VI. Judicial Estoppel is Not Applicable

Plaintiffs assert that the Government is judicially estopped from taking a position inconsistent with that found in the attempted settlement of the grievance. "Judicial estoppel is an equitable doctrine that may be invoked by a court at its discretion." Transclean Corp. v. Jiffy Lube Intern., Inc., 474 F.3d 1298, 1307 (Fed. Cir. 2007) (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). "Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire, 532 U.S. at 749 (2001) (citing Davis v. Wakelee, 156 U.S. 680, 689 (1895)). The Supreme Court has identified several non-exclusive factors that inform the application of this doctrine:

> (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to adopt the earlier position, thereby posing a "risk of inconsistent court determinations"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Id. (quoting New Hampshire, 532 U.S. at 750-51).

Plaintiffs' arguments are meritless. The fact that the Government was willing to enter into a settlement agreement or establish a pay policy that set high pay at 5-feet above the ground prospectively, but disagrees that it was required to set high pay at this height as a matter of law are not "clearly inconsistent" positions. The Government could set the height at 5 feet in negotiations with the union; it was not necessarily required to do so. Further, the attempt to settle the grievance did not involve a prior legal proceeding under oath, nor did it involve any decision by a neutral third party that relied upon the Government's purported "position." Nor has the Government obtained an "unfair advantage" by means of "intentional self-contradiction" New Hampshire, 532 U.S. at 751 (quoting Scarano v. Central R. Co., 203 F.2d 510, 513 (3rd Cir

1953). Judicial estoppel only applies to "a knowing assault upon the integrity of the judicial system," not a mere alleged difference between the language of a portion of an attempted settlement agreement and the Government's position in litigating the meaning and effect of that attempted agreement. Reynolds v. Comm'r, 861 F.2d 469, 474 (6th Cir. 1988) (cited in Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed. Cl. 534, 556 (2005)).

Indeed, plaintiffs' argument is not so much an argument based upon judicial estoppel, as it is one based upon ordinary equitable estoppel principles. However, "it is well settled that the Government may not be estopped on the same terms as any other litigant." Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984). Plaintiffs must demonstrate "affirmative misconduct" to assert estoppel against the Government. United States v. Ford Motor Co., 463 F.3d 1267, 1279 (Fed. Cir. 2006); Rumsfeld v. United Techs. Corp., 315 F.3d 1361, 1377 (Fed. Cir. 2003); Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000). Plaintiffs fail to do so.

**CONCLUSION**

For the foregoing reasons, we respectfully request that the Court grant the Government's motion to remand and for partial summary judgment and deny the plaintiffs' first cross-motion for summary judgment or judgment upon the administrative record..

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:
TELIN W. OZIER
Trial Counsel
Department of the Navy
OGC, Navy Litigation Office
720 Kennon Street., SE
WNY Bldg. 36, Room 256
Washington, D.C. 20374-5013

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.Mager@usdoj.gov

STEVEN L. SEATON
Labor Counsel
Department of the Navy
Puget Sound Naval Shipyard
1440 Farragut Avenue
Bremerton, WA 98314-5001

December 3, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

This is to certify that on this 3rd day of December, 2007, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR REMAND AND RESPONSE TO PLAINTIFFS' CROSS-MOTION NO. 1 FOR SUMMARY JUDGMENT OR FOR JUDGMENT ON ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice