IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WALTER JAYNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-856C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**Declaration of Mary Jane Tallman**

**Pursuant to 28 U.S.C. § 1746, I, Mary Jane Tallman, declare that the following is true and correct.**

1. I am a federal employee and I have worked at the Puget Sound Naval Shipyard, Bremerton, Washington, for more than 26 years. My current position is Superintendent for several trade Shops, including Shop 64 and Shop 57. Shop 64 combines several trades including Shipwrights, Insulators, Woodworkers, and Plastic Fabricators. The parent Shop for all Shipwrights is Shop 64. I was Superintendent over Shops 64, 71, and 57 when the High-Work grievances were originally filed in April 1999. Pursuant to the collective bargaining agreement, I was the management official responsible for deciding those grievances.

2. One of the types of jobs done by Shipwrights at the Shipyard is the erecting and dismantling of staging (also called scaffolding). In early 1999, I was advised that nearly 100 Shipwrights had filed grievances on the subject of additional pay for working on staging.

3. Federal workers can receive additional compensation for certain kinds of hazardous work or work that is done in unusually harsh conditions. One type of Environmental Differential Pay is for High Work, which is generally defined as work at heights less than 100 fact where the footing is uncertain or the structure is unstable and there is a severe risk of injury

or death that cannot be alleviated by safety gear, such as fall protection harnesses. To my knowledge, Shipwrights working at the Shipyard have a nearly perfect fall-safety record.

4. For most work at the Shipyard, these Environmental Differential Pay matters have been worked out over time with the unions. The Shipyard had never previously paid Shipwrights for the normal work done on staging, and I am told that staging work is so fundamental to the shipwright trade, it was believed to have been included in the base wage grade level for that trade. To my knowledge, the union had never raised the issue of Environmental Differential Pay for normal work done on staging until the grievances filed in April 1999. The Shipyard had been paying workers for High Work in limited circumstances, for example, working from hydraulic "manlift" equipment, when working over 100 feet, or when working in inclement weather, such as heavy rainfall. When weather conditions are determined to be too severe and unsafe, work is halted altogether.

5. An employee grievance is processed at the Shipyard pursuant to the collective bargaining agreement that covers the grievant. In the case of Shop 64 Shipwrights, they are represented by the Bremerton Metal Trades Council. Under the Bremerton Metal Trades Council agreement, there are two steps to an employee grievance. It is first reviewed and decided by the immediate or 2nd level supervisor. Then, if that supervisor does not grant the grievance, it is then reviewed and decided by the Shop Head. In the case of the Shipwright grievance, I was the management official making the second-step grievance decision.

6. I reviewed the grievance, discussed the request for additional pay with the Human Resource Office, my General Foreman over Shipwrights, and my boss. I decided to grant the grievance at least in part. My decision was based on several factors. I wanted to resolve the

grievances and settle the issue. I believe we could manage the pay increase prospectively. I was told and believed that I was making a decision changing only the future pay of the Shipwrights beginning approximately when the grievance was filed. Also, I wanted to be as fair and generous with my employees as I thought I reasonably could be within budget constraints. Finally, I wanted to recognize the good working relationship my shops had with the union and be cooperative if possible.

7. There were several things I was not doing when I made this decision. I was not making a pay decision based my interpretation that the federal pay regulations required that I pay Shipwrights for High Work. I have no training or expertise in the federal pay system. I was not making anything approaching a legal decision that the Shipwrights were entitled to Environmental Differential Pay for High Work. I reviewed no Comptroller General decisions and I did not consult with the Shipyard Legal Office. This is not unusual as grievance decisions are typically not treated as matters of law, but rather as a form of workplace dispute resolution. I was simply trying to make a management decision that resolved a sizeable union grievance.

SPACE NOT USED

8. If I had believed that my decision would be seen as legal precedent upon which to base the payment of back pay for six or more years of Shipwright work already completed, I would have denied the grievance. That was never my intention. I worked with a union official who represented the grievants, and I believe he fully understood my intention was to make a prospective pay increase for the benefit of not just the grievants, but all the Shipwrights.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on the** 9th **day of** August, 2004

Mary Jane Tallman

**Mary Jane Tallman**

Signed at Bremerton, Washington