A Yes.
Q Okay. Let's turn to Plaintiffs' Exhibit 2 now. And let's just confirm, you recognize that this is Appendix J to the Operating Manual, the OPM Operating Manual?
A Yes.
Q Okay. And if you turn to page 2 it has a definition of high work, doesn't it?
A It does.
Q Okay. And section 2(b) discusses working at height lower than 100 feet; right?
A Yes.
Q All right. And the first category of work below 100 feet that constitutes high work is, and I quote, "if the footing is unsure or the structure is unstable." You see that?
A Yes.
Q You would agree with me that there is no provision in that description for the practical alleviation of the hazard; right?
A Right. It's just that condition.
Q Did you read it that way at the time you were investigating the grievance?
A Yes.
Q So you understood that once you had worked

on an unsure footing the shipyard had to pay High Pay for that work regardless of whether it thought that the hazard could be alleviated through measures such as fall protection?

A No.

Q Okay. You would agree me though again as you sit here today that Appendix J does not provide for the alleviation of work on unsure footing or unstable structures simply because fall protection is available, wouldn't you?

A I don't know.

Q You don't know?

A I don't know.

Q Okay. Can you point me to any language in section 2(b)(1) that makes you uncertain of the answer to my previous question?

A I don't know that fall protection wouldn't make the footing to be not unsure.

Q Okay. Let's turn back to Plaintiffs' Exhibit 1 then. And if you would just turn to subsection 8-7f(1).

A Okay.

Q All right. It reads, "An agency shall pay the environmental differential in Appendix J to a wage employee paid under the Federal Wage System wage

schedule when the employee is performing assigned duties which expose him or her to an unusually severe hazard, physical hardship or working condition listed in Appendix J on or after the effective date specified." See that?

A Yes.

Q And you were aware of that language at the time you --

A Yes.

Q -- investigated the grievance?

Okay. Just one last question for you, Ms. Niemi. At any point before January 18, 2000 did Mark Winkler ever tell you that he had worked up a formula for how to calculate individual High Pay payments to shipwrights?

A I don't know.

Q You don't remember any such conversation, do you?

A I don't remember.

MR. SCARAMASTRA: Nothing further. Thank you, Ms. Niemi.

THE COURT: Mr. Mager.

REDIRECT EXAMINATION

BY MR. MAGER:

Q Ms. Niemi, how many tours of incomplete

staging did you make in resolving this grievance?

A How many tours did I make? There was one tour.

Q Just one?

A Right.

Q And when, if ever, have you worked as a shipwright?

A Never.

Q And how often have you done work on incomplete staging?

A Never.

Q You stated that there was a dispute about height on the management team. Did those disputes mean that other members of the team felt that an unusually severe condition existed at another height?

A Well, it meant that people didn't feel that 5 feet would necessarily lead to an unusually severe level, that something higher would be more likely.

Q Were any other heights suggested?

A Somewhere in the 20 range was discussed.

Q You said that fall protection gave a possible height. Could you have recommended a different height?

A Personally, no.

Q Why?

A I just didn't feel I had the expertise.
Q Why are shipwrights the only employees that are allowed to work on incomplete staging?
A Because that's their specialty. That's what they do and what they're trained to do.
Q Okay. And what do the OSHA regulations say about work being of an unusually severe nature?
A I don't know.
Q Okay. You mentioned, Plaintiff had read some OSHA standards to you a little bit earlier with some regulations regarding, some rules regarding OSHA standards and EDP, and you said that's the new standard. Would you know when that was adopted?
A I don't know exactly but I believe it was within the last two or two or three years. Somewhere in there.
Q And would you know why you were able to identify that as the new standard?
A Well, because the asbestos language in it is familiar to me. That's what rang a bell as being new.
Q So the information that Plaintiff quoted to you was that applicable to asbestos primarily?
A I think so but I'm not sure.
Q I'm going to show you a letter that we've referenced obliquely in your cross-examination, a