**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WALTER JAYNES, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-856C (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

1. In its Opinion and Order of February 14, 2007, the Court made numerous factual findings that are now undisputed in the sense that they have been established by the Court. Plaintiffs will not restate (or attempt to re-characterize) them here.

**Response:** The findings contained in paragraph 1 are conclusions of law, to which no response is required; to the extent that they may be deemed findings of fact, we object to plaintiffs' statement as vague and overbroad. In accordance with RCFC 42(b), the hearing in November 2006, exclusively focused upon the affirmative defense of accord and satisfaction. RCFC 42(b). See Jaynes v. United States, Fed. Cl. No. 04-856C, Order at 1 (July 6, 2006). Accordingly, only those facts necessary to the Court's order and opinion may be deemed "established."

2. Lynnette Niemi was tasked with investigating the Shipwrights' grievance for the Shipyard. She issued a report based on her findings in November 1999. Tr. at 332:19-333:2 (Niemi); JX 27. App. at 21-22; App. at 15.1

**Response:** Agrees.

3. During her investigation of the grievance, Ms. Niemi researched several sources to determine the legal standards under which the environmental differential was to be paid, including federal regulations, case law, and arbitration decisions. Tr. at 333:10-334:25 (Niemi). App. at 22-23.

**Response:** Agrees. However, plaintiffs do not demonstrate that Ms. Niemi was evaluating the legal standard pursuant to which the Shipyard was required to pay an environmental differential, Pl. App. 2 at 30, Def. App. 98-99, Def. Resp. PFUF App. at 3, ¶ 6; nor was Ms. Niemei a lawyer or shipwright, qualified to evaluate the standards pursuant to which the environmental differential was to be paid, Def. App. 2 at 76-77.

4. Ms. Niemi toured the Shipyard with Mark Winkler and Joe Aiken, both experienced shipwrights, while they showed her different staging projects and explained how they were built. Tr. at 315:10-316:11 (Niemi). App. at 19-20. During that tour, the only time Ms. Niemi saw a fully planked and secure platform was when it had been prepared for use by another trade; the planks on which the shipwrights worked were unsecured. Tr. at 345:6-17 (Niemi). App. at 25. At trial, Ms. Niemi affirmed the accuracy of the factual conclusions she reached in her report. Tr. at 339:4-13 (Niemi). App. at 24.

**Response:** Agrees that Ms. Niemi's factual findings were based on a single tour of staging with Mr. Winkler and Mr. Aiken. Def. Supp. App. 2 at 75-76. Disagrees to the extent that the evidence cited does not support the conclusion that "planks on which the shipwrights worked [are] unsecured." Agrees that Ms. Niemi did not dispute her own conclusions at trial.

5. Mark Winkler, the management team's "process expert," agreed with the description in Ms. Niemi's report that shipwrights built or dismantled stagings. Tr. at 397:22-398:4; 442:14-19; 424:8-14 (Winkler). App. at 33-34, 37, 39. Mr. Winkler agreed that most of the time, shipwrights work on incomplete staging. Tr. at 425:2-10 (Winkler). App. at 38.

**Response:** Agrees that Mr. Winkler served as a "subject matter expert" in Shop 64's attempt to resolve the shipwright high pay grievance. See Pl. App. 2 at 39. Otherwise disagree, as plaintiffs findings are not supported by the evidence cited.

6. At his deposition, Mr. Winkler agreed that "[t]he work of the staging builders and dismantlers does definitely meet the definition of unsure footing under b(1), ". . . pipe single plank, staging, couplings. . . ." He thought this statement was "an accurate presentation of the facts." Winkler Dep. at 59-60. App. at 53-54.

**Response:** Disagrees, as plaintiffs' findings are not supported by the evidence cited. Specifically, Mr. Winkler agreed with the description contained in Ms. Niemi's recommendation that the work in question "does frequently meet the definition of unsure footing." See Def. Resp. PFUF App. at 7.

7. None of the management employees involved in the grievance expressed disagreement with the description of the shipwrights' work in Ms. Niemi's report. Tr. at 345:18-25 (Niemi). App. at 25. No one contested her conclusions regarding the unprotected nature of the shipwrights' work. Tr. at 350:19-352:3 (Niemi); Tr. at 519:18-520:9 (Tallman). App. at 27-29, 48-49.

**Response**: Agrees to the extent that the evidence cited supports the finding that neither Ms. Niemi nor Ms. Tallman cannot recall any conversations with members of the high pay grievance resolution team disagreeing with Ms. Niemi's descriptions. Ms. Niemi's report, however, expressly provided that it only served to "illustrate the typical process for erecting staging," and noted that "variables" exist. Def. Resp. PFUF App. at 6. Further disagrees to the extent that plaintiffs imply that there was no disagreement regarding the proper height at which to pay an environmental differential. There was. See Def. App. 99, 105-106, 110-11, 113; Def. Supp. App. 2 at 73-77 .

8. Joe Aiken agreed that Ms. Niemi's description of shipwright work was complete and accurate. Tr. at 181:5-19 (Aiken). App. at 64.

**Response:** Agrees.

9. At trial, Mary Jane Tallman testified that she "didn't know" whether the description of staging work in Ms. Niemi's report was accurate and complete. Tr. at 508:25-509:15; 511:2-14 (Tallman). App. at 42-43, 44. At her deposition, though, she agreed with Ms. Niemi's description. Tr. at 512:24-514:25 (Tallman); compare Tallman Dep. 130:10-23. App. at 45-47, 66.

**Response:** Agrees that Ms. Tallman didn't know whether the description of staging work in Ms. Niemi's report was accurate and complete. Pl. App. 2 at 42-43, 44. Disagrees that Ms. Tallman's deposition testimony was inconsistent with her trial testimony, the evidence cited by plaintiffs does not support this contention. Pl. App. 2 at 66.

10. The grievance decision announced that shipwrights were entitled to high pay for work beginning on the "first level," but did not state how high that first level was in practice. The first level of staging is generally at least five feet above the ground. Tr. at 461:11-18 (Winkler); Tr. at 70:6-13 (Aiken). App. at 40, 60.

**Response:** Disagrees, the attempted settlement did not announce that shipwrights were entitled to high pay for work beginning on the "first level." The document in question set a pay policy for Shop 64 that provided that:

> Shop 64 will start immediately to pay shipwrights 25% high pay under the circumstances noted in Part II…

Def. App. 65. The circumstances noted in Part II are:

> …Situations warranting high pay occur when the Shipwrights climb or perform work while standing on staging pipe or unguarded planking **and** fall protection devices cannot be adequately used because adequate anchoring is not available.

> Specifically, 25% high pay will be paid for work under the following circumstances:
>
> 1) For shipwrights building and dismantling staging beginning from the first level above the ground/desk **unless**:
>
> > a) flooring and safety rails are installed; **or**
> > b) fall protection devices can be properly used .
>
> 2) Building and dismantling hanging station working from similar heights under similarly unguarded situations when fall protection devices cannot be properly used.

Def. App. 64 (emphasis in original).

Agrees that this document does not state how high the first level was in practice. See id. Agrees that the first level of staging is generally at least five feet above the ground. Pl. App. at 40, 60.

11. Ms. Niemi based her recommendation that an environmental differential be paid for work on staging above the first level on an OSHA regulation that requires workers on staging in shipyards to wear fall protection (if available) at heights above five feet. Tr. at 356:18-357:2 (Niemi). App. at 30-31.

**Response:** Agreed. Ms. Niemi further provided that she “didn’t feel that it was required to pay High Pay just because you wear fall protection.” Pl. App. 2 at 30-31.

12. Ms. Tallman testified that she based her determination that environmental differential pay was owed for work on the first level of staging on her background as a safety officer. When asked why she selected the first level, she responded "we made a decision in Safety that fall protection would be required at 5 feet or more." Tr. at 490:22-23 (Tallman). App. at 41.

**Response:** Agrees that Ms. Tallman's choice of the first level of staging was based upon her background as a safety officer. Otherwise disagrees that Ms. Tallman was determining that environmental differential pay was "owed" for such work, this portion of the finding is not supported by the evidence cited by plaintiffs. See Def. Supp. App. 1 at 10-12.

13. Mr. Aiken thought the environmental differential should be paid starting above the first level of staging because of the OSHA regulations, and that he brought those regulations to the attention of Shipyard management when the grievance was being decided. Tr. at 135:14-136:6 (Aiken). App. at 61-62.

**Response:** Disagrees, as plaintiffs' findings are not supported by the evidence cited. Mr. Aiken merely testified that the OSHA regulations "played a role" in his argument. Pl. App. 2 at 62.

14. When Ms. Niemi was asked if anything other than the OSHA regulation influenced her decision to recommend high pay from the first level, she responded, "that's what I considered in making that recommendation. . . . [I]t was something that identified a footmark. And I didn't find anything else that would identify a certain height." Tr. at 356:18-357:2 (Niemi). App. at 30-31.

**Response:** Agrees.

15. Ms. Niemi testified that there was no difference between shipwright work performed six feet above the ground and work performed 26 feet up. Tr. at 360:5-9 (Niemi). App. at 32.

**Response:** Agrees, but Ms. Niemi is not a shipwright, and has no experience that would allow her to determine whether there was any difference between shipwright work performed six feet above the ground and work performed 26 feet up. Def. App. 2 at 75-76.

16. Mr. Aiken testified that there was no difference between shipwright work performed six feet above the ground and work performed 26 feet up. He also agreed that "leading edge" work involves the same operations at five feet above the ground as it does at 15 feet. Tr. at 136:7-137:23 (Aiken). App. at 62-63.

**Response:** Agrees.

17. Before January 18, 2000, the Shipyard did not pay shipwrights an environmental differential for high work unless they were working more than 100 feet above the dock, from a JLG ("manlift"), or occasionally in inclement weather. Decl. of Mark Winkler, 3, Ex. 1 to Defendant's Opposition to Plaintiffs' Motion for Class Certification, as corrected. Appendix to Plaintiffs' Motion No. 3: For Summary Judgment Regarding Effect of Statute of Limitations at 1-2.

**Response:** Agrees.

18. Lynnette Niemi, as the Shipyard's designee, testified during its Rule 30(b)(6) deposition regarding the "identity, general contents, custodian and location of all Shipyard or Navy records pertaining to high work and high pay." 30(b)(6) Dep. 12:11-23 (Niemi). App. No. 4 at 2.2

**Response:** Agrees that Ms. Niemi served as a 30(b)(6) witness regarding the "identity, general contents, custodian and location of all Shipyard or Navy records pertaining to high work and high pay," as they were know at the time. The parties have since expanded the scope of this discovery to other records in the custody of other sections of the Department of the Navy, and the Defense Finance and Accounting Service ("DFAS").

19. When Ms. Niemi was asked in the 30(b)(6) deposition about the Shipyard's high work records before issuance of the Grievance Decision on January 18, 2000, she testified: "They [the Shipyard] weren't paying for high work except in those circumstances, so that would be the only records that would be there would be the payment of it." 30(b)(6) Dep. 33:6-8 (Niemi). App. No. 4 at 3.

**Response:** Agrees that the Shipyard did not keep records for work was not authorized as high work pay by the Shipyard.

20. When asked if the Shipyard was "aware of any means to document or approximate which shipwrights did high work before the grievance," Ms. Niemi stated she was not. 30(b)(6) Dep. 34:1-4 (Niemi). App. No. 4 at 4.

**Response:** Agrees to the accuracy of the references by Ms. Niemi. However, as plaintiffs' are aware, the references to "high work" by Ms. Niemi would be based upon how it was defined in the language of the attempted settlement agreement of January 2000. The application of the language in the attempted settlement agreement is a matter at the center of this dispute, and therefore cannot be used as a basis for "undisputed facts."

21. During the 30(b)(6) deposition, Ms. Niemi was asked if the Shipyard "currently keep[s] any records of how much time each shipwright spends on staging either assemblage or disassemblage," Ms. Niemi answered, "No, I don't believe the records would say when they were on the staging." 30(b)(6) Dep. 34:5-9 (Niemi). App. No. 4 at 4.

**Response:** Agrees.

22. When asked if the Shipyard "currently maintain[s] any records of how much a shipwright spends passing materials up and down the staging while the shipwright is actually on it," Ms. Niemi again answered no. 30(b)(6) Dep. 34:18-21 (Niemi). App. No. 4 at 4.

**Response:** Agrees.

23. When asked during the 30(b)(6) deposition whether the Shipyard "under[stood] or believe[d] that it has an obligation to maintain records of all high work shipwrights perform," Ms. Niemi responded, "I'm not sure. We have an obligation to maintain the attendance records which includes the high work that's paid." 30(b)(6) Dep. 39:19-24 (Niemi). App. No. 4 at 5.

**Response:** Agrees to the accuracy of the references by Ms. Niemi. However, as plaintiffs' are aware, the references to "high work" by Ms. Niemi would be based upon how it was defined in the language of the attempted settlement agreement of January 2000. The application of the language in the attempted settlement agreement is a matter at the center of this dispute, and therefore cannot be used as a basis for "undisputed facts."

24. When asked whether the Shipyard was taking any steps to record hours of high work in the event that this Court determines the Shipwrights had not been fully compensated, Ms. Niemi answered (over objection), "I don't think there is anything there that would tell when they performed the high work." 30(b)(6) Dep. 39:19-40:9 (Niemi). App. No. 4 at 5- 6.

**Response:** Agrees to the accuracy of the references by Ms. Niemi. However, as plaintiffs' are aware, the references to "high work" by Ms. Niemi would be based upon how it was defined in the language of the attempted settlement agreement of January 2000. The application of the language in the attempted settlement agreement is a matter at the center of this dispute, and therefore cannot be used as a basis for "undisputed facts."

25. "Prior to the filing of the grievance the Shipyard had never kept any record of High Work hours except in cases of work over 100 feet, inclement weather, or work in manlift equipment." Winkler Decl. ¶ 12, at 6- 7. App. No. 4 at 8-9. The "shipyard has maintained no records whatsoever of who performed High Work prior to the grievance, except for work over 100 feet, inclement weather, and manlift operations." Mr. Winkler is "not aware of any means to document or even approximate who among the Shipwrights did the High Work." Winkler Decl. ¶ 14, at 8. App. No. 4 at 7.

**Response**: Agrees, the Shipyard only recorded such work as was authorized as high work. Agrees to the accuracy of the references by Mark Winkler. As plaintiff's are aware, the references to "High Work" by Mr. Winkler are based on how it was defined in the language of the attempted settlement agreement of January 2000. The application of the language in the

attempted settlement agreement is a matter at the center of this dispute, and therefore cannot be used as a basis for "undisputed facts."

26. "Because Shipwrights were not paid for High Work prior to filing the union grievance there has been no reason to record this work for each employee. Hence, no such records exist now or have ever existed." Niemi Decl. ¶ 10, at 5. App. No. 4 at 12.

**Response:** Agrees, that the Shipyard only recorded high work to which plaintiffs were entitled. Pl. App. 4 at 5. Further agrees to the accuracy of the references by Ms. Niemi. However, as plaintiffs' are aware, the references to "high work" by Ms. Niemi would be based upon how it was defined in the language of the attempted settlement agreement of January 2000. The application of the language in the attempted settlement agreement is a matter at the center of this dispute, and therefore cannot be used as a basis for "undisputed facts."

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:
TELIN W. OZIER
Trial Counsel
Department of the Navy
OGC, Navy Litigation Office
720 Kennon Street., SE
WNY Bldg. 36, Room 256
Washington, D.C. 20374-5013

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.Mager@usdoj.gov
Attorneys for Defendant

STEVEN L. SEATON
Labor Counsel
Department of the Navy
Puget Sound Naval Shipyard
1440 Farragut Avenue
Bremerton, WA 98314-5001

December 3, 2007

**CERTIFICATE OF FILING**

This is to certify that on this 3rd day of December, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice