IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WALTER JAYNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-856C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**Declaration of Lynnette Niemi**

**Pursuant to 28 U.S.C. § 1746, I, Lynnette Niemi, declare that the following is true and correct.**

1. I am over 18 years of age and am competent to testify as to the facts and matters set forth in this Declaration.

2. I am the Administrative Officer for the Production Department, Code 900, Puget Sound Naval Shipyard, Bremerton, Washington. I have held this position since November 19, 2000. Prior to this position, I was a Personnel Management Specialist employed by Commander, Navy Region Northwest and assigned to the Puget Sound Naval Shipyard. I held this position for three and one-half years. Part of my duties as a Personnel Management Specialist included the responsibility for processing union grievances pursuant to management's obligations under the collective bargaining agreement.

3. In April 1999, the Bremerton Metal Trades Council filed employee grievances for 99 named bargaining unit employees in the Shipwright trade. The list of employees and their signatures as well as the list of six who have since separated from the Shipyard is attached as Tab 1[1] and the collective bargaining agreement Article on the grievance procedure is attached as Tab

[1]Please note that the typed list has removed the names of Gary D Horne, Gary Witt, and

2. This grievance asked for a change in pay policies within the Shipyard so as to allow the named Shipwrights to be paid an Environmental Pay Differential for High Work. The regulations dealing with Environmental Differential Pay are found at 5 C.F.R. § 532.

4. Shipwrights erect and dismantle staging (scaffolding) as part of the trade. Shipwrights had never been authorized an Environmental Pay Differential for High Work for work on incomplete staging because it had been considered part of the Shipwright trade to work on incomplete staging (scaffolding) during the erecting and dismantling process.

5. I worked with the management team that investigated this grievance. We evaluated how other Environmental Differential Pay has been authorized at the Shipyard. The trade of an employee has been a factor in deciding when some Environmental Pay is warranted. For example, trades that perform work under normally very dirty conditions, such as marine pipefitters, do not normally receive any additional pay for "Dirty Work" even though other trades might when working in the same conditions when those conditions are not normally a part of their trade. There is also language in the collective bargaining agreement that requires an employee to request payment of an Environmental Pay Differential at the time he or she performs the work that is the basis for the additional pay. The pertinent sections of the collective bargaining agreement are attached as Tab 3. The requirement for an employee to request Environmental Differential Pay in advance allows management to (1) have a chance to evaluate the work being done to determine if the pay is warranted and (2) to document the precise hours the employee is working on the particular job that permits this additional pay for timekeeping

---

Destry Whitt, who as managers are precluded from filing a grievance within the union, and it has only listed Charles Foley one time although his name appears twice on the handwritten list So the handwritten list shows 103 names, but there were only 99 proper

purposes.

6. Management decided to settle this grievance by approving an Environmental Pay Differential for Shipwrights under certain circumstances. This was decided for many reasons. It was decided that other trades had been receiving pay for High Work under somewhat similar circumstances, and that High Work pay had also been allowed for Shipwrights who worked in the raised basket of certain hydraulic "manlift" equipment. Management felt that paying the other Shipwrights would be consistent with these other practices. We did not evaluate the other practices to determine if they met legal requirements for an Environmental Pay Differential. The additional pay was also approved because it could be done prospectively with costs accounted for in future work, and it was approved as a way to resolve a union grievance. This decision did not constitute a legal conclusion that this pay was required, it was more in the nature of a settlement or general business decision. If this were compared to the private sector, our action could be likened to deciding to give a pay raise based on a union action.

7. The union received the decision, which included a provision to start the new pay practice from a point in time that was 15 workdays prior to the filing of the grievance. This is consistent with normal grievance practices within the federal labor/management area because the collective bargaining agreement upon which this grievance was filed has a provision that all grievances must be filed within 15 workdays to be valid. This 15 workday period operates like a statute of limitations with regard to the union's right to file a grievance.

8. Pursuant to the collective bargaining agreement, if the union is not satisfied with the management decision on the grievance, the union has 30 calendar-days from the date it

---

grievants.

receives the management decision to invoke binding arbitration as the next step in the process. In this case the union elected not to proceed to arbitration, and the 30-calendar-day time period lapsed. After the 30-calendar-day time period has passed, the decision becomes final and the grievance has been fully resolved. The Article in the collective bargaining agreement pertaining to arbitration is attached as Tab 4. As part of the management action, the Superintendent chose to change the pay practices for all Shipwrights. But under the collective bargaining agreement the decision on the grievance itself only applied to the 99 employees who filed the grievance.

9. Because precise hours of work were not available, payment of the Environmental Pay Differential to the appropriate employees for the period of time beginning 15 workdays prior to the grievance being filed until the management decision was made became a process of careful evaluation by a team of supervisors who were familiar with each employee's recent work. This evaluation was done with the assistance of the union. It was determined that several employees had done the majority of the High Work, and most of the other Shipwrights had done considerably less. There has always been a significant variation in the amount of High Work that each Shipwright performs. Some Shipwrights only work at the ground level and never or seldom receive pay for High Work even under the new pay practices. After all the employees were evaluated as to their individual entitlements, the union agreed to the approved pay and the management action was complete.

SPACE NOT USED

10. After the new pay practices went into effect all supervisors were required to keep detailed records documenting which individual Shipwrights performed High Work and for exactly what hours. I am aware that such information is not available for any time period prior to the filing of the grievance. Because Shipwrights were not paid for High Work prior to the filing of the union grievance there has been no reason to record this work for each employee. Hence, no such records exist now or have ever existed.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on the** 6th **day of** August 2004 **at** Bremerton, Washington.

Lynnette Niemi

Lynnette Niemi

**Signed in Bremerton, Washington**