UNITED STATES COURT OF FEDERAL CLAIMS

NO. 04-856C

---

WALTER JAYNES, *et al.*,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant.

Judge George W. Miller

---

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 3

---

Donald B. Scaramastra
Jennifer A. Krebs
GARVEY SCHUBERT BARER
Attorneys for Plaintiffs

Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

# TABLE OF CONTENTS

**Page**


I. Introduction: Clarification of the Issues that Divide the Parties in Motion No. 3 ..... 1

II. Opt-In Class Actions under RCFC 23 Toll the Statute of Limitations ..... 2

- A. The Shipyard's Position Renders Class Actions Meaningless ..... 5
- B. 28 U.S.C. § 2501 Does Not Preclude *American Pipe* Tolling ..... 9
- C. Conclusion Regarding *American Pipe* Tolling ..... 11

III. The District Court's Rulings Had No Effect ..... 11

IV. Plaintiffs Did Not "Stack" Class Actions ..... 16

V. Claims for High Pay Earned Before the CSRA Amendment Are Not Time-Barred ..... 17

VI. Conclusion ..... 18

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Alabama Hosp. Ass'n v. United States*, 228 Ct. Cl. 176, 656 F.2d 606 (1981) ........ 12, 13, 14
*Alabama Rural Fire Ins. Co. v. United States*, 215 Ct. Cl. 442, 572 F.2d 727, n.10 (1978) ........ 14
*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1994) ........ 2, 4, 5, 9, 11
*Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988) ........ 16
*Armitage v. United States*, 18 Cl. Ct. 310, n.3 (1989) ........ 3
*Athey v. United States*, 78 Fed. Cl. 157 (2007) ........ 4, 8, 9
*Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998) ........ 9
*Barbieri v. United States*, 15 Cl. Ct. 747 (1988) ........ 2, 3, 4, 10
*Brockamp v. United States*, 519 U.S. 347 (1997) ........ 9, 10
*Christian v. United States*, 46 Fed. Cl. 793 (2000) ........ 3, 4, 8
*Christianson v. Colt Indust. Operating Corp.*, 486 U.S. 800 (1988) ........ 14
*Ex parte McCardle*, 74 U.S. 506 (1869) ........ 13
*Faith Hosp. Ass'n v. United States*, 218 Ct. Cl. 255, 585 F.2d 474 (1978) ........ 14
*Gonzales v. Crosby*, 545 U.S. 524 (2005) ........ 12, 13
*Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996) ........ 5, 6
*Hydaberg Coop. Ass'n v. United States*, 229 Ct. Cl. 250, 667 F.2d 64 (1981) ........ 12, 14
*Int'l Philanthropic Hosp. Found. v. United States*, 223 Ct. Cl. 587, 621 F.2d 402, (1980) ........ 14, 16
*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, n.3 (1990) ........ 9
*LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975) ........ 6
*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) ........ 10
*Landgraf v. USA Film Prods.*, 511 U.S. 244 (1994) ........ 17, 18
*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002) ........ 15
*O'Connell v. Champion Int'l Corp.*, 812 F.2d 393 (8th Cir. 1987) ........ 6
*Quinault Allottee Ass'n v. United States*, 197 Ct. Cl. 134 (1972) ........ 3
*RHI Holding, Inc. v. United States*, 142 F.3d 1459 (Fed. Cir. 1998) ........ 10
*Smith v. Orr*, 855 F.2d 1544 (Fed. Cir. 1988) ........ 14
*Solow v. United States*, 78 Fed. Cl. 86 (2007) ........ 4
*South Corp. v. United States*, 690 F.2d 1368 (Fed. Cir. 1982) ........ 14
*Sperling v. Hoffman-La Roche, Inc.*, 24 F.3d 463 (3d Cir. 1994) ........ 6
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ........ 13, 14
*Stone Container v. United States*, 229 F.3d 1345 (Fed. Cir. 2000) ........ 11, 12
*Taylor v. United States*, 73 Fed. Cl. 532 (2006) ........ 14

*Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) ..... 5
*Toro Co. v. White Consol. Indus.*, 383 F.3d 1326 (Fed. Cir. 2004) ..... 14
*United States v. Beggerly*, 524 U.S. 38 (1998) ..... 10

**Statutes**

28 U.S.C. § 1631 ..... 16, 17
28 U.S.C. § 2501 ..... 2, 4, 9, 10, 11, 18, 19
29 U.S.C. § 216(b) ..... 5
29 U.S.C. § 256 ..... 6
5 U.S.C. § 5343 ..... 18

**Rules**

46 FLRA No. 128 ..... 18
FRCP 23 ..... 3, 4
RCFC 15 ..... 2, 19
RCFC 23 ..... 1, 2, 4, 5, 6, 7, 8, 11
RCFC 23(b)(3) ..... 5

## I. Introduction: Clarification of the Issues that Divide the Parties in Motion No. 3

The Shipyard takes no issue with Motion No. 3 through Section VI. The parties agree that this action is deemed to have begun on April 23, 2000 and that the statute of limitations was tolled for all putative class members from then until the district court denied class certification.

There they part company, disagreeing about whether tolling continued and what the implications of tolling, the doctrine, and the 1994 Civil Service Reform Act amendments are for either the plaintiffs originally named in the district court action (whom the Shipyard identifies as the "original" plaintiffs)[1] or for those who joined after this Court denied class certification (whom the Shipyard designates as the "new" plaintiffs).[2] The Shipyard's opposition offers two overarching arguments: one directed at the "original" plaintiffs and the other at the "new" ones.

The former argument is that Plaintiffs may not recover high pay they earned before the 1994 enactment of the CSRA amendments. This argument only concerns the original plaintiffs because they are the only ones whose claim periods extend far enough back in time for this issue to affect them.

The latter argument is that tolling did not continue between the district court's and this Court's respective denials of class certification because: (1) opt-in class actions under Court of Federal Claims Rule 23 do not toll the limitations

---

[1] Fifty-six plaintiffs joined the original district court complaint as class representatives; forty-nine remain.

[2] *See* Defendant's Response to Motion No. 3 at 2:3-6, § 3. Plaintiffs adopt the Shipyard's terminology for purposes of this brief.

period; and (2) the district court's denial of class certification ended tolling even though that court lacked subject matter jurisdiction.

The parties agree[3] that the argument that tolling ceased when the district court denied class certification does not concern the 49 "original" plaintiffs because they were already named plaintiffs when the district court denied class certification. Since these 49 individuals were named plaintiffs then and now, and since their claims arise out of the same "transaction or occurrence" within the meaning of Rule 15, their claims were filed in April 2000.[4]

Having defined the scope of the parties' disagreement, Plaintiffs now address the Shipyard's substantive arguments.

## II. Opt-In Class Actions under RCFC 23 Toll the Statute of Limitations

The Shipyard's principal argument is that *American Pipe* tolling is unavailable for opt-in class actions under RCFC 23. But this Court and its predecessor have rejected this argument for some 20 years. The seminal case is *Barbieri,* in which federal customs agents brought an opt-in class action for overtime pay under the Federal Employees Pay Act. After the court denied class certification, individual class members sued—eight years after their claims accrued "and thus well beyond the six-year limitations period that is applicable to suits in this court under 28 U.S.C. § 2501."[5] The Claims Court held that the putative class action tolled the statute of limitations.

---

[3] *See* Opposition at 16.
[4] *See* Sec. VIII.A of Plaintiffs' Motion No. 3.
[5] *Barbieri v. United States*, 15 Cl. Ct. 747, 748-49 (1988).

The Shipyard suggests that *Barbieri* did not take into account the opt-in class action provisions. To the contrary, the court acknowledged the differences between Federal Rule of Civil Procedure 23 and the "Claims Court's class action procedures"[6] based on *Quinault*.[7] The court adhered to the rule of "most" courts that the "initiation of a[n opt-in] class suit [i]s a representative action – one begun on behalf of all – and hence one that tolled the statute of limitations for every member of the class regardless of when his identity as a class member was established."[8]

The Shipyard contends that *Barbieri* is now bad law. This, no doubt, would come as news to the courts that have unanimously followed *Barbieri* in the nearly 20 years since it came down (none of which, incidentally, the Shipyard mentions). Every court has reached the same conclusion: an opt-in class action tolls the statute of limitations.

In *Armitage v. United States*—a suit, like this one, under the Back Pay Act (together with the Federal Employees Pay Act)—the court observed that "this court has held that the limitations period for putative class members is tolled pending class determination."[9]

In *Christian v. United States*,[10] the court considered whether an opt-in class action under the Military Pay Act tolled the statute of limitations. The court concluded that it did, "just as it does under the Federal Rule of Civil Procedure

---

[6] *Id.* at 750.
[7] *Quinault Allottee Ass'n v. United States*, 197 Ct. Cl. 134 (1972). As this Court's notes to the 2002 amendment to Rule 23 confirm, "[i]n the main, the court's rule adopts the criteria for certifying and maintaining a class action as set forth in *Quinault.*"
[8] *Barbieri*, 15 Cl. Ct at 750.
[9] *Armitage v. United States*, 18 Cl. Ct. 310, 315, n.3 (1989).
[10] *Christian v. United States*, 46 Fed. Cl. 793 (2000).

23."[11] To rule otherwise, the court reasoned, would require all class members to join the suit immediately without awaiting a ruling on class certification and the "utility of the class action device would be largely undermined."[12]

*Athey v. United States* involved a group of federal employees whose claims for accrued annual leave had been severed from a class action.[13] The employees then sued individually, more than six years after their claims accrued, and the government asserted that this second suit was time-barred under 28 U.S.C. § 2501. The court disagreed, concluded that the previous suit had tolled the statute of limitations for putative class members.[14]

Finally, in *Solow v. United States*,[15] the court determined that the filing of a class action equitably tolled section 2501's statute of limitations under *American Pipe,* reasoning that this result would promote judicial efficiency.[16]

From 1988 through 2007, this court and its predecessor have unanimously concluded that opt-in class actions under RCFC 23 toll the limitations period, even if class certification is denied. The Shipyard fails to cite a single decision that holds otherwise. Instead, the Shipyard first complains that allowing opt-in class actions to toll the statute of limitations makes no sense. Then it contends that 28 U.S.C. § 2501 bars *American Pipe* tolling.

[11] *Id.* at 818.
[12] *Id.* (quoting *Barbieri*, 15 Cl. Ct. at 751).
[13] *Athey v. United States*, 78 Fed. Cl. 157 (2007).
[14] *Id. at* 160.
[15] *Solow v. United States*, 78 Fed. Cl. 86 (2007).
[16] *Id.* at 89.

### A. The Shipyard's Position Renders Class Actions Meaningless

The Shipyard claims that *American Pipe* tolling for opt-in class actions makes no sense since class members must affirmatively join the litigation anyway. This argument overlooks the continuous nature of Plaintiffs' claims, which means that in the absence of tolling, every day that a plaintiff delays filing suit would be a day off his or her claim period. As further support, it points to a circuit split as to whether a statutory "collective action" tolls the statute of limitations and argues that these cases show that opt-in classes should not be given tolling effect. These arguments misperceive the issue.

The collective action procedure, which was first created by the 1938 Fair Labor Standards Act, differs from opt-in class actions under RCFC 23. The standard for certification of an FLSA collective action is relatively low: the class representative need only show that the putative class consists of employees who are "similarly situated."[17] Courts have described this standard as "less stringent" than that required for other devices such as joinder or Rule 23(b)(3) class certification.[18] Meanwhile, FLSA contains specific requirements for joining a collective action: "No employee shall be a party plaintiff to any such action unless he gives his consent in

---

[17] 29 U.S.C. § 216(b).

[18] See, e.g., *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (citing cases). Apparently some trial courts have incorporated Rule 23 into the collective action certification decision, although none of the Courts of Appeals have adopted this approach. *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) ("Congress clearly chose not to have the Rule 23 standards apply to class actions under the ADEA, and instead adopted the "similarly situated" standard. To now interpret this "similarly situated" standard by simply incorporating the requirements of Rule 23 (either the current version or the pre 1966 version) would effectively ignore Congress' directive.")

writing to become such a party and such consent is filed in the court in which such action is brought."[19]

Courts agree that FLSA's collective action procedures do not toll the statute of limitations until a plaintiff complies with the congressional mandate to file a written consent with the court. Controversy has arisen, though, with respect to collective actions under the Age Discrimination in Employment Act. ADEA borrowed the FLSA's opt-in provisions, but not its requirement that a plaintiff file a written consent. Some courts have concluded that the failure to incorporate this provision is insignificant, and that Congress did not intend for ADEA collective actions to toll the limitations period.[20] Others have reached the opposite conclusion: Congress's exclusion of this provision evinces intent to allow tolling.[21]

Cases considering the effect of ADEA collective actions invariably involve detailed statutory analysis and inquiry into legislative history. This suggests that RCFC 23's wording is important. And, as it turns out, it differs from FLSA. RCFC 23, like its federal counterpart (but unlike FLSA), sets forth a rigorous test for determining whether a case should proceed as a class action. It confers discretion on the court to grant or deny certification and to sculpt an appropriate class as it deems warranted. It may accept certain class representatives and reject others. It may reject the plaintiffs' counsel and deny class certification on that basis alone. It may certify certain claims and not others. This contrasts with the district court's

[19] 29 U.S.C. § 256.
[20] *See, e.g., Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996); *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 394 (8th Cir. 1987); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975).
[21] *See, e.g., Sperling v. Hoffman-La Roche, Inc.*, 24 F.3d 463, 465 (3d Cir. 1994).

somewhat more limited role in certifying an FLSA collective action. (In considering this difference, it bears mentioning that RCFC 23 is intended to govern all manner of claims against the United States, not just certain employment claims. This renders RCFC 23 certification decisions even more uncertain in comparison to collective action certifications.)

More importantly, RCFC 23 mandates no particular device for class members to join a certified class action. For example, its procedures for notifying class members of certification states that "the court will include in the class any member who requests inclusion, **stating when and how members may elect to be included**."[22] Nothing in the rule limits the Court's flexibility in establishing an opt-in process.

These differences are significant. First, a putative RCFC 23 class member has no idea whether there will be anything to join. Will the Court certify a class action? If so, what claims will proceed on a class-wide basis? And on whose behalf? Who will be allowed to proceed on the plaintiffs' behalf? Who will be the lawyers for the class?

In contrast, a plaintiff in a FLSA collective action can be reasonably assured that if his claim is similar to those of the named plaintiffs, the action will proceed as a collective action through discovery and that he will be allowed to join. Given the more homogeneous nature of the claims involved in collective actions, it is easier for a plaintiff to discern whether he is similarly situated to the named plaintiffs.

[22] RCFC 23(c)(2)(B).

Second, a putative RCFC 23 class member has no idea how to join the class until the Court directs him. Until the class member receives that notice, his only real option is to file a complaint in intervention or a motion to join, both relatively expensive procedures when compared to FLSA's "written consent" procedure. Refusing to toll the limitations period would force class members to file such pleadings to preserve their claims. This would, of course, eliminate many of the cost-savings and efficiencies that class actions are supposed to further and could clog the court with unnecessary actions, motions, and other filings as plaintiffs scramble to preserve their rights. These considerations have factored into at least two Court of Federal Claims decisions granting opt-in classes a tolling effect.[23]

Rule 23's provisions give the Court considerable flexibility in deciding how class litigation should proceed. Tolling gives all parties—and the Court—the breathing room to make these decisions in a sensible and considered fashion.

These procedural differences explain why it makes sense for opt-in class actions to toll the statute of limitations even though (some) statutory collective actions might not. It also explains why it makes sense for opt-in class actions to have the same tolling effect as their opt-out brethren, despite their other differences.

The Shipyard's argument would render opt-in class actions identical in effect to their older cousins: joinder and intervention. There is no place for an opt-in class action if it merely duplicates these other procedural devices. Why go through all of

[23] *See Athey*, 78 Fed. Cl. at 89 ("equitable tolling in this case would be consistent with the goals of judicial efficiency promoted by class actions."); *see also Christian*, 46 Fed. Cl. at 818.

the expense and effort of proposing and deciding whether to allow a class action if, in the end, it is indistinguishable from joinder?

### B. 28 U.S.C. § 2501 Does Not Preclude *American Pipe* Tolling

The Shipyard next contends that, because 28 U.S.C. § 2501 is jurisdictional in nature, it precludes *American Pipe* tolling. For its argument, the Shipyard invokes the Supreme Court's "equitable tolling" decision in *Irwin v. Dep't of Veterans Affairs.*[24] Opt-in class actions, the Shipyard contends, do not satisfy the test announced in *Irwin*. Here again, this issue has already been decided. *Irwin* expressly identifies *American Pipe* as an example of permissible equitable tolling and equates the filing of a defective pleading during the limitations period (which justifies tolling) with reliance by putative class members on a class action to protect their rights.[25]

In any event, "*Irwin* commands that tolling should be presumed absent a clear contrary intent of Congress to limit jurisdiction created by a particular statute."[26] In *Brockamp v. United States*, the Supreme Court explained that ordinarily, "limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception,"[27] but that

[24] 498 U.S. 89, 95-96 (1990).
[25] *Id.* at 96 n.3. The Court of Federal Claims made the same point in *Athey*: "It is clear from the background of the case that the Plaintiffs were part of an earlier class action suit that was timely filed. ...For that reason, the Plaintiffs did not unreasonably delay in pursuing their claims." *Athey*, 78 Fed. Cl. at 160-61.
[26] *Bailey v. West*, 160 F.3d 1360, 1368 (Fed. Cir. 1998).
[27] *Brockamp v. United States*, 519 U.S. 347, 351 (1997).

Congress can overcome the presumption by setting forth the time limitation in "unusually emphatic form."[28]

Thus, the Shipyard has the burden of demonstrating that 28 U.S.C. § 2501 prohibits equitable tolling in "unusually emphatic form." 28 U.S.C. § 2501, of course, contains no language that prohibits tolling. Significantly, Congress has amended section 2501 twice in the nearly 20 years since *Barbieri* was decided, but has never overruled these decisions.

To the contrary, section 2501 expressly authorizes tolling of the limitations period for claimants under a legal disability. Perversely, the Shipyard claims that this authorization embodies Congress's "unusually emphatic" opposition to equitable tolling. But section 2501 does not set forth "its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions."[29] Nor is this case similar to cases like *United States v. Beggerly*, which declined to extend tolling beyond the point expressly allowed by a statute, when the statute tolled the limitations period until the plaintiff "knew or should have known of the claim of the United States."[30] Nor is it like *Lampf, Pleva, Lipkind, Prupis & Petigrow*, where the Court held that a statute that "by its terms, begins after discovery of the facts constituting the violation, mak[es] tolling unnecessary."[31]

---

[28] *Id.* at 351.
[29] *Id.* at 350-51; *see also RHI Holding, Inc. v. United States*, 142 F.3d 1459, 1462 (Fed. Cir. 1998).
[30] *United States v. Beggerly*, 524 U.S. 38, 48 (1998).
[31] *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991).

In short, the Shipyard cannot meet its burden of showing that 28 U.S.C. § 2501 prohibits *American Pipe* tolling in the required "unusually emphatic form."

### C. Conclusion Regarding *American Pipe* Tolling

The authorities are unanimous: Opt-in class actions under RCFC 23 toll the statute of limitations, even if imposed by 28 U.S.C. § 2501. So unless the district court did something to end tolling before the case was transferred here, tolling continued through this Court's denial of class certification.

## III. The District Court's Rulings Had No Effect

The Shipyard argues that tolling ceased for the 25 "new" plaintiffs when the district court denied class certification even though that court lacked subject matter jurisdiction. There is no denying the Shipyard's point that tolling does not extend from denial of class certification through a trial on the merits and any appeal; *Stone Container v. United States*[32] so holds. Such a rule, moreover, makes sense. If tolling lasted past denial of class certification and through appeal, it would raise fairness and case management problems, because plaintiffs could wait until class certification, and any other issues, were decided by an appellate court before electing to join the suit.[33] Here, of course, Plaintiffs do not argue that the statute of limitations should be tolled through trial and any appeal. They simply contend that tolling extends until a court <u>of competent jurisdiction</u> denies class certification.

---

[32] 229 F.3d 1345 (Fed. Cir. 2000).

[33] This apparently is the impetus of the Shipyard's reference to the "long feared" abuse of allowing plaintiffs to wait and see the outcome of litigation before deciding whether to join. Of course, the present Plaintiffs are not in this position.

*Stone Container* only addressed the situation in which the court denying certification had jurisdiction to do so. It did not discuss the effect of a ruling by a court that lacked subject matter jurisdiction.

The Shipyard, however, conclusorily insists that a "class action determination was made can cannot be treated as non-existent."[34] Actually, that is **precisely** how the district court's decision must be treated, because a decision by a court that lacks subject matter jurisdiction is a "nullity"[35] or—to borrow a phrase from the Shipyard's recent motion to dismiss or remand and the Court of Claims—"*void ab initio*."[36]

In *Gonzales v. Crosby,* the Supreme Court described the decision of a court lacking subject matter jurisdiction as "void."[37] The Shipyard attempts to distinguish this case by pointing out that it arose from a different context: a habeas corpus petition. This argument is frivolous, as any practitioner familiar with federal court practice knows. The Court's language in *Gonzalez* makes clear that it was simply applying broader principles of federal court jurisdiction to the case before it: "The Rule also preserves parties' opportunity to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction – **a consideration just as valid in habeas cases as in any other,** since absence of jurisdiction altogether deprives a

---

[34] Opp. at 5.
[35] *Hydaberg Coop. Ass'n v. United States*, 229 Ct. Cl. 250, 667 F.2d 64, 66 (1981).
[36] *Alabama Hosp. Ass'n v. United States*, 228 Ct. Cl. 176, 656 F.2d 606, 610 (1981) ("any decision by a court lacking subject matter jurisdiction is a nullity, void ab initio.")
[37] *Gonzales v. Crosby*, 545 U.S. 524, 534 (2005).

federal court of the power to adjudicate the rights of the parties."[38] (One of these rights, of course, is the right to proceed as a class action under Rule 23.)

Further, the Supreme Court has reached the same result in other contexts. In *Steel Company*, the Court rejected the concept of "hypothetical jurisdiction" and affirmed that "[w]ithout jurisdiction, the court cannot proceed **at all** in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."[39] *Steel Company* teaches that a court without jurisdiction lacks the authority to proceed "at all" (including, by implication, to decide a motion for class certification) and that its only permissible function is to dismiss.

In *Alabama Hospital Association v. United States*,[40] the Court of Claims considered the impact of a decision by a transferor court that lacked jurisdiction; it unanimously concluded that the decision had no effect upon the transferee court. The plaintiff, like the Shipyard here, argued that the Court of Claims should follow the transferor court's decision, but the court refused to do so, rejecting plaintiffs' theory that "a failure of subject matter jurisdiction is a sort of minor procedural defect which prevents immediate enforcement of a decision but leaves the underlying reasoning intact."[41] "Far from being a minor procedural matter," the court reasoned, "a lack of subject matter jurisdiction goes to the very power of a court to hear a controversy; and thus, any 'decision' by a court lacking subject

[38] *Id.* (emphasis added).
[39] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)).
[40] 228 Ct. Cl. 176, 656 F.2d 606, 610 (1981).
[41] *Id.*

matter jurisdiction is a nullity, void ab initio." Accordingly, the court ruled that the transferor court's "earlier decision can be accorded no weight either as precedent or as law of the case."[42]

In *Hydaberg v. United States*,[43] the Court of Claims again rejected an invitation by plaintiffs to defer to interlocutory rulings by the district court before the case was transferred for lack of jurisdiction. The Court confirmed that no weight should be given to the decisions of a court that lacked jurisdiction.[44] Other Court of Claims cases have reached this same result.[45] (Court of Claims cases like *Alabama Hospital Association* and *Hydaberg* are, of course, binding on this Court.[46])

The Shipyard's cases on "law of the case" are not to the contrary.[47] Each involved deference to the transferor court's decision **regarding subject matter jurisdiction**. But every court has jurisdiction to determine whether it has jurisdiction,[48] to (in *Steel Company*'s words) "announce the fact" of its lack of jurisdiction before dismissing.[49] The Shipyard identifies no decision in which a

---

[42] *Id.*
[43] *Hydaberg Coop. Ass'n v. United States*, 229 Ct. Cl. 250, 667 F.2d 64 (1981).
[44] *Id.* at 66.
[45] *See Int'l Philanthropic Hosp. Found. v. United States*, 223 Ct. Cl. 587, 621 F.2d 402, 403-05 (1980); *Faith Hosp. Ass'n v. United States*, 218 Ct. Cl. 255, 585 F.2d 474, 478 (1978); *Alabama Rural Fire Ins. Co. v. United States*, 215 Ct. Cl. 442, 572 F.2d 727, 732 n.10 (1978).
[46] *South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982).
[47] These cases are: *Christianson v. Colt Indust. Operating Corp.*, 486 U.S. 800 (1988); *Taylor v. United States*, 73 Fed. Cl. 532 (2006); *Toro Co. v. White Consol. Indus.*, 383 F.3d 1326 (Fed. Cir. 2004).
[48] *See Smith v. Orr*, 855 F.2d 1544, 1547 (Fed. Cir. 1988) ("The Government's position, if adopted by this court, would usurp the well-established jurisdictional power of the regional circuit courts to determine for themselves, within the bounds of the law-of-the-case doctrine, whether they have subject-matter jurisdiction…").
[49] *Steel Co.*, 523 U.S. at 94

transferee court accepted as binding the rulings by a transferor court that lacked subject matter jurisdiction.[50]

The Shipyard suggests that allowing tolling to extend beyond an initial class certification denial is unprecedented. Not true. In *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*,[51] for example, the Third Circuit addressed the effect of a district court's initial denial of class certification on the grounds that the proposed class representative was inadequate. The district court's initial denial didn't address the other factors relevant to class certification. When a subsequent class representative came forward, the district court considered class certification anew, and denied it on broader grounds, concluding that the case wasn't suited to class-wide adjudication. The defendant argued that the first denial of class certification ended tolling. The Third Circuit disagreed, reasoning that the first denial didn't conclusively resolve whether the case was suitable to class-wide treatment. Tolling ended, the Third Circuit concluded, only "after there had been definitive denials of class certification in the original action."[52]

Notwithstanding the fact that the class certification decision was a "nullity," "void ab initio," and of "no effect," the Shipyard argues that it had one effect, ending tolling. The Shipyard contends that even if the decision does not bind the Court, it somehow binds the Plaintiffs by putting them on notice of the need to file suit. But

---

[50] Hence, this Court properly declined to defer to the district court's class certification ruling. Not only was the issue fully briefed, the Court requested additional briefing, decided it, and then considered the Shipwrights' motion for reconsideration. Contrary to the Shipyard's mischaracterization, plaintiffs' June 2004 class certification wasn't a motion for "reconsideration" and this Court never treated it as such.

[51] *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002).

[52] *Id.* at 386.

as the Court of Claims explained in a different context, when a court rules against a plaintiff in a case over which it lacks jurisdiction, "Plaintiff has never had its day in court...."[53] Since the present Plaintiffs never had their day in court on class certification until this Court decided the issue, their request for class certification continued to toll the limitations period until this Court denied that request.

## IV. Plaintiffs Did Not "Stack" Class Actions

The Shipyard states that Plaintiffs are attempting to impermissibly "stack" class actions in an effort to extend the statute of limitations.[54] It argues that "the pendency of a **previously** filed class action does not toll the limitations period for **additional** class actions by putative members of the original asserted class."[55] This is true. But, because this argument rests on the assumption that shipwrights have filed more than one action on the same claims, it fails.

Stacking occurs when different plaintiffs file separate suits with overlapping or identical class definitions and then attempt to assert tolling based on the date the last court denied class certification. This necessarily involves separate suits and separate class certification decisions by courts with jurisdiction.

Here, there has been only one action, not two. The case before this Court is not a second action; 28 U.S.C. § 1631 provides that upon transfer of a case from a court without jurisdiction, "the action...shall proceed as if it had been filed in...the court to which it is transferred...." The Shipyard's analogy to stacking ignores 28

[53] *Int'l Philanthropic Hosp. Found.*, 621 F.2d at 403-05.
[54] The Shipyard also argues that the case was not transferred to this Court as a class action. Although the relevance of this is unclear, it is also inaccurate. Plaintiffs filed a Complaint in this Court on June 15, 2004 that was clearly denominated a "Class Action."
[55] *Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir. 1988) (emphasis added).

U.S.C.§ 1631's admonition to treat this case as though it is the same one filed on April 14, 2000 in federal district court.

## V. Claims for High Pay Earned Before the CSRA Amendment Are Not Time-Barred

Citing *Landgraf v. USA Film,*,[56] the Shipyard argues that the CSRA Amendment bars all claims that accrued before its October 29, 1994 enactment. But *Landgraf* supports Plaintiffs' argument that retroactivity is not at issue with the type of procedural change effected by the CSRA Amendment.

In *Landgraf*, the Supreme Court held that a newly enacted provision of Title VII—which "significantly expand[ed] the monetary relief potentially available to plaintiffs" and "effect[ed] a major expansion in the relief available to victims"—was not retroactive because it was not merely procedural.[57] The Court noted that the concept of retroactivity only applied when a new law impaired or vested new rights, imposed new duties or attached new disabilities.[58]

Thus, the key to finding a new law retroactive is whether it effected new legal consequences.[59] If a new statute "authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive."[60] For this reason, courts regularly apply jurisdictional statutes to pending cases, regardless of whether jurisdiction would have obtained when the suit was filed.[61] "Application of a new

---

[56] *Landgraf v. USA Film Prods.*, 511 U.S. 244 (1994).
[57] *Id.* at 253-54.
[58] *Id.* at 269.
[59] *Id.* at 269-70 ("the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.").
[60] *Id.* at 273.
[61] *Id.* at 274.

jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case."[62]

The Amendment to the CSRA belongs to this category. All the amendment did was to provide a new forum for already-existing claims.[63] It did not create new duties for the Shipyard, or impose new legal obligations. The obligation to pay environmental differential pay was preexisting, under the terms of 5 U.S.C. § 5343, and the six-year limitation was already present in 28 U.S.C. § 2501.

The Shipyard claims that the CSRA Amendment expanded its liability by overruling the 15-day limit in the Shipyard's collective bargaining agreement. There are two flaws with this. First, under the FLRA's decision in *Bremerton Metal Trades Council v. Puget Sound Naval Shipyard*,[64] the 15-day provision in the CBA has no effect on a continuing failure to pay wages; before the CSRA Amendment took effect, an employee could have pursued administrative remedies for six years worth of back pay. Second, the 15-day provision does not derive from an act of Congress and Congress did nothing to overrule it. All Congress did was to provide a judicial forum for certain claims, without altering the relief obtainable by one dollar.

## VI. Conclusion

The Shipyard argues that the Plaintiffs do not have the right to have the statute of limitations equitably tolled, or, if they did have that right, it was lost when the District Court denied class certification. However, every time the

---

[62] *Id* (internal citations omitted).
[63] For this reason, it is somewhat silly to talk about the Amendment being "retroactive." Absent a plaintiff with a time machine, there is no way a plaintiff could have invoked the Amendment before its enactment.
[64] 46 FLRA No. 128 (Feb. 5, 1993).

question of whether the statute of limitations was tolled for putative class members has been presented to the Court of Federal Claims or predecessor court, the answer has been in the affirmative, even when the statute in question was § 2501. The Shipyard's arguments regarding the CSRA Amendment is equally flawed. The Shipyard has the burden to prove its affirmative defense that the statute of limitations has operated to deny all or part of Plaintiffs' claims. It has failed to do so.

DATED this 7th day of December, 2007.

Respectfully Submitted,

s/Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2007, a copy of the foregoing "REPLY IN SUPPORT OF PLAINTIFFS' MOTION NO. 3: FOR SUMMARY JUDGMENT REGARDING EFFECT OF STATUTE OF LIMITATIONS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald B. Scaramastra
Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs