Go ahead, Mr. Mager.

MR. MAGER: Thank you, Your Honor.

BY MR. MAGER:

Q What did you think about the settlement proposal when you received it?

A I thought that I would be stupid not to accept it, to be honest.

Q Why?

A Based on my research. And since I have the document here and on page J0001042 under the paragraph where it says "timeliness of the grievance," I felt that the shop saw through my bluff, if you may want to put it that way, where it says the union has presented nothing in this grievance to indicate any reason why this issue could have not been raised long ago. And yet they're willing to give X number of months of environmental differential pay which could have been according to my research exactly what we would have received had we proceeded to arbitration.

And then we had an outstanding High Pay policy going forward from this that's going to benefit the employees. They may have as many as 20 to 40 years left in tenure in the shipyard.

Q What do you mean by an outstanding policy?

A They are going to start paying staging at 5

feet above the ground level.

Q How do you know that?

A Because it states so in this particular proposal.

Q Where?

A Certain work situations it says, paragraph 2, subsection 1 says "for shipwrights building and dismantling staging beginning from the first level above the ground/deck unless flooring and safety rails are installed or fall protection devices cannot be properly used."

Q And that would be 5 feet?

A Usually that's 5 feet. According to the standard for fall protection, fall protection requires a five -- anything above 5 feet requires a person to be in fall restraint or in a fall arrest situation. However, the shipwrights are going to be the ones that put the plank, platform, ladder access, lifeline around that platform to make it safe for the other employees to access it. That is why that particular issue was probably implemented in there.

Q I realized you testified somewhat to this but I just want to make sure I'm clear about a couple of points. Do you recall, or what if anything did Ms. Tallman say to you on the telephone when she called

MR. MAGER: Your Honor, permission to approach the witness to take the document back?

THE COURT: Certainly.

BY MR. MAGER:

Q Now, having read over that sections, those sections of your deposition does that refresh your recollection of what you saw or what Mr. Aiken handed you when he came to discuss the settlement agreement with you?

A It refreshes my recollection that I wasn't sure of which one I saw.

Q So does it refresh your recollection if you saw the text of the --

A I saw the main text of the message that was being delivered. Whether or not it had signature blocks for Joe or Mary Jane Tallman I don't recollect.

Q Thank you. You had mentioned that the settlement proposed by the shipyard was much more beneficial. What did you mean by that? How was it more beneficial to members of the bargaining unit?

A How was it more beneficial?

Q Yes.

A One, they're getting paid from the lowest level possible. And it was going to be moving forward from when the document was signed.

THE COURT: Okay.

REDIRECT EXAMINATION

BY MR. MAGER:

Q I'm going to have you look at the section you were just referring to, the award section, where it says Shop 64 will immediately, will start immediately to pay shipwrights 25 percent High Pay under the circumstances noted in part two above.

A Uh-huh.

Q Would you know if that was referring to back High Pay or future High Pay?

A I believe that says future High Pay.

MR. MAGER: That may be all. I think I'm done, Your Honor.

THE COURT: Thank you. I have a question for Mr. Hamel.

I think you were asked by Ms. Krebs some questions about when you regarded a grievance as resolved or settled.

THE WITNESS: Uh-huh.

THE COURT: And I take it from your answers that if the union representative decided not to take the matter to arbitration that would be regarded as a resolution or settlement of the grievance in your view?