NO. 04-856C

Judge George W. Miller

---

UNITED STATES COURT OF FEDERAL CLAIMS

---

WALTER JAYNES, et al.,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant.

---

# PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM AND SURREPLY

---

Donald B. Scaramastra
Jennifer A. Krebs
GARVEY SCHUBERT BARER
Attorneys for Plaintiffs

Eighteenth Floor
1191 Second Avenue
Seattle, Washington 98101-2939
(206) 464-3939

## I. Response to the Shipyard's Reiteration of Old Arguments

The Shipyard requested and received leave to brief two issues: (1) the effect of two recent cases, *Doe* and *John R. Sand & Gravel*; and (2) arguments Plaintiffs allegedly made for the first time in their reply briefs. But the bulk of the Shipyard's 22-page opus goes far beyond this limited mandate, revisiting arguments it has already made and, often, reasserting arguments that the Federal Circuit has rejected (such as the Shipyard's contention that the presence of administrative procedures for resolving the shipwrights' grievance precludes judicial review).

Pages 1 through 5 of the Shipyard's brief fall entirely into this category. So do pages 9 through 19. Thus, the only pages that introduce new material falling within the scope of the Court's authorization of supplemental briefing are pages 6 through 8 and 20 through 22.

Rather than respond in kind, Plaintiffs will ignore those arguments that merely reiterate points the parties have already briefed adequately (and, one suspects, *ad nauseam*). In a few exceptions, however, the Shipyard has offered a new twist on an old them; the remainder of this section addresses those new items. The sections that follow address the points on which this Court invited supplemental briefing.

### A. The Shipyard Mischaracterizes Plaintiffs' Arguments

During the course of revisiting arguments already made, the Shipyard attributes arguments to Plaintiffs and then takes aim or umbrage at them. First, the Shipyard claims that Plaintiffs withdrew their Motion No. 4 at the status conference. In fact, they didn't. (While on the subject of that motion, it is worth

pausing to note the Shipyard's argument, on page 9 of its Surreply, that "high pay is a term and condition of employment." And so this Court found after the accord-and-satisfaction trial.[1] This concession and ruling now preclude a holding that high work is not a "term and condition of employment" for purposes of *Anderson v. Mt. Clemens Pottery Co.*,[2] which means the Shipyard was under a statutory mandate to keep adequate records of it.)

Second, the Shipyard states that Plaintiffs sue to "enforce" the "attempted grievance settlement" and bring breach of contract claims. In fact, they don't. They have brought statutory claims for environmental differential pay. The **Shipyard,** not Plaintiffs, has put the grievance decision at issue by insisting that a "local determination" is a prerequisite to this suit.

Third, the Shipyard accuses Plaintiffs of tarring "the Federal sector labor law system" as "Byzantine." In fact, they haven't. They have bestowed that epithet on the Shipyard's grotesque distortion of that system.

## B. Most of the Shipyard's Arguments Presuppose that the Shipyard Never Made a "Local Determination"

Much of the Shipyard's brief is premised on the assumption that it never made a local determination, with dire warnings of the consequences if the Court proceeds without one. Here is a sampling of those arguments:

- if the Court does not allow the Shipyard to make a local determination and instead "creates" a local determination from part of the "attempted

[1] *Jaynes v. United States*, 75 Fed.Cl. 218, 229 (2007).
[2] 328 U.S. 680 (1946).

settlement," it will "subvert[] the intent of the CSRA";[3]

- if the Court does not allow the Shipyard to make a local determination and instead applies the standards embodied in the grievance decision, the Court will "forever chang[e], and potentially destroy[]," the alternative dispute resolution procedures contained in the FSLMR Statute;[4]
- if the Court does not allow the Shipyard to make a local determination, it will "violate[] a basic tenant [sic] of Federal labor relations," sabotaging them;[5] and
- if the Court does not allow the Shipyard to make a local determination with union involvement, the Court will force the Shipyard to commit an unfair labor practice.[6]

All of these arguments assume that the Shipyard never made a local determination. Because (as Plaintiffs have shown in earlier briefing) the uncontroverted evidence is that it did, these arguments are of no moment.

### C. The Shipyard's New "Evidence" Regarding Ms. Tallman's Alleged Lack of Authority to Make a Local Determination Is Too Little, Too Late

The Shipyard persists in arguing that Ms. Tallman lacked authority to make a "local determination" outside the grievance process, offering "new" evidence (i.e.,

[3] Surreply at 1 & 5.
[4] Surreply at 3.
[5] Surreply at 14-16.
[6] Surreply at 10-12. This latter argument is silly. First, the union was involved in the resolution of the shipwrights' high-pay grievance. Second, as Plaintiffs have already explained on page 10 of their reply in support of their motion No. 1, no authority holds that payment of a judgment for money damages (the only relief the Shipyard says this Court can award) is an unfair labor practice.

evidence that it possessed, but did not previously offer) in support. This, of course, ignores the fact that Ms. Tallman rendered her decision during the course of that process.

In any event, the Shipyard's two items of "new" evidence are no better than the old. As its first item of evidence, the Shipyard reminds the Court that Ms. Tallman never consulted with lawyers or reviewed applicable regulations in issuing her decision. This is obviously irrelevant to her authority (though it might be relevant to whether she competently exercised that authority). Nor is there anything in federal regulations that suggests that a lawyer is needed to assess whether local conditions are sufficiently hazardous to warrant environmental differential pay. Indeed, until now, the thrust of the Shipyard's argument has been the reverse: that because the decision requires expertise in the field rather than a law degree, this Court is unqualified to make it.

The Shipyard also argues that only the Shipyard commander had the authority to set the local determination. If true, this ignores all of the evidence that the commander may, and does, delegate that authority. For example, no one disputes that the CBA delegated the authority to decide step-two grievances to shop heads like Ms. Tallman. Further, and for what it's worth, Ms. Tallman testified at trial that she ran the language of her proposed decision up the chain and obtained the approval of her supervisor, Jerry Main.[7]

The second of the Shipyard's two items of "evidence" also doesn't prove that

[7] Tr. 491 & 493.

Ms. Tallman lacked authority to make a local determination. This is a passage from an internal Shipyard instruction memorandum, which the Shipyard quotes on page 18 of its Surreply. But that passage simply says that a shop head "may recommend changes to the Schedule" that add a work category to the **"categories in enclosure (2)."** Enclosure (2) to the instruction memorandum is a "Schedule of Environmental Differentials Paid …. At Puget Sound Naval Shipyard…." The first "category" listed on this schedule is "High Work."

This passage does imply that Ms. Tallman could not unilaterally add a category of work hazard to the Schedule. But high work was already on that schedule so the passage is irrelevant. It does not speak to her authority to identify work conditions that involve high work. Ms. Tallman, of course, did not add a new category of environmental differential to the schedule; she simply decided that certain shipwright work fell within a category that was already listed.

### D. The Shipyard's New "Intent" Cases Are Irrelevant

On page 19 of its supplemental brief, the Shipyard claims to have found three cases that establish the relevance of Ms. Tallman's (unexpressed) intent to avoid creating a local determination (an intent, incidentally, that Ms. Tallman never testified to having).

The Shipyard's cases stand for the uncontroversial proposition that expressions of agency intent may be relevant to construe agency pronouncements. For example, courts may consider admissible evidence of intent in determining whether an agency's unilateral statement was intended to create a contractual obligation. Put another way, to the extent that agency intent with respect to a

statement is relevant, it is ascertained by "an examination of the statement's language, the context, and any available extrinsic evidence."[8] Here, the Court has already reviewed the available and admissible extrinsic evidence and construed the grievance decision *qua* settlement agreement.

The Shipyard no longer proffers extrinsic evidence to explain the grievance decision. Now it purports to offer such evidence in an effort to declare that document "void ab initio." This, the authorities it cites do not allow. And in the case of a contract, the substantive law of contracts limits a party's ability to avoid the contract on the basis of mistake, as Plaintiffs have illustrated in earlier briefing.

### E. The Shipyard Offers No Authority for the Proposition that Plaintiffs Are Limited to Recovering What Is Owed Under a Local Determination

The Shipyard next contends that Plaintiffs are limited to recovering high pay owed under the local determination made before they did the work in question. Thus, the Shipyard suggests, Plaintiffs may not recover high pay for pre-2000 work that satisfied the grievance decision's definition of high work. Instead, they are limited to suing for work that fell within the Shipyard's earlier pay policy, when the Shipyard refused to treat any work on incomplete staging below 100 feet as high work.

The Shipyard cites absolutely no authority for this proposition.

That proposition, moreover, is nonsense. It is uncontested that Shipyard personnel who handled the grievance reviewed then-existing work conditions to determine they involved "high work." The grievance decision concluded: "Certain

[8] *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) (citing *Doe v. Hampton*, 566 F.2d 265, 281-82 (D.C.Cir.1977)).

work situations encountered by Shipwrights in erecting and dismantling staging do meet the criteria for 25% high pay in accordance with …the BMTC Agreement and …5 CFR 532….” The decision went on to identify those situations.

Neither the grievance decision, nor the evidence offered to this Court suggested that the decision was an anachronism due to changing work conditions before 2000. The Shipyard fails to explain why it need not pay high pay for what it concluded was high work, simply because it did not reach that conclusion before that work was performed. And to adopt the Shipyard’s argument would reward the unscrupulous employer who balked at complying with its regulatory obligation to determine when it owed an environmental differential.

Finally, having asserted that Plaintiffs are limited to recovering what would be owed under its “local determination,” the Shipyard makes a 180-degree turn and, citing *Doe v. United States,* makes exactly the opposite argument.

## II. *Doe v. United States* Is Irrelevant to the Issues Now Before the Court

The Federal Circuit’s recent decision in *Doe v. United States*[9] undeniably holds that claims for breach of a collective bargaining agreement are, unlike statutory claims, subject to the agreement’s exclusive dispute resolution procedures. That is all well and good, but it has nothing to do with this case. Plaintiffs bring statutory, not contract claims.

The Shipyard, however, tries to extend *Doe,* arguing that this Court may not consider the “resolution of those matters”—“those matters” being the issues addressed in the grievance decision—“as a basis to find liability under a statutory

[9] 513 F.3d 1348 (Fed. Cir. 2008).

claim."[10] In so doing, the Shipyard offers two contradictory claims in the same brief. On the one hand, this Court **must** defer to the Shipyard's local determination (when it reaches one) in resolving this case. But on the other hand, this local determination can't be "a basis to find liability." Which is it?

The Shipyard offers another case in its attempt to show that matters touching upon the collective bargaining process cannot be applied in any other context. It relies upon *Golt v. United States*[11] to support its argument that "the CSRA is intended to preempt all other actions under the [CBA] as part of a scheme to eliminate duplicate actions".[12] *Golt* was decided by the Ninth Circuit, which differs from the Federal Circuit regarding the effect of the CSRA Amendment.[13] It is not surprising that a circuit that has held that the CSRA "preempts employment related claims which fall within collective bargaining agreements,"[14] would find that the CSRA is intended to preempt all other actions. Unfortunately for the Shipyard, that is not the law of the Federal Circuit.

Interestingly, *Doe* supports Plaintiffs' argument that claims for high pay spring from both statutory and contractual sources. This, in turn, supports Plaintiffs' response to the Shipyard's contention that the parties to the grievance process lacked the power to settle the grievance without releasing Plaintiffs'

---

[10] The Shipyard concedes, as it must, that plaintiffs have brought statutory claims before this Court and that they are entitled to do so. *See* Surreply at 20 ("Assuming that this Court follows *Doe* … and properly treats plaintiffs' claims as statutory…"); Surreply at 7 ("…we do not contest that *Mudge* allows plaintiffs to bring an independent statutory claim pursuant to the Tucker Act in this Court.").

[11] 186 F.3d 1158 (9th Cir. 1999).

[12] Surreply at 5.

[13] *See Jaynes*, 75 Fed. Cl. at 227, n.15.

[14] *Golt*, 186 F.3d at 1159.

statutory claims. In their reply, Plaintiffs noted that parties do, indeed, have the power to sculpt a settlement agreement to release certain claims and not others, and that this power is clearest when plaintiffs have claims that spring from multiple sources. Plaintiffs also observed that their right to high pay is grounded in two sources, one statutory and the other contractual. *Doe* confirms that this is so.

Plaintiffs also cited the Ninth Circuit's decision in *Judie v. Hamilton* (among others) for the proposition that parties need not resolve all claims in one go.[15] These cases also stand for the proposition that unless the language of an agreement makes it clear that a claim is released, it will not bar litigation of that claim.[16]

Ignoring plaintiffs' other cases, the Shipyard takes plaintiffs to task for misstating *Judie*'s facts. While their one-sentence description of *Judie*'s posture might, with more detail, have been more artfully described, Plaintiffs description is accurate in its essentials. *Judie* involved an employee's claim of racial discrimination arising from the comments and actions of his supervisor, among others. One manifestation of this alleged discrimination, a suspension from work, was grieved and settled. The Ninth Circuit held settlement of the grievance arising from one allegedly discriminatory episode did not release the plaintiff's claims for racial discrimination.

## III. The Shipyard's Treatment of the Federal Labor Relations Authority Decision in *BMTC v. PSNS* Has No Bearing on the Motions Before the Court

The Shipyard takes Plaintiffs' argument concerning the FLRA decision in

[15] *See* Plaintiffs' Reply in Support of Cross-Motion No. 1 at 15-16.
[16] *See id*. at 17.

*Bremerton Metal Trades Council v. Puget Sound Naval Shipyard*[17] out of context and then attacks it. Plaintiffs do not argue that the arbitrator's decision in *BMTC v. PSNS* binds this Court.

The Shipyard had argued that the CSRA Amendment was substantive because it expanded the potential claim period available to Plaintiffs.[18] Plaintiffs pointed out that the possibility of a back pay award of more than 15 days was already available. Therefore, the CSRA Amendment did not substantively expand the scope of remedies available to plaintiffs.

## IV. *John R. Sand & Gravel* Is Inapplicable to Plaintiffs' Statute of Limitations Argument

The Shipyard's final argument is that *John R. Sand & Gravel*[19] undermines Plaintiffs' arguments regarding the effect of the statute of limitations. In fact, it does no such thing. The Shipyard's reading of *John R. Sand & Gravel,* if adopted, would strike down a half-century of decisions and practice by this Court and the Court of Claims.

*John R. Sand & Gravel*'s holding is simply stated: in the case of a "jurisdictional" statute of limitations, a court must consider an action's timeliness *sua sponte*. Thus, doctrines of waiver and "equitable tolling"—as recognized in *Irwin v. Department of Veterans Affairs*[20]—may not be invoked to avoid the statute.

The Shipyard's application of *John R. Sand & Gravel* is mechanical and runs thus: the Supreme Court has precluded "equitable tolling" under *Irwin* and because

[17] 46 FLRA 1328 (1993).
[18] *See* Defendant's Response & Reply to Plaintiffs' Motion No. 3 at 16-18.
[19] *John R. Sand & Gravel v. United States*, 522 U.S. ___, 128 S. Ct. 750 (2008).
[20] 498 U.S. 89 (1990).

Plaintiffs invoke *Irwin* “equitable tolling” to extend the statute, Plaintiffs’ arguments fail.

But as Plaintiffs have made clear, they do not rely on *Irwin* to toll the statute of limitations. Rather, Plaintiffs demonstrated that, in addition to their other arguments, they met the test articulated in *Irwin*.

The question here isn’t whether a plaintiff who failed to timely file a complaint within the limitations period should be excused from doing so, which is what *Irwin* and *John R. Sand & Gravel* address. The question here is the **scope** of a complaint that **was** timely filed.

Courts have wrestled with how to address the question of when a seemingly new claim filed after the expiration of the limitations period in an otherwise timely action is, in fact, encompassed within the old claim. Relation-back theory and its close cousin, *American Pipe* tolling, are two vehicles that this Court, and the Court of Claims before it, have adopted to determine whether allegedly “new” claims are encompassed within the original timely-filed claims. Under each doctrine, the fundamental question is whether the “new” claims are, in fact, substantially the same as the “original” ones, such that the opposing party has received adequate notice. If so, then they are deemed to have been filed with the original timely complaint.

The relation-back doctrine has a venerable history in this Court and the Court of Claims. Fifty years ago January, the Court of Claims decided *Field v.*

*United States,*[21] which arose from a claim by a retired army officer for six years of back retirement pay, measured by the difference between retirement pay he received and the pay he was entitled to receive.

Plaintiff prevailed on the merits and the issue arose whether he could recover for the six years before the filing of his original complaint. This issue arose because plaintiff's original and first amended complaints failed to assert a claim under the statute under which he ultimately prevailed. The government argued that the plaintiff's claim was limited to six years before the filing of the second amended complaint, the first time his complaint clearly stated a claim under the correct statute. The court rejected the argument, citing Rule 18(c) of the Rules of the Court of Claims, the analog to RCFC 15(c). The court stated:

> Inasmuch as it appears that plaintiff would be entitled to recover the retired pay to which he is entitled under the [correct] Act on the facts alleged in his original petition, despite his failure to demand such relief in that petition, we cannot see how he is prejudiced by demanding that relief in an amended petition. On the basis of our Rule 18(c) …, plaintiff is entitled to recover all installments of increased retired pay which were due and not paid from [six years before the filing of the original complaint] to the date of judgment herein ….

*Field* holds that claims arising from the same continuous failure to pay wages or compensation relate back to the first complaint that asserted claims arising from that failure. The only difference between *Field* and this case is that all three versions of the complaint in *Field* involved the same individual plaintiff.

The next question is whether a new plaintiff could relate his or her claims

[21] 141 Ct. Cl. 312, 158 F. Supp. 580 (1958).

back to those brought by another plaintiff. Within ten years of deciding *Field*, the Court of Claims held that a "new" plaintiff's claims relate back to identical claims brought by another person on the "new" plaintiff's behalf.

In the 40-year old decision *Snoqualmie Tribe of Indians v. United States,*[22] a case that has received considerable attention in Plaintiffs' earlier briefs. Briefly, in *Snoqualmie Tribe,* the plaintiff tribe initially sued on claims in its own right. After the expiration of the limitations period,[23] the Tribe amended its complaint to pursue relief on behalf of another tribe,[24] the Skykomish. Although the court held the Skykomish Tribe had gone out of existence,[25] several members of the Snoqualmie Tribe claimed membership in the Skykomish. The Court of Claims allowed the amendment, explaining:

> The Skykomish claim is also brought by the Snoqualmie Tribe organization, not as a tribal organization as such, but as the 'corporate' representative of a few of its members. It is important to note, though, that these few members simply serve as the predicate to the power to represent all Skykomish Tribe members….

In so doing, the Court reversed the decision of a commission that had determined that "the doctrine of relation back …is a procedural device of no avail to appellant here because the Commission's statute of limitations is jurisdictional – i.e., the appellant should not be allowed to circumvent the substantive consequences of an

[22] 178 Ct. Cl. 570, 372 F.2d 951 (1967).

[23] The statute of limitations in question was, like 28 U.S.C. § 2501, jurisdictional. *See United States v. Lower Sioux Indian Community,* 207 Ct. Cl. 492, 519 F.2d 1378, 1382 (1975).

[24] *Id.* at 953.

[25] *Id.* at 957.

absolute time bar by a procedural device."[26]

The Court first determined that the Snoqualmie Tribe had the right to assert claims on behalf of its members. But the Court noted that the statute under which suit was brought also allowed claims to be brought "by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all of its members."[27] Thus, the statute was identical in nature to RCFC 23, allowing certain "representative" plaintiffs to assert claims on behalf of "all" members of an "identifiable group."[28] Because of this representational nature, identical to a class action, the Court of Claims concluded that the amended complaint did not involve "new" plaintiffs. The amended claims, therefore, related back to the filing of the original claim and weren't time-barred. Under the Shipyard's interpretation of *John R. Sand & Gravel,* this Court of Claims decision is, like *Field*, no longer good law.

Nearly thirty years ago, the Court of Claims visited the "new" plaintiff issue again, in *Cross Construction Co. v. United States*.[29] In that case, a subcontractor brought a "direct action" complaint against the government. After the limitations period expired, the government moved to dismiss. In response, the subcontractor assigned the claim to the prime contractor and the parties amended the complaint to assert the same claims on behalf of the prime contractor. The government moved to dismiss the amended claim as time-barred. Notwithstanding the substitution of a

[26] *Id.* at 954.
[27] *Id.* at 957.
[28] *Thompson v. United States*, 122 Ct. Cl. 348 (1952) contains a discussion of this statutory language.
[29] 1980 WL 20844 (Ct. Cl. Sept. 19, 1980).

new party plaintiff, the Court of Claims denied the motion: "Contrary to defendant, we think this is an appropriate case in which to allow the amendment and to relate it back to the original filing…. [T]he defendant will not be prejudiced in its defense on the merits by the mistake in originally naming [the subcontractor] as the plaintiff."[30]

Thus, the Court of Claims' relation-back jurisprudence has consistently addressed the problem of "new" claims, including those claims brought by a "new" plaintiff who was represented by the original one, as one involving a comparison of the scope of the original pleading to the amended one. For a half-century, the Court of Claims and, now, this Court, have applied this jurisdiction without Congressional comment or criticism.

Meanwhile, for over a quarter century, the Court of Claims and this Court have permitted class actions and, as set forth in plaintiffs' prior briefs, have unanimously applied *American Pipe* to these actions. In their reply regarding Motion No. 3, plaintiffs explored the reasons why *American Pipe* "tolling" makes sense in this context, and why the factors that underlie relation-back theory also justify such "tolling."

One recent decision by Judge Bruggink—not previously mentioned by either party—dovetails nicely with Plaintiffs' earlier discussion. The case is *Illig v. United States,*[31] and in it, Judge Bruggink explains how certified class actions work: "The nature of a class action, however, is such that identification of members of the class

[30] *Id*. at *1.
[31] 61 Fed. 187 (Fed. Cl. 2004).

is tantamount to inclusion of those individuals nunc pro tunc back to the date of the original filing. If that were not the case, the running of the limitations period would become an issue."[32] Given the discretionary nature of class certification decisions, and putative class members' reliance on class representatives to represent their interests, there is no reason to reach an opposite result upon denial of class certification.

And so we return to *John R. Sand & Gravel.* That case undeniably precludes a party who has failed to timely file a complaint in compliance with a jurisdictional statue of limitations from seeking refuge in equitable tolling. But the case says nothing about the situation where, as here, a complaint **has** been timely filed and a question arises as to the complaint's scope. Under *American Pipe* and relation-back theory, both of which are embodied in the rules of the Court of Federal Claims, a complaint filed by a representative plaintiff on behalf of a class of identifiable individuals is treated as a complaint that has been filed by all members of the class—provided that it arises from the same transaction or occurrence.

To adopt the Shipyard's contrary position—to hold that *John R. Sand & Gravel* precludes the Court from treating class member's claims as though they were included in the class complaint brought on their behalf—is to hold that this Court and the Court of Claims before it have lived in statutory sin for a half-century.

It is, moreover, to so hold where Congress has expressed no objection to this

[32] *Id.* at 188.

Court's practice and jurisprudence. Three times since 1968 (in 1982, 1992, and 2004)[33]—when the Court of Claims first applied its relation-back jurisprudence to extend to claims by representative parties, and since 1972, when the Court of Claims approved opt-in class actions in *Quinault Allottee Ass'n v. United States*[34]—Congress has amended 28 U.S.C. § 2501, the statute of limitations. During the same period, it has twice (in 1982 and 1992)[35] amended 28 U.S.C. § 2503, the authorization for this Court to promulgate procedural rules. Two of the amendments to section 2501 (and one to section 2503) post-date *Barbieri v. United States,*[36] the first in a 20-year string of decisions by this Court applying *American Pipe* to class actions under RCFC 23.[37] In the same period of time (i.e., since 1968), Congress has amended the Tucker Act six times.[38] Despite these amendments to the statute of limitations, the statute that specifically authorizes this Court to promulgate procedural rules, and the statute conferring jurisdiction on this Court to hear this claim, Congress has expressed absolutely no concerns with this Court's treatment of class actions or application of the relation-back theory to "new" parties. This is significant, for as the Supreme Court reasoned in *Ankenbrandt v. Richards,*

---

[33] Pub. L. 97-164 (1982); Pub. L. 102-572 (1992).

[34] 197 Ct. Cl. 134, 453 F.2d 1272 (1972).

[35] Pub. L. 97-164, 96 Stat. 42 (Apr. 2, 1982); Pub. L. 102-572, 106 Stat. 4516 (Oct. 29, 1992).

[36] 15 Cl. Ct. 747, 748-49 (1988).

[37] *See Solow v. United States,* 78 Fed. Cl. 86 (2007); *Athey v. United States*, 78 Fed. Cl. 157 (2007); *Christian v. United States*, 46 Fed. Cl. 793 (2000); *Armitage v. United States*, 18 Cl. Ct. 310, 315, n.3 (1989); *Barbieri v. United States*, 15 Cl. Ct. 747, 748-49 (1988).

[38] Pub. L. 91-350, 84 Stat. 449 (Jul. 23, 1970); Pub. L. 92-415, 86 Stat. 652 (Aug. 29, 1972); Pub. L. 95-653, 92 Stat. 2391 (Nov. 1, 1978); Pub. L. 96-417, 94 Stat. 1743 (Oct. 10, 1980); Pub. L. 102-572, 106 Stat. 4516 (Oct. 29, 1992); Pub. L. 104-320, 110 Stat. 3874 (Oct. 19, 1996).

when Congress changes a statute without expressing a desire to alter a prior application of the statute, courts should presume that Congress adopted that application.[39] (In *Ankebrandt,* the Court held that the 1948 amendments to the diversity statute, 28 U.S.C. § 1332, re-enacted the "domestic relations" exception to diversity jurisdiction grafted onto the earlier version by the courts.)

Accordingly, nothing in *John R. Sand & Gravel* precludes this Court from determining whether the earlier versions of the complaint in this case encompass the claims that are asserted in the versions of the complaint that post-date this Court's denial of class certification. As Plaintiffs' earlier briefing demonstrates (briefing that Plaintiffs won't repeat here), they clearly do.

## V. Conclusion

The Shipyard's supplemental brief offers little that is new and nothing that is ultimately significant. None of the Shipyard's new authorities, new arguments, or old arguments in new guises compels conclusions different from those Plaintiffs have pursued or that this Court has tentatively reached. Nothing further need be said.

[39] 504 U.S. 689, 700-01 (1992).

DATED this 6th day of March, 2008.

Respectfully Submitted,

s/Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
1191 Second Avenue, 18th Floor
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify on March 6, 2008, a copy of the foregoing PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM AND SURREPLY was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald B. Scaramastra

Donald B. Scaramastra
Jennifer A. Krebs
**Garvey Schubert Barer**
18th Floor
1191 Second Avenue
Seattle, WA 98101
Telephone (206) 464-3939
Facsimile (206) 464-0125
Attorneys for Plaintiffs